# Exhibit A

EFiled: Apr 05 2018 12:03PM EDT
Transaction ID 61878611
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

          Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

          Defendant.

PUBLIC VERSION
Filed: April 5, 2018

C.A. No.18C-04-006-WCC-CCLD

TRIAL BY JURY DEMANDED

## COMPLAINT

Plaintiff Finjan, Inc. ("Finjan"), by and through its undersigned counsel,

asserts its claims against Trustwave Holdings, Inc. as follows.

### NATURE OF THE ACTION

1.     This is a complaint for breach of contract.

### PARTIES

2.     Finjan is a Delaware corporation with a principal place of business at

2000 University Avenue, Suite 600, Palo Alto, California, 94303.

3.     On information and belief, Defendant Trustwave Holdings, Inc.

("Trustwave") is a Delaware corporation with a principal place of business in 70

W. Madison St., Suite 600, Chicago, IL 60602.  On information and belief,

Trustwave makes, uses, sells, and/or offers to sell in the United States, or imports

into the United States, including in this judicial district, cybersecurity products or

processes that practice the inventions claimed in Finjan's patents.

## FINJAN'S INNOVATIONS

4.      Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan

Software Ltd., an Israeli corporation.  In 1998, Finjan moved its headquarters to

San Jose, California.  Finjan was a pioneer in developing proactive security

technologies capable of detecting previously unknown and emerging online

security threats, recognized today under the umbrella term "malware."  These

technologies protect networks and endpoints by identifying suspicious patterns and

behaviors of content delivered over the Internet.  Finjan has been awarded, and

continues to prosecute, numerous patents covering innovations in the United States

and around the world resulting directly from Finjan's more than decades-long

research and development efforts, supported by a dozen inventors and over $65

million in R&D investments.

5.      Finjan built and sold software, including application program

interfaces (APIs) and appliances for network security, using these patented

technologies.  These products and related customers continue to be supported by

Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees

around the world building and selling security products and operating the

Malicious Code Research Center, through which it frequently published research

regarding network security and current threats on the Internet.  Finjan's pioneering

approach to online security drew equity investments from two major software and

technology companies, the first in 2005 followed by the second in 2006.  Finjan

generated millions of dollars in product sales and related services and support

revenues through 2009, when it spun off certain hardware and technology assets in

a merger.  Pursuant to this merger, Finjan was bound to a non-compete and

confidentiality agreement, under which it could not make or sell a competing

product or disclose the existence of the non-compete clause.  Finjan became a

publicly traded company in June 2013, capitalized with $30 million.  After

Finjan's obligations under the non-compete and confidentiality agreement expired

in March 2015, Finjan re-entered the development and production sector of secure

mobile products for the consumer market.

## TRUSTWAVE LICENSES FINJAN'S PATENTS

6.      Finjan and Trustwave entered into an Amended and Restated Patent

License Agreement (the "Agreement"), which is a binding contract supported by

offer, acceptance and mutual consideration.  Among other things, under Section

2.1.1 of the Agreement, Finjan granted "to Licensee a limited, non-exclusive

(without the right to assign except as provided in Sections 2.4 or 6.9 below), fully

paid up, worldwide right and license, to:

> "(a) make, have made, use, import, sell and offer for sale (directly or
>
> indirectly, via one or more tiers of distribution channels) the Licensed
>
> Products and Services under the Licensed Patents;"

7.      Under the Agreement, in the event Trustwave was acquired, certain

royalties would be due on certain products.  Specifically, Section 2.5 of the

Agreement states:

> "<u>Acquiring Parties.</u> In the event of an Acquisition of
> Licensee, all the provisions of this Agreement applicable
> to Licensee (except as related to Section 3), shall be
> deemed to apply to the Acquirer, and its respective
> Affiliates that are licensed hereunder, and the royalties
> that apply under Section 3 to Permitted Transferees shall
> apply (from the effective date of such Acquisition) to all
> Licensed Products and Services sold and licensed by the
> Acquirer and its Affiliates licensed hereunder that are not
> attributable to the Existing Business."

Section 3.2.1 of the Agreement, which provides the applicable royalty, states:

> "in respect of Permitted Transferees, and OEMs which
> are Excluded Persons and not Threshold Value OEMs
> exceeding the Net Sales Threshold, the then-prevailing
> royalty rate to be determined and agreed in good faith by
> Licensor and Licensee and reviewed annually if
> requested by Licensor based on then current royalty rates
> in the enterprise software market for customers of
> equivalent size for similar products, and, in the absence
> of such agreed prevailing rate provided such absence of
> agreement is not due to a lack of good faith on Licensor's
> part. ▇▇▇

Pursuant to Sections 2.5 and 3.2.1 of the Agreement, a ▇ royalty would be due on

"any products and services other than the Licensed Products and Services and

Integrated Licensed Products and Services as actually offered and distributed by

the Licensee and their Affiliates at the time of the Transfer ("Existing Business.")."

Further, under Section 3.3 of the Agreement, interest at the rate of "███ per annum" would also be due on such royalties.

## SINGTEL ACQUIRES TRUSTWAVE, TRIGGERING ROYALTY CLAUSES IN THE AGREEMENT

8.    Singtel publicly announced its offer to acquire Trustwave no later than April 7, 2015.  Trustwave announced on August 31, 2015, that Singtel had completed its acquisition of Trustwave, including the Trustwave products and services that are the subject of the Agreement that is at issue in this dispute.  On information and belief, Singtel now wholly owns Trustwave.

9.    In 2015, Trustwave informed Finjan that Singtel was in the process of acquiring Trustwave.  By mid-2015, Finjan began negotiations with Trustwave regarding the royalties due under the Agreement.  Finjan explained that pursuant to Sections 1.13, 2.4 and 2.5, a ███ royalty would be owed on products not attributable to "Existing Business," as defined by the Agreement.  Finjan also explained that Section 1.4 and Exhibit B of the Agreement imposed a ███ royalty on relevant sales.

10.    In a July 22, 2015 email, Trustwave informed Finjan that it agreed that section 2.5 applied to the acquisition of Trustwave by Singtel.

11.    By the fall of 2015, the parties were nearing an agreement regarding additional royalties, when Trustwave suddenly, and without explanation, stopped responding to Finjan's emails, and thus refused to deal with Finjan.

01:23041496.1

12.     After Trustwave withdrew from negotiations, on November 16, 2015, Finjan notified Trustwave that it was in breach of the Agreement.  On December 30, 2015, Finjan reiterated to Trustwave that it was in breach of the Agreement, stating that "Trustwave/SingTel is in breach of the license to the Finjan patents and is on notice for lack of compliance."

13.     On June 22, 2016 of 2016, Finjan requested an audit pursuant to Section 3.4 of the Agreement for an accounting of the royalties resulting from Singtel's acquisition of Trustwave.  Section 3.4 of the Agreement states:

> Licensee further agrees to permit its books and records, and to require any of its Affiliates licensed hereunder or OEMs, as the case may be, to permit such of their books and records necessary to determine the royalties paid hereunder, to be examined by an auditor or independent accounting firm mutually selected by Licensor and Licensee from time-to-time during regular business hours, but not more than once a year."

Finjan proposed Connor Consulting to perform the audit, as Connor Consulting came highly recommended, specialized in performing royalty audits, and would cost less than other auditors.  But Trustwave rejected Finjan's proposed and instead suggested either KPMG or Ernst & Young to perform the audit.  Finjan looked into having Ernst & Young perform the audit, but discovered that it had an engagement with Singtel and thus could not perform the audit due to a conflict.  Finjan then retained KPMG, the other auditor suggested by Trustwave, to perform the audit.  Pursuant to the Agreement, Finjan initially paid for the audit.  Under Section 3.4,

- 6 -

those audit fees could be shifted to Trustwave if the audit revealed an underpayment of a certain amount.

14.     KPMG attempted to perform its audit, but was denied various information by Trustwave, in violation of Section 3.4 of the Agreement.  Among other things, Trustwave refused to provide sales and technical information on products that Trustwave did not believe were within the scope of the Agreement, unilaterally dictating the terms of KPMG's audit, and violating the Agreement.

15.     Based on Trustwave's definition of what products were within the scope of the agreement, KPMG concluded that an additional $160,524.91 was due under the Agreement.  However, based on KPMG's own analysis of what products were within the scope of the agreement, KPMG determined that an additional $1,526,445.95 was due under the Agreement.  Due to the amount by which Trustwave was in underpayment, it was also required to pay for the audit, in the amount of $50,654.67.  On October 1, 2017, Finjan requested payment of those fees and the cost of the audit, and asked that Trustwave advise whether it would pay by October 18, 2017.  Trustwave declined to pay.

16.     On March 6, 2018, Finjan again reached out to Trustwave to request payment of the fees and the cost of the audit.  Over one week later, Trustwave's counsel responded on March 14 to request a CEO-to-CEO conversation to resolve this dispute.  Finjan promptly agreed to that request, and on March 16 provided

Trustwave's counsel with the direct contact information of Finjan's CEO.  To date,

Trustwave has not reached out to Finjan or its CEO, despite its request.

## JURISDICTION AND VENUE

17.    The Court has subject matter jurisdiction and personal jurisdiction

over Trustwave at least by virtue of Section 6.4.1 of the Agreement, which states

that "[t]he parties hereto hereby irrevocably submit to the exclusive jurisdiction of

any federal or state court located within the State of Delaware over any dispute

arising out of or relating to this Agreement and each party hereby irrevocably

agrees that all claims in respect of such dispute or any suit, action proceeding

related thereto may be heard and determined in such courts."  This dispute arises of

and relates to the Agreement by virtue of Trustwave's breach of various

provisions, described above and detailed further below.

18.    The Court also has personal jurisdiction over Trustwave because

Plaintiff's claims against each of them arises out of or relate to each of their

purposeful contacts with Delaware, and the exercise of personal jurisdiction over

each Trustwave in this particular case would comport with principles of fair play

and substantial justice.

19.    This Court also has personal jurisdiction over each Trustwave because

it has engaged in systematic and continuous contacts with this State and this

district by, *inter alia*, regularly conducting and soliciting business in this State and

this district, and deriving substantial revenue from products and/or services provided to persons in this State and this district.  For example and without limitation, as noted above, Trustwave is a Delaware corporation.  As another example without limitations, Trustwave offers for sale and on information and belief has sold its products and services to residents on this State.

20.     Venue is proper in this Court at least by virtue of Section 6.4.1 of the Agreement, which, in addition to stating that "[t]he parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement," further states that "[t]he parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute."

21.     Venue is further proper in this State because Trustwave is incorporated here, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district, and because Trustwave is subject to this Court's personal jurisdiction with respect to the claims alleged herein.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Failure to Pay Royalties)

22.     Finjan incorporates paragraphs 1 through 21 herein by reference.

01:23041496.1

23.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration.  Trustwave was acquired by Singtel no later than August 31, 2015.

24.     The Agreement provides that, in the event of an acquisition of Trustwave, at least a ██ royalty on "any products and services other than the Licensed Products and Services and Integrated Licensed Products and Services as actually offered and distributed by the Licensee and their Affiliates at the time of the Transfer ('Existing Business.')" are due.  Accordingly, additional royalties are due under the Agreement.

25.     Further, Finjan commenced an audit pursuant to Section 3.4 of the Agreement.  The independent auditor, KPMG, concluded that at least $1,526,445.95 in additional royalties were owed by Trustwave to Finjan, based on the available information.  Despite Finjan's repeated requests, Trustwave refuses to pay that amount.

26.     Accordingly, Trustwave has breached the Agreement by failing to pay the royalties.

27.     Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

28.     As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in the amount of at least $1,526,445.95

01:23041496.1

for the period of January 1, 2014 through December 31, 2016, based on the information made available to Finjan.

## SECOND CAUSE OF ACTION

### (Breach of Contract – Noncompliance with Audit)

29.     Finjan incorporates paragraphs 1 through 21 herein by reference.

30.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration.

31.     The Agreement allows for audits of Trustwave to determine whether additional royalties are due.  In the event of such an audit, Trustwave is required to permits its books and records to be examined by an auditor.  Trustwave refused to provide certain information on products that it contends are not within the scope of the Agreement.  But the Agreement does not allow Trustwave to limit what books or records are examined by the auditor.  Accordingly, Trustwave interfered with the requested audit, preventing it to be performed in accordance with Section 3.4 of the Agreement.  Trustwave has violated Section 3.4 of the Agreement, and has thus breached the Agreement.

32.     Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

33.     As a direct and proximate result of Trustwave's breach of the

Agreement, Finjan has suffered damages, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (Breach of Contract – Cost of Audit)

34.     Finjan incorporates paragraphs 1 through 21 herein by reference.

35.     Finjan and Trustwave entered into the Agreement, a valid,

enforceable, and binding contract supported by offer, acceptance, and mutual

consideration.

36.     Section 3.4 of the Agreement states:

> "Licensor shall bear the cost of the audit, provided,
> however, that if the audit reveals an underpayment in
> excess of the greater of ████████████, then Licensee
> shall, within 30 days, reimburse Licensor for the costs of
> such audit."

37.     KPMG, the independent auditor mutually agreed upon by the parties

to perform an audit pursuant to the Agreement, determined that $1,526,445.95 in

additional royalties were owed by Trustwave to Finjan.  This amount is in excess

of the greater of ███████████.  Accordingly, pursuant to Section 3.4 of the

Agreement, Trustwave is required to bear the cost of the audit, $50,654.67.

Trustwave refuses to pay that amount, in violation of the Agreement.  Accordingly,

Trustwave has breached the Agreement by failing to pay for the audit fees.

38.     Finjan has fully performed its obligations under the Agreement to the

extent those obligations were not excused by Trustwave's breaches thereof.

39.     As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in the amount of at least $50,654.67 for the cost of the audit.

## **PRAYER FOR RELIEF**

WHEREFORE, Finjan respectfully requests entry of judgment as follows:

A.     That Trustwave be ordered to pay to Finjan damages for its breach of the Agreement, in the amount of $1,526,445.95;

B.     That Trustwave be ordered to pay Finjan pre-judgment and post-judgment interest on the damages caused to it by reason of Trustwaves' breach of the Agreement, including interest pursuant to Section 3.3 of the Agreement in the amount of ▮ per annum;

C.     That Trustwave be ordered to pay Finjan for the cost of the audit, in the amount of $50,654.67;

D.     That Trustwave be ordered to pay Finjan pre-judgment and post-judgment interest on the cost of the audit;

E.     That Finjan be awarded its Attorneys' fees, including because of Trustwave's willful breach and its blatant lack of response.

## **DEMAND FOR JURY TRIAL**

Finjan hereby demands a jury trial on all issues so triable.

Dated:  April 4, 2018

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street
17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____

Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

EFiled: Apr 12 2018 10:33AM EDT
Transaction ID 61909308
Case No. N18C-04-006 WCC CCLD

EFiled: Apr 04 2018 12:37PM EDT
Transaction ID 61873810
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

          Plaintiff,

    v.

TRUSTWAVE HOLDINGS, INC.,

          Defendant.

)
)
)
)
)
)  C.A. No. 18C-04-006 WCC-CCLD
)
)
)
)
)

### PRAECIPE

**TO:  PROTHONOTARY**
     **SUPERIOR COURT OF DELAWARE,**
      **NEW CASTLE COUNTY**
     **500 NORTH KING STREET**
     **WILMINGTON, DE 19801**

PLEASE ISSUE SUMMONS to the Sheriff of New Castle County, and direct the Sheriff

to serve the Summons and Complaint, with this Praecipe, upon Defendant Trustwave Holdings,

Inc., pursuant to 8 *Del. C.* § 321, by serving its registered agent Corporation Service Company:

       **Trustwave Holdings, Inc.**
       c/o Corporation Service Company
       251 Little Falls Drive
       Wilmington, DE 19808

Dated:  April 4, 2018

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

01:23041181.1

(1) w14 issued
ch13 # 16407    3b.00 DC

**EFiled:  Apr 20 2018 12:30PM EDT**
**Transaction ID 61941132**
**Case No. N18C-04-006 WCC CCLD**



**Sheriff's Office**

800 N. French Street, 5th Floor

Wilmington, Delaware 19801

302-395-8450, Fax: 302-395-8460

State of Delawa

New Castle County

**Samuel D. Pratcher. Jr.**

Sheriff

4/20/2018

**Court Case # N18C-04-006 WCC CCLD**

Sheriff # 18-003387

Summons and Complaint

<div align="center">

**FINJAN INC**

vs

**TRUSTWAVE HOLDINGS INC**

</div>

Entity - TRUSTWAVE HOLDINGS INC

On 4/19/2018 at 11:40 AM a copy of the within writ together with a copy of the Summons and Complaint were served upon Litigation Management Representative, a representative for the registered agent CORPORATION SERVICE COMPANY 251 LITTLE FALLS DRIVE WILMINGTON, DE 19808 .

Fees Paid:  $30.00

Per:  Deputy Sheriff, Jeffrey Maddocks

SO ANS;

SHERIFF

PER   Faith Brown

**EFiled: May 04 2018 03:10PM EDT**
**Transaction ID 61992906**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) C.A. No. N18C-04-006 WCC |
| Defendants. | ) CCLD |
| | ) |

## ENTRY OF APPEARANCE

PLEASE ENTER THE APPEARANCE of Jack B. Blumenfeld and Alexandra M. Cumings of Morris, Nichols, Arsht & Tunnell LLP on behalf of Defendant Trustwave Holdings, Inc.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Alexandra M. Cumings*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Defendants Trustwave Holdings,*
  *Inc.*


May 4, 2018

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 4, 2018, she caused a copy of the foregoing document to be electronically served, via File & ServeXpress, upon the following counsel of record:

> Karen L. Pascale (#2903)
> Mary F. Dugan (#4704)
> YOUNG CONAWAY STARGATT &
> TAYLOR, LLP
> 1000 North King Street
> Wilmington, DE  19801

> */s/ Alexandra M. Cumings*
> Alexandra M. Cumings (#6146)

EFiled:  May 04 2018 03:10PM EDT
Transaction ID 61992906
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | C.A. No. N18C-04-006  WCC |
| Defendants. | ) | CCLD |
| | ) | |
| | ) | |
| | ) | |

## STIPULATION AND ORDER REGARDING
## DEFENDANT'S TIME TO RESPOND TO THE COMPLAINT

IT IS HEREBY STIPULATED AND AGREED among the undersigned parties that the time for Defendant to move, answer or otherwise plead in response to the Complaint is extended to June 8, 2018.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Karen L. Pascale
Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
 Attorneys for Plaintiff

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Alexandra M. Cumings
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
 Attorneys for Defendant

SO ORDERED this _____ day of May, 2018.

_____

Judge Carpenter

**So Ordered**

/s/ Carpenter, William C   May 09, 2018

EFiled:  May 09 2018 10:13AM EDT
Transaction ID 62010175
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                          )
                                      )
               Plaintiff,             )
                                      )
        v.                            )
                                      )
TRUSTWAVE HOLDINGS, INC.,             )
                                      )   C.A. No. N18C-04-006 WCC
               Defendants.            )   CCLD
                                      )
                                      )
                                      )

## STIPULATION AND ORDER REGARDING
## <u>DEFENDANT'S TIME TO RESPOND TO THE COMPLAINT</u>

IT IS HEREBY STIPULATED AND AGREED among the undersigned

parties that the time for Defendant to move, answer or otherwise plead in response

to the Complaint is extended to June 8, 2018.

YOUNG CONAWAY STARGATT &amp;          MORRIS, NICHOLS, ARSHT
TAYLOR, LLP                            &amp; TUNNELL LLP


<u>/s/ Karen L. Pascale</u>            <u>/s/ Alexandra M. Cumings</u>
Karen L. Pascale (#2903)              Jack B. Blumenfeld (#1014)
Mary F. Dugan (#4704)                 Alexandra M. Cumings (#6146)
1000 North King Street                1201 North Market Street
Wilmington, DE  19801                 P.O. Box 1347
(302) 571-6600                        Wilmington, DE  19899-1347
  *Attorneys for Plaintiff*           (302) 658-9200
                                        *Attorneys for Defendant*

SO ORDERED this _____ day of May, 2018.

_____

Judge Carpenter

**This document constitutes a ruling of the court and should be treated as such.**

| | |
|---:|:---|
| **Court:** | DE Superior Court-New Castle County |
| **Judge:** | William C Carpenter |
| **File & Serve Transaction ID:** | 61992906 |
| **Case Number:** | N18C-04-006 WCC CCLD |
| **Case Name:** | Finjan, Inc. v. Trustwave Holdings, Inc. |
| **Court Authorizer:** | Carpenter, William C |

**Court Authorizer Comments:**

So Ordered by Carpenter, J. on 5-8-2018.

**/s/ Judge Carpenter, William C**

**EFiled:  Jun 08 2018 02:50PM EDT
Transaction ID 62118630
Case No. N18C-04-006 WCC CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

### DEFENDANT TRUSTWAVE HOLDINGS, INC.'S
### <u>MOTION TO DISMISS THE COMPLAINT</u>

Defendant Trustwave Holdings, Inc., through its undersigned counsel, hereby moves to dismiss the Complaint (the "Complaint") in the above-captioned action pursuant to Superior Court Civil Rule 12(b)(6) on the grounds that the Complaint fails to state a claim upon which relief can be granted.  The grounds for this motion shall be set forth in briefing to be filed pursuant to a scheduling stipulation to be agreed upon by the parties and entered by the Court.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

June 8, 2018

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2018, the foregoing was caused to be served upon the following counsel of record via File & Serve*Xpress*:

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801


*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled: Jun 08 2018 02:50PM EDT
Transaction ID 62118630
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

## **NOTICE OF MOTION TO DISMISS**

PLEASE TAKE NOTICE that the undersigned will present Defendant

Trustwave Holding, Inc.'s Motion to Dismiss the Complaint to the Court at the

earliest convenience of the Court.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Defendant*

June 8, 2018

# SUPERIOR COURT
# CIVIL CASE INFORMATION STATEMENT (CIS)

EFiled: Jun 08 2018 02:50PM EDT
Transaction ID 62118630
Case No. N18C-06-006 WCC CCLD

COUNTY:   N ☒   K ☐   S ☐          CIVIL ACTION NUMBER: N18C-06-006 WCC CCLD

| | |
|---|---|
| Caption:<br><br>FINJAN, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>TRUSTWAVE HOLDINGS, INC.<br><br>   Defendants. | Civil Case Code:  CCLD<br><br>Civil Case Type: Complex Commercial Litigation Division<br>   (SEE REVERSE SIDE FOR CODE AND TYPE)<br><br>Name and Status of Party filing document:<br><br>Trustwave Holdings, Inc. - Defendant<br><br>Document Type: (E.G.; COMPLAINT; ANSWER WITH COUNTERCLAIM)<br><br>Motion to Dismiss<br><br>  JURY DEMAND:   YES  NO  x |

| | |
|---|---|
| ATTORNEY NAME(S):<br>Jack B. Blumenfeld, Esquire<br>Alexandra M. Cumings, Esquire<br><br>ATTORNEY ID(S):<br>JBB (#1014)<br>AMC (#6146)<br><br>FIRM NAME:<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>ADDRESS:<br><br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br><br>TELEPHONE NUMBER:<br><br>(302) 658-9200<br><br><br><br>FAX NUMBER:<br><br>(302) 658-3989<br><br><br>E-MAIL ADDRESS:<br>jblumenfeld@mnat.com<br>acumings@mnat.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT OR ANY RELATED CASES THAT HAVE BEEN CLOSED IN THIS COURT WITHIN THE LAST TWO YEARS BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS:<br><br><br><br>EXPLAIN THE RELATIONSHIP(S):<br><br><br><br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br><br><br><br>(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE) |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

Revised 5/20

EFiled: Jun 08 2018 02:50PM EDT
Transaction ID 62118630
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N18C-04-006 WCC CCLD |
| v. | ) | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **[PROPOSED] ORDER**

Upon consideration of Defendant Trustwave Holdings, Inc.'s Motion to Dismiss the Complaint (the "Motion to Dismiss"),

IT IS HEREBY ORDERED that:

1.  The Motion to Dismiss is GRANTED; and

2.  The Complaint is hereby DISMISSED with prejudice.

IT IS SO ORDERED, this _____ day of _____, 201_.

_____
Judge

EFiled:  Jun 14 2018 02:22PM EDT
Transaction ID 62140037
Case No. N18C-04-006 WCC CCLD

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

—————

(302) 658-9200
(302) 658-3989 FAX

JACK B. BLUMENFELD
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@mnat.com

June 14, 2018

**BY E-FILING AND HAND DELIVERY**

The Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

>        Re:    *Finjan, Inc. v. Trustwave Holdings, Inc.*,
>               C.A. No. N18C-04-006-WCC [CCLD]

Dear Judge Carpenter:

I write on behalf of Defendant Trustwave Holdings, Inc. ("Trustwave") regarding entry of an order governing briefing on Trustwave's June 8, 2018 motion to dismiss.  Unfortunately, the parties have been unable to reach an agreement on a schedule.

The complaint in this action for alleged breach of a patent license agreement was served on April 19, 2018.  (D.I. 4).  The parties agreed to extend Trustwave's time to respond to the complaint to June 8, 2018.  (D.I. 7).  On June 8,

The Honorable William C. Carpenter, Jr.
June 14, 2018
Page 2

Trustwave filed a motion to dismiss the complaint that stated, using standard language, that the grounds "shall be set forth in briefing to be filed pursuant to a scheduling stipulation to be agreed upon by the parties and entered by the Court." (D.I. 8).

By way of background, this is a complex action involving an alleged breach of a complicated, 15-page (plus exhibits) patent license agreement in which Plaintiff is seeking millions of dollars in damages.  As noted on the Civil Case Cover Sheet, Plaintiff designated this case as a complex commercial case. As urged by Plaintiff, it is in essence a multi-patent patent infringement case within a contract case, which will involve a myriad of contract interpretation issues and, potentially, patent infringement and invalidity issues on an undefined set of products.  Under the circumstances, Trustwave believes it needs until June 29 to file its opening brief. Plaintiff has insisted, however, that (1) Trustwave was required to file its opening brief with its motion on June 8 even though there is no such provision in Superior Court Civil Rule 107 and (2) Trustwave must now file its opening brief by tomorrow, June 15, although it has pointed to no prejudice from two more weeks, until June 29.  We have made repeated attempts to resolve this issue with Plaintiff's counsel and have asked how much time Plaintiff would like for its answering brief, but have not received a response.

The Honorable William C. Carpenter, Jr.
June 14, 2018
Page 3

       Trustwave respectfully submits that a briefing schedule beginning on June 29 is appropriate, and requests that Your Honor enter the attached proposed order, providing for an opening brief on June 29, and answering and reply briefs 30 and 15 days thereafter.

       Should Your Honor have any questions, the parties are available at the Court's convenience.

Respectfully,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)


cc:    Karen L. Pascale, Esquire (via File & ServeXpress)

EFiled:  Jun 14 2018 02:22PM EDT
Transaction ID 62140037
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                          |   |                                  |
|--------------------------|---|----------------------------------|
| FINJAN, INC.             | ) |                                  |
|                          | ) |                                  |
| Plaintiff,               | ) |                                  |
|                          | ) |                                  |
| v.                       | ) |                                  |
|                          | ) |                                  |
| TRUSTWAVE HOLDINGS, INC.,| ) |                                  |
|                          | ) | C.A. No. N18C-04-006-WCC [CCLD]  |
| Defendant.               | ) |                                  |

## [PROPOSED] ORDER GOVERNING BRIEFING ON
## MOTION TO DISMISS

WHEREAS, Plaintiff filed its Complaint on April 4, 2018;

WHEREAS, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) (the "Motion to Dismiss") on June 8, 2018;

IT IS HEREBY ORDERED this __ day of _____ 2018, that the following schedule shall govern briefing on the Motion to Dismiss:

1.    Defendant shall file its opening brief on or before June 29, 2018.

2.    Plaintiff shall file its answering brief on or before July 30, 2018.

3.    Defendant shall file its reply brief on or before August 13, 2018.

4.    Counsel for the parties shall contact the Court to schedule oral argument on the Motion to Dismiss after Plaintiff files its Answering Brief.

SO ORDERED this ____ day of June, 2018.

_____
                                                Judge Carpenter



**EFiled:  Jun 15 2018 12:28PM EDT**
**Transaction ID 62144183**
**Case No. N18C-04-006 WCC CCLD**

ROCKEFELLER CENTER

**Karen L. Pascale**
P 302.571.5001
F 302.576.3516
kpascale@ycst.com

June 15, 2018

<u>**Via E-Filing and Hand Delivery**</u>

The Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

    Re:    ***Finjan, Inc. v. Trustwave Holdings, Inc.,***
        <u>**C.A. No. N18C-04-006-WCC [CCLD]**</u>

Dear Judge Carpenter:

I write on behalf of Plaintiff Finjan, Inc. ("Finjan") in opposition to the

briefing schedule requested by Defendant Trustwave Holdings, Inc. ("Trustwave")

on its motion to dismiss.  Trustwave's opening brief in support of its motion to

dismiss was due to be filed on June 8, 2018, concurrently with its motion.

**1.  Background.**

In 2015, Finjan began negotiations with Trustwave regarding royalties due

under a license agreement.  Over the next several years, Finjan repeatedly

attempted to collect the amounts owed by Trustwave under that agreement,

including amounts that a third-party auditor had determined were owed.  Faced

with Trustwave's complete failure to pay the amounts owed and its continual lack

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable William C. Carpenter, Jr.
June 15, 2018
Page 2

of response to communications, Finjan filed the Complaint in this action (under

seal) on April 4, 2018.

The Sheriff served the Complaint on April 19, 2018.  Trustwave's response

was due 20 days later, on May 9, 2018.  At Trustwave's request, Finjan consented

to an additional 30 days (for a total of 50 days) for Trustwave to respond to the

Complaint.  At that time, Finjan counsel explicitly warned Trustwave counsel:

"[p]lease be aware that Finjan is unlikely to consent to any further extension of

time to respond to the Complaint."  *See* Exhibit 1.

On June 8, 2018, Trustwave filed a two-sentence motion to dismiss—with

no grounds for dismissal or an opening brief in support— and called Finjan

counsel to request a briefing schedule under which its opening brief would be filed

30 days later.  Finjan counsel advised Trustwave counsel within a few hours that a

motion to dismiss must be supported by a simultaneously filed opening brief, and

therefore Trustwave's opening brief in support of its motion to dismiss was actually

that same day.  *See* Exhibit 2.

Following consultation with the client, Finjan counsel offered to stipulate to

an additional 7-day extension of time (for a total of 57 days after service of the

Complaint) for Trustwave to file its opening brief.  Trustwave declined the offer,

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable William C. Carpenter, Jr.
June 15, 2018
Page 3

maintaining that it had no obligation to file an opening brief together with its

motion to dismiss.  *See* Exhibit 3 (June 11 – June 14, 2018 email chain).

## 2.  Superior Court Rules and Practice on Briefing

Trustwave counsel is apparently relying upon Court of Chancery practice,

under which parties routinely file short-form motions with no opening brief and

subsequently negotiate briefing schedules.  Finjan respectfully submits that this is

not the Superior Court practice.

The Superior Court Rules require that a motion "shall state with particularity

the grounds therefor."  Del. Super. Ct. Civ. R. 7(b)(1).  In its motion to dismiss,

Trustwave states that "[t]he grounds for this motion shall be set forth in briefing to

be filed pursuant to a scheduling stipulation to be agreed upon by the parties and

entered by the Court," which directly contravenes the motion requirements of Rule

7(b).  Trustwave was required to submit the grounds for its motion to dismiss at the

time of filing, not at some later date.

The fact that the Superior Court rules appear on their face to be very similar

to the Court of Chancery rules does not mean that the conventions on briefing are

the same in both courts.  In Superior Court it is expected that you will file your

opening brief along with your motion (and then negotiate a schedule for the

answering and reply briefs).  There is no Superior Court rule, administrative

Young Conaway Stargatt & Taylor, LLP
The Honorable William C. Carpenter, Jr.
June 15, 2018
Page 4

directive, standing order, etc. (and Trustwave has not cited any) that permits a

party to file a pro forma motion and say it will file its brief later.

Rule 107 does not allow Trustwave to file its opening brief separate from its

motion to dismiss.  If this was not a CCLD case, Trustwave would have been

limited under Del. Super. Ct. Civ. R. 78(b) to a 6-page "speaking" motion

containing all of its arguments and authorities, due on the date it was obligated to

respond to the Complaint.  The fact that there is a CCLD Standing Order that

permits Trustwave to file an 8,000-word brief in accordance with Del. Super. Ct.

Civ. R. 107(h) (instead of a 6-page motion) does not affect the timing of its

briefing, does not grant Trustwave any further extension on its motion papers, and

does not otherwise obviate Trustwave's obligation to file an opening brief with its

motion.  *See also* CCLD Sample Case Management Order, paragraph VI. B. ("All

dispositive motions shall be accompanied with an opening brief supporting the

motion.").

### 3.  Conclusion

When Finjan consented to a 30-day extension of time for Trustwave to

respond to the Complaint, it certainly did not anticipate, and did not agree to, an

additional 30-day delay due to an unsupported motion to dismiss.  Fifty-seven (57)

days after service should be more than sufficient time for Trustwave to draft an

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable William C. Carpenter, Jr.
June 15, 2018
Page 5

opening brief in support of a motion to dismiss.  Eighty-seven (87) days is not

warranted, and Trustwave should not be allowed to delay this case any longer.

Finjan respectfully submits that Trustwave should be ordered to file its opening

brief forthwith, with the answering and reply briefs to follow 30 and 15 days

thereafter.  A proposed form of Order is attached hereto.

Respectfully submitted,

*Karen L. Pascale*

Karen L. Pascale
(DE I.D. #2903)

cc: Jack B. Blumenfeld, Esquire (via File & ServeXpress)

01:23325399.1

EFiled:  Jun 15 2018 12:28PM EDT
Transaction ID 62144183
Case No. N18C-04-006 WCC CCLD

# EXHIBIT 1

**Pascale, Karen**

| | |
|---|---|
| **From:** | Pascale, Karen |
| **Sent:** | Thursday, May 03, 2018 3:15 PM |
| **To:** | Blumenfeld, Jack |
| **Subject:** | Re: Finjan v Trustwave Holdings, N18C-04-006 |

Hi, Jack:

That is acceptable, but please be aware that Finjan is unlikely to consent to any further extension of time to respond to the Complaint.  Can you forward s draft stipulation for our consideration?  Thank you -

Karen

Sent via the Samsung Galaxy Note5, an AT&T 4G LTE smartphone


-------- Original message --------
From: "Blumenfeld, Jack" <JBlumenfeld@MNAT.com>
Date: 5/3/18 8:40 AM (GMT-05:00)
To: "Pascale, Karen" <kpascale@ycst.com>
Subject: Finjan v Trustwave Holdings, N18C-04-006

Karen, we will represent Trustwave in this matter.  Can we get a 30-day extension of time to respond to the Complaint?

Jack

**JACK B. BLUMENFELD**
PARTNER | Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 351-9291 T | (302) 898-3457 C
**jblumenfeld@mnat.com** | **vcard** | **bio** | **www.mnat.com**


This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# EXHIBIT 2

## Pascale, Karen

| | |
|---|---|
| **From:** | Pascale, Karen |
| **Sent:** | Friday, June 08, 2018 4:46 PM |
| **To:** | Alexandra M. Cumings - Morris, Nichols, Arsht & Tunnell LLP (acumings@mnat.com) |
| **Subject:** | FW: Finjan (Trustwave): Case: N18C-04-006 WCC CCLD; |
| **Attachments:** | Defendants' MOTION to Dismiss.pdf; Re: Finjan v Trustwave Holdings, N18C-04-006 |

Dear Ali:

Thank you for your telephone call regarding this matter.  I have conferred with my colleague Mary Dugan regarding the briefing schedule, and Mary informs me that in Superior Court (unlike in Chancery Court), a motion to dismiss must be supported by a simultaneously filed opening brief.  Therefore, Trustwave's opening brief in support of its motion to dismiss is actually due today.

When Finjan consented to a 30-day extension of time to respond to the Complaint, we made it clear that "Finjan is unlikely to consent to any further extension of time to respond to the Complaint."  See attached email to Jack Blumenfeld dated 5/3/18.  We certainly did not anticipate, and do not agree to, an additional 30-day delay due to an unsupported motion to dismiss.

Thank you -

Karen

Karen L. Pascale, Esquire  ■  YOUNG CONAWAY STARGATT & TAYLOR, LLP Rodney Square, 1000 North King Street  ■  Wilmington, DE 19801 P 302.571.5001  F 302.576.3516  ■  kpascale@ycst.com  ■  www.youngconaway.com  ■  vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

# EXHIBIT 3

**Pascale, Karen**

| | |
|---|---|
| **From:** | Blumenfeld, Jack <JBlumenfeld@MNAT.com> |
| **Sent:** | Monday, June 11, 2018 2:50 PM |
| **To:** | Pascale, Karen |
| **Subject:** | Finjan v Trustwave |

Karen, following up on my voicemail message this morning, please give me a call when you can so that we can discuss a briefing schedule for Trustwave's motion to dismiss. Thanks.

Jack

**JACK B. BLUMENFELD**
PARTNER | Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 351-9291 T | (302) 898-3457 C
jblumenfeld@mnat.com | vcard | bio | www.mnat.com

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

1

## Pascale, Karen

| | |
|---|---|
| **From:** | Pascale, Karen |
| **Sent:** | Monday, June 11, 2018 4:07 PM |
| **To:** | 'Blumenfeld, Jack' |
| **Cc:** | Keep Track Changes |
| **Subject:** | RE: Finjan v Trustwave |
| **Attachments:** | FW: Finjan (Trustwave): Case: N18C-04-006 WCC CCLD; |

Hi, Jack:

I just left you a voice mail.  As explained in my June 8 email to Ali Cumings (attached), Trustwave's opening brief was due to be filed at the same time as its motion to dismiss.

I am authorized to stipulate to a one-week extension of time for Trustwave to file its opening brief (i.e., to Friday, June 15), but Finjan will not agree to any additional time beyond June 15.

Finjan fully expected to receive a complete response to the Complaint on June 8, and if Trustwave's response was in the form of a motion to dismiss, then an opening brief should have accompanied the motion.

Please feel free to call if you'd like to discuss.

Thank you –

Karen

**Karen L. Pascale, Esquire** ■ Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street ■ Wilmington, DE 19801
**P** 302.571.5001 **F** 302.576.3516 ■ kpascale@ycst.com ■ www.youngconaway.com ■ vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

## Pascale, Karen

| | |
|---|---|
| **From:** | Pascale, Karen |
| **Sent:** | Wednesday, June 13, 2018 2:43 AM |
| **To:** | 'Blumenfeld, Jack' |
| **Subject:** | RE: Finjan v Trustwave |

Dear Jack:

Thank you for your voice mail message.  There is no rule or administrative directive in Superior Court (or Judge Carpenter judicial preference) that permits a party to file a short-form, one paragraph motion to dismiss without an opening brief in support.  That might be a fairly standard practice in the Court of Chancery, but not in Superior Court.  If you are aware of any rule or other authority that permits Trustwave to grant itself an additional extension of time to respond to the Complaint, by means of filing a pro forma motion without any opening brief, please bring it to my attention.

I informed Ali within a few hours after Trustwave filed its motion on June 8 that Trustwave's opening brief was due that day as well.  I reiterate the offer in my June 11 email:  I am authorized to stipulate to a one-week extension of time for Trustwave to file its opening brief (to Friday, June 15), but Finjan will not agree to any additional time beyond June 15.

As I pointed out to Ali, when Finjan consented to a 30-day extension of time to respond to the Complaint, I made it clear to you that Finjan was unlikely to consent to any further extension.  There was no discussion of, and we certainly did not agree to, an additional 30-day or 21-day delay due to an unsupported motion to dismiss.

If Trustwave does not file a substantive opening brief by the close of business on June 15, Finjan will file a response to the motion dismiss, asking the Court to deny Trustwave's motion on the grounds that it was filed without an opening brief in support.

Best regards,

Karen

**Karen L. Pascale, Esquire** ■ YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square, 1000 North King Street ■ Wilmington, DE 19801
**P** 302.571.5001 **F** 302.576.3516 ■ kpascale@ycst.com ■ www.youngconaway.com ■ vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

**Pascale, Karen**

| | |
|---|---|
| **From:** | Blumenfeld, Jack <JBlumenfeld@MNAT.com> |
| **Sent:** | Wednesday, June 13, 2018 3:40 PM |
| **To:** | Pascale, Karen |
| **Subject:** | RE: Finjan v Trustwave |
| **Attachments:** | Pioneer---Motion-to-Dismiss--FINAL-.pdf |

Karen,

I don't understand Finjan's position. There is no rule in Superior Court, just as there is no rule in Chancery Court, requiring that the opening brief be filed with a motion to dismiss. To the contrary, Superior Court Rule 107(c) provides that "Brief schedules shall be ordered by the Court," similar to the provision of Chancery Court Rule 171(b) that "The time of filing briefs shall either be fixed by the Court or fixed by the parties." Just as there is no time set in the Superior Court rules for the filing of the opening brief, there is also no time set in those rules for the filing of the answering or reply brief. The timing of all of those briefs is to be ordered by the court. And in or experience, the "standard practice" in Chancery Court is also followed in Superior Court. Attached is a recent Superior Court example.

As I advised in my voicemail message yesterday, Trustwave is prepared to file its opening brief by June 29. If you will let me know what date Finjan would like for its answering brief, we will prepare a stipulation. I hope we can resolve the briefing schedule amicably, as I think the Court would expect. If, however, Finjan adheres to its position, we will ask Judge Carpenter to set a brief schedule. I'm around today and tomorrow if you would like to discuss this. Please give me a call.

Jack

**Pascale, Karen**

| | |
|---|---|
| **From:** | Pascale, Karen |
| **Sent:** | Thursday, June 14, 2018 12:48 AM |
| **To:** | 'Blumenfeld, Jack' |
| **Subject:** | RE: Finjan v Trustwave |

Dear Jack,

As district court practitioners who focus on patent infringement litigation, neither one of us is currently an expert on Superior Court practice and procedure. However, I have conferred extensively with Mary Dugan on these issues and am confident in her assessment that Trustwave's opening brief was due the same day it filed its motion to dismiss, June 8, and that Trustwave simply cannot grant itself any extension of time beyond the 30 days previously agreed to. I urge you to consult with an experienced Superior Court practitioner at Morris Nichols (Don Reid, perhaps?) on this point.

The Motion to Dismiss from *Mooney v. Pioneer Natural Resources Co.* attached to your email proves nothing. The plaintiff in that case was apparently *pro se*. With no attorney to advise him, he likely did not know any better, or perhaps did not care when the defendant filed its opening brief.

The fact that the Superior Court rules appear on their face to be very similar to the Court of Chancery rules is also of no moment. The Chancery practice of not filing an opening brief with a motion is unique to that court. There is nothing in either set of rules that explicitly permits it, and the Superior Court simply does not follow that idiosyncratic practice. To the contrary, in Superior Court it is expected that you will file your opening brief along with your motion (and then negotiate a schedule for the answering and reply briefs). There is absolutely no rule that says you can grant yourself an extension by filing a form motion and saying you'll file a brief later.

If this was not a CCLD case, you would have been limited under Del. Super. Ct. Civ. R. 78(b) to a 6-page "speaking" motion containing all of your arguments and authorities, due on the date you were obligated to respond to the Complaint. The fact that there is a CCLD Standing Order that permits you to file an 8,000 word brief in accordance with Del. Super. Ct. Civ. R. 107(h) (instead of a 6-page motion) does not give you any further extension on your motion papers, and does not otherwise obviate your obligation to file that opening brief together with your motion. *See also* CCLD Sample Case Management Order (available on the Superior Court website), paragraph VI. B. ("All dispositive motions shall be accompanied with an opening brief supporting the motion."); Del. Super. Ct. Civ. R. 7(b)(1) (any motion "shall state with particularity the grounds therefor").

Trustwave is currently in default. Again, Finjan is willing to stipulate to an additional one-week extension of time (to June 15) for Trustwave to file its opening brief. Otherwise, Finjan will respond promptly to Trustwave's motion with a request that the motion be denied for failure to serve a timely opening brief.

Thanks –

Karen

**Karen L. Pascale, Esquire** ■ Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street ■ Wilmington, DE 19801
P 302.571.5001 F 302.576.3516 ■ kpascale@ycst.com ■ www.youngconaway.com ■ vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not

EFiled:  Jun 15 2018 12:28PM EDT
Transaction ID 62144183
Case No. N18C-04-006 WCC CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| FINJAN, INC., <br><br>        Plaintiff, <br><br> v. <br><br> TRUSTWAVE HOLDINGS, INC., <br><br>        Defendant. | C.A. No. N18C-04-006-WCC [CCLD] |

**[PROPOSED] ORDER GOVERNING BRIEFING
ON DEFENDANT'S MOTION TO DISMISS**

The Court, having considered the letter request of Defendant, Trustwave Holdings, Inc. ("Trustwave") seeking to extend the June 8, 2018 deadline to file its brief in support of its Motion to Dismiss pursuant to Rule 12(b)(6) ("Motion"), and the letter in opposition from Plaintiff, Finjan, Inc. ("Finjan");

IT IS HEREBY ORDERED this _____ day of _____, 2018, as follows:

1.    Trustwave's opening brief in support of its Motion was due on June 8, 2018, the same day it filed the Motion.

2.    Trustwave shall file its opening brief within two (2) business days of this issuance of this Order.

3.    Finjan shall file its answering brief within 30 days after service of the opening brief.

4.      Trustwave shall file its reply brief within 15 days after service of the answering brief.

5.      As soon as Trustwave files its reply brief, counsel for the parties shall promptly contact the Court to request a date for oral argument on the Motion.

_____
JUDGE

01:23325690.1

**EFiled: Jun 19 2018 03:20PM EDT**
**Transaction ID 62154387**
**Case No. N18C-04-006 WCC CCLD**

**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

WILLIAM C. CARPENTER, JR.
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0670

June 19, 2018

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

Jack B. Blumenfeld, Esquire
Alexandra M. Cumings, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

      RE:   Finjan, Inc. v. Trustwave Holdings, Inc.,
             C.A. No. N18C-04-006 WCC CCLD

Dear Counsel:

    The Court recently received your correspondence concerning Defendant's Motion to Dismiss and the briefing governing that Motion. First, Ms. Pascale is correct that unless the parties agreed otherwise, the opening brief should have been filed simultaneously with the Motion. That said, the vast majority of the time, counsel stipulates to a briefing schedule and the Court would have expected the same from you.

Because of the Court's trial schedule, the earliest a Motion to Dismiss can be heard is in October of this year. As such, fighting over a few days of filing briefs in this context in unreasonable and unjustified. As a result, the Court has signed the Order proposed by Defendant requiring its opening brief to be filed on June 29, 2018. Plaintiff's answering brief is due July 30, 2018 with a reply from Defendants on August 13, 2018. Counsel should confer with my administrative assistant after Plaintiff files its answering brief to establish a hearing date in October, November or December of this year.

Sincerely yours,

Judge William C. Carpenter, Jr.

WCCjr:twp

**So Ordered**

/s/ Carpenter, William C   Jun 19, 2018

EFiled:  Jun 19 2018 03:22PM EDT
Transaction ID 62154437
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | C.A. No. N18C-04-006-WCC [CCLD] |
| Defendant. | ) | |

## [PROPOSED] ORDER GOVERNING BRIEFING ON
## MOTION TO DISMISS

WHEREAS, Plaintiff filed its Complaint on April 4, 2018;

WHEREAS, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) (the "Motion to Dismiss") on June 8, 2018;

IT IS HEREBY ORDERED this __ day of _____ 2018, that the following schedule shall govern briefing on the Motion to Dismiss:

1.      Defendant shall file its opening brief on or before June 29, 2018.

2.      Plaintiff shall file its answering brief on or before July 30, 2018.

3.      Defendant shall file its reply brief on or before August 13, 2018.

4.      Counsel for the parties shall contact the Court to schedule oral argument on the Motion to Dismiss after Plaintiff files its Answering Brief.

SO ORDERED this _____ day of June, 2018.

                                                             _____

                                                                 Judge Carpenter

This document constitutes a ruling of the court and should be treated as such.

**File & Serve**
**Transaction ID:**  62140037

**Current Date:**  Jun 19, 2018

/s/ **Judge Carpenter, William C**

EFiled:  Jun 28 2018 12:35PM EDT
Transaction ID 62184509
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                        )
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )
TRUSTWAVE HOLDINGS, INC.,           ) C.A. No. N18C-04-006 WCC CCLD
                                    )
            Defendant.              )

## <u>MOTION FOR LEAVE TO FILE UNDER SEAL</u>

Defendant Trustwave Holdings, Inc. ("Trustwave") respectfully moves pursuant to Superior Court Civil Rule 5(g) for an order permitting the filing of its briefing in support of its Motion to Dismiss Finjan, Inc.'s Complaint (the "Motion to Dismiss") and any related exhibits under seal. The bases for Trustwave's motion are as follows:

1.      Superior Court Rule 5(g)(2) states, in relevant part, "Court Records or portions thereof shall not be placed under seal unless and except to the extent that the person seeking the sealing thereof shall have first obtained, for good cause shown, an order of this Court specifying those Court Records, categories of Court Records, or portions thereof which shall be placed under seal[.]"

2.      On April 3, 2018, this Court granted Plaintiff's Motion for Leave to File Complaint Under Seal, and Plaintiff subsequently filed its Complaint

under seal on April 4, 2018 (Trans. ID 61873810).  Plaintiff filed a redacted public version of its Complaint on April 5, 2018 (Trans. ID 61878611).

        3.     Similarly, the briefing on Trustwave's Motion to Dismiss may contain references to sensitive, non-public information, including financial and business information that the parties will likely seek to designate as confidential information.  The disclosure of such information would result in material harm to Trustwave. There will be no harm to the public because the information to be redacted from public view is minimal.

        4.     Accordingly, Trustwave respectfully submits that good cause exists for the sealing of the Motion to Dismiss briefing and related exhibit(s). Trustwave intends to file a redacted public version of the Brief within thirty (30) days in accordance with Superior Court Civil Rule 5(g)(2).  For the foregoing reasons, Trustwave respectfully requests that the Court grant it leave to file its briefing on the Motion to Dismiss and related exhibit(s) under seal pursuant to Superior Court Rule 5(g)(2).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

/s/ Alexandra M. Cumings

Jack B. Blumenfeld (#1014)

John S. Letchinger

Alexandra M. Cumings (#6146)

BAKER& HOSTETLER LLP

1201 North Market Street

191 N. Wacker Drive

P.O. Box 1347

Suite 3100

Wilmington, DE  19899-1347

Chicago, IL  60606-1901

(302) 658-9200

(312) 416-6200

*Attorneys for Defendant*

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

June 28, 2018

**EFiled:  Jun 28 2018 12:35PM EDT**
**Transaction ID 62184509**
**Case No. N18C-04-006 WCC CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that the attached Defendant's Motion for

Leave to File Under Seal will be presented at the convenience of the Court.

Morris, Nichols, Arsht & Tunnell LLP

OF COUNSEL:

John S. Letchinger                    */s/ Alexandra M. Cumings*
BAKER& HOSTETLER LLP          Jack B. Blumenfeld (#1014)
191 N. Wacker Drive               Alexandra M. Cumings (#6146)
Suite 3100                             1201 North Market Street
Chicago, IL  60606-1901          P.O. Box 1347
(312) 416-6200                       Wilmington, DE  19899-1347
                                           (302) 658-9200
Jared A. Brandyberry             *Attorneys for Defendant*
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

June 28, 2018

**EFiled:  Jun 28 2018 12:35PM EDT**
**Transaction ID 62184509**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) C.A. No. N18C-04-006-WCC [CCLD] |
| Defendant. | ) |

## [PROPOSED] ORDER

Defendant Trustwave Holdings, Inc., having moved for leave to file its briefing in support of its Motion to Dismiss Plaintiff's Complaint and related exhibit(s) under seal, and the Court having determined that good cause exists for the requested relief, now, therefore:

IT IS HEREBY ORDERED, this ___ day of _____, 2018, that Defendant's Motion is GRANTED.


_____
Judge Carpenter

EFiled: Jun 28 2018 12:35PM EDT
Transaction ID 62184509
Case No. N18C-04-006 WCC CCLD

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2018 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress*.


*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

**EFiled:  Jun 28 2018 02:40PM EDT**
**Transaction ID 62185389**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| Defendant. | ) | |

## MOTION FOR ADMISSION PRO HAC VICE

Alexandra M. Cumings, a member of the Delaware bar, pursuant to Rule 90.1, moves the admission *pro hac vice* of John S. Letchinger to represent Defendant.  Movant certifies that she finds the applicant to be a reputable and competent attorney, and that she is in a position to recommend the applicant's admission.  The applicant is admitted, practicing and a member in good standing of the bar of Illinois.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Alexandra M. Cumings*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

June 28, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2018 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress*.

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

**EFiled:  Jun 28 2018 02:40PM EDT**
**Transaction ID 62185389**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| Defendant. | ) | |

## **MOTION FOR ADMISSION PRO HAC VICE**

Alexandra M. Cumings, a member of the Delaware bar, pursuant to Rule 90.1, moves the admission *pro hac vice* of Matthew J. Caccamo to represent Defendant.  Movant certifies that she finds the applicant to be a reputable and competent attorney, and that she is in a position to recommend the applicant's admission.  The applicant is admitted, practicing and a member in good standing of the bar of Illinois.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Alexandra M. Cumings*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

June 28, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2018 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress*.

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled:  Jun 28 2018 02:40PM EDT
Transaction ID 62185389
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that the attached Motion for Admission *Pro Hac Vice* has been filed with the Court and no presentation date will be held unless the Court deems such hearing appropriate

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/  Alexandra M. Cumings*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

June 28, 2018

EFiled:  Jun 28 2018 02:40PM EDT
Transaction ID 62185389
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| Defendant. | ) | |

## **[PROPOSED] ORDER**

The motion of Alexandra M. Cumings for admission of John S. Letchinger to practice in this action *pro hac vice* is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2018.

_____
Judge

**EFiled:  Jun 28 2018 02:40PM EDT**
**Transaction ID 62185389**
**Case No. N18C-04-006 WCC CCLD**

# CERTIFICATION

John S. Letchinger hereby certifies:

1.      That he shall be bound by the Delaware Lawyers' Rules of Professional Conduct.

2.      That he and all attorneys in the office of BakerHostetler LLP, 191 North Wacker Drive, Suite 3100, Chicago, Illinois 60606, to which he belongs who directly or indirectly provide services to the parties or cause at issue shall be bound by all Rules of the Court.

3.      That he has reviewed the Principles Of Professionalism for Delaware Lawyers, which Principles replace and supersede the Statement of Principles of Lawyer Conduct.

4.      That he consents to the appointment of the Prothonotary as agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law under this Rule and any activities related thereto.

5.      That he has not appeared in any actions in courts of record of Delaware in the preceding twelve (12) months.

6.      That he does not maintain an office in the State of Delaware.

7.      That he is a member in good standing of the bar of Illinois.

8.      That he has not been disbarred or suspended and is not the object of any pending disciplinary proceedings in any jurisdiction where he has been admitted generally, *pro hac vice*, or in any other way.

9.      That he is admitted for the practice of law in the following states and other jurisdictions:  U.S. Court of Appeals for the Federal Circuit, U.S. Court of Appeals for the First Circuit, U.S. Court of Appeals for the Seventh Circuit, U.S. District Court for the Northern District of Illinois; U.S. District Court for the Central District of Illinois.

10.     That payment to the Prothonotary for the *pro hac vice* application assessment in the amount of four hundred seven dollars ($407.00) is attached for deposit pursuant to Superior Court Civil Rule 90.1.

Date: _6/28/18_                    _____
                                        John S. Letchinger

2

**EFiled: Jun 28 2018 02:40PM EDT**
**Transaction ID 62185389**
**Case No. N18C-04-006 WCC CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that the attached Motion for Admission *Pro Hac Vice* has been filed with the Court and no presentation date will be held unless the Court deems such hearing appropriate

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/  Alexandra M. Cumings*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

June 28, 2018

**EFiled:  Jun 28 2018 02:40PM EDT**
**Transaction ID 62185389**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| Defendant. | ) | |

## **[PROPOSED] ORDER**

The motion of Alexandra M. Cumings for admission of Matthew J.

Caccamo to practice in this action *pro hac vice* is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2018.


_____
Judge

EFiled:  Jun 28 2018 02:40PM EDT
Transaction ID 62185389
Case No. N18C-04-006 WCC CCLD

# CERTIFICATION

Matthew J. Caccamo hereby certifies:

1.      That he shall be bound by the Delaware Lawyers' Rules of Professional Conduct.

2.      That he and all attorneys in the office of BakerHostetler LLP, 191 North Wacker Drive, Suite 3100, Chicago, Illinois 60606, to which he belongs who directly or indirectly provide services to the parties or cause at issue shall be bound by all Rules of the Court.

3.      That he has reviewed the Principles Of Professionalism for Delaware Lawyers, which Principles replace and supersede the Statement of Principles of Lawyer Conduct.

4.      That he consents to the appointment of the Prothonotary as agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law under this Rule and any activities related thereto.

5.      That he has not appeared in any actions in courts of record of Delaware in the preceding twelve (12) months.

6.      That he does not maintain an office in the State of Delaware.

7.      That he is a member in good standing of the bar of Illinois.

8.      That he has not been disbarred or suspended and is not the object of any pending disciplinary proceedings in any jurisdiction where he has been admitted generally, *pro hac vice*, or in any other way.

9.      That he is admitted for the practice of law in the following states and other jurisdictions:  U.S. Court of Appeals for the First Circuit, U.S. District Court for the Northern District of Illinois.

10.     That payment to the Prothonotary for the *pro hac vice* application assessment in the amount of four hundred seven dollars ($407.00) is attached for deposit pursuant to Superior Court Civil Rule 90.1.

Date: ____6-28-18____          _____
                                                Matthew J. Caccamo



EFiled: Jun 28 2018 05:07PM EDT
Transaction ID 62186612
Case No. N18C-04-006 WCC CCLD

ROCKEFELLER CENTER

**Karen L. Pascale**
P 302.571.5001
F 302.576.3516
kpascale@ycst.com

June 28, 2018

**Via E-Filing and Hand Delivery**

The Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

> Re:    ***Finjan, Inc. v. Trustwave Holdings, Inc.,***
> **C.A. No. N18C-04-006-WCC [CCLD]**

Dear Judge Carpenter:

I write on behalf of Plaintiff Finjan, Inc. ("Finjan") with respect to the

Motion for Leave to File Under Seal ("Motion") filed today by Defendant

Trustwave Holdings, Inc. ("Trustwave").

Finjan does not oppose the Motion, provided that (1) Trustwave *serves* its

answering brief and related papers as scheduled on June 29, regardless of whether

leave to *file* under seal has yet been granted; and (2) Finjan is able to share the

answering brief and related papers with in-house counsel (or Trustwave provides

on June 29, along with the service copies, a version which redacts any Trustwave

highly confidential information, suitable for review by Finjan in-house counsel);

and (3) Trustwave provides to Finjan, at least five (5) business days prior to the

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable William C. Carpenter, Jr.
June 28, 2018
Page 2

filing of any redacted public version, a draft of said proposed public version for

review and comment.

Respectfully submitted,

*Karen L. Pascale*

Karen L. Pascale
(DE I.D. #2903)

cc: Jack B. Blumenfeld, Esquire (via File & ServeXpress)

01:23364115.1

**So Ordered**

/s/ Carpenter, William C   Jul 03, 2018

EFiled:  Jul 03 2018 08:34AM EDT
Transaction ID 62198518
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                          )
                                      )
                Plaintiff,            )
                                      )
        v.                            )
                                      )
TRUSTWAVE HOLDINGS, INC.,             )
                                      )   C.A. No. N18C-04-006-WCC [CCLD]
                Defendant.            )


## [PROPOSED] ORDER

Defendant Trustwave Holdings, Inc., having moved for leave to file its briefing in support of its Motion to Dismiss Plaintiff's Complaint and related exhibit(s) under seal, and the Court having determined that good cause exists for the requested relief, now, therefore:

IT IS HEREBY ORDERED, this ___ day of _____, 2018, that Defendant's Motion is GRANTED.


_____
                Judge Carpenter

**This document constitutes a ruling of the court and should be treated as such.**

|  |  |
|---:|:---|
| **Court:** | DE Superior Court-New Castle County |
| **Judge:** | William C Carpenter |
| **File & Serve Transaction ID:** | 62184509 |
| **Case Number:** | N18C-04-006 WCC CCLD |
| **Case Name:** | Finjan, Inc. v. Trustwave Holdings, Inc. |
| **Court Authorizer:** | Carpenter, William C |

**Court Authorizer Comments:**

So Ordered by Carpenter, J. on 7-2-2018.

**/s/ Judge Carpenter, William C**

**So Ordered**

/s/ Carpenter, William C   Jul 03, 2018

EFiled:  Jul 03 2018 08:37AM EDT
Transaction ID 62198544
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

## [PROPOSED] ORDER

The motion of Alexandra M. Cumings for admission of John S. Letchinger to practice in this action *pro hac vice* is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2018.

_____

Judge

**This document constitutes a ruling of the court and should be treated as such.**

| | |
|---:|:---|
| **Court:** | DE Superior Court-New Castle County |
| **Judge:** | William C Carpenter |
| **File & Serve Transaction ID:** | 62185389 |
| **Case Number:** | N18C-04-006 WCC CCLD |
| **Case Name:** | Finjan, Inc. v. Trustwave Holdings, Inc. |
| **Court Authorizer:** | Carpenter, William C |

**Court Authorizer Comments:**

So Ordered by Carpenter, J. on 7-2-2018.

**/s/ Judge Carpenter, William C**

**So Ordered**

/s/ Carpenter, William C   Jul 03, 2018

EFiled:  Jul 03 2018 08:37AM EDT
Transaction ID 62198544
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER**

The motion of Alexandra M. Cumings for admission of Matthew J.

Caccamo to practice in this action *pro hac vice* is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2018.

_____

Judge

**This document constitutes a ruling of the court and should be treated as such.**

|  |  |
|---|---|
| **Court:** | DE Superior Court-New Castle County |
| **Judge:** | William C Carpenter |
| **File & Serve Transaction ID:** | 62185389 |
| **Case Number:** | N18C-04-006 WCC CCLD |
| **Case Name:** | Finjan, Inc. v. Trustwave Holdings, Inc. |
| **Court Authorizer:** | Carpenter, William C |

**Court Authorizer Comments:**

So Ordered by Carpenter, J. on 7-2-2018.

**/s/ Judge Carpenter, William C**

**EFiled: Jul 30 2018 10:51AM EDT**
**Transaction ID 62285368**
**Case No. N18C-04-006 WCC CCLD**

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

              Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

              Defendant.

C.A. No. N18C-04-006-WCC (CCLD)

## UNOPPOSED MOTION FOR LEAVE TO FILE
## ANSWERING BRIEF UNDER SEAL

Plaintiff, Finjan, Inc. ("Finjan"), by its undersigned counsel, respectfully moves the Court, pursuant to Superior Court Civil Rule 5(g)(2) for an Order authorizing Finjan to file its Answering Brief in Opposition to Defendant Trustwave Holdings, Inc.'s Motion to Dismiss the Complaint ("Answering Brief") under seal. In support thereof, Finjan states as follows:

1.      Superior Court Civil Rule 5(g)(2) authorizes the Court to permit filing under seal for "good cause."

2.      Finjan's claims in this litigation arise from an Amended and Restated Patent License Agreement ("Agreement").

3.      Briefing on the Motion to Dismiss necessarily includes certain highly confidential financial information relating to royalty rates and other terms of the Agreement.

4.    The sensitive and confidential nature of the royalty rates, etc., cited in the Answering Brief constitutes "good cause" to file the Answering Brief under seal.

5.    On the bases articulated above, this Court previously ordered that Finjan's Complaint (Dkt. No. 1) and the Opening Brief of Trustwave Holdings, Inc. in Support of its Motion to Dismiss (Dkt. No. 17), to which the Answering Brief will respond, could be filed under seal.  (*See* Dkt. Nos. 1, 18.)

6.    Finjan will file a public version of the Answering Brief, with all confidential information redacted, according to the time periods set forth in Superior Court Civil Rule 5(g)(2).

7.    The undersigned counsel has conferred with Defendant's counsel, who do not oppose this request.

WHEREFORE, for the foregoing reasons, Finjan respectfully requests that the Court enter the attached Order permitting the filing of the Answering Brief under seal.

01:23453096.1

Dated:  July 30, 2018

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th
Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

- 3 -

**EFiled:  Jul 30 2018 10:51AM EDT**
**Transaction ID 62285368**
**Case No. N18C-04-006 WCC CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| |
|---|
| FINJAN, INC., |
| Plaintiff, |
| v. |
| TRUSTWAVE HOLDINGS, INC., |
| Defendant. |

C.A. No. N18C-04-006-WCC (CCLD)

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that Finjan, Inc., through its undersigned counsel,

will present its Unopposed Motion for Leave to File Answering Brief Under Seal

at the convenience of the Court.

Dated:  July 30, 2018

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th
Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____

Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

EFiled:  Jul 30 2018 10:51AM EDT
Transaction ID 62285368
Case No. N18C-04-006 WCC CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| |
|---|
| FINJAN, INC., |
| Plaintiff, |
| v. |
| TRUSTWAVE HOLDINGS, INC., |
| Defendant. |

C.A. No. N18C-04-006-WCC (CCLD)

## [PROPOSED] ORDER

The Court, having considered Plaintiff's Unopposed Motion for Leave to File Answering Brief Under Seal, and good cause having been shown, hereby orders that the Motion is GRANTED, and Plaintiff's Answering Brief in Opposition to Defendant Trustwave Holdings, Inc.'s Motion to Dismiss the Complaint may be filed under seal.

IT IS SO ORDERED this _____ day of _____, 2018.

_____
Judge William C. Carpenter

EFiled: Jul 30 2018 10:51AM EDT
Transaction ID 62285368
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on July 30, 2018, I caused

true and correct copies of the foregoing document to be served upon the following

counsel of record as indicated:

---

**For Defendant, Trustwave Holdings, Inc.:**

### VIA FILE & SERVEXPRESS AND E-MAIL:

| | |
|---|---|
| Jack B. Blumenfeld | jblumenfeld@mnat.com |
| Alexandra M. Cumings | acumings@mnat.com |

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

### VIA E-MAIL:

| | |
|---|---|
| John S. Letchinger | jletchinger@bakerlaw.com |
| Matthew J. Caccamo | mcaccamo@bakerlaw.com |

BAKER & HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL 60606-1901

---

YOUNG CONAWAY STARGATT & TAYLOR, LLP

July 30, 2018

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (# 5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

01:23460207.1

*Attorneys for Plaintiff,*
*Finjan, Inc.*

**EFiled:  Jul 30 2018 04:34PM EDT**
**Transaction ID 62287951**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )
                                      )
TRUSTWAVE HOLDINGS, INC.,             ) C.A. No. N18C-04-006 WCC CCLD
                                      )
            Defendant.                )

## MOTION FOR ADMISSION PRO HAC VICE

Alexandra M. Cumings, a member of the Delaware bar, pursuant to Rule 90.1, moves the admission *pro hac vice* of Jared A. Brandyberry to represent Defendant.  Movant certifies that she finds the applicant to be a reputable and competent attorney, and that she is in a position to recommend the applicant's admission.  The applicant is admitted, practicing and a member in good standing of the bar of Colorado.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Alexandra M. Cumings*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*


July 30, 2018

**EFiled: Jul 30 2018 04:34PM EDT**
**Transaction ID 62287951**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that the attached Motion for Admission *Pro Hac Vice* has been filed with the Court and no presentation date will be held unless the Court deems such hearing appropriate

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Alexandra M. Cumings*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Defendant*

July 30, 2018

**EFiled:  Jul 30 2018 04:34PM EDT**
**Transaction ID 62287951**
**Case No. N18C-04-006 WCC CCLD**

## CERTIFICATION

Jared A. Brandyberry hereby certifies:

1.      That he shall be bound by the Delaware Lawyers' Rules of Professional Conduct.

2.      That he and all attorneys in the office of BakerHostetler LLP, 1801 California Street, Suite 4400, Denver, CO 80202-2662, to which he belongs who directly or indirectly provide services to the parties or cause at issue shall be bound by all Rules of the Court.

3.      That he has reviewed the Principles Of Professionalism for Delaware Lawyers, which Principles replace and supersede the Statement of Principles of Lawyer Conduct.

4.      That he consents to the appointment of the Prothonotary as agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law under this Rule and any activities related thereto.

5.      That he has appeared in no actions in courts of record of Delaware in the preceding twelve (12) months.

6.      That he does not maintain an office in the State of Delaware.

7.      That he is a member in good standing of the bar of Colorado and the bar of Ohio.

8.      That he has not been disbarred or suspended and is not the object of any pending disciplinary proceedings in any jurisdiction where he has been admitted generally, *pro hac vice*, or in any other way.

9.      That he is admitted for the practice of law in the following states and other jurisdictions:  the states of Colorado and Ohio; the U.S. Court of Appeals for the Federal Circuit; the United States Patent and Trademark Office; and the U.S. District Courts for the Eastern District of Michigan, Southern District of Ohio, District of Colorado, Eastern District of Texas, Western District of Wisconsin, and Northern District of Ohio.

10. That payment to the Prothonotary for the *pro hac vice* application assessment in the amount of four hundred seven dollars ($407.00) is attached for deposit pursuant to Superior Court Civil Rule 90.1.

Date:   June 8, 2018

Jared A. Brandyberry

**EFiled: Jul 30 2018 04:34PM EDT**
**Transaction ID 62287951**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

## **[PROPOSED] ORDER**

The motion of Alexandra M. Cumings for admission of Jared A.

Brandyberry to practice in this action *pro hac vice* is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2018.


_____
Judge

**EFiled:  Jul 30 2018 04:34PM EDT**
**Transaction ID 62287951**
**Case No. N18C-04-006 WCC CCLD**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2018 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

> Karen L. Pascale, Esquire
> Mary F. Dugan, Esquire
> 1000 North King Street
> Wilmington, DE 19801

> */s/ Alexandra M. Cumings*
> Alexandra M. Cumings (#6146)

**EFiled: Jul 30 2018 06:00PM EDT**
**Transaction ID 62288543**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | **PUBLIC VERSION** |
| | ) | **EFILED JULY 30, 2018** |
| | ) | |
| Defendant. | ) | |

## DEFENDANT TRUSTWAVE HOLDINGS, INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

# **TABLE OF CONTENTS**

**Page**

I.    QUESTION PRESENTED.................................................................1

II.   INTRODUCTION ........................................................................1

III.  FACTUAL BACKGROUND...........................................................5

    a.    Finjan is a Patent Assertion Entity .........................................5

    b.    Patent License Agreement......................................................6

        i.    The Singtel Acquisition Does Not Convert The Agreement
             to Royalty-Bearing.........................................................6

        ii.   License Granted by Finjan to Trustwave.................................7

        iii.  Royalties Owed under Acquisition Clause ..............................10

        iv.   The Parties' 408 Communications and the Deficient
             "Audit" .....................................................................12

IV.   LEGAL ANALYSIS ...................................................................13

    a.    Motion to Dismiss Standard..................................................13

    b.    Standard for Patent Infringement ..........................................14

V.    THE COMPLAINT SHOULD BE DISMISSED ........................................17

    a.    The Singtel Acquisition Did Not Convert The Agreement From
        Paid-Up..........................................................................18

    b.    Finjan Fails To Plead Sufficient Facts To Sustain Its Complaint
        Even If An Argument Can Be Made That The Singtel Acquisition
        Prompts Royalty Payments For Relevant Products .........................19

VI.   CONCLUSION.........................................................................22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
    27 A.3d 531 (Del. 2011) ...................................................................13

*Clinton v. Enter. Rent-A-Car Co.*,
    977 A.2d 892 (Del. 2009) .................................................................13

*Eidos Communications, LLC v. Skype Technologies SA*,
    686 F. Supp. 2d 465 (D. Del. 2010).................................................15

*Fifth Market, Inc. v. CME Group, Inc.*,
    2009 WL 5966836 (D. Del. 2009).....................................................15

*Finjan Inc. v. Symantec Corp.*,
    577 F. Appx. 999 (Fed. Cir. 2014) ...................................................10

*Finjan, Inc. v. Symantec Corp.*,
    2013 WL 5302560 (D. Del. Sept. 19, 2013)......................................10

*Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997) ..........................................................18

*Lagrone v. Am. Mortell Corp.*,
    2008 WL 4152677 (Del. Super. Ct. Sept. 4, 2008) ..........................13

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
    571 U.S. 191, 134 S. Ct. 843 (2014)...........................................15, 21

*Modern Telecom Systems, LLC v. TCL Corporation*,
    2017 WL 6524526 (D. Del. 2017).....................................................16

*Narrowstep Inc., v Onstream Media Corp.*,
    2010 WL 5422405 (Del. Ch. Sept. 7, 2010)......................................13

*Newborn v. Christiana Psychiatric Servs., P.A.*,
    2017 WL 375637 (Del. Super. Jan. 25, 2017)..................................13

*North Star Innovations, Inc. v. Micron Technology, Inc.*,
    2017 WL 5501489 (D. Del. 2017).....................................................16

*Ondeo Nalco Co. v. EKA Chemicals, Inc.*,
 2002 WL 1458853 (D. Del. 2002)......................................................................15

*Seal-Flex, Inc. v. Athletic Track and Court Const.*,
 172 F.3d 836 (Fed. Cir. 1999) ...........................................................................14

*SIPCO, LLC v. Streetline, Inc.*,
 230 F. Supp. 3d 351 (D. Del. 2017)....................................................................16

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*,
 208 F.3d 981 (Fed. Cir. 2000) ...........................................................................17

**Rules and Statutes**

35 U.S.C. § 271(a) .......................................................................................................14

Fed. R. Civ. P.  12(b)(6)....................................................................................13, 22

Del. R. Evid. 202(b)(2) ...............................................................................................14

Del. R. Evid. 408.........................................................................................................12

Pursuant to Superior Court Civil Rule 12(b)(6), Defendant Trustwave Holdings, Inc. ("Trustwave") respectfully submits this opening brief in support of its Motion to Dismiss the Complaint ("Complaint") filed by Plaintiff Finjan, Inc. ("Finjan").

## I.      QUESTION PRESENTED

Whether Finjan's Complaint adequately pleads claims for breach of contract under the parties' patent license agreement when it fails to identify any Finjan patents, any Trustwave products, or any facts concerning the nature of acquisition that allegedly triggered Trustwave's royalty obligations.

## II.      INTRODUCTION

Finjan's case is a conditional patent infringement contest within a complex patent license dispute.  Finjan's Complaint fails, however, to address any aspect of the underlying patent infringement claim necessary to demonstrate a breach of the parties' patent license and glosses over the contractual conditions and qualifications that must be met to even prompt the patent infringement questions.   Instead, Finjan's Complaint attempts to essentially transform the case into collection of a "debt" founded on an independent "Inspection" (as it is actually characterized in the operative "Agreement" as defined below).   As apparent from the face of the Inspection Report, the Inspection was not independent and admittedly included a revenue count that ignored the most fundamental exceptions, qualifications, and

requirements of the Agreement.  The Court would have difficulty assessing that, as Finjan did not even attach the Agreement or the purported Inspection Report to its Complaint.  Instead, Finjan alleges in conclusory fashion that there was an audit (again, it was a limited "Inspection") and, on that basis alone, payment is owed on past sales of certain Trustwave products.  For purposes of the Court's review, Trustwave attaches hereto as Exhibits A and B, respectively, the Agreement and the Inspection Report.

Finjan's Complaint fails to set forth facts sufficient to plead breach of contract under the terms of the Agreement.  Instead, the Complaint merely alleges that (1) a patent license agreement exists between the parties, (2) the "acquisition" of Trustwave by Singapore Telecom ("Singtel"), which it contends triggered royalty obligations under an otherwise fully paid-up license, and (3) an "audit" that reports royalties potentially owed by Trustwave based on sales of an admittedly unidentified set of products made after the acquisition of Trustwave by Singtel.  In the Agreement (*see* Section 3.4 "Inspection", which will be addressed in more substance below), however, the Parties certainly did not delegate any decision-making power to the "auditor" nor any authority to exercise judgment in construing the Agreement.  Therefore, the "auditor" had no power to adjudicate, and did not adjudicate in any way, whether certain products were covered by the agreement or whether royalties are due and owing on such products; in this regard, the auditor

analyzed no products or patents and made no assessments concerning the applicability of various contractual provisions  To the contrary, and as is customary, the Inspection section confers a limited accounting role to a third-party to verify the volume of specific sales/revenues.

Moreover, the Inspection Report is defective on its face.  In fact, in a footnote, the Report admits that the "auditor" selected products for its accounting of net sales based on its own perusal of Trustwave's website and based on Finjan's input.  *See* Exhibit B, notes 1-2.  In essence, Finjan selected a list of products, the "auditor" created a report showing the revenue generated by such products, and now Finjan claims that it is entitled to royalties based on that revenue without having to even address how the actual terms of the Agreement affect its claim.  Moreover, the Complaint fails to allege anything about what products are potentially royalty-bearing[1], which necessarily requires identification of an

---

[1] Finjan's sole operative allegation is that Singtel acquired Trustwave, automatically converting the otherwise fully paid-up license into a potentially royalty-bearing one.  Trustwave disagrees that the Singtel acquisition triggers a conversion to a potentially royalty-bearing situation.  The transfer/acquisition provisions (*see* Exhibit A at Sections 2.4 and 2.5) are included in the Agreement in the event of a material expansion of the use of the Licensed Patents by way of a transaction.  That type of expansion—incorporating Trustwave's products or technology into the acquirer's products—has not occurred.  Even assuming Finjan were correct on this point, there remain nonetheless indisputable conditions that must exist, which are identified at a high level on the face of the Inspection Report shown in Exhibit B, for royalties to be triggered.  Finjan makes no allegations that any of the occurrences or conditions have been satisfied to prompt royalty payment

applicable, valid patent that purports to cover the product.[2]   The grounds for inspection in Section 3.4 of the Agreement limits the inspection exercise to a "...report to Licensor only with respect to the accuracy of Net Sales calculations and payments made under the Agreement."  *See* Exhibit A at Section 3.4.   As detailed below, the path to a determination of "Net Sales" is a long and contingent one; Finjan's Complaint does not even allege Net Sales, and certainly not on a product–by-product basis.   Finjan's attempt to summarily convert the Inspection Report into a determinative finding reporting a debt owing finds no support in the operative Agreement nor the law and should be rejected by this Court.

Finjan's strategy here is unsurprising.   The allegations in its Complaint notwithstanding, Finjan is not an operating company—it sells no goods or services. Instead, Finjan exists only to monetize its patent portfolio through licensing and litigation.   As it relates to the present dispute, Finjan has been compensated twice— once in the original license to M86 Security, Inc. ("M86") and then again when Trustwave acquired M86.   If Finjan wants to attempt to trigger additional royalties under the Parties' fully paid-up Agreement, it must adequately plead its claim.

---

obligations.   Instead, the allegations made by Finjan are an inappropriate effort to sway this Court with inadmissible and mischaracterized communications between the Parties.

[2] Understandably, this would be based on a pre-filing, good faith analysis.

### III.      FACTUAL BACKGROUND

#### a.      Finjan is a Patent Assertion Entity

Finjan's Complaint suggests that it is an operating company in the cybersecurity industry (*see* Complaint at ¶¶ 4-5).  In fact, Finjan's sole purpose is to extract patent license fees from operating companies through litigation or the threat of litigation:

> Licensing and enforcement of the Company's cybersecurity patent portfolio is operated by its wholly-owned subsidiary Finjan, Inc. ("Finjan").
>
> …
>
> Through Finjan, we generate revenues and related cash flows by granting intellectual property licenses for the use of patented technologies that we own. We actively license and enforce our patent rights against unauthorized use of our patented technologies (*i.e.* potential infringers). Many of our license agreements, whether entered into via negotiated transactions (*i.e.* licensing transactions) or through a settlement or court ordered judgment (*i.e.* litigation action) or otherwise, are structured on a fully paid-up basis (often referred to as a "global peace license").
>
> …
>
> We derive substantially all of our income from a relatively small number of patented technologies. As of December 31, 2017, our assets consisted primarily of Finjan's 29 U.S. and 38 international patents…. Finjan's current U.S. issued patents began expiring in 2017, and we currently have 2 U.S. patent applications and 1 international patent application pending as of the date of the filing of this Annual Report on Form 10-K. As new technological advances occur, many of the patented technologies we own through Finjan may become obsolete before they are completely monetized.

*See* Exhibit C (Finjan Holdings, Inc.'s 10-K for FY2017) at pp. 4-5 and 13.

### b.    The Patent License Agreement

In March 2012, Trustwave and Finjan entered into an Amended and Restated Patent License Agreement (the "Agreement") when Trustwave acquired M86.  *See* Exhibit A (the "Agreement") at first whereas clause. ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

### i.    The Singtel Acquisition Did Not Convert The Agreement to Royalty-Bearing

Also in summary fashion, Finjan alleges in Paragraphs 9 and 10 of the Complaint that, pursuant to Sections 1.13, 2.4 and 2.5 of the Agreement, Trustwave's acquisition by a telecommunications company based in Singapore triggered a conversion of the Agreement from fully paid-up to royalty-bearing for

relevant sales.  *See* Complaint at ¶¶ 9-10.   Without further allegations, Finjan attempts to inject into the proceedings a purported email as somehow ending the issue.  *Id.* at ¶ 10.  The Agreement is clear that transactions that do not contemplate an expansion of the use of the Licensed Patents do not trigger royalty payments.  And, the Agreement is further clear that, in the event of such a qualifying transaction, the conditional royalty payments would be assessed only on sales made other than by Trustwave (as the acquired company).  Finjan makes no allegations in support of its conclusory allegation that the Singtel acquisition triggers royalty payments under the Agreement.

### ii.     The License Granted by Finjan to Trustwave

Even more glaring are the pleading deficiencies with respect to Trustwave's alleged royalty obligations under the Agreement.  Again, these royalty obligations are only applicable if Finjan is correct concerning the nature of the Singtel acquisition.  The scope of the license granted by Finjan to Trustwave is defined in part by the following portion of Section 2.1.1 of the Agreement:



*See* Agreement at Section 2.1.1; *see also* Complaint at ¶ 6.

As such, the scope of the grant to Trustwave is dependent on the definition of "Licensed Products and Services" and "Licensed Patents."   Section 1.9 of the Agreement defines "Licensed Products and Services" as follows:



*See* Agreement at Section 1.9 (emphasis added).   Thus, to be a product licensed under the Agreement, that product must infringe "at least one valid claim of a Licensed Patent."   This definition and its impact on how one would determine whether a product is covered by the Agreement are not addressed in Finjan's Complaint.   Furthermore, Finjan's Complaint fails to identify what Trustwave products allegedly satisfy these contractual qualifications or Finjan's good faith belief that each such product infringes a valid Finjan patent claim under the parties' Agreement.[3]

_____

[3] Finjan may attempt to point to product categories identified on Exhibit B and argue that the products are spelled out.  Not so.  Even a cursory review of the footnotes on Exhibit B which purport to delineate what each category comprises demonstrates a never-ending universe of "potential" SKUs (stock keeping units), many of the references being merely SKU prefixes.   Exhibit B provides no guidance as to what the "auditor" actually included in the bloated universe of products.  And, to state the obvious, the Inspection Report does not reveal the identification by the "auditor" or Finjan of any applicable patents or applicability/coverage concerning any of the products counted by the "auditor."  In other words, the Inspection Report does not claim that Trustwave's products

Section 1.7 of the Agreement defines "Licensed Patents" as follows:



Agreement at Section 1.7.  Exhibit A to the Agreement lists six U.S. patents, but

Finjan makes no allegations that any valid patent claim covers any Trustwave

product.  Moreover, on its face, Exhibit A to the Agreement is not a static listing,

but rather a fluid one which can increase and decrease.  Not only does the definition

of Licensed Products require coverage by a valid patent, but, under Section 2.2.4,

Trustwave's right to defend a claim for breach of the Agreement with, *inter alia*,

the defense of invalidity, is expressly reserved.  Finjan's Complaint fails to address

how its monetization activities have affected the "Licensed Patents."  A review of

just the six U.S. patents listed in Exhibit A to the Agreement shows that those six

patents have been asserted in 35 different actions in U.S. District Courts and the

---

infringe Finjan's patent (making them Licensed Products and Services under the
Agreement) or that royalties are due on the Trustwave products (which would
mean the products are covered by license granted in the Agreement and are not
"Existing Business" under the agreement).

United States Patent and Trademark Office.  *See* Exhibit D.  Many of these cases resulted in orders or jury verdicts that impact the scope of the patent claims, ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

For example, Finjan's Complaint fails to disclose that claims of the first patent listed on Exhibit A to the Agreement were found to be invalid in late 2012 (or how that impacts its present claims against Trustwave).  *See Finjan, Inc. v. Symantec Corp.*, 2013 WL 5302560, at *14-18 (D. Del. Sept. 19, 2013), *aff'd*, 577 F. Appx. 999, 1000 (Fed. Cir. 2014).   Likewise, Finjan's Complaint fails to acknowledge that the first three patents listed on Exhibit A to the Agreement expired in 2017.  *Cf.*  Exhibit A at Exhibit A to Exhibit C at p. 11 (where "*" indicates that the Finjan patent expired in 2017).

Simply stated, Finjan's Complaint does not address how these "Licensed Patents" relate to the "Licensed Products and Services"—*i.e.*, which Finjan patents are infringed by which Trustwave products.  On that basis alone, the Complaint should be dismissed.

### iii.        Royalties Owed under Acquisition Clause

Although Trustwave disputes that the Singtel acquisition triggered the payment of royalties, the Agreement repeatedly clarifies that, even in such cases,

royalties are never triggered for Licensed Products or Services that are attributable to "Existing Business." *See, e.g.,* Agreement at Section 2.5.

"Existing Business" is defined in Section 2.4 of the Agreement as ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████        *Id.* at Section 2.4.   The Agreement repeatedly clarifies that sales attributable to "Existing Business" are not subject to royalty obligations under Section 3.   The definition of "Net Sales" which is used in the royalty calculation under Section 3 (and the exclusive metric to be inspected by the auditor under Section 3.4) states:



*Id*. at Section 1.9 (emphasis added).  Likewise, Section 3 confirms that royalties are not owed on "Existing Business":



*Id*. at Section 3.2 (emphasis added).  Finjan's Complaint fails to address how the "Existing Business" limitation affects the royalties sought under its breach of

contract claim.  Likewise, the "auditor" notes in the Inspection Report that it could not account for the Existing Business exception (improperly blaming Trustwave).

### iv.      The Parties' Rule 408 Communications and the Deficient "Audit"

Finjan's Complaint references the Inspection Report that was done at Finjan's request under Section 3.4 of the Agreement.  *Id*. at ¶¶ 13-15.  Finjan's Complaint does not disclose that the "audit" was completely deficient because the "auditor" could not determine which products were subject to royalty obligations. In fact, during the "audit," Trustwave's position was that no products were subject to royalty obligations.  Instead, without providing any analysis of the products allegedly covered by the Agreement (and, certainly no mention of any patents or scientific analyses), the "auditor," at Finjan's direction[4], assumed all products under all product categories were subject to royalty obligations.  *Id*. at FN 2.  The "auditor" did not conduct any legal analysis in the Inspection Report as to infringement of Finjan's patents by Trustwave's products or whether the royalties were owed under the parties' Agreement.  Rather, the Inspection Report was merely a calculation of █████ against product sales that Finjan instructed the "auditor" to review.  On its face, the "audit" was not independent nor does it

---

[4] Finjan exacerbates its deficiencies with mischaracterized recounts of settlement communications in an effort to suggest liability.  *See*, *e.g.*, Complaint at ¶¶ 10-12 and 16.  These communications are in any event clearly inadmissible to prove liability under Rule 408 of the Delaware Uniform Rules of Evidence.

purport to report anything other than a hypothetical maximum universe of potentially relevant products and the resulting sales and royalties.

## IV.    LEGAL ANALYSIS

### a.    Motion to Dismiss Standard

Under Rule 12(b)(6), the Complaint must be dismissed if it appears "with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief." *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) (internal quotation omitted). Although a court must "accept all well pleaded factual allegations as true" and "draw all reasonable inferences in favor of the non-moving party" on a motion to dismiss, *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011), it is not required to credit "inferences or factual conclusions unsupported by specific allegations of fact." *Narrowstep Inc., v Onstream Media Corp*., 2010 WL 5422405 at *5 (Del. Ch. Sept. 7, 2010); *see also Lagrone v. Am. Mortell Corp*., 2008 WL 4152677 at *4 (Del. Super. Ct. Sept. 4, 2008).

In addition to the allegations of the Complaint, the Court may consider extrinsic documents that are "integral to a plaintiff's claim and . . . incorporated into the complaint by reference." *Newborn v. Christiana Psychiatric Servs., P.A.*, 2017 WL 375637, at *2 (Del. Super. Jan. 25, 2017).  The Court "may

also take judicial notice of matters that are not subject to reasonable dispute." *Id.*;

*see* Del. R. Evid. 202(b)(2).

### b.    Standard for Patent Infringement

A patent infringement analysis begins with the claims at the end of the

patent:

> The patent claims are the numbered sentences at the end of each
> patent. The claims are important because it is the words of the claims
> that define what a patent covers. The figures and text in the rest of the
> patent provide a description and/or examples of the invention and
> provide a context for the claims, but it is the claims that define the
> breadth of the patent's coverage.
>
> …
>
> A claim sets forth, in words, a set of requirements. Each claim sets
> forth its requirements in a single sentence. If a device or a method
> satisfies each of these requirements, then it is covered by the claim.

The Federal Circuit Bar Association Model Jury Instructions at pp. 12-13 (2016).

The acts constituting patent infringement are defined by 35 U.S.C. § 271(a):

"whoever without authority makes, uses, offers to sell, or sells any patented

invention, within the United States or imports into the United States any patented

invention during the term of the patent therefor, infringes the patent."

"To show infringement of a patent, a patentee must supply sufficient

evidence to prove that the accused product or process contains, either literally or

under the doctrine of equivalents, every limitation of the properly construed claim."

*Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir.

1999). The patentee bears the burden of proving infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 134 S. Ct. 843, 849-50 (2014) ("It is well established that the burden of proving infringement generally rests upon the patentee.").

The pleading standard for alleging infringement of a patent in a U.S. District Court requires at a minimum that the patentee identify the patent allegedly infringed and the accused product alleged to infringe the patent. *See Fifth Market, Inc. v. CME Group, Inc.*, 2009 WL 5966836,*1-*2 (D. Del. 2009) (granting motion to dismiss infringement complaint because it failed to identify any specific accused products); *Ondeo Nalco Co. v. EKA Chemicals, Inc.*, 2002 WL 1458853, *1 (D. Del. 2002) (granting Rule 12(b)(6) motion to dismiss patentee's infringement counterclaim because its pleadings were "too vague to provide [accused infringer] with fair notice of which products are accused of infringing defendant's patents); *Eidos Communications, LLC v. Skype Technologies SA*, 686 F. Supp. 2d 465, 466-69 (D. Del. 2010) (ordering patentee to amend its complaint and provide a more definite statement of the products or service it was accusing of infringement and ruling that complaint's identification of the accused products as "communication system products and/or methodologies that infringe one or more claims" was insufficient).

District courts generally require even more at the pleading stage, insisting that the patentee identify the specific patent claims allegedly infringed and also describe how the accused product embodies the limitations of such claims. *See*, *e.g.*, *Modern Telecom Systems, LLC v. TCL Corporation*, 2017 WL 6524526, *2-*4 (D. Del. 2017) (Magistrate Judge recommending dismissal of direct infringement claims with leave to amend and instructing that to sufficiently plead a count of patent infringement a patentee must specifically plead facts to show how all the limitations of at least one asserted claim of the patent are met by the accused product—"[t]here needs to be some facts alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting, in a take-my-word-for-it fashion, that it is so") (emphasis in original); *North Star Innovations, Inc. v. Micron Technology, Inc.*, 2017 WL 5501489, *1-*3 (D. Del. 2017) ("In order to adequately allege direct infringement here, Plaintiff needs to have pleaded facts that plausibly indicate that Defendant's accused products practice each of the limitations found in the two asserted claims (which, here, are apparatus claims). After all, if it is not plausible, after reading a complaint, that the accused infringer's product reads on a limitation in the one asserted claim from a patent-in-suit, then it is not plausible that the accused infringer actually infringes the patent claim (or the patent)."); *SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017) ("Right now, Plaintiff makes two factual

allegations. One, here are ten patents we own. Two, you sell some products, which we have identified. Plaintiff makes a legal conclusion, to wit, the sales of your products infringe ou[r] patents. This is insufficient to plausibly allege patent infringement.").

## V.      THE COMPLAINT SHOULD BE DISMISSED

Finjan's Complaint pleads three causes of action all flowing from the deficient, conclusory set of allegations that a relevant acquisition occurred, an inspection was conducted, and Trustwave should therefore pay.  All three causes of action should be dismissed for failure to state a claim because Finjan does not plead the requisite facts necessary to establish a breach of the parties' Agreement.[5]

---

[5] Plaintiffs in patent cases often make allegations on information and belief or the like because the allegedly infringing products are software-related or otherwise not subject to analysis without the provision of information or access from the defendant.  No matter how the Court construes the Agreement, there can be no argument that, in order for royalties to be prompted, an eligible Trustwave product or service must be covered by a valid Finjan patent.  Well before Finjan filed the Complaint, Trustwave offered Finjan the opportunity to conduct a scientific review of any product Finjan would identify as being covered by a valid patent in order to try to put this matter to rest.  Finjan was not interested, instead attempting to fashion its case as somehow already adjudicated by way of the Inspection.  Any claim by Finjan that it cannot specifically identify, based on a scientific analysis, products that are covered by a particular patent without discovery or the like should be rejected.  *See View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (affirming an award of attorney's fees and stating "[b]efore filing [claims] of patent infringement, Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least

### a. The Singtel Acquisition Did Not Convert The Agreement From Paid-Up

All three counts should be dismissed as the Agreement on its face is a fully paid-up license agreement. Throughout the Agreement, including in Sections alleged by Finjan in the Complaint as governing, it is clear that even in the event of a qualifying transaction, Trustwave's continued operations are not subject to alteration of its paid-up status. Only relevant sales of the acquirer and its respective affiliates are in play, and then only to the extent they take an express license and practice the Licensed Patents. Finjan alleges nothing in its Complaint to support a claim that the Singtel acquisition is a qualifying event to convert the Agreement from a fully paid-up license to a royalty-bearing one. As such, each of Finjan's three counts fails.

---

one claim of each patent so asserted" and noting that the deficient investigation relied on the accused infringer's advertising instead of analyzing the actual products); *see also Judin v. United States*, 110 F.3d 780, 785 (Fed. Cir. 1997) (finding that the district court abused its discretion by not awarding fees under Rule 11 and stating that "[n]o adequate explanation was offered for why [the patentee and its counsel] failed to obtain, or attempted to obtain, a sample of the accused device from the Postal Service or a vendor so that its actual design and functioning could be compared with the claims of the patent. Under these circumstances, there is no doubt that [the patentee] failed to meet the minimum standards imposed by Rule 11, and his attorney acted unreasonably in giving blind deference to his client and assuming his client had knowledge not disclosed to the attorney.")

> **b.    Finjan Fails To Plead Sufficient Facts To Sustain Its Complaint Even If An Argument Can Be Made That The Singtel Acquisition Prompts Royalty Payments For Relevant Products**

Even if the Court should find that Finjan has adequately pleaded the Singtel acquisition as a potentially qualifying event to convert the Agreement to royalty-bearing as to relevant Trustwave products, Finjan's Complaint remains woefully deficient.  Finjan alleges breach of contract for failure to pay royalties on sales of Trustwave products covered by the parties' Agreement, but Finjan does so in a conclusory fashion that fails to account for how the Agreement defines such products.  Even if, *arguendo,* the Singtel acquisition is a qualifying transaction requiring Trustwave to pay royalties on any products, any potentially relevant product must infringe a valid claim of a Finjan Licensed Patent (*i.e.*¸ one of the patents detailed in Exhibit A to the Agreement and related patents).  Thus, to sufficiently allege breach of contract under the best light for Finjan, Finjan must sufficiently plead infringement of its Licensed Patents by Trustwave's products.  Finjan conspicuously sidesteps any attempt to comply with this requirement.

Finjan's Complaint alleges two facts to support its first cause of action.  First, that the Singtel acquisition of Trustwave requires a royalty payment on "any products and services other than the Licensed Products and Services and Integrated Licensed Products and Services as actually offered and distributed by the Licensee and their Affiliates at the time of the Transfer ('Existing Business.')"  Complaint at

¶ 24.   And, second, that the audit "concluded that at least $1,526,445.95 in additional royalties were owed by Trustwave to Finjan, based on the available information."  Complaint at ¶ 25.  Both of these statements avoid the issue of what products are allegedly covered by the parties' Agreement.

Finjan's failure to identify the "Licensed Products and Services"—*i.e.*, Trustwave products "whose manufacture, use or sale would infringe, contribute to, or induce the infringement of at least one valid claim of a Licensed Patent"—is a fatal deficiency.  The only way Trustwave could have conceivably breached the Agreement by failing to pay royalties (or, in any respect to the Inspection) is if relevant Trustwave products infringe at least one valid claim of a Licensed Patent and are not "Existing Business" under the Agreement.  Despite these requirements, Finjan's Complaint fails to identify any Trustwave products or identify any valid patent claims that are infringed by such Trustwave products, or provide any explanation for why such Trustwave products should not be considered "Existing Business."  Not a single patent, patent claim, or Trustwave product is identified, nor does Finjan even allege (as it cannot under applicable law) that it has conducted any patent infringement analysis of any Licensed Patent as it relates to any relevant product.  Moreover, the "Existing Business" exception is wholly ignored (other than in the Inspection Report, where the "auditor" concedes that it undertook no

review of the issue and treated all counted SKUs as not qualifying as "Existing Business").

To the extent the Court does not dismiss the Complaint with prejudice and permits Finjan leave to file an amended complaint, Finjan should be required to allege at a minimum:  (1) each and every SKU it contends is royalty-bearing and the corresponding sales metrics as covered by the Inspection Report, (2) for each such SKU, how the limitations of at least one valid Licensed Patent are met by each such SKU, (3) that it conducted and can evidence a pre-filing, reasoned analysis of each accused SKU as against at least one valid Licensed Patent, (4) and facts supporting that each SKU is not covered by the Existing Business exception.  This information is in Finjan's possession and should have been provided in Finjan's Complaint.  *See Medtronic,* 134 S. Ct. at 849-50 (2014) ("A complex patent can contain many pages of claims and limitations. A patent holder is in a better position than an alleged infringer to know, and to be able to point out, just where, how, and why a product (or process) infringes a claim of that patent.").  This information should have been provided long ago in order to conduct a proper inspection under the parties' Agreement, but in the least should be provided in Finjan's Complaint.

## VI.    CONCLUSION

Trustwave respectfully requests that Finjan's Complaint be dismissed for failure to state a claim under Rule 12(b)(6).[6]

<div style="text-align:right">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

</div>

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

June 29, 2018

/s/  Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

---

[6] Finjan's Complaint includes a demand for jury trial (*see* Complaint at p. 13) notwithstanding that  Section 6.4.2 of the parties' Agreement provides: "EACH OF THE PARTIES HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE IT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT."  Finjan's Jury Demand should, therefore, be stricken.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2018 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

**So Ordered**

/s/ Carpenter, William C   Jul 31, 2018

EFiled:  Jul 31 2018 04:48PM EDT
Transaction ID 62293014
Case No. N18C-04-006 WCC CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| FINJAN, INC., | |
|        Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
|        Defendant. | |

## [PROPOSED] ORDER

The Court, having considered Plaintiff's Unopposed Motion for Leave to File Answering Brief Under Seal, and good cause having been shown, hereby orders that the Motion is GRANTED, and Plaintiff's Answering Brief in Opposition to Defendant Trustwave Holdings, Inc.'s Motion to Dismiss the Complaint may be filed under seal.

      IT IS SO ORDERED this _____ day of _____, 2018.

_____

Judge William C. Carpenter

This document constitutes a ruling of the court and should be treated as such.

**File & Serve**
**Transaction ID:** 62285368

**Current Date:** Jul 31, 2018

**/s/ Judge Carpenter, William C**

**So Ordered**

/s/ Carpenter, William C   Aug 02, 2018

EFiled:  Aug 02 2018 12:22PM EDT
Transaction ID 62299965
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

### [PROPOSED] ORDER

The motion of Alexandra M. Cumings for admission of Jared A. Brandyberry to practice in this action *pro hac vice* is hereby granted.

IT IS SO ORDERED this _____ day of _____, 2018.

_____

Judge

This document constitutes a ruling of the court and should be treated as such.

**File & Serve**
**Transaction ID:**  62287951

**Current Date:**  Aug 02, 2018

**/s/ Judge Carpenter, William C**

EFiled:  Aug 03 2018 06:00PM EDT
Transaction ID 62307876
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

Defendant.

C.A. No. N18C-04-006-WCC
(CCLD)

### MOTION FOR ADMISSION
### *PRO HAC VICE* OF JOHN L. COOPER

Mary F. Dugan ("Movant"), a member of the Delaware bar, pursuant to

Delaware Superior Court Civil Rule 90.1, hereby moves the admission *pro hac vice*

of John L. Cooper ("Applicant") of  Farella Braun + Martel LLP, 235 Montgomery

Street, 17th Floor, San Francisco, CA 94104, to represent Plaintiff Finjan, Inc. in this

action.  Movant certifies that she finds Applicant to be a reputable and competent

attorney, and that Movant is in a position to recommend Applicant's admission *pro*

*hac vice*.  The Applicant is admitted, practicing, and in good standing in the States of

California and Colorado.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
*Mary F. Dugan*

Dated:  August 3, 2018

Karen L. Pascale (No. 2903)
Mary F. Dugan  (No. 4704)
1000 North King Street
Wilmington, Delaware  19801
(302) 571-5028
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Finjan, Inc.*

EFiled:  Aug 03 2018 06:00PM EDT
Transaction ID 62307876
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

## MOTION FOR ADMISSION
## *PRO HAC VICE* OF WINSTON LIAW

Mary F. Dugan ("Movant"), a member of the Delaware bar, pursuant to Delaware Superior Court Civil Rule 90.1, hereby moves the admission *pro hac vice* of Winston Liaw ("Applicant") of  Farella Braun + Martel LLP, 235 Montgomery Street, 17th Floor, San Francisco, CA 94104, to represent Plaintiff Finjan, Inc. in this action.  Movant certifies that she finds Applicant to be a reputable and competent attorney, and that Movant is in a position to recommend Applicant's admission *pro hac vice*.  The Applicant is admitted, practicing, and in good standing in the State of California.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Mary F. Dugan*
_____

Dated:  August 3, 2018

Karen L. Pascale (No. 2903)
Mary F. Dugan  (No. 4704)
1000 North King Street
Wilmington, Delaware  19801
(302) 571-5028
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Finjan, Inc.*

01:23470150.1

EFiled:  Aug 03 2018 06:00PM EDT
Transaction ID 62307876
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

## NOTICE OF MOTION FOR ADMISSION
### *PRO HAC VICE* OF JOHN L. COOPER

TO:   Jack B. Blumenfeld, Esq.
      Alexandra M. Cumings, Esq.
      Morris, Nichols, Arsht & Tunnell LLP
      1201 N. Market Street
      Wilmington, DE 19899-1347

PLEASE TAKE NOTICE that the undersigned will present the attached

Motion for Admission *Pro Hac Vice* of John L. Cooper at the convenience of the

Court.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
*Mary F. Dugan*

Dated:  August 3, 2018

Karen L. Pascale (No. 2903)
Mary F. Dugan  (No. 4704)
1000 North King Street
Wilmington, Delaware  19801
(302) 571-5028
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Finjan, Inc.*

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

EFiled:  Aug 03 2018 06:00PM EDT
Transaction ID 62307876
Case No. N18C-04-006 WCC CCLD

|  |  |
|---|---|
| FINJAN, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>TRUSTWAVE HOLDINGS, INC.,<br><br>       Defendant. | C.A. No. N18C-04-006-WCC<br>(CCLD) |

## [PROPOSED] ORDER

The foregoing application of John L. Cooper for admission *pro hac vice* in this action is hereby granted.

SO ORDERED this __day of _____, 2018.

_____
Hon. William C. Carpenter, Jr.

EFiled:  Aug 03 2018 06:00PM EDT
Transaction ID 62307876
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I, Mary F. Dugan, Esquire, hereby certify that on August 3, 2018, I caused a copy of the foregoing document to be served on the following counsel in the manner indicated below:

## BY FILE & SERVEXPRESS

Jack B. Blumenfeld, Esq.                    jblumenfeld@mnat.com
Alexandra M. Cumings, Esq.                  acumings@mnat.com
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19899-1347

## BY E-MAIL

John S. Letchinger                          jletchinger@bakerlaw.com
Matthew J. Caccamo                          mcaccamo@bakerlaw.com
BAKER & HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL 60606-1901

Jared A. Brandyberry                        jbrandyberry@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202

*/s/ Mary F. Dugan*
_____
Mary F. Dugan (No. 4704)

01:23470054.1

EFiled:  Aug 03 2018 06:00PM EDT
Transaction ID 62307876
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

## NOTICE OF MOTION FOR ADMISSION
### *PRO HAC VICE* OF WINSTON LIAW

TO:   Jack B. Blumenfeld, Esq.
      Alexandra M. Cumings, Esq.
      Morris, Nichols, Arsht & Tunnell LLP
      1201 N. Market Street
      Wilmington, DE 19899-1347

PLEASE TAKE NOTICE that the undersigned will present the attached

Motion for Admission *Pro Hac Vice* of Winston Liaw at the convenience of the

Court.

                          YOUNG CONAWAY STARGATT &
                          TAYLOR, LLP
                          *Mary F. Dugan*
                          _____
Dated:  August 3, 2018    Karen L. Pascale (No. 2903)
                          Mary F. Dugan  (No. 4704)
                          1000 North King Street
                          Wilmington, Delaware  19801
                          (302) 571-5028
                          kpascale@ycst.com
                          mdugan@ycst.com

                          *Attorneys for Finjan, Inc.*

01:23470150.1

**EFiled:  Aug 03 2018 06:00PM EDT**
**Transaction ID 62307876**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

## [PROPOSED] ORDER

The foregoing application of Winston Liaw for admission *pro hac vice* in this action is hereby granted.

SO ORDERED this __day of _____, 2018.

_____
Hon. William C. Carpenter, Jr.

01:23470150.1

EFiled: Aug 03 2018 06:00PM EDT
Transaction ID 62307876
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I, Mary F. Dugan, Esquire, hereby certify that on August 3, 2018, I

caused a copy of the foregoing document to be served on the following counsel in

the manner indicated below:

### BY FILE & SERVEXPRESS AND E-MAIL

Jack B. Blumenfeld, Esq.                    jblumenfeld@mnat.com
Alexandra M. Cumings, Esq.                  acumings@mnat.com
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19899-1347

### BY E-MAIL

John S. Letchinger                          jletchinger@bakerlaw.com
Matthew J. Caccamo                          mcaccamo@bakerlaw.com
BAKER & HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL 60606-1901

Jared A. Brandyberry                        jbrandyberry@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202

/s/ Mary F. Dugan
_____
Mary F. Dugan (No. 4704)

01:23470150.1

**EFiled:  Aug 14 2018 10:21AM EDT**
**Transaction ID 62343742**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

## CERTIFICATION PURSUANT TO
## SUPERIOR COURT CIVIL RULE 90.1(B)

I, John L. Cooper, hereby certify that:

1.      I am a member in good standing of the Bars of the States of California and Colorado.

2.      I agree that I shall be bound by the Delaware Lawyers' Rules of Professional Conduct and have reviewed the Statement of Principles of Lawyer Conduct.

3.      I agree that I and all attorneys of my firm who directly or indirectly provide services to the party or cause at issue shall be bound by all Rules of the Court.

4.      I consent to the appointment of the Prothonotary as agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law under this rule and activities related thereto.

5.      In the preceding twelve (12) months, I have not been admitted to practice *pro hac vice* in a Delaware court.

6.      Payment to the Prothonotary for the *pro hac vice* application assessment in the amount of four hundred and seven dollars ($407.00) is attached for deposit pursuant to Superior Court Civil Rule 90.1.

7.      I have not been disbarred or suspended and I am not the object of any disciplinary proceedings in any jurisdiction where I have been admitted generally, *pro hac vice*, or in any other way.

8.      I have been admitted generally to the Bars of the following states or other jurisdictions:  U.S. Supreme Court, State of California, State of Colorado, U.S. Court of Appeals for the Fifth Circuit, U.S. Court of Appeals for the Seventh Circuit, U.S. Court of Appeals for the Ninth Circuit, U.S. Court of Appeals for the Eleventh Circuit, U.S. District Court for the District of Colorado, U.S. District Court for the Northern District of California, U.S. District Court for the Northern District of Georgia.

9.      I do not maintain an office in the State of Delaware.

Dated:  August 13, 2018

John L. Cooper

**EFiled:  Aug 14 2018 10:21AM EDT**
**Transaction ID 62343742**
**Case No. N18C-04-006 WCC CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

        Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

        Defendant.

C.A. No. N18C-04-006-WCC (CCLD)

## CERTIFICATION PURSUANT TO
## SUPERIOR COURT CIVIL RULE 90.1(B)

I, Winston Liaw, hereby certify that:

1.     I am a member in good standing of the Bar of the State of California.

2.     I agree that I shall be bound by the Delaware Lawyers' Rules of Professional Conduct and have reviewed the Statement of Principles of Lawyer Conduct.

3.     I agree that I and all attorneys of my firm who directly or indirectly provide services to the party or cause at issue shall be bound by all Rules of the Court.

4.     I consent to the appointment of the Prothonotary as agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law under this rule and activities related thereto.

5.      In the preceding twelve (12) months, I have appeared in the following cases in the U.S. District Court for the District of Delaware, in which I was admitted *pro hac vice*: *TQ Delta, LLC v. Zhone Technologies, Inc.*, C.A. No. 13-1836-RGA; *Flexible Technologies Inc. v. SharkNinja Operating LLC, et al.,* C.A. No. 1:18-cv-00348-GMS.

6.      Payment to the Prothonotary for the *pro hac vice* application assessment in the amount of four hundred and seven dollars ($407.00) is attached for deposit pursuant to Superior Court Civil Rule 90.1.

7.      I have not been disbarred or suspended and I am not the object of any disciplinary proceedings in any jurisdiction where I have been admitted generally, *pro hac vice*, or in any other way.

8.      I have been admitted generally to the Bars of the following states or other jurisdictions:  State of California, U.S. District Court for the Northern District of California, U.S. District Court for the Southern District of California, U.S. District Court for the Eastern District of Texas, U.S. District Court for the Northern District of Texas.

9.      I do not maintain an office in the State of Delaware.

Dated:  August 13, 2018

_____
Winston Liaw

EFiled:  Sep 07 2018 03:44PM EDT
Transaction ID 62426967
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | PUBLIC VERSION |
| Defendant. | |

## ANSWERING BRIEF OF FINJAN, INC. IN OPPOSITION TO TRUSTWAVE HOLDINGS, INC.'S MOTION TO DISMISS

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400

Dated:  July 30, 2018

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

# **TABLE OF CONTENTS**

**Page**

NATURE OF PROCEEDINGS ............................................................................1

COUNTERSTATEMENT OF FACTS ...............................................................5

QUESTION PRESENTED ..................................................................................8

ARGUMENT ......................................................................................................9

    I.    Legal Standards ................................................................9

        A.    12(b)(6) Motion to Dismiss ........................................9

        B.    Breach of Contract under Delaware Law ..................11

        C.    Federal Pleading Standards........................................12

    II.    Finjan's Complaint States a Claim for Breach of Contract for Trustwave's Failure to Pay Royalties, for Trustwave's Noncompliance with a Contractually-Agreed-Upon Audit, and for Trustwave's Failure to Reimburse Finjan for the Costs of the Audit ...........................................................................14

        A.    The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Failure to Pay Royalties.................................................................14

        B.    The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Noncompliance with the Audit .................................17

        C.    The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Failure to Reimburse Finjan for the Cost of the Contractually-Permitted Audit ........................................................19

    III.    The "Standard for Patent Infringement" Is Inapplicable to Finjan's Breach of Contract Action ...................................22

CONCLUSION .................................................................................25

## <u>TABLE OF AUTHORITIES</u>

C<small>ASES</small>                                                                                    **Page(s)**

*In re Benzene Litig.*,
  2007 WL 625054 (Del. Super. Feb. 26, 2007) ...................................................9

*Cambium Ltd. v. Trilantic Capital Partners III, L.P.*,
  36 A.3d 348 (Del. 2012) ...............................................................................13, 22

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
  27 A.3d 531 (Del. 2011) ...........................................................................*passim*

*Costello v. Cording*,
  91 A.2d 182 (Del. 1952) .................................................................................11

*Doe 30's Mother v. Bradley*,
  58 A.3d 429 (Del. Super. 2012).........................................................................9

*Furman v. Del. Dept. of Transportation*,
  30 A.3d 771 (Del. 2011) .................................................................................10

*Interim Healthcare, Inc. v. Spherion Corp.*,
  884 A.2d 513 (Del. Super. 2005), aff'd, 886 A.2d 1278 (Del. 2005) ..........11, 14

*Klein v. Sunbeam Corp.*,
  94 A.2d 385 (Del. 1952) ...............................................................................6, 19

*Markow v. Synageva Biopharma Corp.*,
  2016 WL 1613419 (Del. Super. Mar. 3, 2016)...........................................11, 22

*NewYork.Com Internet Holdings, Inc. v. Entm't Benefits Group, LLC*,
  2015 WL 4126653 (Del. Ch. July 8, 2015) .........................................................9

*VLIW Tech., Inc. v. Hewlett-Packard Co.*,
  840 A.2d 606 (Del. 2003) ...........................................................................10, 12

*Winshall v. Viacom Intern., Inc.*,
  76 A.3d 808 (Del. 2013) ..............................................................................13, 22

**STATUTES**

28 U.S.C. § 1338(a) ............................................................................3

28 U.S.C. § 1446.............................................................................22

**RULES**

Super. Ct. Civ. R. 8 .......................................................................10, 11

Super. Ct. Civ. R. 12(b)(1)................................................................23

Super. Ct. Civ. R. 12(b)(6)...........................................................*passim*

Plaintiff Finjan, Inc. ("Finjan" or "Plaintiff") hereby opposes the Motion to Dismiss of Defendant Trustwave Holdings, Inc. ("Trustwave" or "Defendant"). In opposition thereto, Finjan respectfully states as follows:

## NATURE OF PROCEEDINGS

Finjan filed its Complaint on April 4, 2018, alleging three causes of action, each one articulating a separate basis by which Trustwave breached an Amended and Restated Patent Licensing Agreement (the "Agreement") between Finjan and Trustwave. (Dkt. No. 1) Finjan's Complaint seeks over $1.5 million, plus pre- and post-judgment interest and attorneys' fees. (*Id.*)

The Complaint was served by the Sheriff on Trustwave's registered agent on April 19, 2018. (Dkt. No. 4) Trustwave requested an extension of time to respond, and the parties stipulated to the date—June 8, 2018—by which Trustwave would move, answer, or otherwise plead in response to the Complaint. (Dkt. Nos. 6, 7) On June 8, 2018, Trustwave moved to dismiss pursuant to Superior Court Civil Rule 12(b)(6) but failed to file its opening brief. (Dkt. Nos. 8, 10) Finjan pressed Trustwave several times for its missing opening brief, and in response, on June 15, 2018, Trustwave sought a retroactive extension of an additional 21 days beyond the agreed-upon date of June 8 to file its opening brief. (Dkt. No. 9) On June 19, 2018, the Court granted Trustwave's request. (Dkt. No. 12) Trustwave finally

filed its Opening Brief on June 29, 2018.  (Dkt. No. 17)  This is Finjan's

Answering Brief in Opposition to Trustwave's Motion to Dismiss.

In its Opening Brief, Trustwave agrees or does not dispute:

1) that a valid and enforceable agreement exists between the parties;

2) that Trustwave has failed to pay the royalties sought by Finjan's first cause of action;

3) that Trustwave has failed to comply with the requested audit as pleaded in Finjan's second cause of action; and

4) that Trustwave has failed to pay the costs of the audit as pleaded in Finjan's third cause of action.

Despite all of this, Trustwave argues that Finjan has failed to state a claim for which relief can be granted, because, according to Trustwave, Finjan's allegations are "summary," "conclusory," "deficient," and/or "inadmissible," and do not meet the federal standard for pleading patent infringement (though Trustwave does not explain how or why federal precedent is binding on this Court for this breach of contract case).  Putting aside Trustwave's improper invocation of federal patent law and the pleading requirements thereto, Trustwave's argument amounts to many fact-dependent defenses, most of which rely on direct contradictions of the detailed facts alleged in Finjan's Complaint.  In short, by explaining in detail why it believes Finjan is not entitled to any relief, Trustwave's

arguments make clear that Trustwave is on notice of precisely what Finjan seeks in its Complaint.  Trustwave's brief effectively supports Finjan's case as to why the Complaint is legally sufficient, and why Trustwave's motion should be denied.

Finjan did not file a lawsuit alleging patent infringement, nor could in do so in this Court.  *See* 28 U.S.C. § 1338(a) ("The district courts shall have exclusive jurisdiction or any civil action arising under any Act of Congress relating to patents . . . .").  Trustwave fails to show why Finjan must allege patent infringement in a simple breach of contract case.  Trustwave spills more (virtual) ink explaining the (inapplicable) "Standard for Patent Infringement" than it does to acknowledge the well-established standard for a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6) or the required elements for pleading breach of contract.  Applying the correct standard here leads to the inexorable conclusion that Finjan's Complaint must survive Trustwave's motion.

Trustwave has appended to its Opening Brief copies of the Agreement (Dkt. No. 17 at Exhibit A) and the Finjan Royalty Inspection Report of Trustwave (the "Royalty Inspection Report") (Dkt. No. 17 at Exhibit B), insinuating that Finjan has sought to distance itself from these documents (Op. Br. at 1-2), and claiming that the plain language of these documents may be interpreted, as a matter of law, to foreclose Finjan's entitlement to any relief.  *Id.*  But neither proposition is true.  First, Finjan embraces both documents, because they form the basis for Finjan's

claims against Trustwave.  (*See* Compl. at ¶¶ 23-26, 30-31, 35-37.)  Second, on a motion to dismiss, the Court must accept as true all well-pled factual allegations, and draw all reasonable inferences in the non-moving party's favor.  Trustwave's argument is premised on urging the Court to reject Finjan's well-pled factual allegations, and to draw inferences *against* Finjan.  That is not the standard, and Trustwave's attempt to argue otherwise should be rejected.

For these reasons, as set forth in more detail below, Finjan respectfully requests that the Court deny Trustwave's Motion to Dismiss.

## COUNTERSTATEMENT OF FACTS

As set forth in the Complaint, Finjan and Trustwave entered into the Agreement, "which is a binding contract supported by offer, acceptance, and mutual consideration." Compl. ¶ 6. The Agreement "SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE." Dkt. No. 17, Ex. A (Agreement) § 6.6 (capitalization in original). The Agreement contains a Delaware venue provision specifically noting that the parties "irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts." *Id.* at § 6.4.1.

The Agreement granted Trustwave per se a license to certain Finjan patents. *Id.* However, Section 2.5 of the Agreement entitled Finjan to certain royalties in the event Trustwave was acquired. Compl. ¶ 7.

In 2015, Trustwave informed Finjan that it was in the process of being acquired by Singtel. Compl. ¶ 9. Specifically, in a July 22, 2015 email, Trustwave informed Finjan that it agreed that Section 2.5 applied to the acquisition of Trustwave by Singtel. Compl. ¶ 10. In the fall of 2015, Trustwave and Finjan

were nearing agreement regarding royalties, when Trustwave, without warning, stopped responding to Finjan's emails, refusing to negotiate with Finjan any further.  Compl. ¶ 11.  Finjan informed Trustwave on November 16, 2015, and December 30, 2015, that Trustwave was in breach of the Agreement.  Compl. ¶ 12.

Six months later, on June 22, 2016, Finjan requested an audit pursuant to Section 3.4 of the Agreement.[1]  Compl. ¶ 13.  The language of Section 3.4 gives the mutually agreed-upon auditor the ability to "determine the royalties paid hereunder."  Compl. ¶ 13.  Finjan proposed an auditor who specialized in intellectual property audits; however, Trustwave rejected Finjan's choice and insisted on an auditor from one of the "big four" accounting firms.  Trustwave suggested KPMG as a potential independent auditor.  Compl. ¶ 13.  Finjan agreed, and pursuant to Section 3.4 of the Agreement, paid for that independent audit. Compl. ¶ 13.

---

[1] Trustwave complains about Finjan's recitation of the sequence of events that lead to the filing of Finjan's Complaint to vindicate its rights against Trustwave as "mischaracterized," and "clearly inadmissible."  Op. Br. at 12, fn. 4. That Trustwave does not agree with the statements in Paragraphs 10, 11, 12 and 16 of the Complaint is irrelevant on a motion to dismiss.  Trustwave has invoked the Rule 12(b)(6) standard, which entitles Finjan to the assumption that these allegations—and all reasonable inferences flowing from them—are true.  On a motion to dismiss, it is also irrelevant that Trustwave believes these allegations to be inadmissible at trial.  *See Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del. 1952).  Trustwave has cited no case—because there is none—to the contrary.

KPMG attempted to perform its audit, but, in violation of Section 3.4 of the Agreement, Trustwave refused to provide KPMG information, including certain sales and technical information.  Compl. ¶ 14.  The auditor made two calculations of the amount owed by Trustwave:  First, using Trustwave's definition of what products were within the scope of the Agreement, KPMG concluded that an additional $160,524.91 was due.  Second, based on KPMG's analysis and with input from Finjan, KPMG determined that $1,526,445.95 was due.  *See* Compl. ¶ 15; Dkt. No. 17, Ex. B.  Further, due to the amount of the underpayment, Trustwave was also required under the Agreement to reimburse Finjan for the audit, in the amount of $50,654.67.  Compl. ¶ 15.  Trustwave refused to pay any of it.  Compl. ¶ 15.

On March 6, 2018, Finjan reiterated its request for Trustwave to pay the amount determined by KPMG.  Compl. ¶ 16.  Trustwave instead suggested a "CEO-to-CEO conversation," to which Finjan promptly agreed and provided its CEO's contact information.  Compl. ¶ 16.  Trustwave never reached out to Finjan's CEO.  Compl. ¶ 16.  This lawsuit followed.

## <u>QUESTION PRESENTED</u>

Whether Finjan's Complaint, which alleges breaches of contract by Trustwave for 1) failure to pay royalties required under the parties' Agreement; 2) noncompliance with the Agreement for failing to provide information for the audit; and 3) failure to reimburse Finjan for the costs of the audit, is susceptible to dismissal, where it more than complies with the applicable Delaware law, but where Trustwave argues it is subject to Trustwave's interpretation of the federal standard for alleging patent infringement.

# ARGUMENT

## I.      Legal Standards

### A.      12(b)(6) Motion to Dismiss

In Delaware, motions to dismiss pursuant to Rule 12(b)(6) are governed by a "reasonable conceivability" pleading standard. *NewYork.Com Internet Holdings, Inc. v. Entm't Benefits Group, LLC*, 2015 WL 4126653, *5 (Del. Ch. July 8, 2015). Under this standard, the court "should accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as well-pleaded if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion to dismiss unless the plaintiff could not recover under any reasonably conceivable set of circumstances. . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *see also Doe 30's Mother v. Bradley*, 58 A.3d 429, 443 (Del. Super. 2012) ("When considering a motion to dismiss, the Court must read the complaint generously, accept all of the well-plead allegations contained therein as true, and draw all reasonable inferences in a light most favorable to the non-moving party.") (internal quotations and citations omitted).  Plaintiff's burden is "minimal." *Cent. Mortg. Co.*, 27 A.3d at 536.  Dismissal is inappropriate where there is even a "possibility of recovery." *NewYork.Com Internet Holdings, Inc.*, 2015 WL 4126653, at *5; *see also In re Benzene Litig.*, 2007 WL 625054 at *5

(Del. Super. Feb. 26, 2007) *quoting Costello v. Cording*, 91 A.2d 182, 184 (Del. 1952) ("[A]s then Judge Terry recognized in one of the first decisions to interpret Delaware's newly adopted Rule 8: 'the pleader is not required in a statement of claim to narrate facts sufficient to constitute a cause of action, nor is he required to spell out the definite verbiage of the wrongs complained of if the missing elements, or element, follow, or may reasonably be inferred from the facts that are alleged.' The Court must view the complaint as an integrated document—all of the allegations must be considered when determining whether the complaint provides fair notice of the claims.").

On a 12(b)(6) motion, the Court may consider documents integral to and referenced in the pleadings without converting a motion to dismiss to a motion for summary judgment. *Furman v. Del. Dept. of Transportation*, 30 A.3d 771, 774 (Del. 2011) ("We held that there were only two exceptions to the general rule prohibiting consideration of such extrinsic material on a motion to dismiss: (1) where an extrinsic document is integral to a plaintiff's claim and is incorporated into the complaint by reference, and (ii) where the document is not being relied upon to provide the truth of its contents.") (internal citations omitted). But, it is not within the scope of a 12(b)(6) motion for the Court to make factual findings or to determine the admissibility of any fact or circumstance pleaded in the Complaint. *See VLIW Tech.*, 840 A.2d at 611, *quoting Klein*, 94 A.2d at391 ("A

complaint that gives fair notice 'shifts to the defendant the burden to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses.'  Accordingly, under Delaware's judicial system of notice pleading, a plaintiff need not plead evidence.  Rather, the plaintiff need only allege facts that, if true, state a claim upon which relief can be granted."); *Costello v. Cording*, 91 A.2d 182, 184 (Del. 1952) ("The theory in part in adopting our new rules of civil procedure was to discard the niceties and technicalities of pleading, that theretofore prevailed, by doing away with the troublesome burden of revealing the facts and settling the issues in dispute.  These functions are now disposed of by the deposition-discovery procedure and pre-trial hearings.  Thus, the underlying purpose of Rule 8(a) is to give the adverse party a clear indication of the precise nature of the pleader's claim in simple, plain, and understandable language.").

### B.    Breach of Contract under Delaware Law

"Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages." *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005), aff'd, 886 A.2d 1278 (Del. 2005).  "To survive a motion to dismiss for failure to state a breach of contract claim, a plaintiff must allege (1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) resulting damage." *Markow v. Synageva Biopharma Corp.*, 2016 WL 1613419, at *4 (Del.

Super. Mar. 3, 2016) (citing *VLIW Tech., Inc. v. Hewlett-Packard Co.*, 840 A.2d

606, 612 (Del. 2003).  While this Court may interpret the terms of contract on a

motion to dismiss, dismissal is proper only if "allegations in the complaint or in the

exhibits incorporated into the complaint effectively negate the claim as a matter of

law," and "if the defendants' interpretation is the *only* reasonable construction as a

matter of law."  *VLIW Tech.*, 840 A.2d at 612 (citing *Malpiede v. Townson*, 780

A.2d 1075, 1083 (Del. 2001) and *Vanderbilt Income and Growth Associates,*

*L.L.C. v. Arvida/JMG Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)) (emphasis

in original).

### C.    Federal Pleading Standards

While Trustwave attempts to morph Finjan's breach of contract case into a

patent infringement case, it has not cited a single case applying the "Standard for

Patent Infringement" to modify the elements required to be plead for a breach of

contract case in Delaware state court, or a single case requiring a plaintiff to plead

patent infringement for a breach of contract case in Delaware state court.  Federal

pleading standards are inapplicable unless the Delaware Supreme Court rules

otherwise.  *See, e.g., Cent. Mortg. Co.*, 27 A.3d at 537 ("Since the Supreme Court

decided *Twombly* in 2007, various members of the Court of Chancery have cited

the *Twombly-Iqbal* 'plausibility' standard with approval when adjudicating

motions to dismiss.  We have not had occasion yet to address the impact, if any,

that the United States Supreme Court's holdings in *Twombly* and *Iqbal* should have on the Delaware standard. [. . .]  We decline to use this case as the vehicle to address whether the *Twombly-Iqbal* holdings affect our governing standard, considering that the parties have not fully and fairly litigated the issue before either the Vice Chancellor or this Court.  Instead, we emphasize that, until this Court decides otherwise or a change is duly effected through the Civil Rules process, the governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"); *Winshall v. Viacom Intern., Inc.*, 76 A.3d 808, 813 fn 12 (Del. 2013); *Cambium Ltd. v. Trilantic Capital Partners III, L.P.*, 36 A.3d 348 (Del. 2012).[2]

---

[2] Trustwave's attempt at invoking Rule 11 for a purported failure to adhere to inapplicable federal pleading standards is without merit, to say the least.

## II. Finjan's Complaint States a Claim for Breach of Contract for Trustwave's Failure to Pay Royalties, for Trustwave's Noncompliance with a Contractually-Agreed-Upon Audit, and for Trustwave's Failure to Reimburse Finjan for the Costs of the Audit

The parties contracted that the Agreement "shall be governed by and construed in accordance with the laws of the State of Delaware *applicable to contracts* made and performed in such state."  Dkt. No. 17, Ex. A (Agreement) § 6.6 (emphasis supplied).  Finjan has alleged three breaches of contract by Trustwave that entitle Finjan to damages.  For each of these three breaches of contract, the Complaint sets forth the required elements under "the laws of the State of Delaware applicable to contracts made and performed in such state":

> (1) a contractual obligation;
> (2) a breach of that obligation; and
> (3) resulting damages.

*Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005), aff'd, 886 A.2d 1278 (Del. 2005).  Contrary to Trustwave's contentions, Delaware contract law does not contemplate a heightened pleading standard by which federal patent law applies.

### A. The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Failure to Pay Royalties

The Complaint more than meets the "reasonable conceivability" standard for its breach of contract claim against Trustwave for failing to pay royalties required under the Agreement.  The language of the Complaint is clear, and assuming all

facts as true, and drawing all inferences in Plaintiff's favor, the Complaint entitles Finjan to the relief it has sought.

The Complaint alleges that Finjan and Trustwave entered into the Agreement.  Compl. at ¶ 24.  The Complaint alleges that the Agreement  permits an auditor to determine what additional royalties, if any, are owed in the event of an acquisition.  Compl. ¶¶ 24-25.  The Complaint alleges that KPMG "concluded that at least $1,526,445.95 in additional royalties were owed by Trustwave to Finjan, based on available information."  Compl. ¶ 25.  The Complaint alleges that Trustwave continues to refuse to pay those owed royalties.  Compl. ¶ 25.  Finally, the Complaint alleges damages as a result of Trustwave's breach.  Specifically, as alleged in Finjan's complaint, as determined by KPMG (the auditor selected by Trustwave), Finjan "has suffered damages, in the amount of at least $1,526,445.95 for the period of January 1, 2014 through December 31, 2016, based on the information made available to Finjan."  Compl. ¶ 28.

Trustwave does not dispute the existence of the Agreement.  Op. Br. at 6. But, Trustwave disputes the allegations pleaded in Paragraphs 24-25 of the Complaint, contending instead that "the Parties certainly did not delegate any decision making power to the 'auditor'" and that "the Inspection section confers a limited accounting role to a third-party to verify the volume of specific sales/revenues."  Op. Br. at 2-3.  Trustwave disputes that KPMG "had [the] power

to adjudicate" and "did not adjudicate in any way, whether certain products were covered by the agreement or whether royalties are due and owing on such products[.]" Op. Br. at 2. And, Trustwave claims—in contradiction of the Complaint and the Royalty Inspection Report, attached as Exhibit B to its Opening Brief[3]—that KPMG "analyzed no products or patents and made no assessments concerning the applicability of various contractual provisions."[4] Op. Br. at 3; *see also* Op. Br. at 12. On a motion to dismiss, Trustwave cannot prevail by contradicting the factual allegations pleaded in the Complaint. *Cent. Mortg. Co.*, 27 A.3d at 535. And, for those contentions that are anything less than a direct contradiction of the Complaint, it is not the law that Trustwave—rather than Finjan—is entitled to inferences drawn in its favor. *Id.*. If Trustwave wanted to deny and contradict each and every allegation in the Complaint (other than what it describes as the "sole operative allegation" (see Op. Br. at 3, fn. 1) it should have filed an Answer articulating its denials.

---

[3] The Royalty Inspection Report notes that "KPMG identified royalty bearing products ***based on its own web research*** as well as direction from Finajn [sic]." Dkt. No. 17, Ex. B. at fn. 2 (emphasis added).

[4] Trustwave's claim that it "offered Finjan the opportunity to conduct a scientific review of any product Finjan would identify as being covered by a valid patent" is disingenuous, as Trustwave only made this offer after the conclusion of the audit, after it spend months hiding and refusing to provide information to KPMG.

**B.     The Complaint States a Claim Against Trustwave for
         Breach of Contract Based on Trustwave's
         Noncompliance with the Audit**

Likewise, the Complaint more than meets the pleading standard to establish

Finjan's entitlement to relief on its second cause of action related to Trustwave's

noncompliance with the audit.

The Complaint alleges that Finjan and Trustwave entered into the

Agreement.  Compl. ¶ 24.  The Agreement requires that Trustwave shall "permit

such of their books and records necessary to determine the royalties paid

hereunder, to be examined by an auditor or independent accounting firm mutually

selected by Licensor and Licensee."  Compl. ¶ 13; *see also* Compl. ¶ 31 ("The

Agreement allows for audits of Trustwave to determine whether additional

royalties are due.  In the event of such an audit, Trustwave is required to permit[]

its books and records to be examined by an auditor.").  The Complaint alleges that,

even though the Agreement obligated Trustwave to provide KPMG with its books

and records necessary to determine the appropriate royalty, KPMG "was denied

various information by Trustwave, in violation of Section 3.4 of the Agreement."

Compl. ¶ 14.  "Among other things, Trustwave refused to provide sales and

technical information on products Trustwave did not believe were within the scope

of the Agreement, unilaterally dictating the terms of KPMG's audit, and violating

the Agreement."  Compl. ¶ 14.  The Complaint alleges that as a result of

Trustwave's breach of the Agreement, Finjan has suffered damages in an amount to be determined at trial.  Compl. ¶ 33.  Assuming the truth of each of these allegations, Finjan's second cause of action states a claim and survives a motion to dismiss. *Cent. Mortg. Co.*, 27 A.3d at 535.

Trustwave does not dispute—or even address—these allegations.  In fact, one of the documents on which Trustwave relies, the Royalty Inspection Report, buttresses the allegations in the Complaint because it makes clear that Trustwave breached its obligations by failing to comply with the audit.  *See* Dkt. No. 17 at Ex. B (Royalty Inspection Report).  Footnotes 1 and 2 of the Royalty Inspection Report state (emphasis added):

> ***As no version or product creation information was provided by Trustwave***, KPMG's calculation is based on all identified SKUs as being royalty bearing and not qualifying as 'Existing Business'.

> -and-

> ***Trustwave identified specific product SKUs as using Finjan technology***, but their position is no royalties are owed on these products as they are 'Existing Business' as defined under the license agreement.

> -and-

> Trustwave only provided access to product engineering employees in the SWG and SEG product group area for those SKUs ***they deemed relevant*** to the Finjan patent.

Trustwave wishes to incorporate by reference the Royalty Inspection Report into the record on its Motion to Dismiss (Op. Br. at 2); Finjan agrees.  There is no question that the Complaint sufficiently pleads a breach of Trustwave's obligation to comply with the audit, and the Royalty Inspection Report establishes additional facts in support thereof.  To the extent Trustwave disputes KPMG's royalty determination, that is an issue of fact to be resolved at trial following discovery.  It is not susceptible to dismissal on the 12(b)(6) standard.  *Klein*, 47 Del. at 537 (explaining that once a plaintiff has given fair notice of the cause of action asserted, the burden shifts to the defendant "to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses.").

**C.     The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Failure to Reimburse Finjan for the Cost of the Contractually-Permitted Audit**

Similarly, Finjan has more than met the bar to allege its third cause of action relating to Trustwave's breach of its obligation to reimburse Finjan for the cost of the contractually-permitted audit per the terms of the Agreement.

The Complaint alleges that Finjan and Trustwave entered into the Agreement.  Compl. ¶ 24.  The Complaint alleges that the Agreement states that "those audit fees could be shifted to Trustwave if the audit revealed an underpayment of a certain amount."  Compl. ¶ 13; *see also* Compl. ¶ 36 ("[I]f the audit reveals an underpayment in excess of the greater of ███ or ████████ then ███████████████████████████████████████████████████████

Licensee shall, within 30 days, reimburse Licensor for the costs of such audit.").
The Complaint alleges that even though KPMG's audit determined that Trustwave
was in underpayment in excess of the greater of ▮▮ or ▮▮▮▮▮ "Trustwave
refuses to pay that amount."  Compl. ¶ 37.  The Complaint alleges that Finjan has
suffered damages of "at least $50,654,67 for the cost of the audit."  Compl. ¶ 15.

As with Finjan's second cause of action, Trustwave does not dispute—or
even address—these allegations.  Instead, Trustwave argues, without any citation
to a provision of the Agreement or to any case law, that Finjan's second and third
causes of action should be dismissed because Singtel's acquisition of Trustwave
needed to have been pleaded as a "qualifying event to convert the Agreement from
a fully paid-up license to a royalty-bearing one."  Op. Br. at 18 ("it is clear that
even in the event of a qualifying transaction, Trustwave's continued operations are
not subject to alteration of its paid-up status."); *see also* Op. Br. at 3, fn. 1; at 6; at
10 ("Although Trustwave disputes that the Singtel acquisition triggered the
payment of royalties…").

First of all, Finjan does not agree with Trustwave's contention that the
Complaint does not allege "a qualifying event to convert the Agreement from a
fully paid-up license to a royalty-bearing one."  *See* Op. Br. at 19.  To the contrary,
Finjan has alleged a qualifying event:  that upon acquisition, pursuant to Sections
1.13, 2.4, and 2.5, the Agreement would impose a royalty on Trustwave products.

Compl. ¶¶ 9-10. Indeed, the Complaint alleges that Trustwave agreed that Section 2.5 applied to the acquisition of Trustwave by Singtel (Compl. ¶ 10), thereby effectively conceding the occurrence of a qualifying event that triggered additional royalties. Trustwave is on notice of exactly what Finjan is seeking, and why.

Second, Finjan's second and third causes of action arise out of the audit rights set forth in Section 3.4 of the Agreement, which have nothing to do with whether Trustwave was acquired. *See* Dkt. No. 17, Ex. A (Agreement) at 3.4. The Agreement allows for audits of Trustwave, period. *Id.* ("Licensee further agrees to permit its books and records…to be examined by an auditor or independent accounting firm mutually selected by Licensor and Licensee from time-to-time during regular business hours, but not more than once a year."). Therefore, with respect to Finjan's second and third causes of action specifically, nothing related to Singtel's acquisition is relevant at all, and need not be pleaded.

Third, Trustwave's argument here only serves to highlight the dispute between the parties regarding whether the Singtel acquisition converted the Agreement from a paid-up license. Trustwave summarizes the dispute itself when it states that "these royalty obligations are only applicable *if Finjan is correct concerning the nature of the Singtel acquisition*." Op. Br. at 7 (emphasis added). This is exactly the sort of dispute between the parties that, at the motion to dismiss

stage, is presumed to be resolved in Finjan's favor.  *Markow*, 2016 WL 1613419, at *5.

## III. The "Standard for Patent Infringement" Is Inapplicable to Finjan's Breach of Contract Action

There is not a single case, nor has Trustwave cited one,[5] to support its contention that Finjan's Complaint is subject to any federal pleading standards, let alone the pleading standard for patent infringement.  Federal pleading standards are not applicable in Delaware state courts unless the Delaware Supreme Court says they are.  *Cent. Mortg. Co*, 27 A.3d at 537.  The Delaware Supreme Court has reiterated, time and again, that the standard on a 12(b)(6) motion to dismiss is reasonable conceivability.  *Id.*; *Winshall,* 76 A.3d at 813 fn 12 (Del. 2013) ("But, and to reiterate our holding in Central Mortgage, until this Court is persuaded of that in a fully litigated case, or until the current standard is changed by an appropriate procedural rule amendment, reasonable conceivability is the Rule 12(b)(6) pleading standard in Delaware."); *Cambium Ltd.*, 36 A.3d at 348.

Finjan did not file a claim for patent infringement.  If Trustwave actually believed Finjan's Complaint to be one for patent infringement masquerading as a breach of contract claim (*see* Op. Br. at 1), Trustwave could have removed this case to the District of Delaware.  28 U.S.C. § 1446.  Trustwave did not remove.

---

[5] Of the 17 cases Trustwave cites in its Opening Brief, only 5 are Delaware cases.  The remaining 12 are (inapplicable) federal cases.

Or, Trustwave could have filed a motion to dismiss based on lack of subject matter jurisdiction of the Delaware court to address the purported patent infringement claims. *See* Del. Super. Civ. R. 12(b)(1). Trustwave did not so move.

Furthermore, Trustwave's position makes little sense: If Finjan had to plead patent infringement to collect royalties under the Agreement, the Agreement itself would be superfluous, because Finjan does not need such an agreement with Trustwave to bring patent infringement claims against Trustwave for royalties. Rather, the Agreement is intended to address such disputes and contemplates that an auditor shall determine the royalty amount. *See* Compl. ¶¶ 13, 24, 25; *see also* Dkt. No. 17, Ex. A (Agreement) at Section 3.4. There is no requirement under Delaware law to plead either patent infringement or patent validity.

The Agreement does not contain a provision requiring Finjan to plead patent infringement (by identifying products, patents, or otherwise) in order to enforce its rights to collect royalty payments due and owing, nor does Trustwave cite to one. Op. Br. at 19. To the contrary, the Agreement states that it "shall be governed by and construed in accordance with the laws of the State of Delaware *applicable to contracts* made and performed in such state." Dkt. No. 17, Ex. A (Agreement) § 6.6 (emphasis supplied). Thus, the parties' choice of law provision specifically invokes the Delaware law of *contracts* (and not the federal law of patent infringement).

Trustwave's assertion in its Opening Brief that it cannot owe any royalties absent a showing of patent infringement is also belied by Trustwave's course of conduct prior to the point at which the dispute at issue in this lawsuit arose. Specifically, pursuant to the Agreement, Trustwave identified what it conceded were covered products and services (i.e., "identified specific product SKUs as using Finjan technology"), though it claimed that those products were "Existing Business." Dkt. No. 17, Ex. B (Royalty Inspection Report) at fn. 1.   In other words, Trustwave conceded that certain products were covered by the Agreement, such that KPMG, even under Trustwave's own self-serving definition of products, concluded that $160,524.91 was still owed to Finjan.  Compl. ¶ 15; *see also* Dkt. No. 17, Ex. B (concluding $160,524.91 as "Potential Royalties Due for Royalty Bearing Products identified by Trustwave.").  Accordingly, there is no dispute that at least some Trustwave products are covered by the Agreement, and the full scope of covered products will be an issue for the finder of fact to determine.

## CONCLUSION

For the foregoing reasons, Plaintiff Finjan, Inc. respectfully requests that this Court deny the Motion to Dismiss of Defendant Trustwave Holdings, Inc., and award Finjan any other relief the Court deems appropriate.

Dated:  July 30, 2018

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th
Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Mary F. Dugan*
_____

Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

|  |  |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENT
AND TYPE-VOLUME LIMITATION**

1.     This document complies with the typeface requirement of Superior Court Civil Rule 107(b) because it has been prepared in Times New Roman 14 point typeface using Microsoft Word 2010.

2.     This document complies with the type-volume limitation of Superior Court Civil Rule 107(h)(1) because it contains 5,267 words, which were counted by Microsoft Word 2010.

Dated:  July 30, 2018

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th
Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/Mary F. Dugan*
_____
Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

EFiled:  Sep 07 2018 03:44PM EDT
Transaction ID 62426967
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I, Mary F. Dugan, Esquire, hereby certify that on September 7, 2018, I

caused true and correct copies of the foregoing document to be served upon the

following counsel of record as indicated:

---

**For Defendant, Trustwave Holdings, Inc.:**

**VIA FILE & SERVEXPRESS AND E-MAIL:**

Jack B. Blumenfeld                  jblumenfeld@mnat.com
Alexandra M. Cumings                acumings@mnat.com
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

**VIA E-MAIL:**

John S. Letchinger                  jletchinger@bakerlaw.com
Matthew J. Caccamo                  mcaccamo@bakerlaw.com
BAKER & HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL 60606-1901

---

YOUNG CONAWAY STARGATT & TAYLOR, LLP

September 7, 2018          /s/ Mary F. Dugan
                          Karen L. Pascale (#2903) [kpascale@ycst.com]
                          Mary F. Dugan (# 4704) [mdugan@ycst.com]
                          Rodney Square
                          1000 North King Street
                          Wilmington, DE 19801
                          Telephone:  (302) 571-6600

01:23610458.1

*Attorneys for Plaintiff,*
*Finjan, Inc.*

01:23610458.1

EFiled:  Sep 13 2018 08:56PM EDT
Transaction ID 62451717
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | PUBLIC VERSION |
| | ) | EFILED AUGUST 13, 2018 |
| Defendant. | ) | |


## DEFENDANT TRUSTWAVE HOLDINGS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................1

II.  ARGUMENT..................................................................................3

    A.   Finjan Fails to Address Any Trustwave Products Allegedly At Issue..3

    B.   Finjan's Misplaced Reliance on the Inspection Report Does Not
        Remedy the Otherwise Deficient Complaint…………………………5

    C.   A Claim for Breach of a Patent License Agreement Necessarily
        Entails Analysis of the Underlying Patents and, Ultimately, Proof of
        Infringement of a Valid Licensed Patent for Each Alleged Licensed
        Product …………………………………………………….……..…8

    D.   Finjan's Complaint Fails to Sufficiently Plead the Requisite
        Occurrences to Trigger Royalty Payment Obligations…………...…11

    E.   Finjan Has Not Adequately Plead That Trustwave Failed to Comply
        with Section 3.4 of the Agreement………………………….………12

    F.   Finjan's Improper Jury Demand…………………………….....…14

III. CONCLUSION................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Home Products Corp. v. Norden Laboratories, Inc.,*
  1992 WL 368604 (Del. Ch. Dec. 11, 1992) ........................................................9

*Boyce Thompson Inst. v. MedImmune, Inc.*,
  2009 WL 1482237 (Del. Super. Ct. May 19, 2009 ...........................................11

*Christianson v. Colt Industries Operating Corp.,*
  486 U.S. 800 (1988)............................................................................................9

*Gantler v. Stephens,*
  965 A.2d 695 (Del. 2009) .................................................................................13

*H-M Wexford LLC v. Encorp, Inc.*,
  832 A.2d 129 (Del. Ch. 2003) ............................................................................8

*Interim Healthcare, Inc. v. Spherion Corp.*,
  884 A.2d 513 (Del. Super. 2005), *aff'd*, 886 A.2d 1278 (Del. 2005) .................1

*Malpiede v. Townson*,
  780 A.2d 1075 (Del. 2001). ..............................................................................13

*U.S. Valves, Inc. v. Dray,*
  212 F.3d 1368 (Fed. Cir. 2000) ........................................................................10

*Veloric v. J.G. Wentworth, Inc.,*
  2014 WL 4639217 (Del. Ch. Sept. 18, 2014) ...............................................5, 12

*VLIW Tech., LLC v. Hewlett-Packard Co.,*
  840 A.2d 606 (Del. 2003) ..................................................................................2

## Rules and Statutes

Superior Court Civil Rule 12(b)(6) ...............................................................1, 3, 14

iv

Pursuant to Superior Court Civil Rule 12(b)(6), Defendant Trustwave Holdings, Inc. ("Trustwave") respectfully submits this Reply Brief in support of its Motion to Dismiss the Complaint ("Complaint") filed by Plaintiff Finjan, Inc. ("Finjan") and in Response to Finjan's Answering Brief.

## I.      INTRODUCTION

Remarkably, Finjan persists in its protests that this breach of patent license dispute does not implicate patents, products, or the patent laws.  This contradicts the pleading standard advanced by Finjan, citing *Interim Healthcare,* under which Finjan must properly plead "the breach of an obligation imposed by the contract." Answering Br. at p. 11.  Instead, in conclusory fashion, Finjan's Complaint merely pleads underpayment of "royalties."  Viewing all legal arguments in the most favorable light to Finjan, the only potential basis for its claim for royalties would flow exclusively from revenues generated by products or services ██████

████████████████████████████████████████████████████████████████

███████████████████████████████████ Op. Br., Ex. A (the "Agreement") at Section 1.8 (defining "Licensed Products and Services").  Yet, Finjan stands firm that it need not allege a single valid patent claim or identify a single product that it contends infringes such valid claim.  As every cause of action in Finjan's Complaint flows from Trustwave's alleged failure to pay royalties on Licensed

Products and Services under the Agreement, Finjan fails to plead the requisite

obligation imposed by the Agreement and thereby fails to state a claim under any

pleading standard.[1]

As with its Complaint, Finjan's Answering Brief ignores the language of the

contract in dispute and fails to address critical provisions that affect the

fundamental issues in this litigation.  First, as detailed above, Finjan holds firm that

its mere references to a contract, an audit, and a breach are sufficient under this

Court's pleading standard.  Further, it ignores its failure to sufficiently plead the

occurrence of requisite, contractual thresholds necessary to trigger a conversion of

this otherwise paid-up license into a royalty-bearing one.  Further yet, in its

continued effort to avoid any reference to patents, products, or the patent laws,

Finjan suggests that a routine accounting "audit" conducted pursuant to Section 3.4

"Inspection" of the License Agreement is somehow dispositive of the parties'

disputes.  In essence, Finjan urges this Court to treat this case as if it were a mere

---

[1] "In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.,* 840 A.2d 606, 612 (Del. 2003).

collection matter rather than a complex patent license dispute that requires analysis of issues under federal patent law.

All else aside, without providing a blueprint for the foundation of each of its claims—*i.e.*, the underlying identification of Licensed Patents and Licensed Products and Services—Finjan's case should not be permitted to break ground. It is unclear why Finjan has elected to read out and refuse to plead the underlying patent principals integral to the parties' Agreement and this dispute, but it is fatal to Finjan's Complaint.

Trustwave respectfully requests that Finjan's Complaint be dismissed for failure to state a claim under Rule 12(b)(6).

## II.      ARGUMENT

Instead of focusing on the dispute at issue—*i.e.*, the deficiencies in Finjan's Complaint—Finjan elected to spend the introduction of its Answering Brief rehashing a procedural dispute that has already been resolved by the Court. *See* Dkt. No. 12. Trustwave confines its Reply Brief to Finjan's pleading deficiencies.

### A.      Finjan Fails to Address Any Trustwave Products Allegedly At Issue

As with Finjan's Complaint and the Inspection Report, Finjan's Answering Brief contains no analysis whatsoever as to the products it contends are covered by the parties' Agreement or whether those products constitute "Existing Business"

3

under the Agreement.  Even assuming that the Singtel acquisition was a triggering event[2], royalty obligations are only applicable if Trustwave is selling "Licensed Products and Services under the Licensed Patents":



_____

[2] In like fashion, Finjan glosses over this dispositive issue by simply arguing that it need only allege an acquisition.  Under the terms of the Agreement, Trustwave's payment is fully paid-up.  In exchange for a fully paid-up license, ███████████ ████████████████  *See* Op. Br. at p. 6.  For the Agreement to convert to a royalty-bearing agreement and provide even more compensation to Finjan under the parties' Agreement, there are specific contractual requirements that Finjan failed to plead.  Ultimately, if Finjan fails to prove the requisite triggering events and consideration (also never mentioned in Finjan's Complaint), necessary to convert this otherwise fully paid-up license, there can be no claim for royalties here.  This critical contractual interpretation issue, if resolved in Trustwave's favor, is dispositive.

Both Finjan's Complaint and its Answering Brief fail to identify a single allegedly valid Licensed Patent[3] or Licensed Product, let alone provide any analysis of infringement of a valid claim by a Trustwave product during the relevant time period.  Finjan instead rests solely on its reference to the "Inspection Report." ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Op. Br., Ex. B (the "Inspection Report") at FN 2. As such, review of the non-independent Inspection Report further reveals that it is dispositive of nothing and provides no cover for Finjan's defective Complaint.[4]

### B. Finjan's Misplaced Reliance on the Inspection Report Does Not Remedy the Otherwise Deficient Complaint

Finjan ignores the language of the Agreement's Section 3.4 Inspection provision and the "substance" of the Inspection Report in continued effort to

---

[3] Pursuant to Section 5 of the Patent License Agreement, Finjan must have minimally plead the existence of at least one unexpired and valid Licensed Patent to establish a valid agreement. Its refusal to do so translates into a failure to plead even the most basic element of its claims. This failure in itself is grounds for dismissal. *Veloric v. J.G. Wentworth, Inc.,* 2014 WL 4639217, at *8 (Del. Ch. Sept. 18, 2014) ("The failure to plead an element of a claim warrants dismissal under Rule 12(b)(6).").

[4] As noted in Trustwave's Opening Brief, Finjan elected not to attach this allegedly core document to its Complaint.

summarily argue that its bare allegations of 1) contract, 2) inspection, and 3) failure to pay (or, provide certain information as the case may be) suffice. ▮



Thus, Finjan's allegations notwithstanding, KPMG reports that Trustwave provided the sales data KPMG requested.

The Inspection Report constitutes nothing more than a multiplication exercise, whereby KPMG multiplied a royalty rate against product sales that Finjan instructed KPMG to count. On its face, the Inspection Report represents nothing more than, at best, a hypothetical accounting exercise with no legal analysis or justification for why royalties were triggered, how products were selected, or why royalties were applied to the unidentified, selected products. This fatally flawed

---

[5] The Agreement is silent as to any notion of using anything other than the court system for resolution of disputes; to the contrary, Section 6.4.1 of the Agreement (featured by Finjan in its Answering Brief) confirms the parties' express intent to submit all disputes exclusively to the federal or state courts within the State of Delaware. As such, KPMG certainly has no authority to "arbitrate" the parties' disputes. *See, e.g., James & Jackson, LLC v. Willie Gary, LLC,* 906 A.2d 76, 79-80 (Del. 2006). KPMG, frankly, suggests nothing to the contrary in the Inspection Report.

and non-independent Inspection Report does nothing to bolster Finjan's otherwise insufficient Complaint.

In support of its conclusory references to the Inspection Report, Finjan argues that "[o]n a motion to dismiss, Trustwave cannot prevail by contradicting the factual allegations pleaded in the Complaint."   Answering Brief at p. 16. Although generally true, "[u]nder Rule 12(b)(6), a complaint may, despite allegations to the contrary, be dismissed where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."   *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 39 (Del. Ch. 2003).  Finjan's thin allegation that in the event of an acquisition, "certain royalties would be due on certain products" (*see* Compl. at ¶ 7) is inadequate, and reference to the Inspection Report is unavailing to remedy Finjan's calculated vague and minimal pleading approach.

### C.   A Claim for Breach of a Patent License Agreement Necessarily Entails Analysis of the Underlying Patents and, Ultimately, Proof of Infringement of a Valid Licensed Patent for Each Alleged Licensed Product

Finjan's Answering Brief is a 25-page effort to decouple its breach of contract claims from the intertwined patent infringement analysis necessary to prove its claims.   Finjan states that "it did not file a lawsuit alleging patent infringement," and that "Trustwave attempts to morph Finjan's breach of contract

8

case into a patent infringement case." Answering Br. at pp. 3, 23.  Finjan alleges that neither Delaware law nor the parties' Agreement requires Finjan to plead patent infringement or patent validity to establish its breach of contract claim. Answering Br. at p. 23.  This is not so, however, and Finjan's stubborn refusal to discuss the patents—*i.e.*, the subject matter of the parties' **patent** license agreement at issue here—and the products allegedly prompting royalties infects all of Finjan's claims.

"In making the determination of whether patent law is a necessary element of a well-pleaded claim, a court is not bound by the form of the pleadings." *Am. Home Products Corp. v. Norden Laboratories, Inc.,* 1992 WL 368604, at *4 (Del. Ch. Dec. 11, 1992).  The Supreme Court observed that:

> [M]erely because a claim makes no reference to federal patent law does not necessarily mean the claim does not "arise under" patent law.... [A] plaintiff may not defeat § 1338 jurisdiction by omitting to plead necessary federal patent-law questions.

*Id.* (quoting *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 809 (1988).[6]  Patent law jurisdiction extends to claims where "plaintiff's right to relief

---

[6] In many of the cases cited in this section, the courts determined that federal courts had exclusive subject matter jurisdiction over certain claims due to their intersection with federal patent law. Trustwave acknowledges that Finjan's claims necessarily include analysis of federal patent law, leading to a significant subject matter jurisdiction question; on the other hand, prior to and without reliance on

necessarily depends on resolution of a substantial question of federal patent law . . . ." *U.S. Valves, Inc. v. Dray,* 212 F.3d 1368 (Fed. Cir. 2000). In *Valves*, the Seventh Circuit found that patent law was a necessary element of plaintiff's breach of contract claim:

> U.S. Valves claimed that Dray sold valves in contravention of the license agreement. However, Dray sold more than one type of valve. The Seventh Circuit reasoned that U.S. Valves' claim required a showing that Dray sold valves covered by the licensed patents. Therefore, the claim required a determination of whether Dray's valves infringed the patents, and patent law was a necessary element of U.S. Valves' breach of contract claim.

*Id.* at 1372. A judge on this Court has expressed similar views. In *Boyce Thompson Inst. v. MedImmune, Inc.,* Judge Slights reasoned that:

> On their face, BTI's claims are state-law contract and tort causes of action that are not created or governed by federal patent law. Accordingly, exclusive federal jurisdiction would exist only if BTI's "right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of" BTI's claims." Counts I–III, V, and VII–X each, in various ways, depend upon proof that the Agreement was breached. BTI must allege facts that show—under any reasonably conceivable set of circumstances susceptible of proof under the complaint—that MedImmune breached the Agreement. If, as defendants contend, the proper construction of the Agreement would require the finder of fact to determine whether either of the defendants infringed a BTI patent in order to determine that Cervarix® is a Licensed Product, such that

---

federal law, the dispositive contractual issue of whether the Singtel acquisition, in itself, failed to trigger royalty obligations can be resolved by this Court. Finjan does not contest that its claims are necessarily premised on this issue.

10

> MedImmune breached the Agreement by not paying royalties on net
> sales of Cervarix®, it would be difficult to escape the conclusion that
> patent law had become a "necessary element" of BTI's breach claim.

*Boyce Thompson Inst. v. MedImmune, Inc.*, 2009 WL 1482237, at *11 (Del. Super.

Ct. May 19, 2009).

Finjan has chosen to ignore completely the underlying foundational subject

matter of the parties' ***patent*** license agreement—its patents.  Under Delaware law,

though, Finjan's breach of patent license claims clearly implicate and are governed

by federal patent laws, notwithstanding Finjan's attempt to plead around them with

semantical gymnastics.  Although Trustwave agrees that any analysis of Finjan's

claims must begin with the Agreement, and that Finjan need not and cannot bring a

claim for patent infringement, Finjan must plead and prove infringement of one or

more valid Licensed Patents as an element of its contract claims to prevail on any

of its counts.  Thus, the sufficiency of Finjan's Complaint is properly judged by

application of Delaware contract law and federal patent law.  Finjan's failure to

satisfy the fundamental pleading requirements for, *inter alia*, patent infringement

renders its breach of contract claims woefully deficient.

### D.    Finjan's Complaint Fails to Sufficiently Plead the Requisite Occurrences to Trigger Royalty Payment Obligations

In addition to the underlying patent analysis to determine which Trustwave

products, if any, are covered by the parties' Agreement, this action is first

conditioned on the occurrence of triggering events that create a contractual obligation for Trustwave to breach.  In other words, Finjan must establish that a qualifying merger, and subsequent transfer and licensing activity, occurred, before any royalty obligations could have been triggered.  Its failure to even allege the elements required to demonstrate a triggering of royalty obligations is fatal to all of its claims.  *See Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *18 (Del. Ch. Sept. 18, 2014) ("Because Plaintiffs failed to state a claim that Wentworth is in breach of the TRA for failing to make payments to them (since there is no well-pled Change of Control alleged in the Amended Complaint), there was no contractual requirement that Holdco could have breached. Thus, Count III is dismissed for failure to state a claim for breach of contract.").  Here, Finjan's Complaint and its Answering Brief simply allege that Singtel's acquisition of Trustwave was a triggering event.  Finjan does not, and cannot, plead the occurrence of the balance of the requisite elements.  As in *Veloric*, this deficiency renders Finjan's Complaint deficient.

### E.    Finjan Has Not Adequately Plead That Trustwave Failed to Comply with Section 3.4 of the Agreement

Finjan alleges that Trustwave "refused to provide certain information on products that it contends are not within the scope of the Agreement," thereby preventing the audit to be performed in accordance with Section 3.4 and breaching

the Agreement.  Complaint at ¶ 31.  However, Finjan again mischaracterizes the express language of the Agreement.  Section 3.4 requires only that Trustwave maintain and make available to the auditor accurate and complete records ████████████████████████████████████████████████████████ ████████████████████████████████████████████ Agreement at Section 3.4.  Section 3.4 does not require that Trustwave maintain and make available all records relating to any of its products at the unfettered discretion of the auditor or Finjan.

Finjan's vague, speculative allegation in Count II that Trustwave withheld some unidentified records is not sufficient to state a claim.  *See, e.g.*, *Gantler v. Stephens,* 965 A.2d 695, 704 (Del. 2009) (The courts will not "blindly accept conclusory allegations unsupported by specific facts" nor will they draw unreasonable inferences in the plaintiff's favor).  Moreover, on the face of the Inspection Report, KPMG notes that Trustwave supplied all of the requested sales data to generate the hypothetical sales figures.  Inspection Report at FN 1.  Finjan relies on same in attempting to plead breach in Count I.  As such, Finjan's allegations in the first and second causes of action necessarily negate each other, warranting dismissal of both incongruous counts. *See Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) (finding dismissal warranted where "allegations in

the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law.").

### F.     Finjan's Improper Jury Demand

Finjan's Answering Brief fails to address the improper jury demand in its Complaint.  Finjan's Complaint includes a demand for jury trial (*see* Complaint at p. 13) notwithstanding that Section 6.4.2 of the parties' Agreement provides: "EACH OF THE PARTIES HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE IT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT."  Finjan's jury demand should, therefore, be stricken.

### III.    CONCLUSION

Trustwave respectfully requests that Finjan's Complaint be dismissed for failure to state a claim under Rule 12(b)(6).

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

August 13, 2018

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

15

EFiled:  Sep 13 2018 08:56PM EDT
Transaction ID 62451717
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2018 the foregoing document

was served upon all counsel of record via File & Serve*Xpress*.

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

**So Ordered**

/s/ Carpenter, William C   Nov 09, 2018

EFiled:  Nov 09 2018 12:52PM EST
Transaction ID 62654680
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

        Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

        Defendant.

C.A. No. N18C-04-006-WCC
(CCLD)

## [PROPOSED] ORDER

The foregoing application of John L. Cooper for admission *pro hac vice* in this action is hereby granted.

SO ORDERED this __day of _____, 2018.

_____

Hon. William C. Carpenter, Jr.

01:23470054.1

**This document constitutes a ruling of the court and should be treated as such.**

|  |  |
|---:|:---|
| **Court:** | DE Superior Court-New Castle County |
| **Judge:** | William C Carpenter |
| **File & Serve Transaction ID:** | 62307876 |
| **Case Number:** | N18C-04-006 WCC CCLD |
| **Case Name:** | Finjan, Inc. v. Trustwave Holdings, Inc. |

**Court Authorizer Comments:**

So Ordered on 11-8-18 by Carpenter, J.

**/s/ Judge Carpenter, William C**

**So Ordered**

/s/ Carpenter, William C   Nov 09, 2018

EFiled:  Nov 09 2018 12:52PM EST
Transaction ID 62654680
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

## [PROPOSED] ORDER

The foregoing application of Winston Liaw for admission *pro hac vice* in this action is hereby granted.

SO ORDERED this __day of _____, 2018.

_____

Hon. William C. Carpenter, Jr.

This document constitutes a ruling of the court and should be treated as such.

**Court:** DE Superior Court-New Castle County

**Judge:** William C Carpenter

**File & Serve Transaction ID:** 62307876

**Case Number:** N18C-04-006 WCC CCLD

**Case Name:** Finjan, Inc. v. Trustwave Holdings, Inc.

**/s/ Judge Carpenter, William C**

EFiled:  Nov 13 2018 09:35AM EST
Transaction ID 62661682
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                          )
                                      )
              Plaintiff,              )
                                      )
    v.                                )
                                      )
TRUSTWAVE HOLDINGS, INC.,             ) C.A. No. N18C-04-006 WCC CCLD
                                      )
              Defendant.              )

## **RE-NOTICE OF MOTION TO DISMISS**

PLEASE TAKE NOTICE that Defendant Trustwave Holdings, Inc.'s

Motion to Dismiss the Complaint will be presented to the Court on November 19,

2018 at 10:00 A.M.

                              MORRIS, NICHOLS, ARSHT & TUNNELL
                              LLP

OF COUNSEL
John S. Letchinger                    */s/ Alexandra M. Cumings*
BAKER& HOSTETLER LLP                  Jack B. Blumenfeld (#1014)
191 N. Wacker Drive                   Alexandra M. Cumings (#6146)
Suite 3100                            1201 North Market Street
Chicago, IL 60606-1901                P.O. Box 1347
(312) 416-6200                        Wilmington, DE  19899-1347
Jared A. Brandyberry                  (302) 658-9200
                                      *Attorneys for Defendant*

BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 861-0600

November 13, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2018 the foregoing documents were served upon all counsel of record via File & Serve*Xpress*.

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801


*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled:  Nov 19 2018 12:03PM EST
Transaction ID 62680607
Case No. N18C-04-006 WCC CCLD

# SUPERIOR COURT PROCEEDING SHEET

**Date:** November 19, 2018                          **Time:**   9:15 am
**Judge:** William C. Carpenter                **CA No:**  N18C-04-006 WCC


**Type of Hearing:**        Defendant's Motion to Dismiss

**Plaintiff's Counsel:**    Mary Dugan, Esq., Karen Pascale, Esq., John Cooper

**Defense Counsel:**        Jack Blumenfeld, Esq., John Letchinger, Esq.

**Brief Caption:**           Finjan, Inc.

                             v.

                            Trustwave Holdings, Inc.



**Decision:**               Reserved Decision.



**Court Clerk:**            Nancy Hernandez-Becerra
**Court Reporter:**         Karen Siedlecki
**Courtroom:**              8C

**EFiled: Feb 11 2019 04:22PM EST
Transaction ID 62958883
Case No. N18C-04-006 WCC CCLD**

**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

WILLIAM C. CARPENTER, JR.
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0670

February 11, 2019

Jack B. Blumenfeld, Esquire
Alexandra M. Cumings, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19801

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
Young Conaway Stargatt & Taylor
1000 North King Street
Wilmington, DE 19801

John S. Letchinger, Esquire
Baker & Hostetler
191 N. Wacker Drive
Suite 3100
Chicago, IL 60606

John L. Cooper, Esquire
Winston Liaw, Esquire
Farella Braun + Martel
235 Montgomery Street, 17th Floor
San Francisco, CA 94104

Jared A. Brandyberry, Esquire
Baker & Hostetler
1801 California Street, Suite 4400
Denver, CO 80202

> RE:  Finjan, Inc. v. Trustwave Holdings, Inc.
>        C.A. No. N18C-04-006 WCC CCLD

Dear Counsel:

After reviewing the parties' pleadings and hearing oral arguments on November 19, 2018, the Court reserved judgment on Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint.

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must assume the truthfulness of the complaint's well-pleaded

allegations,[1] and afford a plaintiff "the benefit of all reasonable inferences that can be drawn from its pleading."[2] At this preliminary stage, dismissal will be granted only when the Court is able to determine with "reasonable certainty" that the plaintiff would not be entitled to relief "under any set of facts that could be proven to support the claims asserted" in the complaint.[3]

Plaintiff Finjan's Complaint alleges that Defendant Trustwave breached the parties' Patent License Agreement ("Agreement") by failing to pay royalties purportedly triggered by Trustwave's acquisition by Singtel. The parties appear to agree that if Singtel, as the acquiring company, is now using the patent information in its business, additional royalties are required. They also reluctantly agree that if Singtel is not using the patent information and it is only being used for Trustwave's existing business, no additional royalties are required.

It also appears that if an acquisition occurred, an audit provision would kick in to allow the Plaintiff to determine if the acquiring company is now using the patent information in its products. A reasonable requirement that for some unexplained reason has not worked well in this case and has led to this lawsuit.

As a result, Finjan's suit for breach of contract may proceed, but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement. The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized. At the moment, it appears the Plaintiff was requesting an audit of matters that may not be required under the Agreement and

---

[1] *See Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38–39 (Del. 1996). *See also VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003) (noting that the complaint is to be liberally construed and under "Delaware's judicial system of notice pleading, a plaintiff need not plead evidence" but must "only allege facts that, if true, state a claim upon which relief can be granted.").

[2] *In re USACafes, L.P. Litig.*, 600 A.2d 43, 47 (Del. Ch. 1991) (noting, however, that the Court is not required to blindly accept all allegations or draw all inferences in a plaintiff's favor).

[3] *See id.* (citing *Clinton v. Enter. Rent–A–Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

was also perhaps frustrated by Defendant's failure to fully cooperate. The Court will address these issues if some liability is found by Singtel's acquisition. Therefore, Defendant's Motion to Dismiss is denied, with the stipulations explained in this letter.

Sincerely,

Judge William C. Carpenter, Jr.

cc: Nancy Hernandez-Becerra, Civil Case Manager

2019 FEB 11   P 4: 15

NCC PROTHONOTARY
FILED

EFiled:  Feb 19 2019 04:35PM EST
Transaction ID 62983727
Case No. N18C-04-006 WCC CCLD

### IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                              )
                                               )
              Plaintiff,              )
                                               )
      v.                              )
                                             )
TRUSTWAVE HOLDINGS, INC.,     )
                                           )   C.A. No. N18C-04-006-WCC [CCLD]
            Defendant.             )

### MOTION FOR LEAVE TO FILE UNDER SEAL

       Defendant Trustwave Holdings, Inc. ("Trustwave") respectfully moves pursuant to Superior Court Civil Rule 5(g) for an order permitting the filing of its Answer to Finjan, Inc.'s Complaint (the "Answer") under seal.  The bases for Trustwave's motion are as follows:

       1.     Superior Court Rule 5(g)(2) states, in relevant part, "Court Records or portions thereof shall not be placed under seal unless and except to the extent that the person seeking the sealing thereof shall have first obtained, for good cause shown, an order of this Court specifying those Court Records, categories of Court Records, or portions thereof which shall be placed under seal[.]"

       2.     On April 3, 2018, this Court granted Plaintiff's Motion for Leave to File Complaint Under Seal, and Plaintiff subsequently filed its Complaint

under seal on April 4, 2018 (Trans. ID 61873810).  Plaintiff filed a redacted public version of its Complaint on April 5, 2018 (Trans. ID 61878611).

3.     Similarly, Trustwave's Answer may contain references to sensitive, non-public information, including financial and business information that the parties will likely seek to designate as confidential information.  The disclosure of such information would result in material harm to Trustwave. There will be no harm to the public because the information to be redacted from public view is minimal.

4.     Accordingly, Trustwave respectfully submits that good cause exists for the sealing of the Answer.  Trustwave intends to file a redacted public version of the Answer within thirty (30) days in accordance with Superior Court Civil Rule 5(g)(2).  For the foregoing reasons, Trustwave respectfully requests that the Court grant it leave to file its Answer under seal pursuant to Superior Court Rule 5(g)(2).

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

February 19, 2019

/s/ Alexandra M. Cumings
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

EFiled: Feb 19 2019 04:35PM EST
Transaction ID 62983727
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that the attached Defendant's Motion for

Leave to File Under Seal will be presented at the convenience of the Court.

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:
John S. Letchinger
BAKER& HOSTETLER LLP          */s/ Alexandra M. Cumings*
191 N. Wacker Drive                Jack B. Blumenfeld (#1014)
Suite 3100                         Alexandra M. Cumings (#6146)
Chicago, IL  60606-1901            1201 North Market Street
(312) 416-6200                     P.O. Box 1347
                                   Wilmington, DE  19899-1347
Jared A. Brandyberry               (302) 658-9200
BAKER& HOSTETLER LLP          *Attorneys for Defendant*
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

February 19, 2019

EFiled:  Feb 19 2019 04:35PM EST
Transaction ID 62983727
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                        )
                                    )
            Plaintiff,              )
                                    )
      v.                            )
                                    )
TRUSTWAVE HOLDINGS, INC.,           )
                                    )   C.A. No. N18C-04-006-WCC [CCLD]
            Defendant.              )


## **[PROPOSED] ORDER**

Defendant Trustwave Holdings, Inc., having moved for leave to file its Answer to Plaintiff's Complaint under seal, and the Court having determined that good cause exists for the requested relief, now, therefore:

IT IS HEREBY ORDERED, this ___ day of _____, 2019, that Defendant's Motion is GRANTED.


_____
Judge Carpenter

**EFiled:  Feb 19 2019 04:35PM EST**
**Transaction ID 62983727**
**Case No. N18C-04-006 WCC CCLD**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2019 the foregoing documents

were served upon all counsel of record via File & Serve*Xpress*.

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

**So Ordered**

/s/ Carpenter, William C   Feb 22, 2019

EFiled:  Feb 22 2019 11:23AM EST
Transaction ID 62994385
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                                )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )
                                            )
TRUSTWAVE HOLDINGS, INC.,                   )
                                            )   C.A. No. N18C-04-006-WCC [CCLD]
                    Defendant.              )


**[PROPOSED] ORDER**

Defendant Trustwave Holdings, Inc., having moved for leave to file

its Answer to Plaintiff's Complaint under seal, and the Court having determined

that good cause exists for the requested relief, now, therefore:

IT IS HEREBY ORDERED, this ___ day of _____, 2019, that

Defendant's Motion is GRANTED.


_____

                            Judge Carpenter

This document constitutes a ruling of the court and should be treated as such.

**File & Serve**
**Transaction ID:** 62983727

**Current Date:** Feb 22, 2019

**/s/ Judge Carpenter, William C**

**EFiled: Mar 12 2019 08:27PM EDT**
**Transaction ID 63060188**
**Case No. N18C-04-006 WCC CCLD**

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |
|---|---|
| FINJAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRUSTWAVE HOLDINGS, INC., <br><br> Defendant. | C.A. No. N18C-04-006-WCC (CCLD) |

## <u>NOTICE OF SERVICE</u>

The undersigned hereby certifies that copies of 1) *Plaintiff's First Set of Interrogatories Directed to Defendant*; 2) *Plaintiff's First Set of Requests for Production Directed to Defendant*; and 3) this Notice were caused to be served on March 12, 2019 upon the following counsel of record in the manner indicated:

### <u>BY FILE & SERVEXPRESS:</u>

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
jblumenfeld@mnat.com
acumings@mnat.com

Dated:  March 12, 2019

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th
Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Mary F. Dugan*

_____

Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

01:24261067.1

**EFiled:  Mar 15 2019 11:38AM EDT**
**Transaction ID 63070862**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | )   PUBLIC VERSION |
| | )   filed March 15, 2019 |
| Defendant. | ) |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Trustwave Holdings, Inc. ("Trustwave"), by and through its undersigned counsel, answers Plaintiff Finjan, Inc.'s ("Finjan") Complaint as follows:

## NATURE OF ACTION

1.     This is a complaint for breach of contract.

**ANSWER:** Trustwave admits that the complaint purports to state an action for breach of contract, but Trustwave denies all remaining allegations in Paragraph 1.

## PARTIES

2.     Finjan is a Delaware corporation with a principal place of business at 2000 University Avenue, Suite 600, Palo Alto, California, 94303.

**ANSWER:** Trustwave lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and, therefore, denies those allegations.

3.     On information and belief, Defendant Trustwave Holdings, Inc. ("Trustwave") is a Delaware corporation with a principal place of business in 70 W. Madison St., Suite 600, Chicago, IL 60602. On information and belief, Trustwave makes, uses, sells, and/or offers to sell in the United States, or imports into the United States, including in this judicial district, cybersecurity products or processes that practice the inventions claimed in Finjan's patents.

**ANSWER:** Trustwave admits that it is a Delaware corporation with a principal place of business in 70 W. Madison St., Suite 600, Chicago, IL 60602. Trustwave lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3 and, therefore, denies those allegations.

## FINJAN'S INNOVATIONS

4.     Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation. In 1998, Finjan moved its headquarters to San Jose, California. Finjan was a pioneer in developing proactive security

technologies capable of detecting previously unknown and emerging on line security threats, recognized today under the umbrella term "malware." These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet. Finjan has been awarded, and continues to prosecute, numerous patents covering innovations in the United States and around the world resulting directly from Finjan's more than decades-long research and development efforts, supported by a dozen inventors and over $65 million in R&D investments.

**ANSWER:** Trustwave lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and, therefore, denies those allegations.

5.     Finjan built and sold software, including application program interfaces (APis) and appliances for network security, using these patented technologies. These products and related customers continue to be supported by Finjan's licensing partners. At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center, through which it frequently published research regarding network security and current threats on the Internet. Finjan's pioneering

3

approach to online security drew equity investments from two major software and technology companies, the first in 2005 followed by the second in 2006. Finjan generated millions of dollars in product sales and related services and support revenues through 2009, when it spun off certain hardware and technology assets in a merger. Pursuant to this merger, Finjan was bound to a non-compete and confidentiality agreement, under which it could not make or sell a competing product or disclose the existence of the non-compete clause. Finjan became a publicly traded company in June 2013, capitalized with $30 million. After Finjan's obligations under the non-compete and confidentiality agreement expired in March 2015, Finjan re-entered the development and production sector of secure mobile products for the consumer market.

**ANSWER:** Trustwave lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and, therefore, denies those allegations.

### **TRUSTWAVE LICENSES FINJAN'S PATENTS**

6.      Finjan and Trustwave entered into an Amended and Restated Patent License Agreement (the "Agreement"), which is a binding contract supported by offer, acceptance and mutual consideration. Among other things, under Section

4

2.1.1 of the Agreement, Finjan granted "to Licensee a limited, non-exclusive (without the right to assign except as provided in Sections 2.4 or 6.9 below), fully paid up, worldwide right and license, to:

> "(a) make, have made, use, import, sell and offer for sale (directly or indirectly, via one or more tiers of distribution channels) the Licensed Products and Services under the Licensed Patents;

**ANSWER:** Trustwave admits that Finjan and Trustwave entered the Agreement and that the Agreement is a binding contract supported by offer, acceptance, and mutual consideration. Trustwave admits that Section 2.1.1 of the Agreement in its entirety states as follows:

> 2.1.1. For good and valuable consideration, the receipt of which is hereby acknowledged, and subject to and limited by all other terms hereof including without limitation, pursuant to Section 5 below, Licensor hereby grants to Licensee a limited, non-exclusive (without the right to assign except as provided in Sections 2.4 or 6.9 below), fully paid up, worldwide right and license, to: (a) make, have made, use, import, sell and offer for sale (directly or indirectly, via one or more tiers of distribution channels) the Licensed Products and Services under the Licensed Patents; and



5



Trustwave denies all remaining allegations in Paragraph 6.

7.      Under the Agreement, in the event Trustwave was acquired, certain

royalties would be due on certain products. Specifically, Section 2.5 of the

Agreement states:

> "Acquiring Parties. In the event of an Acquisition of Licensee, all the
> provisions of this Agreement applicable to Licensee ( except as
> related to Section 3 ), shall be deemed to apply to the Acquirer, and its
> respective Affiliates that are licensed hereunder, and the royalties that

6

apply under Section 3 to Permitted Transferees shall apply (from the effective date of such Acquisition) to all Licensed Products and Services sold and licensed by the Acquirer and its Affiliates licensed hereunder that are not attributable to the Existing Business."

Section 3.2.1 of the Agreement, which provides the applicable royalty, states:

"in respect of Permitted Transferees, and OEMs which are Excluded Persons and not Threshold Value OEMs exceeding the Net Sales Threshold, the then-prevailing royalty rate to be determined and agreed in good faith by Licensor and Licensee and reviewed annually if requested by Licensor based on then current royalty rates in the enterprise software market for customers of equivalent size for similar products, and, in the absence of such agreed prevailing rate provided such absence of agreement is not due to a lack of good faith on Licensor's part, ███

Pursuant to Sections 2.5 and 3.2.1 of the Agreement, a ███ royalty would be due on "any products and services other than the Licensed Products and Services and Integrated Licensed Products and Services as actually offered and distributed by the Licensee and their Affiliates at the time of the Transfer ("Existing Business.")." Further, under Section 3.3 of the Agreement, interest at the rate of "███ per annum" would also be due on such royalties.

**ANSWER:** Trustwave admits that the Agreement contains Sections 2.5 and 3.2.1 as stated in Paragraph 7, but Trustwave denies all remaining allegations in Paragraph 7.

## SINGTEL ACQUIRES TRUSTWAVE, TRIGGERING ROYALTY CLAUSES IN THE AGREEMENT

8.     Singtel publicly announced its offer to acquire Trustwave no later than April 7, 2015. Trustwave announced on August 31, 2015, that Singtel had completed its acquisition of Trustwave, including the Trustwave products and services that are the subject of the Agreement that is at issue in this dispute. On information and belief, Singtel now wholly owns Trustwave.

**ANSWER:** Trustwave admits that Singtel publicly announced its offer to acquire Trustwave no later than April 7, 2015, that Trustwave announced on August 31, 2015 that Singtel had completed its acquisition of Trustwave, and that Singtel now wholly owns Trustwave.  Trustwave denies the remaining allegations in Paragraph 8.

9.     In 2015, Trustwave informed Finjan that Singtel was in the process of acquiring Trustwave. By mid-2015, Finjan began negotiations with Trustwave regarding the royalties due under the Agreement. Finjan explained that pursuant to Sections 1.13, 2.4 and 2.5, a ▉ royalty would be owed on products not attributable to "Existing Business," as defined by the Agreement. Finjan also explained that Section 1.4 and Exhibit B of the Agreement imposed a ▉ royalty on relevant sales.

8

**ANSWER:** Trustwave admits that in 2015 Trustwave informed Finjan that Singtel was in the process of acquiring Trustwave. Trustwave denies the remaining allegations in Paragraph 9.

10. In a July 22, 2015 email, Trustwave informed Finjan that it agreed that section 2.5 applied to the acquisition of Trustwave by Singtel.

**ANSWER:** Trustwave denies the allegations in Paragraph 10.

11. By the fall of 2015, the parties were nearing an agreement regarding additional royalties, when Trustwave suddenly, and without explanation, stopped responding to Finjan's emails, and thus refused to deal with Finjan.

**ANSWER:** Trustwave denies the allegations in Paragraph 11.

12. After Trustwave withdrew from negotiations, on November 16, 2015, Finjan notified Trustwave that it was in breach of the Agreement. On December 30, 2015, Finjan reiterated to Trustwave that it was in breach of the Agreement, stating that "Trustwave/SingTel is in breach of the license to the Finjan patents and is on notice for lack of compliance."

**ANSWER:** Trustwave admits that Finjan sent Trustwave an email on December 30, 2015 stating "Trustwave/SingTel is in breach of the license to the Finjan patents and is on notice for lack of compliance."  Trustwave denies the remaining allegations in Paragraph 12.

13.    On June 22, 2016 of 2016, Finjan requested an audit pursuant to Section 3.4 of the Agreement for an accounting of the royalties resulting from Singtel's acquisition of Trustwave. Section 3.4 of the Agreement states:

> Licensee further agrees to permit its books and records, and to require any of its Affiliates licensed hereunder or OEMs, as the case may be, to permit such of their books and records necessary to determine the royalties paid hereunder, to be examined by an auditor or independent accounting firm mutually selected by Licensor and Licensee from time-to-time during regular business hours, but not more than once a year."

Finjan proposed Connor Consulting to perform the audit, as Connor Consulting came highly recommended, specialized in performing royalty audits, and would cost less than other auditors. But Trustwave rejected Finjan's proposed and instead suggested either KPMG or Ernst & Young to perform the audit. Finjan looked into having Ernst & Young perform the audit, but discovered that it had an engagement with Singtel and thus could not perform the audit due to a conflict. Finjan then retained KPMG, the other auditor suggested by Trustwave, to perform the audit.

Pursuant to the Agreement, Finjan initially paid for the audit. Under Section 3.4, those audit fees could be shifted to Trustwave if the audit revealed an underpayment of a certain amount.

**ANSWER:** Trustwave admits that the Agreement contains Section 3.4, which states in its entirety:

3.4. 

Licensee further agrees to permit its books and records, and to require any of its Affiliates licensed hereunder or OEMs, as the case may be, to permit such of their books and records necessary to determine the royalties paid hereunder, to be examined by an auditor or independent accounting firm mutually selected by Licensor and Licensee from time-to-time during regular business hours, but not more than once a year. 

11

Trustwave admits that Finjan engaged KPMG to conduct an inspection under Section 3.4.  Trustwave denies that the inspection was proper under the Agreement and Trustwave denies the remaining allegations in Paragraph 13.

14.     KPMG attempted to perform its audit, but was denied various information by Trustwave, in violation of Section 3.4 of the Agreement. Among other things, Trustwave refused to provide sales and technical information on products that Trustwave did not believe were within the scope of the Agreement, unilaterally dictating the terms of KPMG's audit, and violating the Agreement.

**ANSWER:**  Trustwave denies the allegations in Paragraph 14.

15.     Based on Trustwave's definition of what products were within the scope of the agreement, KPMG concluded that an additional $160,524.91 was due under the Agreement. However, based on KPMG's own analysis of what products were within the scope of the agreement, KPMG determined that an additional $1,526,445.95 was due under the Agreement. Due to the amount by which Trustwave was in underpayment, it was also required to pay for the audit, in the amount of $50,654.67. On October 1, 2017, Finjan requested payment of those fees

and the cost of the audit, and asked that Trustwave advise whether it would pay by October 18, 2017. Trustwave declined to pay.

**ANSWER:**  Trustwave denies the allegations in Paragraph 15.

16.     On March 6, 2018, Finjan again reached out to Trustwave to request payment of the fees and the cost of the audit. Over one week later, Trustwave's counsel responded on March 14 to request a CEO-to-CEO conversation to resolve this dispute. Finjan promptly agreed to that request, and on March 16 provided Trustwave's counsel with the direct contact information of Finjan's CEO. To date, Trustwave has not reached out to Finjan or its CEO, despite its request.

**ANSWER:**  Trustwave denies the allegations in Paragraph 16.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction and personal jurisdiction over Trustwave at least by virtue of Section 6.4.1 of the Agreement, which states that "[t]he parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding

13

related thereto may be heard and determined in such courts." This dispute arises of and relates to the Agreement by virtue of Trustwave's breach of various provisions, described above and detailed further below.

**ANSWER:** The allegations in Paragraph 17 regarding whether this Court has subject matter jurisdiction and personal jurisdiction over Trustwave are allegations that assert legal conclusions to which no response is required. Trustwave admits that the Agreement contains Section 6.4.1, which in its entirety states:

> 6.4.1. The parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts.



Trustwave denies the remaining allegations in Paragraph 17.

14

18.     The Court also has personal jurisdiction over Trustwave because Plaintiffs claims against each of them arises out of or relate to each of their purposeful contacts with Delaware, and the exercise of personal jurisdiction over each Trustwave in this particular case would comport with principles of fair play and substantial justice.

**ANSWER:**  The allegation in Paragraph 18 regarding whether this Court has personal jurisdiction over Trustwave is an allegation that asserts a legal conclusion to which no response is required.  Trustwave denies the remaining allegations in Paragraph 18.

19.     This Court also has personal jurisdiction over each Trustwave because it has engaged in systematic and continuous contacts with this State and this district by, inter alia, regularly conducting and soliciting business in this State and this district, and deriving substantial revenue from products and/or services provided to persons in this State and this district. For example and without limitation, as noted above, Trustwave is a Delaware corporation. As another example without limitations, Trustwave offers for sale and on information and belief has sold its products and services to residents on this State.

**ANSWER:**  The allegation in Paragraph 19 regarding whether this Court has personal jurisdiction over Trustwave is an allegation that asserts a legal conclusion to which no response is required.  Trustwave denies the remaining allegations in Paragraph 19.


20.     Venue is proper in this Court at least by virtue of Section 6.4.1 of the Agreement, which, in addition to stating that "[t]he parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement," further states that "[t]he parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute."

**ANSWER:** The allegation in Paragraph 20 regarding whether venue is proper in this Court is an allegation that asserts a legal conclusion to which no response is required.  Trustwave admits that the Agreement contains Section 6.4.1, the entirety of which is provided in Trustwave's answer to Paragraph 17. Trustwave denies the remaining allegations in Paragraph 20.


16

21.     Venue is further proper in this State because Trustwave is incorporated here, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district, and because Trustwave is subject to this Court's personal jurisdiction with respect to the claims alleged herein.

**ANSWER:** The allegation in Paragraph 21 regarding whether venue is proper in this Court is an allegation that asserts a legal conclusion to which no response is required.  Trustwave denies the remaining allegations in Paragraph 21.

## FIRST CAUSE OF ACTION

### (Breach of Contract- Failure to Pay Royalties)

22.     Finjan incorporates paragraphs 1 through 21 herein by reference.

**ANSWER:** Trustwave repeats the answers to the allegations in the preceding paragraphs.

23.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration. Trustwave was acquired by Singtel no later than August 31, 2015.

**ANSWER:** Trustwave admits the allegations in Paragraph 23.

17

24.     The Agreement provides that, in the event of an acquisition of Trustwave, at least a ▮▮ royalty on "any products and services other than the Licensed Products and Services and Integrated Licensed Products and Services as actually offered and distributed by the Licensee and their Affiliates at the time of the Transfer ('Existing Business.')" are due. Accordingly, additional royalties are due under the Agreement.

**ANSWER:**  Trustwave denies the allegations in Paragraph 24.

25.     Further, Finjan commenced an audit pursuant to Section 3.4 of the Agreement. The independent auditor, KPMG, concluded that at least $1,526,445.95 in additional royalties were owed by Trustwave to Finjan, based on the available information. Despite Finjan's repeated requests, Trustwave refuses to pay that amount.

**ANSWER:**  Trustwave denies the allegations in Paragraph 25.

26.     Accordingly, Trustwave has breached the Agreement by failing to pay the royalties.

**ANSWER:**  Trustwave denies the allegations in Paragraph 26.

18

27.     Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

**ANSWER:**  Trustwave denies the allegations in Paragraph 27.


28.     As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in the amount of at least $1,526,445.95 for the period of January 1, 2014 through December 31, 2016, based on the information made available to Finjan.

**ANSWER:**  Trustwave denies the allegations in Paragraph 28.


## SECOND CAUSE OF ACTION

### (Breach of Contract - Noncompliance with Audit)

29.     Finjan incorporates paragraphs 1 through 21 herein by reference.

**ANSWER:** Trustwave repeats the answers to the allegations in the preceding paragraphs.

19

30.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration.

**ANSWER:**  Trustwave admits the allegations in Paragraph 30.

31.     The Agreement allows for audits of Trustwave to determine whether additional royalties are due. In the event of such an audit, Trustwave is required to permits its books and records to be examined by an auditor. Trustwave refused to provide certain information on products that it contends are not within the scope of the Agreement. But the Agreement does not allow Trustwave to limit what books or records are examined by the auditor. Accordingly, Trustwave interfered with the requested audit, preventing it to be performed in accordance with Section 3 .4 of the Agreement. Trustwave has violated Section 3 .4 of the Agreement, and has thus breached the Agreement.

**ANSWER:** Trustwave denies the allegations in Paragraph 31.  Trustwave respectfully refers the Court to the Agreement for its complete and full contents.

32.     Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

**ANSWER:**  Trustwave denies the allegations in Paragraph 32.

33.     As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in an amount to be determined at trial.

**ANSWER:**  Trustwave denies the allegations in Paragraph 33.

## THIRD CAUSE OF ACTION

### (Breach of Contract - Cost of Audit)

34.     Finjan incorporates paragraphs 1 through 21 herein by reference.

**ANSWER:** Trustwave repeats the answers to the allegations in the preceding paragraphs.

35.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration.

**ANSWER:** Trustwave admits the allegations in Paragraph 35.

21

36.     Section 3.4 of the Agreement states:

"Licensor shall bear the cost of the audit, provided, however, that if the audit reveals an underpayment in excess of the greater of ▆ or ▆▆▆▆ then Licensee shall, within 30 days, reimburse Licensor for the costs of such audit."

**ANSWER:**  Trustwave admits that the Agreement contains Section 3.4, which is provided in its entirety in Trustwave's answer to Paragraph 13 above.


37.     KPMG, the independent auditor mutually agreed upon by the parties to perform an audit pursuant to the Agreement, determined that $1,526,445.95 in additional royalties were owed by Trustwave to Finjan. This amount is in excess of the greater of ▆▆▆▆▆. Accordingly, pursuant to Section 3.4 of the Agreement, Trustwave is required to bear the cost of the audit, $50,654.67. Trustwave refuses to pay that amount, in violation of the Agreement. Accordingly, Trustwave has breached the Agreement by failing to pay for the audit fees.

**ANSWER:**  Trustwave denies the allegations in Paragraph 37.


38.     Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

**ANSWER:**  Trustwave denies the allegations in Paragraph 38.

22

39.     As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in the amount of at least $50,654.67 for the cost of the audit.

**ANSWER:**  Trustwave denies the allegations in Paragraph 39.


## FINJAN'S DEMAND FOR JURY TRIAL IS IMPROPER

Pursuant to Section 6.4.2 of the Agreement, Finjan's demand for Jury Trial is improper and in breach of the parties' agreement.


## AFFIRMATIVE AND OTHER DEFENSES

Further answering the Complaint, Trustwave asserts the following defenses, undertaking the burden of proof on such defenses only to the extent required by law.  Trustwave reserves its right to amend its Answer with additional defenses as more information is obtained.

## FIRST DEFENSE

The complaint fails to state a claim against Trustwave upon which relief can be granted.

23

## SECOND DEFENSE

Pursuant to this Court's February 11, 2019 Order "Finjan's suit for breach of contract may proceed, but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement. The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized." Therefore, this action is currently limited to determining Singtel's use of the patent technology.

## PRAYER FOR RELIEF

WHEREFORE, Trustwave respectfully requests that this Court:

A.      Enter judgment against Plaintiff and in favor of Trustwave;

B.      Dismiss the Complaint with prejudice;

C.      Award Trustwave its reasonable costs and expenses, including reasonable attorney's fees, incurred in connection with this Action; and

D.      Grant Trustwave such other and further relief as this Court may deem just and proper.

24

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
John S. Letchinger              Alexandra M. Cumings (#6146)
BAKER& HOSTETLER LLP            1201 North Market Street
191 N. Wacker Drive            P.O. Box 1347
Suite 3100                    Wilmington, DE  19899-1347
Chicago, IL  60606-1901       (302) 658-9200
(312) 416-6200                *Attorneys for Defendant*

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

February 19, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

**EFiled:  Mar 15 2019 03:31PM EDT**
**Transaction ID 63072416**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## <u>NOTICE OF SERVICE</u>

PLEASE TAKE NOTICE that on March 15, 2019, copies of 1) Defendant Trustwave Holdings, Inc.'s First Set of Interrogatories; and 2) Defendant Trustwave Holdings, Inc.'s First Requests for Production of Documents were served via File & Serve*Xpress* on the following attorneys of record:

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP


*/s/ Alexandra M. Cumings*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
Attorneys for Defendant

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600


March 15, 2019

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 15, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

**EFiled:  Apr 12 2019 06:23PM EDT**
**Transaction ID 63166790**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF SERVICE

**PLEASE TAKE NOTICE** that on April 12, 2019 true and correct copies of (1) Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 1 - 46), (2) Defendant's Objections and Responses to Plaintiff's First Set of Requests for Production (Nos. 1-42), and (3) this Notice of Service were electronically served upon all counsel of record via File & Serve*Xpress.*

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:

*/s/ Alexandra M. Cumings*
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

April 12, 2019

**EFiled:  Apr 15 2019 05:11PM EDT**
**Transaction ID 63171298**
**Case No. N18C-04-006 WCC CCLD**

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

## <u>NOTICE OF SERVICE</u>

The undersigned hereby certifies that copies of 1) *Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories*; 2) *Plaintiff's Responses and Objections to Defendant's First Set of Requests for Production*; and 3) this Notice were caused to be served on April 15, 2019 upon the following counsel of record in the manner indicated:

**<u>BY FILE & SERVEXPRESS:</u>**

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
jblumenfeld@mnat.com
acumings@mnat.com

Dated:  April 15, 2019

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th
Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Mary F. Dugan*

_____

Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

24390673.1

EFiled:  May 29 2019 05:12PM EDT
Transaction ID 63305179
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT TRUSTWAVE HOLDINGS, INC.'S MOTION FOR PROTECTIVE ORDER

Defendant Trustwave Holdings, Inc. ("Trustwave") respectfully moves this Court pursuant to Delaware Superior Court Civil Rule 26(c) for a protective order limiting the scope of Plaintiff Finjan, Inc.'s ("Finjan") First Set of Interrogatories ("Interrogatories") and First Set of Requests for Production ("Document Requests")[1] to the scope of discovery set by the Court's February 11, 2019 Letter Opinion ("Order") – namely, "whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement".

## I.   INTRODUCTION

In its Order, this Court denied Trustwave's Motion to Dismiss, but narrowly defined the sole issue in dispute and corresponding scope of discovery accordingly:

> As a result, Finjan's suit for breach of contract may proceed, but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement.

---

[1]   The Interrogatories and Document Requests are attached as Exhibits A and B, respectively.

> The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized.

Order at p.2. Finjan's recent discovery requests, 46 interrogatories and 42 requests for production, show that it has categorically disregarded this Court's Order.[2] In fact, Finjan's discovery requests almost exclusively seek discovery on topics specifically excluded by this Court's Order, such as (1) Trustwave cybersecurity sales unrelated to Singtel, (2) Singtel cybersecurity sales unconnected to Trustwave, and (3) Finjan's Counts Two and Three regarding a prior audit.[3] Trustwave, accordingly, seeks a protective order limiting Finjan's discovery to the scope set forth by this Court in its Order.

This is a breach of contract suit based on a March 2012 license agreement between Plaintiff Finjan and Defendant Trustwave ("Agreement", as defined by the Court in its Order). At the Hearing, the Court's questioning led to the following exchanges concerning what might trigger royalty obligations:

> COURT: What I think I've done here is at least set forth: This is what everyone agrees the dispute is about. The dispute is about whether the

---

[2]  At the November 19, 2018 hearing concerning Trustwave's motion to dismiss ("Hearing"), the Court strongly encouraged representatives from Trustwave and Finjan to seek a business resolution of this dispute. See Hearing Transcript at 36:6-38:25. Accordingly, Trustwave's General Counsel, Joel Smith, spoke with Finjan's Chief Intellectual Property Officer and Vice President of Legal Operations, Julie Mar-Spinola and offered to voluntarily provide information that Trustwave believed would help resolve this matter, but Ms. Mar-Spinola failed to provide a material response. See Smith Decl. ¶¶ 3-11.

[3]  Counsel for the parties met and conferred regarding the motion, but were unable to reach a resolution on the scope of discovery. *See* Rule 37(e)(1) Certification attached hereto.

> acquiring company is now using your product. Period.  They're not using your product, Trustwave doesn't owe you anything.

*See* Hearing Transcript ("Hearing Transcript") at 42:18-43:4; *see also* Order at p. 2.  Based on the Court's Order, Trustwave expected that discovery would target: (i) licensing activity from Trustwave to Singtel concerning the License Agreement, (ii) Trustwave's transfer of cybersecurity technology or proprietary know-how to Singtel and/or (iii) Trustwave's sales to Singtel of cybersecurity products covered by the License[4].  Consistent with the Order, Trustwave has confirmed via sworn declaration (and in its discovery responses) that none of the activity covered by topics (i) and (ii) above has occurred and has agreed to provide the sales data under category iii.  *See* Declaration of J. Lawrence Podmolik.

Simply put, Finjan's discovery requests ignore this Court's Order.  Instead of abiding by the limitations in the Order, Finjan served 46 interrogatories and 42 requests for production seeking wide-ranging discovery on all Trustwave and

---

[4]   A significant number of Finjan's discovery requests leverage historical public statements, including press releases, that proclaim the hope of expanding Trustwave's sales via Singtel's acquisition of Trustwave (*i.e.,* where Trustwave could expand its reaches through Singtel as a reseller of Trustwave's products).  Most recently, Finjan cites a December 2018 press release concerning corporate restructuring in which cybersecurity subsidiaries will operate worldwide under the Trustwave brand.  This corporate reconfiguration will allow management to track the performance of all cybersecurity operations, while leveraging the Trustwave brand.  From the acquisition on August 31, 2015 to present, however, other than sales in the ordinary course of products and software as would be made to other re-sellers, Trustwave has not transferred to, or shared with, Singtel any cybersecurity technology or proprietary know-how relating to any products it has sold commercially or offered for sale. In order to comply with the Court's Order, as detailed in its responses to the Interrogatories and Document Requests, Trustwave is endeavoring to supply data on all post-acquisition sales of products from Trustwave to Singtel and other Singtel subsidiaries.

Singtel activities related to cybersecurity software as well as that related to Counts Two and Three of Finjan's Complaint. This Court specifically noted that Trustwave is fully-paid up and owes nothing for its ongoing business (*see generally* Hearing Transcript at 22:15-36:4), yet Finjan's requests seek wide-ranging information and documents concerning all of Trustwave's sales of cybersecurity products since January 1, 2013. *See* Ex. A at Interrogatories Nos. 2-9, 19, 21-24; Ex. B at Requests for Production Nos. 2-9, 19, 21-24, 28-35. As the definition of "TRUSTWAVE'S CYBERSECURITY PRODUCTS" in Finjan's requests shows, Finjan's requests are neither limited to sales of Trustwave products to Singtel nor even temporally limited consistent with the Singtel acquisition date:

> "TRUSTWAVE'S CYBERSECURITY PRODUCTS" means cybersecurity products, services, and/or subscriptions, including hardware, software, and/or any combination of hardware and software, used to protect, defect, or remedy, cybersecurity issues such as viruses, worms, malware, denial of service attacks, and/or other cybersecurity issues, manufactured, used, sold, and/or offered by TRUSTWAVE since January 1, 2013.

*Id.* at p. 2.

Likewise, the Court specifically noted that Singtel is not a party to this case and Singtel sales unconnected to Trustwave products are not governed by this action[5]. Yet, as the definition of "SINGTEL'S CYBERSECURITY PRODUCTS"

---

[5]   *See, e.g.*, Hearing Transcript at 38:14-18 ("THE COURT: And if you want to sue Singtel because they're using your patent now inappropriately, go for it. District court is up the street two blocks. That's the patent infringement world.").

shows, Finjan's requests seek wide-ranging information and documents concerning all of Singtel's sales of cybersecurity products:

> "SINGTEL'S  CYBERSECURITY  PRODUCTS"  means cybersecurity products, services, and/or subscriptions, including hardware, software, and/or any combination of hardware and software, used to protect, defect, or remedy, cybersecurity issues such as viruses, worms, malware, denial of service attacks, and/or other cybersecurity issues, manufactured, used, sold, and/or offered by SINGTEL since January 1, 2013.

*See* Ex. A at pp. 1-2; *see also* Interrogatories Nos. 10-18, 20, 25-28; Ex. B at Requests for Production Nos. 10-18, 20, 25-28, 31-35.  Finjan not only seeks documents that well precede the date of the Singtel acquisition (August 31, 2015), but also seeks discovery concerning every sale by Singtel of third-party products (*i.e.*, purchased from independent third-parties such as Microsoft and having nothing to do with Trustwave whatsoever).  Not only does Trustwave, of course, not have any information concerning these transactions[6], but they are not transactions that could in any way trigger royalties under the Agreement.

Finjan's requests clearly ignore this Court's Order specifically delineating the one substantive issue in the case and the limitations on discovery.  Trustwave,

---

[6]  Trustwave is one of dozens of Singtel's subsidiaries.  Singtel is not a named Defendant, and, naturally, Trustwave does not have access to Singtel's internal accounting systems and documents (no more than Dairy Queen (a wholly owned subsidiary of Berkshire Hathaway) would have the ability to access Berkshire Hathaway's internal accounting systems, transaction data and reports).  *See* Michelle McLachlan Decl.; *see also Theravectys SA v. Immune Design Corp.*, 2014 WL 5500506, at *2 (Del. Ch. Oct. 31, 2014).

thus, respectfully requests that this Court issue a protective order limiting the scope of the Interrogatories and Document Requests consistent with the Court's Order.

## II.   ARGUMENT[7]

Finjan's improper requests fall into three categories: (1) requests regarding Trustwave cybersecurity sales unrelated to Singtel and otherwise made in Trustwave's own business, (2) requests regarding Singtel cybersecurity sales unconnected to Trustwave—*i.e.* Singtel's business activity prior to the Trustwave acquisition or otherwise having nothing to do with Trustwave, and (3) requests relating to Finjan's Counts Two and Three.

### a.   Improper Requests Seeking Documents and Information Regarding Trustwave Cybersecurity Sales Unrelated to Singtel Activity – Specifically Excluded by the Court's Order

At the Hearing, Finjan's counsel agreed that Trustwave's post-acquisition sales unrelated to Singtel could not trigger royalties under the Agreement:

> COURT:  What I think I've done here is at least set forth: This is what everyone agrees the dispute is about. ***The dispute is about whether the acquiring company is now using your product****.* ***Period.  They're not using your product, Trustwave doesn't owe you anything.*** If Singtel is using your product, they now have an obligation to tell you and to pay royalties on it. I don't think that's -- that's not complicated. How you figure that out, how do you come to that conclusion? How do you know? I don't know.  I mean, and you want me to let you to

---

[7] This Court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Super. Ct. Civ. R. 26(c). The scope of discovery is limited to information "reasonably calculated to lead to admissible evidence," *Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 1767529, at *5 (Del. Super. Ct. July 10, 2002), and discovery "shall be limited by the Court" if it is unreasonably cumulative or duplicative or unduly burdensome or expensive, Super. Ct. Civ. R. 26(b)(1).

continue discovery so you can find that out. They say the suit's against Trustwave and not Singtel. And if it's a patent infringement, go to the district court and file a patent infringement.

MR. COOPER:  *Well, I think Your Honor has it exactly right*. The only thing that I would ask is that we get the kind of information from Trustwave that is set forth in 3.4. And then we can resolve it. We can do exactly what Your Honor said, the businessmen can go resolve it.

Transcript at 42:18-43:17 (emphasis added).  This understanding was confirmed in the Court's Order:

The parties appear to agree that if Singtel, as the acquiring company, is now using the patent information in its business, additional royalties are required. ***They also reluctantly agree that if Singtel is not using the patent information and it is only being used for Trustwave's existing business, no additional royalties are required.***

Order at p. 2 (emphasis added).   With its discovery requests, however, Finjan ignores the Court's directives, as illustrated in the following example:

**<u>INTERROGATORY NO. 3:</u>**
Identify and describe the products, services, and/or subscriptions comprising  TRUSTWAVE'S  CYBERSECURITY  PRODUCTS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

*See* Ex. A at p. 8.  This request concerns all Trustwave cybersecurity products and is not limited to products arguably covered by the parties' Agreement, let alone products sold to Singtel since the acquisition.   It seeks the same information (though, with no time limitations) that was the subject of the KPMG Inspection, which this Court noted at the Hearing was irrelevant to the extent it related to Trustwave's own business.  Hearing Transcript at 28:22-29:9 and 34:12-15.

Finjan's Interrogatories Nos. 2-9, 19, 21-24 and Requests for Production Nos. 2-9, 19, 21-24, 28-35, likewise, improperly seek documents and information concerning Trustwave cybersecurity sales unrelated to Singtel activity. For all of these requests, Trustwave has agreed to provide documents and information in Trustwave's possession concerning Trustwave's sales of products to Singtel since the September 1, 2015 acquisition.[8]  In accordance with the Order, Trustwave requests that the Court impose a protective order that limits Finjan's requests to documents and information in Trustwave's possession concerning Trustwave's sales of cybersecurity products to Singtel since the August 31, 2015 acquisition.

### b. Improper Requests Seeking Documents and Information Regarding Singtel Cybersecurity Sales Unconnected to Trustwave

At the Hearing, the Court made it clear that Singtel activities unconnected to Trustwave are outside the bounds of this action:

> COURT:  And if you want to sue Singtel because they're using your patent now inappropriately, go for it. District court is up the street two blocks. That's the patent infringement world.

Hearing Transcript at 38:14-17.  Again, this was confirmed in the Court's Order:

> Finjan's suit for breach of contract may proceed, but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement.

---

[8]  Trustwave has agreed to provide information regarding the complete universe of its product/software sales to Singtel after the 2015 acquisition and to follow-up with information relevant to whether some of the sales could arguably trigger royalties under the Agreement.

Order at p. 2.  Nonetheless, Finjan seeks discovery into all Singtel cybersecurity

products sold at anytime, anywhere in the world.  For example, Finjan seeks:

> **INTERROGATORY NO. 10:**
> Identify and describe the products, services, and/or subscriptions
> comprising SINGTEL'S CYBERSECURITY PRODUCTS, including
> providing a list of all models, stock keeping units (SKUs), version
> numbers, and release dates.

Ex. A at p. 9.  Singtel is not a party to this suit.  The Agreement in dispute is

between Finjan and Trustwave.  Finjan alleges Trustwave owes royalties for sales

of its products through Singtel.  Thus, the only arguably proper discovery is

directed to materials in Trustwave's possession concerning Trustwave sales of

cybersecurity products to Singtel, which Trustwave agreed to provide.  Finjan,

though, does not limit its requests to Trustwave-connected activities but, instead,

seeks information on all Singtel cybersecurity products sold at anytime, anywhere,

regardless of whether they could possibly be covered by the Agreement.[9]

Finjan's Interrogatories Nos. 10-18, 20, 25-28 and Requests for Production

Nos. 10-18, 20, 25-28, 31-35, likewise, improperly seek information and

documents concerning Singtel cybersecurity sales unconnected to Trustwave.  For

all of these requests Trustwave has agreed to provide documents and information

---

[9]  Elaborating further on this point, Finjan seeks information and documents related to every
sale by Singtel of non-Trustwave products and otherwise having nothing to do with
Trustwave.  Not only is Finjan plainly ignoring the Court's Order, but it further ignores that
the License does not cover any Singapore patents and Finjan **does not own a patent in
Singapore**.  All else aside, these sales are completely unrelated to Trustwave and the
Agreement and, as such, are incapable of triggering royalties under the Agreement.

in Trustwave's possession concerning Trustwave's cybersecurity products sold to Singtel since the August 31, 2015 acquisition. Trustwave respectfully requests that the Court impose a protective order that limits Finjan's requests accordingly.

### c. Improper Requests Seeking Documents and Information Related to Finjan's Counts Two and Three regarding the Prior Audit

The Court's Order made it clear that all discovery on Counts Two and Three concerning a prior audit Finjan sought (citing the Agreement) was stayed:

> The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized.

Order at p. 2.[10]  Yet, Interrogatory No. 41 and Requests for Production Nos. 38-40 seek information concerning Section 3.4 of the Agreement, which covers the inspection/audit provision that forms the basis for Finjan's Count Two and Three.

## III.   CONCLUSION

Trustwave respectfully requests that the Court grant this Motion and issue a protective order limiting the scope of Finjan's First Set of Interrogatories and First Set of Requests for Production to the scope of discovery set by the Court's Order.

---

[10]   This Court has questioned the value of the prior audit performed by Finjan's auditors. *See* Order at p. 2 ("it appears the Plaintiff was requesting an audit of matters that may not be required under the Agreement"); Hearing Transcript at 34:12-15 ("THE COURT: To me, the audit is simply a red herring thrown out there. Yeah, because your real dispute supposedly is that another company acquired Trustwave.").

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

May 29, 2019

/s/  Alexandra M. Cumings
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*
*Trustwave Holdings, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2019 the foregoing documents were served upon all counsel of record via File & Serve*Xpress.*

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled:  May 29 2019 05:12PM EDT
Transaction ID 63305179
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) C.A. No. N18C-04-006 WCC CCLD | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **DECLARATION OF MICHELLE MCLACHLAN**

I, Michelle McLachlan, declare as follows:

1.     I make this declaration based on personal knowledge.

2.     I have been employed by Trustwave Holdings, Inc. ("Trustwave") since November 2016 as a Director of Revenue & Sales Recognition.

3.     Prior to joining Trustwave, from May 2007 to October 2016, I was employed by Singtel Optus Pty Limited ("Optus"), which is a wholly owned subsidiary of Singapore Telecommunications Limited ("Singtel"), in Sydney, Australia.

4.     On August 31, 2015 Trustwave was acquired by Singtel (the "Acquisition").

5.      Since the Acquisition, Trustwave has sold to Singtel and certain of its affiliates cybersecurity software and products as it does other customers and re-sellers.

6.      It is Trustwave's understanding that Singtel, and its other affiliates, purchase the referenced products and software for re-sale to customers in the Asian-Pacific market (which in Trustwave's internal accounting includes Australia).

7.      Trustwave has no access to the books and records, reports, or any transaction data pertaining to Singtel or its other affiliates.  The same was true for Optus during my tenure with Optus.

I declare under penalty of perjury under the laws of the United States of America and the State of Delaware that the foregoing is true and correct.


Date: April 23, 2019                                  _____

                                                      Michelle McLachlan

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2019 the foregoing documents were served upon all counsel of record via File & Serve*Xpress*.

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801


*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled: May 29 2019 05:12PM EDT
Transaction ID 63305179
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## **DECLARATION OF JOEL B. SMITH**

I, Joel B. Smith, declare as follows:

1.     I have been employed by Trustwave Holdings, Inc. ("Trustwave") since August 2017 and currently serve as Trustwave's Interim General Counsel.

2.     I make this declaration based on personal knowledge.

3.     I did not attend the November 19, 2018 hearing concerning Trustwave's motion to dismiss, but I learned from outside counsel in attendance that the Court strongly encouraged representatives from Trustwave and Finjan, Inc. ("Finjan") to attempt to resolve this dispute in an extrajudicial manner.

4.     Accordingly, I contacted Finjan's Chief Intellectual Property Officer and Vice President of Legal Operations, Julie Mar-Spinola, to discuss this action.

5.     During my phone conversation with Ms. Mar-Spinola, I explained that there has been no licensing or sharing of Finjan technology—*i.e.*, technology

covered by the Finjan-Trustwave March 2012 AMENDED AND RESTATED PATENT LICENSE AGREEMENT (the "Agreement")—with Singtel following the Singtel acquisition (or, at any time).

6.    Singtel does purchase Trustwave cybersecurity products, largely for re-sale in the Asian-Pacific market (which in Trustwave's internal accounting includes Australia).   Long before the Singtel acquisition, Trustwave sold its products to customers in the Asian-Pacific market both through distributors and directly to end users.

7.    I explained further that Singtel is a telecom company that has strategically developed a portfolio of unrelated businesses as part of its investment strategy, one of which is Trustwave.

8.    I asked Ms. Mar-Spinola to identify additional information that Finjan would like to review in order to satisfy Finjan that there has been no licensing or sharing of Finjan technology with Singtel.

9.    After our phone conversation, I followed up with Ms. Mar-Spinola several times regarding this proposal—but Ms. Mar-Spinola never provided a substantive response to my follow-up messages.

10.    Ms. Mar-Spinola's final response to my follow-up messages indicated that Finjan was still considering my offer.

11.    Shortly thereafter, Finjan served the discovery requests at issue in Trustwave's Motion.

I declare under penalty of perjury under the laws of the United States of America and the State of Delaware that the foregoing is true and correct.

Date: April 23, 2019

_____
Joel B. Smith

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801


*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

**EFiled: May 29 2019 05:12PM EDT**
**Transaction ID 63305179**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## **DECLARATION OF J. LAWRENCE PODMOLIK**

I, J. Lawrence Podmolik, declare as follows:

1.      I have been employed by Trustwave Holdings, Inc. ("Trustwave") since June 2007 as Trustwave's Chief Technology Officer.

2.      I make this declaration based on personal knowledge.

3.      On August 31, 2015 Trustwave was acquired by Singapore Telecommunications Limited ("Singtel") (the "Acquisition").

4.      Trustwave has not assigned or licensed to Singtel any rights covered by or under the Finjan-Trustwave March 2012 AMENDED AND RESTATED PATENT LICENSE AGREEMENT (the "Agreement").

5.      Other than sales in the ordinary course of products and software as would be made to other re-sellers, Trustwave has not transferred to, or shared with, Singtel

any cybersecurity technology or proprietary know-how relating to any products it has sold commercially or offered for sale.

6.      Since the acquisition, Trustwave has sold to Singtel and certain of its affiliates cybersecurity software and products as it does other customers and re-sellers.

I declare under penalty of perjury under the laws of the United States of America and the State of Delaware that the foregoing is true and correct.


Date: April 23, 2019

J. Lawrence Podmolik

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled:  May 29 2019 05:12PM EDT
Transaction ID 63305179
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the attached Motion for Protective

Order will be presented to the Court on June 12, 2019.

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

May 29, 2019

/s/ Alexandra M. Cumings
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

**EFiled:  May 29 2019 05:12PM EDT**
**Transaction ID 63305179**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                          )
                                      )
            Plaintiff,                )
                                      ) C.A. No. N18C-04-006 WCC CCLD
      v.                              )
                                      )
TRUSTWAVE HOLDINGS, INC.,             )
                                      )
            Defendant.                )

## [PROPOSED] ORDER

Upon consideration of Defendant Trustwave Holdings, Inc.'s ("Trustwave") Motion for Protective Order (the "Motion"),

IT IS HEREBY ORDERED that:

1.      The Motion to Dismiss is GRANTED;

2.      Defendant need not respond to discovery requests on any of the following topics:  (1) requests regarding Trustwave cybersecurity sales unrelated to Singtel and otherwise made in Trustwave's own business; (2) requests regarding Singtel cybersecurity sales unconnected to Trustwave, and (3) requests relating to Counts Two and Three of the Complaint.

IT IS SO ORDERED, this _____ day of _____, 2019.


_____
Judge

EFiled:  May 29 2019 05:12PM EDT
Transaction ID 63305179
Case No. N18C-04-006 WCC CCLD

# EXHIBIT A

E-SERVICE

63060166
Mar 12 2019
08:18PM

File & ServeXpress

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

               Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

               Defendant.

C.A. No. N18C-04-006-WCC (CCLD)

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## DIRECTED TO DEFENDANT

Pursuant to Delaware Superior Court Civil Rules 26 and 33, Plaintiff Finjan, Inc. ("Finjan") hereby requests that Defendant Trustwave Holdings, Inc. ("Trustwave") answer the following Interrogatories under oath within thirty (30) days from service.  Finjan does not waive any claims or causes of action it may have against Trustwave and/or Singapore Telecommunications Limited and reserves all rights.

## **DEFINITIONS**

The following definitions apply to this first set of interrogatories:

1.　　"SINGTEL" includes Singapore Telecommunications Limited, and its subsidiaries, business units, divisions, departments, brands, or other organizational entity, including without limitation Optus, Trustwave, and NCS and any person or entity with actual or apparent authority to act on its behalf.

2.　　"SINGTEL'S CYBERSECURITY PRODUCTS" means cybersecurity products, services, and/or subscriptions, including hardware, software, and/or any combination of hardware and software, used to protect, defect, or remedy, cybersecurity issues such as viruses, worms, malware, denial of

service attacks, and/or other cybersecurity issues, manufactured, used, sold, and/or offered by SINGTEL since January 1, 2013.

3.  "TRUSTWAVE," "YOU," and "YOUR" each refers to Defendant Trustwave Holdings, Inc., both before and after its acquisition by SINGTEL, and any person or entity with actual or apparent authority to act on its behalf.

4.  "TRUSTWAVE'S CYBERSECURITY PRODUCTS" means cybersecurity products, services, and/or subscriptions, including hardware, software, and/or any combination of hardware and software, used to protect, defect, or remedy, cybersecurity issues such as viruses, worms, malware, denial of service attacks, and/or other cybersecurity issues, manufactured, used, sold, and/or offered by TRUSTWAVE since January 1, 2013.

5.  "AGREEMENT" means the Amended and Restated Patent License Agreement between Finjan, Inc. and Trustwave Holdings, Inc. attached as Exhibit A to Trustwave's Opening Brief in Support of Motion to Dismiss the Complaint (Dkt. No. 17).

6.  "COMPLAINT" means the complaint filed on April 4, 2018 by Finjan in this lawsuit.

7.  "COMMUNICATION(S)" shall be construed broadly and means any transmittal or receipt of information in the form of facts, ideas, inquiries, or otherwise, and includes memoranda, correspondence, electronic mail, instant messages, text messages, all attachments and enclosures thereto, computer discs, computer drives, recordings of any other type in any medium of written or oral communications, phone logs, call logs, message logs, and notes and memoranda of, or referring or relating to, written or oral communications. A COMMUNICATION is responsive for purposes of these Interrogatories regardless of the sender and recipients of the Communication.

01:23470365.1

8.      When used in reference to any PERSON, "DESCRIPTION," "DESCRIBE," "IDENTIFICATION," "IDENTIFY" or "IDENTITY" as used herein separately or collectively, means to state, to the extent known:

      a.   The PERSON'S full name;

      b.   The PERSON'S present or last known address;

      c.   The PERSON'S present or last known home telephone number;

      d.   The PERSON'S present or last known business address;

      e.   The PERSON'S present or last known business telephone number;

      f.   The PERSON'S present or last known employer or affiliation;

      g.   The PERSON'S present or last known title or position with, at or for Trustwave;

      h.   The PERSON'S present or last known job description with, at or for Trustwave; and

      i.   The dates on which such PERSON held such PERSON'S last known title or position with, at or for Trustwave.

9.      When used in reference to any product, service, or subscription, "DESCRIPTION," "DESCRIBE," "IDENTIFICATION," "IDENTIFY" or "IDENTITY" as used herein separately or collectively, means to state, to the extent known:

      a.   The product, service, or subscription's name(s);

      b.   The product, service, or subscription's model name and/or number(s);

      c.   The product, service, or subscription's stock keeping units (SKUs) number(s);

      d.   The product, service, or subscription's version number(s);

      e.   The product, service, or subscription's release date(s);

      f.    The product, service, or subscription's identifier(s), unique or otherwise;

10.    When used in reference to an oral or written COMMUNICATION of any nature whatsoever, "DESCRIPTION," "DESCRIBE," "IDENTIFICATION," "IDENTIFY" or "IDENTITY" as used herein separately or collectively, means to set forth the identity of the PERSON by whom, and each PERSON to whom, each such COMMUNICATION was made and all PERSONS present at the time; and:

      a.    The date it was made;

      b.    The place at which it was made;

      c.    The means by which it was made;

      d.    The substance thereof; and

      e.    A description of each DOCUMENT reflecting or relating to any of the above.

11.    The term "DOCUMENT" means any written, printed, typed, recorded, filmed or other graphic matter of any kind or nature however written or produced, by hand or reproduced by any process, and whether or not claimed to be privileged against discovery on any ground, and whether an original or copy, including, but not limited to: agreements, correspondence, telexes and faxes, tape recordings, and/or transcripts of the same, notes, memoranda (including internal memoranda), summaries and recordings, records, ledgers, contracts, bills, invoices, bills of lading, expense reports, inventories, financial data, wills, other writings, formal or informal in nature, accounting and financial records, diaries, statements, work papers or accountant work papers, paper and magnetic tapes, charts, printouts, electronically or magnetically stored information or data, minutes, publications, calendars, telephone pads, bulletins, directives, logs and listings, real estate valuations or appraisals, and any other information containing paper, writing or physical things, in the possession, custody, and/or control of YOU, YOUR

01:23470365.1

employees, directors, officers, shareholders, agents, or attorneys, and all drafts, notes or preparatory material concerned with said documents where such copy contained any commentary, notation or other change whatsoever that does not appear in the original or other copy of the document produced. The term "DOCUMENT" includes any and all electronically created or stored information as well as any summary of a document or documents called for hereinafter and any computer program, directory, file, database, or software application, generated, produced, or stored by computer or other data processing and/or data generating machinery.

12.    "EXISTING BUSINESS" means TRUSTWAVE'S CYBERSECURITY PRODUCTS as actually offered at the TIME OF ACQUISITION.

13.    "PERSON" means any natural person, or any non-natural person, including but not limited to any corporation, company, trust, partnership, limited partnership, sole proprietorship, association, institute, joint venture, firm, governmental body, or other entity, for profit or not for profit, whether privately or publicly owned or controlled or partially or fully government owned or controlled.

14.    "PERTAIN" or "PERTAINING" means evidencing, memorializing, referring to, constituting, containing, discussing, describing, embodying, reflecting, identifying, mentioning, stating, or otherwise relating to or regarding in any way, in whole or in part, the subject matter referred to in the Interrogatory, Request for Production, or Request for Admission.

15.    "TIME OF ACQUISITION" means the date of SINGTEL's acquisition of TRUSTWAVE.

## **INSTRUCTIONS**

1.    Please answer each Interrogatory separately and fully.  If for any reason YOU cannot answer any Interrogatory or part thereof in full, please answer

to the extent possible, and state the reasons for YOUR inability to provide a complete answer.  If YOU cannot provide the exact information requested, please provide YOUR best approximation of the information requested.  If YOU cannot provide all of the information requested in any Interrogatory because such information is not yet fully developed or cannot be ascertained at this time, please answer each such Interrogatory with all the information currently available, and specifically indicate that additional responses will later be developed and provided.

2.      In responding to these Interrogatories, please furnish all information available to YOU.  In addition, please furnish all information available to PERSONS acting on YOUR behalf, including, but not limited to, employees, officers, directors, shareholders, agents, representatives, and consultants.

3.      When an Interrogatory asks for specific information, such as a date, and the specific information requested is not known to YOU, such Interrogatory shall be deemed to ask YOU (a) to approximate the information requested as best YOU can, provided that YOU indicate in YOUR response that the information being provided is an approximation or is incomplete in certain specific respects, and (b) to describe all efforts made by YOU to obtain the information necessary to answer the Interrogatory.

4.      If any information called for by an Interrogatory is withheld on the basis of a claim of privilege, attorney work-product, or other protection from discovery, the claimed basis for withholding the information and the nature of the information withheld shall be set forth, together with a statement of all of the circumstances relied upon to support such claim, including the date the information was conveyed, the form of the information, the identity of the PERSONS who have knowledge of the privileged communications, the business relationship of each to YOU, and, in the case of information withheld on the grounds of attorney work-product, the identity of the attorney for whom the privilege is claimed, the nature

of the work-product, and the litigation in anticipation of which the work was prepared.

5.      If YOU object to any part of these Interrogatories and refuse to answer, please state YOUR objection(s) and answer the remaining portion of that particular Interrogatory.  If YOU object to the scope or time period of an Interrogatory and refuse to answer for that scope or time period, please state YOUR objection and answer the Interrogatory for the scope or time period that YOU believe is appropriate.

6.      Whenever a date, amount, computation, or figure is requested, please state the exact date, amount, computation, or figure unless it is unknown.  If such information is unknown, please state as such and provide an approximate or best estimate for that date, amount, computation, or figure.

7.      Pursuant to Superior Court Rule 26(e), these Interrogatories are continuing in nature and require further and supplemental responses if YOU discover or receive additional responsive information between when the Interrogatories are received and the completion of this Litigation.

8.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories any information that might otherwise be construed to be outside their scope.

9.      The use of the singular tense will be deemed to include the plural and vice versa, and the use of the masculine pronoun will be deemed to include all genders, as necessary, to bring within the scope of these Interrogatories all DOCUMENTS and responses that might otherwise be construed to be outside their scope.

10.      All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Interrogatories.

01:23470365.1

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

Identify the TIME OF ACQUISITION.

### **INTERROGATORY NO. 2:**

Identify and describe the products, services, and/or subscriptions comprising the EXISTING BUSINESS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

### **INTERROGATORY NO. 3:**

Identify and describe the products, services, and/or subscriptions comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

### **INTERROGATORY NO. 4:**

Identify and describe the products, services, and/or subscriptions comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS other than the EXISTING BUSINESS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

### **INTERROGATORY NO. 5:**

For each product, service, and/or subscription comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS, list and describe all updates and their respective release dates.

### **INTERROGATORY NO. 6:**

For each product, service, and/or subscription comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS, list and describe the differences between all models, stock keeping units (SKUs), and versions.

01:23470365.1

8

**INTERROGATORY NO. 7:**

For each product, service, and/or subscription comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS, describe the relationship, if any, to the EXISTING BUSINESS, including any lineage, incorporation, integration, or derivation.

**INTERROGATORY NO. 8:**

Identify and describe which products, services, and/or subscriptions comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS into which EXISTING BUSINESS have been integrated, and describe such integration, including any sharing of source code, technology, know-how, or other knowledge from the EXISTING BUSINESS.

**INTERROGATORY NO. 9:**

For each product, service, and/or subscription comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS, list by quarter worldwide revenues, numbers of units, subscriptions, and/or licenses sold, and the price for each unit, subscription, and/or license sold, since the TIME OF ACQUISITION.

**INTERROGATORY NO. 10:**

Identify and describe the products, services, and/or subscriptions comprising SINGTEL'S CYBERSECURITY PRODUCTS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

**INTERROGATORY NO. 11:**

Identify and describe the products, services, and/or subscriptions comprising SINGTEL'S CYBERSECURITY PRODUCTS other than the EXISTING BUSINESS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

01:23470365.1

**INTERROGATORY NO. 12:**

For each product, service, and/or subscription comprising SINGTEL'S CYBERSECURITY PRODUCTS, list and describe all updates and their respective release dates.

**INTERROGATORY NO. 13:**

For each product, service, and/or subscription comprising SINGTEL'S CYBERSECURITY PRODUCTS, list and describe the differences between all models, stock keeping units (SKUs), and versions.

**INTERROGATORY NO. 14:**

For each product, service, and/or subscription comprising SINGTEL'S CYBERSECURITY PRODUCTS, describe the relationship, if any, to the EXISTING BUSINESS, including any lineage, incorporation, integration, or derivation.

**INTERROGATORY NO. 15:**

For each product, service, and/or subscription comprising SINGTEL'S CYBERSECURITY PRODUCTS, describe the relationship, if any, to the TRUSTWAVE'S CYBERSECURITY PRODUCTS, including any lineage, integration, or derivation.

**INTERROGATORY NO. 16:**

Identify and describe which products, services, and/or subscriptions comprising SINGTEL'S CYBERSECURITY PRODUCTS into which EXISTING BUSINESS have been integrated, and describe such integration, including any sharing of source code, technology, know-how, or other knowledge from the EXISTING BUSINESS.

**INTERROGATORY NO. 17:**

Identify and describe which products, services, and/or subscriptions comprising SINGTEL'S CYBERSECURITY PRODUCTS into which

TRUSTWAVE'S CYBERSECURITY PRODUCTS have been integrated, and describe such integration, including any sharing of source code, technology, know-how, or other knowledge from TRUSTWAVE'S CYBERSECURITY PRODUCTS.

**INTERROGATORY NO. 18:**

For each product, service, and/or subscription comprising SINGTEL'S CYBERSECURITY PRODUCTS, list by quarter worldwide revenues, numbers of units, subscriptions, and/or licenses sold, and the price for each unit, subscription, and/or license sold, since the TIME OF ACQUISITION.

**INTERROGATORY NO. 19:**

Identify and describe all products, services, and/or subscriptions that have been transferred or "pooled" under the Trustwave brand, as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

**INTERROGATORY NO. 20:**

Identify and describe all products, services, and/or subscriptions comprising "Singtel's global cybersecurity assets," as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

**INTERROGATORY NO. 21:**

For each product, service, and/or subscription described in response to Interrogatory No. 19, describe the relationship, if any, to the EXISTING

BUSINESS, including describing any lineage, incorporation, integration, or derivation.

**INTERROGATORY NO. 22:**

For each product, service, and/or subscription described in response to Interrogatory No. 19, describe the relationship, if any, to the TRUSTWAVE'S CYBERSECURITY PRODUCTS, including describing any lineage, incorporation, integration, or derivation.

**INTERROGATORY NO. 23:**

Identify and describe which products, services, and/or subscriptions described in response to Interrogatory No. 19 into which EXISTING BUSINESS have been integrated, and describe such integration, including any sharing of source code, technology, know-how, or other knowledge from the EXISTING BUSINESS.

**INTERROGATORY NO. 24:**

Identify and describe which products, services, and/or subscriptions described in response to Interrogatory No. 19 into which TRUSTWAVE'S CYBERSECURITY PRODUCTS have been integrated, and describe such integration, including any sharing of source code, technology, know-how, or other knowledge from TRUSTWAVE'S CYBERSECURITY PRODUCTS.

**INTERROGATORY NO. 25:**

For each product, service, and/or subscription described in response to Interrogatory No. 20, describe the relationship, if any, to the EXISTING BUSINESS, including describing any lineage, incorporation, integration, or derivation.

**INTERROGATORY NO. 26:**

For each product, service, and/or subscription described in response to Interrogatory No. 20, describe the relationship, if any, to TRUSTWAVE'S

CYBERSECURITY PRODUCTS, including describing any lineage, incorporation, integration, or derivation.

**INTERROGATORY NO. 27:**

Identify and describe which products, services, and/or subscriptions described in response to Interrogatory No. 20 into which EXISTING BUSINESS have been integrated, and describe such integration, including any sharing of source code, technology, know-how, or other knowledge from the EXISTING BUSINESS.

**INTERROGATORY NO. 28:**

Identify and describe which products, services, and/or subscriptions described in response to Interrogatory No. 20 into which TRUSTWAVE'S CYBERSECURITY PRODUCTS have been integrated, and describe such integration, including any sharing of source code, technology, know-how, or other knowledge from TRUSTWAVE'S CYBERSECURITY PRODUCTS.

**INTERROGATORY NO. 29:**

Explain and describe how "[b]eing acquired by Singtel will help bolster [Trustwave's] ability to expand, grow and continue delivering industry-leading managed security services and technologies," as stated by Robert J. McCullen, "Trustwave's chairman and CEO," in the article found at https://www.bankinfosecurity.com/singtel-to-acquire-trustwave-a-8088, attached as Exhibit B.

**INTERROGATORY NO. 30:**

Explain and describe how "[Singtel's] extensive customer reach and strong suite of ICT [information and communications technology] services, together with Trustwave's deep cybersecurity capabilities, will create a powerful combination and allow Singtel to capture global opportunities in the cybersecurity space," as stated by Chua Sock Koong, "Singtel Group CEO," in the article found at

01:23470365.1

https://www.bankinfosecurity.com/singtel-to-acquire-trustwave-a-8088, attached as Exhibit B.

**INTERROGATORY NO. 31:**

Explain and describe how Trustwave "will tap [Singtel's] assets and market presence to expand its portfolio and address market opportunities in the Asia-Pacific region," as stated in the article found at

https://www.zdnet.com/article/singtel-acquires-trustwave-in-810m-security-services-deal/, attached as Exhibit C.

**INTERROGATORY NO. 32:**

Explain and describe how the purchase of Trustwave "will expand [Singtel's] current cloud-based offerings and footprint in the managed services market," as stated in the article found at https://www.zdnet.com/article/singtel-acquires-trustwave-in-810m-security-services-deal/, attached as Exhibit C.

**INTERROGATORY NO. 33:**

Explain and describe how "the new Trustwave can harness the synergies and strengths of Singtel's global cybersecurity business, revenue, capabilities and teams across the Americas, Europe and Asia Pacific," as stated in the Trustwave press release found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A.

**INTERROGATORY NO. 34:**

Explain and describe how "Trustwave is well-positioned to further its role as a recognized leader in cybersecurity and managed security services, areas vital for effective security programs as enterprises accelerate their digital transformation," as stated by Arthur Wong, "Chief Executive Officer at Trustwave," in the Trustwave press release found at https://www.trustwave.com/en-

us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A.

**INTERROGATORY NO. 35:**

Explain and describe how "[c]ustomers benefit by having a trusted security partner with true global reach and intelligence, offering around-the-clock monitoring, detection and eradication of threats in addition to deep regional security expertise necessary for successfully addressing global threats and localized attack campaigns," as stated by Arthur Wong, "Chief Executive Officer at Trustwave," in the Trustwave press release found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A.

**INTERROGATORY NO. 36:**

Explain and describe what "technologies…from third parties" Trustwave "will continue to offer," as stated in the Trustwave press release found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A.

**INTERROGATORY NO. 37:**

Explain and describe how "Trustwave has added and will continue to add more industry-leading third-party technologies that are integrated or wrapped with its managed security and consulting services to offer even more compelling solutions that solve cybersecurity problems and challenges," as stated in the Trustwave press release found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A.

**INTERROGATORY NO. 38:**

Explain and describe how Trustwave "leverage[s] [Singtel's] global presence and resources to accelerate worldwide adoption of our security solutions," as stated by Robert J. McCullen, "Trustwave Chairman, Chief Executive Officer and President," in the Trustwave press release found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-to-acquire-trustwave-to-bolster-global-cyber-security-capabilities/, attached as Exhibit D.

**INTERROGATORY NO. 39:**

Describe the TRUSTWAVE and SINGTEL organizational hierarchy, including listing any subsidiaries, affiliates, parent organizations, or other organizational relationships.

**INTERROGATORY NO. 40:**

Describe any and all name changes for TRUSTWAVE and SINGTEL since January 1, 2013.

**INTERROGATORY NO. 41:**

Identify and describe all "books and records necessary to determine the royalties" owed pursuant to Section 3.4 of the AGREEMENT.

**INTERROGATORY NO. 42:**

Identify and describe all books and records necessary to determine "whether or not SINGTEL is actually using Finjan's patent technology that would trigger royalty payments under the [AGREEMENT]," as set forth in the Court's February 11, 2019 Order.

**INTERROGATORY NO. 43:**

Identify the individual(s) most knowledgeable about each of the topics listed herein.

01:23470365.1

**INTERROGATORY NO. 44:**

Identify the individuals most knowledgeable about each of the following topics:

a. TRUSTWAVE'S and SINGTEL'S royalty reporting process and systems;

b. TRUSTWAVE's and SINGTEL'S products using Finjan intellectual property

c. TRUSTWAVE'S and SINGTEL'S accounting process and systems

d. TRUSTWAVE'S and SINGTEL'S ERP systems

e. How TRUSTWAVE'S and SINGTEL'S products, services, and/or subscriptions are sold worldwide, including which channels are used by country and entity (TRUSTWAVE and SINGTEL)

**INTERROGATORY NO. 45:**

Identify all individual(s) who are in possession, custody, or control of DOCUMENTS or other information relevant to the subject matter of each of the Interrogatories above.

**INTERROGATORY NO. 46:**

Identify all individual(s) who assisted in the preparation of the responses to these Interrogatories and/or provided information for the purpose of preparing the responses.

Dated:  March 12, 2019

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**

*/s/ Mary F. Dugan*

_____
Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

01:23470365.1

18

# CERTIFICATE OF SERVICE

I, Mary F. Dugan, Esquire, hereby certify that on March 12, 2019, I caused

true and correct copies of the foregoing document to be served upon the following

counsel of record as indicated:

## VIA FILE & SERVEXPRESS AND EMAIL:

Jack B. Blumenfeld                                      jblumenfeld@mnat.com
Alexandra M. Cumings                                   acumings@mnat.com
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

## VIA EMAIL:

John S. Letchinger                                     jletchinger@bakerlaw.com
Matthew J. Caccamo                                     mcaccamo@bakerlaw.com
Baker & Hostetler LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901


                        YOUNG CONAWAY STARGATT & TAYLOR, LLP

March 12, 2019          */s/ Mary F. Dugan*
                        _____
                        Karen L. Pascale (#2903)
                        Mary F. Dugan (#4704)
                        1000 North King Street
                        Wilmington, DE 19801
                        Telephone: (302) 571-6600

                        *Attorneys for Plaintiff Finjan, Inc.*

E-SERVICE
63060166
Mar 12 2019
08:18PM
File & ServeXpress

# EXHIBIT A

# NEWSROOM

Our latest announcements and media mentions, keeping you up to date on what we're up to.

🕐 December 04, 2018

    

*Trustwave Becomes One of the Industry's Most Comprehensive Security Companies Poised to Confront Growing Cyber Threats Head On*

**CHICAGO, SINGAPORE and SYDNEY – December 4, 2018 –** Singtel today announced it has pooled the cybersecurity capabilities, technologies and resources of Singtel, Optus, Trustwave and NCS, into a single global corporate identity operating under the Trustwave brand. The strategic measure forms one of the industry's most comprehensive global cybersecurity companies offering a complete range of managed security services (/en-us/services/managed-security/), consulting, education and leading-edge technologies to help organizations worldwide contend with rapidly evolving external and internal threats.

Through the integration, the new Trustwave can harness the synergies and strengths of Singtel's global cybersecurity business, revenue, capabilities and teams across the Americas, Europe and Asia Pacific. Trustwave's global cyber business now has about 2,000 security employees, a global network of ten connected Advanced Security Operations Centers (/en-us/company/about-us/advanced-security-operations-centers/) (ASOCs) supported by its elite Trustwave SpiderLabs (/en-us/company/about-us/spiderlabs/) security team, millions of businesses enrolled in its cloud-based security platform, more than 10,000 managed security services customers, and nearly 1,000 channel partners and numerous technology partners worldwide. The Trustwave portfolio includes many services and technologies recognized as industry-leading by analysts.

"Uniting the security assets and deep expertise of Singtel, Optus, Trustwave and NCS under one brand and single vision – what we call the new Trustwave – is a pivotal milestone for our customers, partners, employees and company," said Arthur Wong, Chief Executive Officer at Trustwave. "Trustwave is well-positioned to further its role as a recognized leader in cybersecurity and managed security services, areas vital for effective security programs as enterprises accelerate their digital transformation. Customers benefit by having a trusted security partner with true global reach and intelligence, offering around-the-clock monitoring, detection and eradication of threats in addition to deep regional security expertise necessary for successfully addressing global threats and localized attack campaigns."

3/12/2019    Singtel Integrates Global Cybersecurity Capabilities Under Trustwave to Create an Industry-Leading Pure-Play Trust...

Case 1:20-cv-00372-MN    Document 2-1    Filed 03/16/20    Page 295 of 624 PageID #: 301

As part of the integration, Trustwave has re-designed its logo, giving it a bold modern look with new brand identity and color scheme, and launched a new corporate website at www.trustwave.com (http://www.trustwave.com). The website serves as the digital hub showcasing all Trustwave offerings, including those from Singtel, Optus and NCS.

## Benefits of the integration include:

- **Broader security services portfolio –** The new Trustwave portfolio includes managed security services, security testing, consulting, technology solutions and cybersecurity education. The integration provides Trustwave with additional managed security services, third-party technology solutions and cybersecurity education and training services like the Cyber Security Institute in Singapore.

- **Increased focus on industry-leading technologies –** Trustwave will continue to offer both its own technologies and those from third parties. Trustwave has added and will continue to add more industry-leading third-party technologies that are integrated or wrapped with its managed security and consulting services to offer even more compelling solutions that solve cybersecurity problems and challenges.

- **More cybersecurity resources and talent –** Through the integration of Singtel's global cybersecurity assets under Trustwave, the company has added more resources, employees and services to help customers protect their data and reduce risk. At a time when there is a world-wide security skills shortage, the company has about 2,000 security professionals worldwide delivering, selling, marketing and supporting Trustwave cybersecurity solutions and managed security services. The added personnel complements ten interlinked Advanced Security Operations Centers responsible for delivering continuous threat monitoring, detection and threat elimination along with threat intelligence to ensure organizations are continuously protected regardless of location.

- **Advanced security training and continued education –** Trustwave has combined the training and continued education assets from Singtel's cybersecurity businesses including Trustwave Academy and the Cyber Security Institute into a comprehensive program delivered on-premises and remotely. Cybersecurity education has become paramount to addressing the threat landscape through knowledge and best practices. Customers, partners and employees can learn the latest techniques for detecting threats, defending networks, protecting data and optimizing technologies from many of the world's top minds in cybersecurity. Options for earning industry recognized certifications and accreditation in penetration testing, data forensics, incident response and other fields are offered.

- **Separate business unit focused on compliance –** Trustwave has created a separate global Payment Card Industry (PCI) compliance and risk management arm (https://www.trustwavecompliance.com/) to help organizations achieve and maintain regulatory compliance. The division represents a continued commitment to focus on compliance, risk and data privacy customer challenges while building upon Trustwave's foundation as a payment card industry data security standard (PCI DSS) pioneer.

## Industry Recognition Demonstrates Trustwave Momentum and Leadership

In 2018, renowned industry analysts worldwide recognized Trustwave for its leadership in cybersecurity and managed security services.

Gartner, Inc., a leading information and technology and advisory company, placed Trustwave in the Leaders quadrant in the 2018 Gartner Magic Quadrant for Managed Security Services, Worldwide.[i]

International Data Corporation (IDC) named Trustwave a Leader in the IDC MarketScape U.S. Incident Readiness, Response, and Resiliency Services 2018 Vendor Assessment - Beyond the Big 5 Consultancies.[ii] IDC also named Trustwave a Leader in the IDC MarketScape: Asia/Pacific Managed Security Services 2018.[iii] Additionally, IDC named Trustwave a Leader in the IDC MarketScape: Canadian Security Services Providers, 2018 Vendor Assessment.[iv]

Most recently, Frost & Sullivan presented Trustwave with the prestigious 2018 Singapore and Southeast Asia Managed Security Service Provider of the Year award.

## About Trustwave

Trustwave is a leading cybersecurity and managed security services provider that helps businesses fight cybercrime, protect data and reduce security risk. Offering a comprehensive portfolio of managed security services, security testing, consulting, technology solutions and cybersecurity education, Trustwave helps businesses embrace digital transformation securely. Trustwave is a Singtel company and the global security arm of Singtel, Optus and NCS, with customers in 96 countries. For more information about Trustwave, visit https://www.trustwave.com (https://www.trustwave.com).

## About Singtel

Singtel is Asia's leading communications technology group, providing a portfolio of services from next-generation communication, technology services to infotainment to both consumers and businesses. For consumers, Singtel delivers a complete and integrated suite of services, including mobile, broadband and TV. For businesses, Singtel offers a complementary array of workforce mobility solutions, data hosting, cloud, network infrastructure, analytics and cyber-security capabilities. The Group has presence in Asia, Australia and Africa and reaches over 700 million mobile customers in 21 countries. Its infrastructure and technology services for businesses span 21 countries, with more than 428 direct points of presence in 362 cities. For more information, visit www.singtel.com (http://www.singtel.com). Follow us on Twitter at www.twitter.com/SingtelNews (http://www.twitter.com/SingtelNews).

---

i Source: Gartner, "Magic Quadrant for Managed Security Services, Worldwide" by Toby Bussa, Kelly M. Kavanagh, Pete Shoard, Sid Deshpande, February 27, 2018.

ii Source: IDC MarketScape: IDC MarketScape U.S. Incident Readiness, Response, and Resiliency Services 2018 Vendor Assessment - Beyond the Big 5 Consultancies, (IDC# US44257117, October 2018).

iii Source: IDC MarketScape: Asia/Pacific Managed Security Services 2018, (IDC# AP42609818, June 2018).

iv Source: IDC MarketScape: Canadian Security Services Providers, 2018 Vendor Assessment (IDC# CA3005218, March 2018).

(https://www.linkedin.com/compa(https/ttps/www.iter).com/Trustwave)
**SERVICES (/EN-US/SERVICES/)**

Managed Security (/en-us/services/managed-security/)

(https://www.facebook.com/Trust(httpse/)/www.youtube.com/chan
**CAPABILITIES (/EN-US/CAPABILITIES/)**

By Topic (/en-us/capabilities/by-topic/)
 PU33NOdjhqA)

Security Testing (/en-us/services/security-testing/)

Technology (/en-us/services/technology/)

Consulting (/en-us/services/consulting/)

Education (/en-us/services/education/)

By Industry (/en-us/capabilities/by-industry/) (/en-us/)

By Mandate (/en-us/capabilities/by-mandate/)

## RESOURCES (/EN-US/RESOURCES/)

Blogs & Stories (/en-us/resources/blogs/)

Resource Library (/en-us/resources/library/)

Security Resources (/en-us/resources/security-resources/)

Events & Webinars (/en-us/resources/upcoming/)

## COMPANY (/EN-US/COMPANY/)

About Trustwave (/en-us/company/about-us/)

Newsroom (/en-us/company/newsroom/)

Contact (/en-us/company/contact/)

Support (/en-us/company/support/)

## STAY INFORMED

Sign up to receive the latest security news and trends from Trustwave.

email@example.com

SUBSCRIBE

No spam, unsubscribe at any time.

**LEGAL (/EN-US/LEGAL-DOCUMENTS/)**

**TERMS OF USE (/EN-US/LEGAL-DOCUMENTS/TERMS-OF-USE/)**

**PRIVACY POLICY (/EN-US/LEGAL-DOCUMENTS/PRIVACY-POLICY/)**

Copyright © 2019 Trustwave Holdings, Inc.

All rights reserved.

# EXHIBIT B



https://www.bankinfosecurity.com/

Cloud Security , Cybersecurity , Governance

# Singtel to Acquire Trustwave

Telecom Firm to Pay $810 Million for Security Company

Varun Haran (🐦APACinfosec) • April 8, 2015　💬

*(This story has been updated.)*

**See Also:** Webinar | Beyond Managed Security Services: SOC-as-a-Service for Financial Institutions

Singapore-based **Singtel**, Southeast Asia's largest telecommunications company, has entered a definitive agreement to acquire U.S.-based managed security services company Trustwave for $810 million.

Following completion of the deal, Singtel will have a 98 percent ownership stake in Trustwave, with **Robert J. McCullen**, Trustwave's chairman and CEO, holding the remaining 2 percent, according to Singtel's announcement.

Privately held Trustwave, a Chicago-based company with more than 1,200 employees, will continue to operate as a stand-alone business unit under Singtel. The security firm says it has more than 3 million business subscribers in 96 countries for its cloud-based services. It will continue to operate under the "Trustwave" brand globally, without reduction in its services, technology portfolio, support or staff, a spokesman tells Information Security Media Group.

"Being acquired by Singtel will help bolster our ability to expand, grow and continue delivering industry-leading managed security services and technologies that help businesses around the world fight cybercrime, protect data and reduce security risk," McCullen says.

The acquisition will expand Singtel's portfolio of cloud-based solutions "and further entrench its leadership position in the managed services market," the company says.

"We aspire to be a global player in cybersecurity," says Singtel Group CEO Chua Sock Koong. "Our extensive customer reach and strong suite of ICT [information and communications technology] services, together with Trustwave's deep cybersecurity capabilities, will create a powerful combination and allow Singtel to capture global opportunities in the cybersecurity space."

## Assessing the Deal

Sanchit Vir Gogia, chief analyst and group CEO at Delhi, India-based Greyhound Research, believes that this deal will help Singtel to add credibility to its managed security services portfolio. "We believe that with this move, Singtel aims to capture the enterprise consumers and strengthen its footprint as an end-to-end IT services provider for the enterprises," he says.

The acquisition also will enable Singtel to leverage Trustwave's threat intelligence technology and talent to tap the demand for managed security services in North America as well as emerging markets, he adds.

Over the last fiscal year, Singtel has launched strategic partnerships with Akamai and FireEye to launch a cloud-based DDoS mitigation service for enterprises, and it has established security operations centers in Singapore and Australia. "Singtel has been solidifying its portfolio of cybersecurity offerings; the Trustwave acquisition validates this claim," he says.

Abhilash Pillai, director-consulting, Asia Pacific, at strategy consulting firm AMI Partners, says the acquisition helps position Singtel for growth. "In the next five years, more than one fifth of the cloud spend in APAC will be routed through telcos," he says. "This is a three to four percentage point jump from the current market scenario."

In the region, SingTel is one of the frontrunners in transforming from a telecom service provider to a cloud service provider, Pillai says. The company already has a good start in providing cloud services to public, enterprise and small and medium businesses in Singapore, he adds.

## About the Author



### Varun Haran

*Global Director of Programming - Editorial, and Senior Editor, ISMG*

Haran has been a technology journalist in the Indian market for over six years, covering the enterprise technology segment and specializing in information security. He has driven multiple industry events such as the India Computer Security Conferences (ICSC) and the first edition of the Ground Zero Summit 2013 during his stint at UBM. Prior to joining ISMG, Haran was first a reporter with TechTarget writing for SearchSecurity and SearchCIO; and later, correspondent with InformationWeek, where he covered enterprise technology-related topics for the CIO and IT practitioner.

---

© 2019 Information Security Media Group, Corp.          https://www.bankinfosecurity.com/          Toll Free: (800) 944-0401



# EXHIBIT C



🗐 **MUST READ:** <span style="color:red">Microsoft to start nagging users in April about the January 2020 Windows 7 end-of-support deadline</span>

# Singtel acquires Trustwave in $810M security services deal

Singapore telco buys a 98 percent stake in U.S. managed security services provider, Trustwave, as part of efforts to beef up its cloud offerings.



By Eileen Yu for By The Way | April 8, 2015 -- 03:23 GMT (20:23 PDT) | Topic: Security

Singtel has inked a deal to acquire a 98 percent equity interest in Trustwave for an estimated US$810 million, as the Singapore carrier looks to beef up its cloud and managed services portfolio.

Headquartered in Chicago, U.S.A, Trustwave offers hosted services in threat, vulnerability, and compliance management, and has more than three million business subscribers. It has presence in 26 countries across North America, Europe, and the Asia-Pacific region, with a global headcount of 1,200 that includes security professionals in its forensic and threat research security unit, SpiderLabs. It operates five security operation centers and nine engineering centers.

Trustwave Chairman and CEO Robert J. McCullen will retain the remaining 2 percent stake in the company.

According to Singtel, Trustwave will continue to operate independently as a separate business unit after the acquisition has been finalized, but will tap the telco's assets and market presence to expand its portfolio and address market opportunities in the Asia-Pacific region.

On its end, Singtel said the purchase will expand its current cloud-based offerings and footprint in the managed

## LATEST NEWS ON ASIA

**India 'anti-colonial' to its economic detriment: Marc Andreessen in incoherent Twitter rant** (https://www.zdnet.com/article/india-anti-colonial-to-its-economic-detriment-marc-andreessen-in-incoherent-twitter-rant/)

**LG Pay will be a no show at MWC: Report** (https://www.zdnet.com/article/lg-pay-will-be-a-no-show-at-mwc-report/)

**Singtel shrinks net profit by SG$16m** (https://www.zdnet.com/article/singtel-shrinks-net-profit-by-sg16m/)

**Facebook withdraws Free Basics project in India** (https://www.zdnet.com/article/facebook-withdraws-free-basics-project-in-india/)

**Samsung to provide public safety network in South Korea** (https://www.zdnet.com/article/samsung-to-provide-public-safety-network-in-south-korea/)

services market.

The estimated US$810 million deal excludes net debt and is subject to the necessary approvals from regulatory authorities and other third parties, Singtel said. The transaction also is expected to be EBITDA positive from the second year of acquisition and its earnings will be included in Singtel's earnings from the third year, the telco said.

The acquisition is projected to complete in three to six months' time, it added.

In October last year, Singtel signed a five-year agreement with FireEye (https://www.zdnet.com/article/singtel-fireeye-to-invest-50m-in-security-centers/) to set up cybersecurity monitoring facilities in Singapore and Sydney, as well as provide cloud data service for enterprises looking to store their data locally. Worth US$50 million, the deal will fund infrastructure and manpower resources for two Advanced Security Operation Centres (ASOCs).

That same month, the Singapore telco also inked a partnership with Microsoft (https://www.zdnet.com/article/microsoft-ups-cloud-ante-with-azure-marketplace-singtel-partnership/) to provide a Cloud Operating System Network, which allows enterprises in Asia-Pacific to move their data and workload between various cloud environments, including public, private, and SingTel's own virtual private cloud.

**RELATED TOPICS:**    SINGAPORE    SECURITY TV    DATA MANAGEMENT    CXO    DATA CENTERS

## Recommended For You                Sponsored Links by Taboola

**The dead giveaway that tells you when Amazon has a competitive price**
Wikibuy

**If You're Over 40 And Own A Computer, This Game Is A Must-Have!**
Vikings: Free Online Game

**An Insane Credit Card Charging 0% Interest Until 2020**
NextAdvisor

**Wilmington, Delaware Drivers Are Stunned By This New Rule**

Case 1:20-cv-00372-MN   Document 2-1   Filed 03/16/20   Page 305 of 624 PageID #: 311

**You Should Never Shop on Amazon Without Using This Trick – Here's Why**

Honey

**These German hearing aids are going viral**

hearing-aid-device.com

**How To Help Your Cat Thrive In Old Age**

Ultimate Pet Nutrition

**Grandpa Worked Over A Decade On Her Sweet 16 Gift. Her Reaction Was Heartbreaking**

IcePop

SHOW COMMENTS

---

**MORE RESOURCES**

## Employee Habits that Can Put Your Company at Risk

White Papers from Panda Security

READ NOW

## Cryptojacking: A Hidden Cost

White Papers from Panda Security

READ NOW

## PandaLabs Annual Report 2018

White Papers from Panda Security

READ NOW

Windows 7: What's your company's exit strategy?

**JUST IN**

### When your IoT goes dark: Why every device must be open source and multicloud
53 minutes ago

### Mozilla launches Firefox Send, a free, encrypted file-sharing service
2 hours ago

### Trapped in the cloud: When providers increase their prices
2 hours ago

### Windows 7: What is your company's exit strategy?
2 hours ago

### Survey: Managing AI and ML in the enterprise
2 hours ago

### Vulnerability in Swiss e-voting system could have led to vote alterations
3 hours ago

### Get ready for more data privacy regulations

3 hours ago

**Microsoft to start nagging users in April about the January 2020 Windows 7 end-of-support deadline**

3 hours ago

---

**TODAY ON ZDNET**



**SPECIAL FEATURE**

The Rise of Industrial IoT

## Versa Lite review: Fitbit's most affordable smartwatch gets the essentials right

3 hours ago by Matthew Miller in Mobility

## Quantum as a service: How to product-ize a hole in space and time

4 hours ago by Scott Fulton III in Innovation

# ThunderMag: The must-have accessory all MacBook owners will want

<span style="color:red">5 hours ago</span> by Adrian Kingsley-Hughes in Hardware

# Tele-Medicine station could cut ER visits, save on healthcare costs

<span style="color:red">5 hours ago</span> by Greg Nichols in Robotics

# 2018: The year of the banking Trojan

<span style="color:red">5 hours ago</span> by ZDNet Editors in Security




**VIDEO**

How New Belgium Brewing evaluated
managed vs private cloud

## How AR and VR films continue to innovate

5 hours ago by Tonya Hall in Virtual Reality



## Remote access policy

from Tech Pro Research

## Microsoft starts testing Android app-mirroring on Windows 10

6 hours ago by Mary Jo Foley in Windows 10

## Mozilla's Firefox Fenix: New Android browser rethinks tabs and sessions

6 hours ago by Liam Tung in Mobility

## Majesti-Fi Smart and Premium, First Take: Mobile wi-fi hotspots for business travellers

6 hours ago by Cliff Joseph in Networking

## Fitbit Inspire HR review: Tiny activity tracker packs in a stunning amount of tech, adopted by health providers

6 hours ago by Matthew Miller in Mobility





GALLERY

# Tech that stole our heart or broke it

LOAD MORE

**Recommended For You**

Sponsored Links by Taboola

**If You're Over 50 And Own A Computer, This Game Is A Must-Have!**
Throne: Free Online Game

**One Thing All Liars Have in Common, Brace Yourself**
TruthFinder People Search Subscription

**New Rule in Wilmington, Delaware Leaves Drivers Fuming**
Insured Nation - Auto Insurance Quotes

**Seniors With No Life Insurance Are In For A Big Surprise In 2019**
Daily Life Discounts

Article
# How to install, reinstall, upgrade and activate Windows 10

**Trapped in the cloud: When providers increase their prices**

**2018: The year of the banking Trojan**

**How AR and VR films continue to innovate**

**Google spends $9.7 million in wage adjustment for underpaid male employees**

**Cisco to invest $20m in new Sydney Webex Data Center**

**Centrelink moves emergency payments to the NPP**

Article
# What's up with IoT? Everything you need to know about the Internet of Things right now

**Why security is the top barrier in enterprise cloud adoption [Hybrid Cloud TV]**

**How New Belgium Brewing evaluated managed vs. private cloud [Hybrid Cloud TV]**

**With Red Hat, IBM to become the leading hybrid cloud provider**

**How Fred Hutch is using the new AWS Comprehend Medical for cancer research**

**How Pure Storage is facilitating hybrid cloud deployments**

**Capital One's move to the cloud offers these lessons for enterprises**

---

**MORE RESOURCES**

## Secret Server

White Papers from Thycotic

READ NOW

## Don't Learn the Hard Way - Make Supply Chain Visibility Easy with the Power of AI

White Papers from IBM

READ NOW

## IBM Cloud for VMware Solutions: Bringing VMware Environments to the Public Cloud

White Papers from IBM

READ NOW

## Bringing VMware Environments to the Public Cloud

White Papers from IBM

READ NOW

# EXHIBIT D

Case 1:20-cv-00372-MN Document 2-1 Filed 03/16/20 Page 315 of 624 PageID #: 321

**NEWSROOM**

# News Releases

Our latest announcements and media mentions, keeping you up to date on what we're up to.

## Singtel to Acquire Trustwave to Bolster Global Cyber Security Capabilities

🕐 April 07, 2015

    

**CHICAGO - April 7, 2015** - Trustwave® today announced that Singapore Telecommunications Limited (Singtel), Asia's leading communications company, has entered into a definitive agreement to acquire Trustwave Holdings, Inc., a privately held information security company headquartered in Chicago. The acquisition strengthens Singtel's information security capabilities and bolsters Trustwave's ability to expand its leadership in managed security services (/Services/) globally.

Trustwave Chairman, Chief Executive Officer and President Robert J. McCullen said: "We are excited to join Singtel and to leverage its global presence and resources to accelerate worldwide adoption of our security solutions. This strategic partnership creates an unparalleled opportunity to combine Singtel's robust information and communications solutions with Trustwave's industry-leading security technologies and managed services platform to deliver cutting-edge solutions that will enhance our customer experience. Singtel is the perfect partner for us as we continue to help businesses fight cybercrime, protect data and reduce security risk, and the Trustwave team is thrilled to become a part of such a prestigious and innovative organization."

Following the close of the acquisition, Singtel plans to combine its state-of-the-art information and communications technology (ICT) with Trustwave's broad portfolio of managed security services. The acquisition will help expand Singtel's existing line-up of cloud-based solutions to encompass security services, to create an end-to-end ICT offering to business customers-bolstering Singtel's leadership position in the managed services market.

Trustwave adds a number of cyber security assets and capabilities to Singtel including:

- More than three million business subscribers in 96 countries
- More than 1,200 security-focused employees located in 26 different countries
- Five global security operations centers (SOCs) (/Services/Managed-Security/Global-Security-Operations-Centers/) located in Chicago, Denver, Minneapolis, Manila and Warsaw
- The world-renowned Trustwave SpiderLabs® (/Company/SpiderLabs/) ethical hacking and threat research team
- A broad portfolio of security technologies and intellectual property with more than 56 patents either granted or pending

- The unified, cloud-based TrustKeeper® portal (/Services/Managed-Security/Trustkeeper/) which is used to deliver Trustwave security and compliance services globally.

(/en-us/)

Chua Sock Koong, Singtel Group CEO, said: "We aspire to be a global player in cyber security. We have established a strong security business in the region, both organically and through strategic partnerships with global technology leaders. Our extensive customer reach and strong suite of ICT services, together with Trustwave's deep cyber security capabilities, will create a powerful combination and allow Singtel to capture global opportunities in the cyber security space."

The managed security services industry is expected to grow rapidly in the coming years due to the increasing frequency and complexity of cyber-attacks. The industry is estimated to reach approximately US$24 billion in 2018, up almost 75 percent from approximately US$14 billion in 2014, according to the 2014 Gartner Information Security Forecast report.[i]

Trustwave has expanded its leadership in managed security services over the years, and was recently recognized by the industry's top industry analyst firms and media outlets. In December, IDC named Trustwave a "company to watch" (/Resources/Library/Documents/IDC-Private-Vendor-Watchlist-Profile-on-Trustwave) in its profile of the company. Forrester Research also named Trustwave a leader in "The Forrester Wave™: Managed Security Services: North America, Q4 2014," (/Company/Newsroom/News/Trustwave-Named-a-Leader-in-Managed-Security-Services-by-Independent-Research-Firm/) published in November [ii]. SC Magazine also recently named Trustwave a finalist for best managed security service in both their upcoming U.S. and European awards programs.

Post-acquisition, Trustwave will operate as a standalone business unit of Singtel. It will also strengthen its position in North America and Europe, while working closely with Singtel to broaden its overall security portfolio and to address the fast-growing emerging security market opportunity in the Asia Pacific region. Trustwave will continue to be headquartered in Chicago, and the current Trustwave management team will drive the operations and growth of the business.

Trustwave received an early investment from FTV Capital, led by Richard Garman, Managing Partner and angel investor Dick Kiphart who is a Partner and Senior Advisor at William Blair & Company.

The acquisition is subject to regulatory approvals and other customary closing conditions.


**About Singtel**

Singtel is Asia's leading communications group providing a portfolio of services including voice and data solutions over fixed, wireless and Internet platforms as well as infocomm technology and pay TV. The Group has presence in Asia, Australia and Africa with over 500 million mobile customers in 25 countries, including Bangladesh, India, Indonesia, the Philippines and Thailand. It also has a vast network of offices throughout Asia Pacific, Europe and the United States. More information can be found at www.singtel.com (http://www.singtel.com).


**About Trustwave**

Trustwave helps businesses fight cybercrime, protect data and reduce security risk. With cloud and managed security services, integrated technologies and a team of security experts, ethical hackers and researchers, Trustwave enables businesses to transform the way they manage their information security and compliance programs. More than three million businesses are enrolled in the Trustwave TrustKeeper® cloud platform, through which Trustwave delivers automated, efficient and cost-effective threat, vulnerability and compliance management. Trustwave is headquartered in Chicago, with customers in 96 countries. For more information about Trustwave, visit https://www.trustwave.com (/).

☰    (/en-us/)    🔍

### 

<sup>i</sup> Source: Gartner. Forecast: Information Security, Worldwide, 2012-2018, 2Q14 Update. Published: Aug. 2014. Analysts: Ruggero Contu, Christian Canales, Lawrence Pingree. ID: G00264279.

<sup>ii</sup> Source: IDC. Trustwave Private Vendor Watchlist Profile: Pure-Play Security Services. Published: Dec. 2014. Analysts: Christina Richmond, Petra Kacer. ID: 252959.

<sup>iii</sup> The Forrester Wave™: Managed Security Services: North America, Q4 2014. The Forrester Wave is copyrighted by Forrester Research, Inc. Forrester and Forrester Wave are trademarks of Forrester Research, Inc. The Forrester Wave is a graphical representation of Forrester's call on a market and is plotted using a detailed spreadsheet with exposed scores, weightings, and comments. Forrester does not endorse any vendor, product, or service depicted in the Forrester Wave. Information is based on best available resources. Opinions reflect judgment at the time and are subject to change.

(https://www.linkedin.com/company/trustwave)   (https://twitter.com/Trustwave)   (https://www.facebook.com/Trustwave/)   (https://www.youtube.com/channel/UCfPb83iNOdjhqA)

**SERVICES (/EN-US/SERVICES/)**

Managed Security (/en-us/services/managed-security/)

Security Testing (/en-us/services/security-testing/)

Technology (/en-us/services/technology/)

Consulting (/en-us/services/consulting/)

Education (/en-us/services/education/)

**CAPABILITIES (/EN-US/CAPABILITIES/)**

By Topic (/en-us/capabilities/by-topic/)

By Industry (/en-us/capabilities/by-industry/)

By Mandate (/en-us/capabilities/by-mandate/)

**RESOURCES (/EN-US/RESOURCES/)**

Blogs & Stories (/en-us/resources/blogs/)

Resource Library (/en-us/resources/library/)

Security Resources (/en-us/resources/security-resources/)

Events & Webinars (/en-us/resources/upcoming/)

**COMPANY (/EN-US/COMPANY/)**

About Trustwave (/en-us/company/about-us/)

Newsroom (/en-us/company/newsroom/)

Contact (/en-us/company/contact/)

Support (/en-us/company/support/)

**STAY INFORMED**

Sign up to receive the latest security news and trends from Trustwave.

email@example.com

SUBSCRIBE

No spam, unsubscribe at any time.

**LEGAL (/EN-US/LEGAL-DOCUMENTS/)**

**TERMS OF USE (/EN-US/LEGAL-DOCUMENTS/TERMS-OF-USE/)**

**PRIVACY POLICY (/EN-US/LEGAL-DOCUMENTS/PRIVACY-POLICY/)**

Copyright © 2019 Trustwave Holdings, Inc.

All rights reserved.

(/en-us/)

# EXHIBIT B

E-SERVICE
63060166
Mar 12 2019
08:18PM
File & ServeXpress

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

             Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

             Defendant.

C.A. No. N18C-04-006-WCC (CCLD)

### PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION DIRECTED TO DEFENDANT

Pursuant to Delaware Superior Court Civil Rules 26 and 34, Plaintiff Finjan, Inc. ("Finjan") hereby seeks written responses and the production of documents from Defendant Trustwave Holdings, Inc. ("Trustwave") within thirty (30) days from service.  Finjan does not waive any claims or causes of action it may have against Trustwave and/or Singapore Telecommunications Limited and reserves all rights.

### DEFINITIONS

The following definitions apply to this first set of requests for production:

1.    "SINGTEL" includes Singapore Telecommunications Limited, and its subsidiaries, business units, divisions, departments, brands, or other organizational entity, including without limitation Optus, Trustwave, and NCS and any person or entity with actual or apparent authority to act on its behalf.

2.    "SINGTEL'S CYBERSECURITY PRODUCTS" means cybersecurity products, services, and/or subscriptions, including hardware, software, and/or any combination of hardware and software, used to protect, defect, or remedy, cybersecurity issues such as viruses, worms, malware, denial of

service attacks, and/or other cybersecurity issues, manufactured, used, sold, and/or offered by SINGTEL since January 1, 2013.

3.     "TRUSTWAVE," "YOU," and "YOUR" each refers to Defendant Trustwave Holdings, Inc., both before and after its acquisition by SINGTEL, and any person or entity with actual or apparent authority to act on its behalf.

4.     "TRUSTWAVE'S CYBERSECURITY PRODUCTS" means cybersecurity products, services, and/or subscriptions, including hardware, software, and/or any combination of hardware and software, used to protect, defect, or remedy, cybersecurity issues such as viruses, worms, malware, denial of service attacks, and/or other cybersecurity issues, manufactured, used, sold, and/or offered by TRUSTWAVE since January 1, 2013.

5.     "AGREEMENT" means the Amended and Restated Patent License Agreement between Finjan, Inc. and Trustwave Holdings, Inc. attached as Exhibit A to Trustwave's Opening Brief in Support of Motion to Dismiss the Complaint (Dkt. No. 17).

6.     "COMPLAINT" means the complaint filed on April 4, 2018 by Finjan in this lawsuit.

7.     "COMMUNICATION(S)" shall be construed broadly and means any transmittal or receipt of information in the form of facts, ideas, inquiries, or otherwise, and includes memoranda, correspondence, electronic mail, instant messages, text messages, all attachments and enclosures thereto, computer discs, computer drives, recordings of any other type in any medium of written or oral communications, phone logs, call logs, message logs, and notes and memoranda of, or referring or relating to, written or oral communications. A COMMUNICATION is responsive for purposes of these Interrogatories regardless of the sender and recipients of the Communication.

8.      When used in reference to any PERSON, "DESCRIPTION," "DESCRIBE," "IDENTIFICATION," "IDENTIFY" or "IDENTITY" as used herein separately or collectively, means to state, to the extent known:

a.  The PERSON'S full name;

b.  The PERSON'S present or last known address;

c.  The PERSON'S present or last known home telephone number;

d.  The PERSON'S present or last known business address;

e.  The PERSON'S present or last known business telephone number;

f.  The PERSON'S present or last known employer or affiliation;

g.  The PERSON'S present or last known title or position with, at or for Trustwave;

h.  The PERSON'S present or last known job description with, at or for Trustwave; and

i.  The dates on which such PERSON held such PERSON'S last known title or position with, at or for Trustwave.

9.      When used in reference to any product, service, or subscription, "DESCRIPTION," "DESCRIBE," "IDENTIFICATION," "IDENTIFY" or "IDENTITY" as used herein separately or collectively, means to state, to the extent known:

a.  The product, service, or subscription's name(s);

b.  The product, service, or subscription's model name and/or number(s);

c.  The product, service, or subscription's stock keeping units (SKUs) number(s);

d.  The product, service, or subscription's version number(s);

e.  The product, service, or subscription's release date(s);

f.  The product, service, or subscription's identifier(s), unique or otherwise;

10.     When used in reference to an oral or written COMMUNICATION of any nature whatsoever, "DESCRIPTION," "DESCRIBE," "IDENTIFICATION," "IDENTIFY" or "IDENTITY" as used herein separately or collectively, means to set forth the identity of the PERSON by whom, and each PERSON to whom, each such COMMUNICATION was made and all PERSONS present at the time; and:

      a. The date it was made;

      b. The place at which it was made;

      c. The means by which it was made;

      d. The substance thereof; and

      e. A description of each DOCUMENT reflecting or relating to any of the above.

11.     The term "DOCUMENT" means any written, printed, typed, recorded, filmed or other graphic matter of any kind or nature however written or produced, by hand or reproduced by any process, and whether or not claimed to be privileged against discovery on any ground, and whether an original or copy, including, but not limited to: agreements, correspondence, telexes and faxes, tape recordings, and/or transcripts of the same, notes, memoranda (including internal memoranda), summaries and recordings, records, ledgers, contracts, bills, invoices, bills of lading, expense reports, inventories, financial data, wills, other writings, formal or informal in nature, accounting and financial records, diaries, statements, work papers or accountant work papers, paper and magnetic tapes, charts, printouts, electronically or magnetically stored information or data, minutes, publications, calendars, telephone pads, bulletins, directives, logs and listings, real estate valuations or appraisals, and any other information containing paper, writing or physical things, in the possession, custody, and/or control of YOU, YOUR employees, directors, officers, shareholders, agents, or attorneys, and all drafts, notes or preparatory material concerned with said DOCUMENTS where such copy

contained any commentary, notation or other change whatsoever that does not appear in the original or other copy of the DOCUMENT produced. The term "DOCUMENT" includes any and all electronically created or stored information as well as any summary of a DOCUMENT or DOCUMENTS called for hereinafter and any computer program, directory, file, database, or software application, generated, produced, or stored by computer or other data processing and/or data generating machinery.

12.     "EXISTING        BUSINESS"       means       TRUSTWAVE'S CYBERSECURITY PRODUCTS as actually offered at the TIME OF ACQUISITION.

13.     "PERSON" means any natural person, or any non-natural person, including but not limited to any corporation, company, trust, partnership, limited partnership, sole proprietorship, association, institute, joint venture, firm, governmental body, or other entity, for profit or not for profit, whether privately or publicly owned or controlled or partially or fully government owned or controlled.

14.     "PERTAIN" or "PERTAINING" means evidencing, memorializing, referring to, constituting, containing, discussing, describing, embodying, reflecting, identifying, mentioning, stating, or otherwise relating to or regarding in any way, in whole or in part, the subject matter referred to in the Interrogatory, Request for Production, or Request for Admission.

15.     "TIME OF ACQUISITION" means the date of SINGTEL's acquisition of TRUSTWAVE.

## **INSTRUCTIONS**

1.     In responding to the Requests, please furnish all DOCUMENTS in your possession, custody, or control, regardless of whether the DOCUMENT is possessed physically by you or whether the DOCUMENT is possessed physically

by any of your subsidiaries, successors, assigns, agents, brokers, accountants, employees, experts, directors, representatives, attorneys, consultants, auditors, or other Persons acting on their behalf or under their direction and/or the direction of their agents or representatives.

2.      Unless otherwise stated, the time period applicable to each request for production shall be from January 1, 2013 to present.

3.      All DOCUMENTS produced pursuant to these Requests shall be produced as they are kept in the usual course of business.  The titles or other descriptions on the boxes, file folders, bindings, or other containers in which tangible things are kept are to be left intact.

4.      All electronically stored information (a/k/a ESI) (with the exception of those files listed in Instruction No. 5) should be produced in single page .tiff image format, with the below metadata fields provided and full text extracted to a linked electronic file.  The extracted text should be produced on the DOCUMENT level.  The metadata fields should include the following:

    a.  BegBates
    b.  EndBates
    c.  BegAttach
    d.  EndAttach
    e.  File Name
    f.  Native File Path
    g.  MD5 Hash
    h.  From
    i.  To
    j.  CC
    k.  BCC
    l.  Subject
    m. Message Sent Date/Time
    n.  Message Received Date/Time
    o.  File Extension
    p.  File Size
    q.  Created Date/Time

    r.  Last Modified Date/Time
    s.  Title
    t.  Author
    u.  Custodian
    v.  Extracted Text
    w. Confidentiality designation field
    x.  Has Redactions

5.      In addition, we request that the following ESI be produced in Native File Format instead of .tiff format: spreadsheets and other such file types that when converted to image format take on an appearance noticeably different from the one the running native File took when viewed on a computer screen, such as an Excel spreadsheet with its columns and cells running over multiple .tiff images.  A .tiff slip sheet should also be produced for these DOCUMENTS that links to the native File and reads "Produced in Native Format."

6.      Responsive DOCUMENTS shall be produced to counsel for Plaintiff at the offices of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, within thirty (30) days after service hereof or at such other time and place as the Parties may agree or as ordered by the Court.

7.      If any portion of any DOCUMENT is responsive to a Request, the entire DOCUMENT shall be produced.

8.      If there is no DOCUMENT responsive to any particular Request or category, you shall so state in writing.

9.      Notwithstanding the assertion of any objections, any purportedly privileged DOCUMENTS containing non-privileged matters or information must be disclosed, with the purportedly privileged portion redacted.

10.    If you cannot produce all DOCUMENTS responsive to a Request for Production after exercising due diligence to secure them, please state as such and

furnish DOCUMENTS to the extent possible, specifying your inability to furnish the remainder and stating whatever information you have concerning the unavailable DOCUMENTS.  If your response is qualified in any manner, please set forth the details of such qualification.

11.     If you object to any part of a Request for Production and refuse to furnish DOCUMENTS and information responsive to that part, please state your objection(s) and furnish DOCUMENTS responsive to the remaining portion of that particular request. If you object to the scope or time period of a request and refuse to produce DOCUMENTS and information for that scope or time period, please state your objection(s) and furnish DOCUMENTS and information responsive to the request for the scope or time period that you contend is appropriate.

12.     In the event that YOU wishes to assert the attorney-client privilege, the work product doctrine, or any other privilege as to any DOCUMENT requested by any of the following requests, for each such assertion, please provide a privilege log identifying the DOCUMENT or copy thereof, the nature of the privilege claimed, and the facts or grounds supporting the claim of privilege in such detail to permit the Court to reach a determination as to the propriety of such assertion.

11.     If any DOCUMENT described herein was, but no longer is, within YOUR possession, custody, or control or that of a PERSON acting on YOUR behalf, please state in detail: (a) a summary of the contents of the DOCUMENTS; (b) what disposition was made of it; (c) the date of such disposition; (d) the reason for such disposition; (e) whether the original or a copy thereof is within the possession, custody, or control of any other PERSON; and (f) if the answer to (e) is affirmative, the identify of that PERSON.

12.     The fact that a DOCUMENT has been or shall be produced by any other PERSON does not relieve you from the obligation to produce your copy of

the same DOCUMENT, even if the two DOCUMENTS are identical in all respects.

13.     The specificity of any Request herein shall not be construed to limit the generality or scope of any other Request herein.

14.     "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any information that might otherwise be construed to be outside their scope.

15.     Use of the singular tense will be deemed to include the plural and vice versa, and the use of the masculine pronoun will be deemed to include all genders, as necessary, to bring within the scope of these Requests all DOCUMENTS and responses that might otherwise be construed to be outside their scope.

13.     All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

14.     Pursuant to Superior Court Rule 26(e), the Requests are continuing in nature and require further and supplemental production if you discover or receive additional responsive DOCUMENTS between when the Request is received and the completion of this Litigation.

## **DOCUMENTS TO BE PRODUCED**

1.     All DOCUMENTS and COMMUNICATIONS describing the TIME OF ACQUISITION.

2.     All DOCUMENTS and COMMUNICATIONS identifying and/or describing any and all products, services, and/or subscriptions comprising the

EXISTING BUSINESS, including all models, stock keeping units (SKUs), version numbers, and release dates.

3.      All DOCUMENTS and COMMUNICATIONS identifying and/or describing any and all products, services, and/or subscriptions comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS, including all models, stock keeping units (SKUs), version numbers, and release dates.

4.      All DOCUMENTS and COMMUNICATIONS identifying and/or describing any and all products, services, and/or subscriptions comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS other than the EXISTING BUSINESS, including all models, stock keeping units (SKUs), version numbers, and release dates.

5.      All DOCUMENTS and COMMUNICATIONS identifying and/or describing any and all updates for TRUSTWAVE'S SECURITY PRODUCTS, including their respective release dates.

6.      All DOCUMENTS and COMMUNICATIONS identifying and/or describing the differences between any and all models, stock keeping units (SKUs), and versions of TRUSTWAVE'S SECURITY PRODUCTS.

7.      All DOCUMENTS and COMMUNICATIONS describing the relationship between any and all products, services, and/or subscriptions

comprising TRUSTWAVE'S SECURITY PRODUCTS and the EXISTING

BUSINESS, including any lineage, incorporation, integration, or derivation.

8.    All DOCUMENTS and COMMUNICATIONS identifying and/or

describing the integration of any and all products, services, and/or subscriptions

comprising the EXISTING BUSINESS into TRUSTWAVE'S CYBERSECURITY

PRODUCTS, including any sharing of source code, technology, know-how, or

other knowledge from the EXISTING BUSINESS.

9.    All DOCUMENTS and COMMUNICATIONS describing the

worldwide revenues, including by worldwide revenues by quarter, numbers of

units, subscriptions, and/or licenses sold, and price for each unit, subscription, and/

or license, since the TIME OF ACQUISITION, for each product, service, and/or

subscription comprising TRUSTWAVE'S SECURITY PRODUCTS.

10.    All DOCUMENTS and COMMUNICATIONS identifying and/or

describing any and all products, services, and/or subscriptions comprising

SINGTEL'S CYBERSECURITY PRODUCTS, including all models, stock

keeping units (SKUs), version numbers, and release dates.

11.    All DOCUMENTS and COMMUNICATIONS identifying and/or

describing any and all products, services, and/or subscriptions comprising

SINGTEL'S CYBERSECURITY PRODUCTS other than the EXISTING

BUSINESS, including all models, stock keeping units (SKUs), version numbers, and release dates.

12.     All DOCUMENTS and COMMUNICATIONS identifying and/or describing any and all updates for SINGTEL'S SECURITY PRODUCTS, including their respective release dates.

13.     All DOCUMENTS and COMMUNICATIONS identifying and/or describing the differences between any and all models, stock keeping units (SKUs), and versions of SINGTEL'S SECURITY PRODUCTS.

14.     All DOCUMENTS and COMMUNICATIONS describing the relationship between any and all products, services, and/or subscriptions comprising SINGTEL'S SECURITY PRODUCTS and the EXISTING BUSINESS, including any lineage, incorporation, integration, or derivation.

15.     All DOCUMENTS and COMMUNICATIONS describing the relationship between any and all products, services, and/or subscriptions comprising SINGTEL'S SECURITY PRODUCTS and TRUSTWAVE'S CYBERSECURITY PRODUCTS, including any lineage, incorporation, integration, or derivation.

16.     All DOCUMENTS and COMMUNICATIONS identifying and/or describing the integration of any and all products, services, and/or subscriptions comprising the EXISTING BUSINESS into SINGTEL'S CYBERSECURITY

PRODUCTS, including any sharing of source code, technology, know-how, or other knowledge from the EXISTING BUSINESS.

17.     All DOCUMENTS and COMMUNICATIONS identifying and/or describing the integration of any and all products, services, and/or subscriptions comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS into SINGTEL'S CYBERSECURITY PRODUCTS, including any sharing of source code, technology, know-how, or other knowledge from the EXISTING BUSINESS.

18.     All DOCUMENTS and COMMUNICATIONS describing the worldwide revenues, including by worldwide revenues by quarter, numbers of units, subscriptions, and/or licenses sold, and price for each unit, subscription, and/or license, since the TIME OF ACQUISITION, for each product, service, and/or subscription comprising SINGTEL'S SECURITY PRODUCTS.

19.     All DOCUMENTS and COMMUNICATIONS identifying and/or describing any and all products, services, and/or subscriptions that have been transferred or "pooled" under the Trustwave brand, as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A.

20.     All DOCUMENTS and COMMUNICATIONS identifying and/or describing any and all products, services, and/or subscriptions comprising

"Singtel's global cybersecurity assets," as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

21.    All DOCUMENTS and COMMUNICATIONS describing the relationship between any and all products that have been transferred or "pooled" under the Trustwave brand, as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A, and the EXISTING BUSINESS, including any lineage, incorporation, integration, or derivation.

22.    All DOCUMENTS and COMMUNICATIONS describing the relationship between any and all products that have been transferred or "pooled" under the Trustwave brand, as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A, and TRUSTWAVE'S CYBERSECURITY PRODUCTS, including any lineage, incorporation, integration, or derivation.

23.    All DOCUMENTS and COMMUNICATIONS identifying and/or describing the integration of any and all products, services, and/or subscriptions comprising the EXISTING BUSINESS into the products, services, and/ or subscriptions that have been transferred or "pooled" under the Trustwave brand, as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A, including any sharing of source code, technology, know-how, or other knowledge from the EXISTING BUSINESS.

24.    All DOCUMENTS and COMMUNICATIONS identifying and/or describing the integration of any and all products, services, and/or subscriptions comprising the TRUSTWAVE'S CYBERSECURITY PRODUCTS into the products, services, and/ or subscriptions that have been transferred or "pooled" under the Trustwave brand, as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A, including any sharing of source code, technology, know-how, or other knowledge from the TRUSTWAVE'S CYBERSECURITY PRODUCTS.

25.    All DOCUMENTS and COMMUNICATIONS describing the relationship between any and all products comprising "Singtel's global cybersecurity assets," as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A, and the EXISTING BUSINESS, including any lineage, incorporation, integration, or derivation.

26.    All DOCUMENTS and COMMUNICATIONS describing the relationship between any and all products comprising "Singtel's global cybersecurity assets," as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A, and TRUSTWAVE'S CYBERSECURITY PRODUCTS, including any lineage, incorporation, integration, or derivation.

27.    All DOCUMENTS and COMMUNICATIONS identifying and/or describing the integration of any and all products, services, and/or subscriptions comprising the EXISTING BUSINESS into the products, services, and/ or subscriptions comprising "Singtel's global cybersecurity assets," as described in the Trustwave article found at https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-

under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A,
including any sharing of source code, technology, know-how, or other knowledge
from the EXISTING BUSINESS.

28.   All DOCUMENTS and COMMUNICATIONS identifying and/or
describing the integration of any and all products, services, and/or subscriptions
comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS into the products,
services, and/ or subscriptions comprising "Singtel's global cybersecurity assets,"
as described in the Trustwave article found at https://www.trustwave.com/en-
us/company/newsroom/news/singtel-integrates-global-cybersecurity-capabilities-
under-trustwave-to-create-an-industry-powerhouse/, attached as Exhibit A,
including any sharing of source code, technology, know-how, or other knowledge
from TRUSTWAVE'S CYBERSECURITY PRODUCTS.

29.   All copies of royalty statements as submitted to Finjan.

30.   All supporting documentation used for royalty calculations by
TRUSTWAVE to create the Finjan royalty statements;

31.   Copies of all checks and wire transfer confirmations for royalty
payments from TRUSTWAVE AND SINGTEL.

32.   Audited annual financial statements for TRUSTWAVE and
SINGTEL for each year since January 1, 2013.

33.     All Management Reports which show annual and/or quarterly revenue by product, services, and/or subscription, for TRSTUWAVE AND SINGTEL.

34.     All DOCUMENTS and COMMUNICATIONS reflecting line-item transaction-level sales data, including sales, inter-company sales, returns, discounts, and applicable deductions per Section 1.9 of the AGREEMENT (if any), including records from accounting systems for TRUSTWAVE and SINGTEL, including the following fields:

a.  Invoice date;

b.  Invoice number;

c.  Document type (debit/credit);

d.  Attributed legal entity;

e.  Model/item/SKU number/version number;

f.  Model/item/SKU number/version description;

g.  Model/item/SKU number/version family/type;

h.  Credit memo reason (e.g., discount, price adjustment, etc.);

i.  Customer name;

j.  Country of sale;

k.  Sales or order type (i.e., internal v. external);

l.  Units sold;

m. Local currency type;

n. Gross amount in local currency;

o. Gross amount in reporting currency;

p. Gross to net deduction amount (if any);

q. Gross to net deduction description (if any);

r. Net sales amount in local currency;

s. Net sales amount in reporting currency.

35. All DOCUMENTS sufficient to list all products and services sold (royalty bearing and non-royalty bearing) by TRUSTWAVE or SINGTEL, including the following fields:

a. Item number;

b. Item description;

c. Item type and/or service category;

d. Quantity sold;

e. Revenue;

f. Whether the item uses any Finjan intellectual property;

36. TRUSTWAVE and SINGTEL organization charts, including those showing subsidiaries, affiliates, and parent organization.

37. Time lines showing name changes since January 1, 2013.

38. All DOCUMENTS and COMMUNICATIONS requested by KPMG in the course of KPMG's audit, pursuant to Section 3.4 of the AGREEMENT.

39.    All DOCUMENTS and COMMUNICATIONS responsive to KPMG's audit requests pursuant to Section 3.4 of the AGREEMENT.

40.    All DOCUMENTS and COMMUNICATIONS, including all "books and records," "necessary to determine the royalties" owed pursuant to Section 3.4 of the AGREEMENT.

41.    All DOCUMENTS and COMMUNICATIONS necessary to determine "whether or not SINGTEL is actually using Finjan's patent technology that would trigger royalty payments under the [AGREEMENT]," as set forth in the Court's February 11, 2019 Order.

42.    All DOCUMENTS and COMMUNICATIONS, to the extent not otherwise responsive to the foregoing Requests, that Defendants may seek to introduce at trial or refer to in any motion or opposition to any motion filed in this Action.

Dated:  March 12, 2019

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**

*/s/ Mary F. Dugan*

_____
Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

## CERTIFICATE OF SERVICE

I, Mary F. Dugan, Esquire, hereby certify that on March 12, 2019, I caused true and correct copies of the foregoing document to be served upon the following counsel of record as indicated:

### VIA FILE & SERVEXPRESS AND EMAIL:

Jack B. Blumenfeld                          jblumenfeld@mnat.com
Alexandra M. Cumings                        acumings@mnat.com
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

### VIA EMAIL:

John S. Letchinger                          jletchinger@bakerlaw.com
Matthew J. Caccamo                          mcaccamo@bakerlaw.com
Baker & Hostetler LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901

YOUNG CONAWAY STARGATT & TAYLOR, LLP

March 12, 2019          */s/ Mary F. Dugan*
                        _____
                        Karen L. Pascale (#2903)
                        Mary F. Dugan (#4704)
                        1000 North King Street
                        Wilmington, DE 19801
                        Telephone: (302) 571-6600

                        *Attorneys for Plaintiff Finjan, Inc.*

01:23470365.1                          21

E-SERVICE
63060166
Mar 12 2019
08:18PM
File & ServeXpress

# EXHIBIT A

☰

(/en-us/)

🔍

# NEWSROOM

Our latest announcements and media mentions, keeping you up to date on what we're up to.

🕐 December 04, 2018



   

*Trustwave Becomes One of the Industry's Most Comprehensive Security Companies Poised to Confront Growing Cyber Threats Head On*

**CHICAGO, SINGAPORE and SYDNEY – December 4, 2018 –** Singtel today announced it has pooled the cybersecurity capabilities, technologies and resources of Singtel, Optus, Trustwave and NCS, into a single global corporate identity operating under the Trustwave brand. The strategic measure forms one of the industry's most comprehensive global cybersecurity companies offering a complete range of managed security services (/en-us/services/managed-security/), consulting, education and leading-edge technologies to help organizations worldwide contend with rapidly evolving external and internal threats.

Through the integration, the new Trustwave can harness the synergies and strengths of Singtel's global cybersecurity business, revenue, capabilities and teams across the Americas, Europe and Asia Pacific. Trustwave's global cyber business now has about 2,000 security employees, a global network of ten connected Advanced Security Operations Centers (/en-us/company/about-us/advanced-security-operations-centers/) (ASOCs) supported by its elite Trustwave SpiderLabs (/en-us/company/about-us/spiderlabs/) security team, millions of businesses enrolled in its cloud-based security platform, more than 10,000 managed security services customers, and nearly 1,000 channel partners and numerous technology partners worldwide. The Trustwave portfolio includes many services and technologies recognized as industry-leading by analysts.

"Uniting the security assets and deep expertise of Singtel, Optus, Trustwave and NCS under one brand and single vision – what we call the new Trustwave – is a pivotal milestone for our customers, partners, employees and company," said Arthur Wong, Chief Executive Officer at Trustwave. "Trustwave is well-positioned to further its role as a recognized leader in cybersecurity and managed security services, areas vital for effective security programs as enterprises accelerate their digital transformation. Customers benefit by having a trusted security partner with true global reach and intelligence, offering around-the-clock monitoring, detection and eradication of threats in addition to deep regional security expertise necessary for successfully addressing global threats and localized attack campaigns."

As part of the integration, Trustwave has re-designed its logo, giving it a bold modern look with new brand identity and color scheme, and launched a new corporate website at www.trustwave.com (//en-us/) (http://www.trustwave.com). The website serves as the digital hub showcasing all Trustwave offerings, including those from Singtel, Optus and NCS.

## Benefits of the integration include:

- **Broader security services portfolio** – The new Trustwave portfolio includes managed security services, security testing, consulting, technology solutions and cybersecurity education. The integration provides Trustwave with additional managed security services, third-party technology solutions and cybersecurity education and training services like the Cyber Security Institute in Singapore.

- **Increased focus on industry-leading technologies** – Trustwave will continue to offer both its own technologies and those from third parties. Trustwave has added and will continue to add more industry-leading third-party technologies that are integrated or wrapped with its managed security and consulting services to offer even more compelling solutions that solve cybersecurity problems and challenges.

- **More cybersecurity resources and talent** – Through the integration of Singtel's global cybersecurity assets under Trustwave, the company has added more resources, employees and services to help customers protect their data and reduce risk. At a time when there is a world-wide security skills shortage, the company has about 2,000 security professionals worldwide delivering, selling, marketing and supporting Trustwave cybersecurity solutions and managed security services. The added personnel complements ten interlinked Advanced Security Operations Centers responsible for delivering continuous threat monitoring, detection and threat elimination along with threat intelligence to ensure organizations are continuously protected regardless of location.

- **Advanced security training and continued education** – Trustwave has combined the training and continued education assets from Singtel's cybersecurity businesses including Trustwave Academy and the Cyber Security Institute into a comprehensive program delivered on-premises and remotely. Cybersecurity education has become paramount to addressing the threat landscape through knowledge and best practices. Customers, partners and employees can learn the latest techniques for detecting threats, defending networks, protecting data and optimizing technologies from many of the world's top minds in cybersecurity. Options for earning industry recognized certifications and accreditation in penetration testing, data forensics, incident response and other fields are offered.

- **Separate business unit focused on compliance** – Trustwave has created a separate global Payment Card Industry (PCI) compliance and risk management arm (https://www.trustwavecompliance.com/) to help organizations achieve and maintain regulatory compliance. The division represents a continued commitment to focus on compliance, risk and data privacy customer challenges while building upon Trustwave's foundation as a payment card industry data security standard (PCI DSS) pioneer.

## Industry Recognition Demonstrates Trustwave Momentum and Leadership

In 2018, renowned industry analysts worldwide recognized Trustwave for its leadership in cybersecurity and managed security services.

Gartner, Inc., a leading information and technology and advisory company, placed Trustwave in the Leaders quadrant in the 2018 Gartner Magic Quadrant for Managed Security Services, Worldwide.[i]

International Data Corporation (IDC) named Trustwave a Leader in the IDC MarketScape U.S. Incident Readiness, Response, and Resiliency Services 2018 Vendor Assessment - Beyond the Big 5 Consultancies.[ii] IDC also named Trustwave a Leader in the IDC MarketScape: Asia/Pacific Managed Security Services 2018.[iii] Additionally, IDC named Trustwave a Leader in the IDC MarketScape: Canadian Security Services Providers, 2018 Vendor Assessment.[iv]

3/12/2019   Singtel Integrates Global Cybersecurity Capabilities Under Trustwave to Create an Industry-first Powerhouse | Trustwave

Case 1:20-cv-00372-WMN   Document 2-1   Filed 03/16/20   Page 344 of 624 PageID #: 350

Most recently, Frost & Sullivan presented Trustwave with the prestigious 2018 Singapore and Southeast Asia Managed Security Service Provider of the Year award.

## About Trustwave

Trustwave is a leading cybersecurity and managed security services provider that helps businesses fight cybercrime, protect data and reduce security risk. Offering a comprehensive portfolio of managed security services, security testing, consulting, technology solutions and cybersecurity education, Trustwave helps businesses embrace digital transformation securely. Trustwave is a Singtel company and the global security arm of Singtel, Optus and NCS, with customers in 96 countries. For more information about Trustwave, visit https://www.trustwave.com (https://www.trustwave.com).

## About Singtel

Singtel is Asia's leading communications technology group, providing a portfolio of services from next-generation communication, technology services to infotainment to both consumers and businesses. For consumers, Singtel delivers a complete and integrated suite of services, including mobile, broadband and TV. For businesses, Singtel offers a complementary array of workforce mobility solutions, data hosting, cloud, network infrastructure, analytics and cyber-security capabilities. The Group has presence in Asia, Australia and Africa and reaches over 700 million mobile customers in 21 countries. Its infrastructure and technology services for businesses span 21 countries, with more than 428 direct points of presence in 362 cities. For more information, visit www.singtel.com (http://www.singtel.com). Follow us on Twitter at www.twitter.com/SingtelNews (http://www.twitter.com/SingtelNews).

---

[i] Source: Gartner, "Magic Quadrant for Managed Security Services, Worldwide" by Toby Bussa, Kelly M. Kavanagh, Pete Shoard, Sid Deshpande, February 27, 2018.

[ii] Source: IDC MarketScape: IDC MarketScape U.S. Incident Readiness, Response, and Resiliency Services 2018 Vendor Assessment - Beyond the Big 5 Consultancies, (IDC# US44257117, October 2018).

[iii] Source: IDC MarketScape: Asia/Pacific Managed Security Services 2018, (IDC# AP42609818, June 2018).

[iv] Source: IDC MarketScape: Canadian Security Services Providers, 2018 Vendor Assessment (IDC# CA3005218, March 2018).

(https://www.linkedin.com/compa(htyps://twate)ter.com/Trustwave)     (https://www.facebook.com/Trust(wattpes)/)/www.youtube.com/chan

**SERVICES (/EN-US/SERVICES/)**          **CAPABILITIES (/EN-US/CAPABILITIES/)**

Managed Security (/en-us/services/managed-security/)     By Topic (/en-us/capabilities/by-topic/)(UC83NOdjhqA)

Security Testing (/en-us/services/security-testing/)

Technology (/en-us/services/technology/)

Consulting (/en-us/services/consulting/)

Education (/en-us/services/education/)

By Industry (/en-us/capabilities/by-industry/)

By Mandate (/en-us/capabilities/by-mandate/)

**RESOURCES (/EN-US/RESOURCES/)**

Blogs & Stories (/en-us/resources/blogs/)

Resource Library (/en-us/resources/library/)

Security Resources (/en-us/resources/security-resources/)

Events & Webinars (/en-us/resources/upcoming/)

**COMPANY (/EN-US/COMPANY/)**

About Trustwave (/en-us/company/about-us/)

Newsroom (/en-us/company/newsroom/)

Contact (/en-us/company/contact/)

Support (/en-us/company/support/)

**STAY INFORMED**

Sign up to receive the latest security news and trends from Trustwave.

email@example.com

SUBSCRIBE

No spam, unsubscribe at any time.

**LEGAL (/EN-US/LEGAL-DOCUMENTS/)**

**TERMS OF USE (/EN-US/LEGAL-DOCUMENTS/TERMS-OF-USE/)**

**PRIVACY POLICY (/EN-US/LEGAL-DOCUMENTS/PRIVACY-POLICY/)**

Copyright © 2019 Trustwave Holdings, Inc.

All rights reserved.

EFiled:  May 29 2019 05:12PM EDT
Transaction ID 63305179
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                              )
                                          )
              Plaintiff,                  )
                                          ) C.A. No. N18C-04-006 WCC CCLD
       v.                                 )
                                          )
TRUSTWAVE HOLDINGS, INC.,                 )
                                          )
              Defendant.                  )

**RULE 37(e)(1) CERTIFICATION IN SUPPORT
OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Alexandra M. Cumings hereby certifies:

1.     I am a member of the Bar of this Court and an attorney at Morris, Nichols, Arsht & Tunnell LLP ("MNAT"), attorneys for Defendant Trustwave Holdings, Inc. ("Trustwave").  I have knowledge of the facts set forth in this Certification, which I make on behalf of Trustwave.

2.     Through its Motion for Protective Order (the "Motion"), Trustwave seeks an order precluding discovery into topics beyond what the Court identified as the proper scope of discovery in its February 11, 2019 Letter Opinion (the "Opinion").

3.     Plaintiff Finjan, Inc. ("Finjan") served its First Set of Interrogatories ("Interrogatories") and First Set of Requests for Production ("Document Requests") on March 13, 2019.

4.     On April 9, 2019, counsel for Trustwave informed counsel for Finjan that the scope of the discovery requests exceeded the permissible scope of discovery pursuant to the Letter Opinion and requested to meet and confer.

5.     Counsel for Finjan agreed to meet and confer after Trustwave served its responses and objections to the discovery requests.  Trustwave agreed, and by email on April 12, 2019, counsel for Trustwave further explained its position on the overbreadth of the discovery responses.

6.     Trustwave served its responses and objections to the Interrogatories and Document Requests on April 12, 2019.

7.     On April 15, 2019, counsel for the parties met and conferred on the scope of Finjan's discovery requests.  As a result of the meet and confer, Trustwave agreed to continue further discussions to attempt to reach a resolution.

8.     On April 23, 2019, counsel for the parties met and conferred a second time on the scope of Finjan's discovery requests, and each side agreed to follow up on several questions that arose during the call.

9.     On April 30, 2019 by email, counsel for Trustwave followed up on the outstanding issues by providing counsel for Finjan certain additional information. As of the date of filing the Motion, counsel for Finjan has not followed up with Trustwave on the issues raised on the call.

2

10.     On May 7 and 8, counsel for the parties exchanged emails regarding scheduling a hearing for Trustwave's forthcoming motion for protective order.  In those emails, counsel for Trustwave expressed its willingness to continue to engage in discussions to attempt to resolve or narrow the discovery issues described in the Motion.  Counsel for Finjan stated that it would confer with its client on the scope of the discovery requests and then respond to Trustwave's position as to the scope of Finjan's discovery requests.  As of the date of the Motion, counsel for Finjan has not followed up with Trustwave on the scope of discovery or otherwise agreed to modify its requests in any way.

11.     In sum, before filing the Motion, Trustwave identified the issue with the scope of Finjan's discovery requests and offered Finjan the opportunity to correct those issues or provide additional information.  Finjan chose not to do so.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:
John S. Letchinger
BAKER& HOSTETLER LLP                  /s/  Alexandra M. Cumings
191 N. Wacker Drive, Suite 3100       Jack B. Blumenfeld (#1014)
Chicago, IL  60606-1901               Alexandra M. Cumings (#6146)
(312) 416-6200                        1201 North Market Street
                                      P.O. Box 1347
Jared A. Brandyberry                  Wilmington, DE  19899-1347
BAKER& HOSTETLER LLP                  (302) 658-9200
1801 California Street, Suite 4400    Attorneys for Defendant
Denver, CO  80202                     Trustwave Holdings, Inc.
(303) 764-4072

May 29, 2019

3

EFiled:  Jun 05 2019 04:41PM EDT
Transaction ID 63327242
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| Defendant. | ) |

### **RE-NOTICE OF MOTION**

PLEASE TAKE NOTICE that Trustwave Holdings, Inc.'s Motion for

Protective Order (Dkt. 48) will be presented to the Court on June 19, 2019.

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

June 5, 2019

/s/ Alexandra M. Cumings
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress*.

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled:  Jun 06 2019 03:55PM EDT
Transaction ID 63333604
Case No. N18C-04-006 WCC CCLD

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

ALEXANDRA M. CUMINGS
(302) 351-9248
(302) 425-3012 FAX
acumings@mnat.com

June 6, 2019

**BY E-FILING AND HAND DELIVERY**

The Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

> Re:   *Finjan, Inc. v. Trustwave Holdings, Inc.*,
>       C.A. No. N18C-04-006-WCC [CCLD

Dear Judge Carpenter:

I write on behalf of Defendant Trustwave Holdings, Inc. ("Trustwave") regarding Trustwave's Motion for Protective Order (the "Motion"), filed May 29, 2019 (Dkt. 48), which was originally scheduled for oral argument on the Court's routine motion calendar for June 12, 2019.  After being advised yesterday that Finjan does not wish to proceed with the hearing on June 12 as noticed because it intends to engage new counsel, Trustwave re-noticed the Motion for hearing on June 19, 2019.

The Honorable William C. Carpenter, Jr.
June 6, 2019
Page 2

Approximately two months ago, on April 9, 2019, Trustwave first raised its concerns with opposing counsel that Plaintiff Finjan, Inc.'s ("Finjan") discovery requests far exceed the permissible scope of discovery in this action, especially following this Court's February 11, 2019 Letter Opinion ("Order"). After several discussions and email exchanges, Trustwave repeatedly delayed filing the Motion based on Finjan's representations that it would engage in good faith negotiations to attempt to bring discovery in line with the Court's Order in order to resolve the discovery dispute. Despite agreeing to provide substantive responses to Trustwave's concerns, Finjan went silent for three weeks, and thus Trustwave filed the Motion on May 29, 2019, to be heard on June 12.

On June 5, 2019, Trustwave was informed that Finjan could not proceed with the June 12th hearing because it anticipated retaining new counsel. Finjan was not able to provide a date by when it could proceed with the hearing on Trustwave's Motion. Because counsel for Trustwave has significant scheduling restrictions in the last week of June and most of July (and Trustwave is cognizant that the Court may not hear argument in August pursuant to the Delaware Supreme Court's Work-Life Balance Order), Trustwave has re-noticed the Motion for June 19, 2019. Finjan's current Delaware counsel, Mary Dugan, promptly contacted our office about the change of counsel issue. We have not been contacted by lead

The Honorable William C. Carpenter, Jr.
June 6, 2019
Page 3

counsel and it is not clear whether or not Finjan is engaging substitute lead counsel

in addition to Delaware counsel.

Trustwave recognizes that Finjan ultimately may not be able to go

forward with a hearing on June 19 given the impending change in counsel, but

Trustwave has noticed the Motion for that day to reserve its rights, as it advised

Ms. Dugan.   Trustwave already delayed filing the Motion for weeks and is

concerned that Finjan will attempt to re-open issues resolved by the Order and

otherwise continue to pursue grossly overbroad discovery.   While Trustwave will,

of course, work with anticipated new counsel to arrive at a reasonable schedule, it

believed it important to advise the Court of the current status of the matter.

Should Your Honor have any questions, the parties are available at the

Court's convenience.

Respectfully,

*/s/ Alexandra M. Cumings*

Alexandra M. Cumings (#6146)

cc:    Karen L. Pascale, Esquire (via File & Serve*Xpress*)
       Mary F. Dugan (Via File & Serve*Xpress*)

EFiled:  Jun 13 2019 11:56AM EDT
Transaction ID 63359540
Case No. N18C-04-006 WCC CCLD

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

ALEXANDRA M. CUMINGS
(302) 351-9248
(302) 425-3012 FAX
acumings@mnat.com

June 13, 2019

## BY E-FILING AND HAND DELIVERY

The Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

> Re:   *Finjan, Inc. v. Trustwave Holdings, Inc.*,
>        C.A. No. N18C-04-006-WCC [CCLD

Dear Judge Carpenter:

I write on behalf of Defendant Trustwave Holdings, Inc.

("Trustwave") regarding Trustwave's Motion for Protective Order (the "Motion"),

filed May 29, 2019 (Dkt. 48), which was re-noticed for oral argument as a routine

motion on June 19, 2019.  Following our letter of June 6, 2019 (Dkt. 53), we were

contacted by Karen Keller of Shaw Keller LLP and Bijal Vakil of White & Case

LLP, who advise that they will be substituting in for current counsel in this matter

on behalf of Plaintiff Finjan, Inc.  At their request and subject to written agreement

The Honorable William C. Carpenter, Jr.
June 13, 2019
Page 2

between the parties, Trustwave has agreed to withdraw the June 19, 2019 hearing

date for its Motion for Protective Order.  It is the parties' collective hope that it

will be unnecessary for Trustwave to re-notice the Motion.

Should Your Honor have any questions, the parties are available at the

Court's convenience.

Respectfully,

*/s/ Alexandra M. Cumings*

Alexandra M. Cumings (#6146)

cc:   Karen L. Pascale, Esquire (via File & Serve*Xpress*)
        Mary F. Dugan (via File & Serve*Xpress*)
        Karen Keller (via e-mail)

EFiled:  Jun 13 2019 12:11PM EDT
Transaction ID 63359584
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18C-04-006-WCC-CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF SUBSTITUTION OF COUNSEL
## FOR PLAINTIFF FINJAN, INC.

Plaintiff Finjan, Inc. ("Finjan") hereby notifies the Court that Karen L. Pascale, Esquire, and Mary F. Dugan, Esquire of Young Conaway Stargatt & Taylor, LLP hereby withdraw their appearance for Finjan in this action.

Please enter the appearance of Karen E. Keller of the law firm of Shaw Keller LLP as counsel for Finjan.

/s/ Mary F. Dugan
Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
YOUNG CONAWAY STARGATT &
TAYLOR LLP
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
kpascale@ycst.com
mdugan@ycst.com
*Attorneys for Plaintiff Finjan, Inc.*

/s/ Karen E. Keller
Karen E. Keller (#4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th
Floor Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorney for Plaintiff
Finjan, Inc.*

Dated: June 13, 2019

EFiled: Jun 13 2019 12:11PM EDT
Transaction ID 63359584
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on June 13, 2019, this document was

served on the persons listed below in the manner indicated:

### BY LEXIS NEXIS FILE &
### SERVE XPRESS AND EMAIL

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 861-0600
jbrandyberry@bakerlaw.com

John S. Letchinger
Matthew J. Caccamo
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6200
jletchinger@bakerlaw.com
mcaccamo@bakerlaw.com

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

Dated: June 13, 2019

EFiled: Jun 13 2019 12:24PM EDT
Transaction ID 63359675
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18C-04-006-WCC-CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## MOTION FOR ADMISSION PRO HAC VICE

I, Karen E. Keller, a member of the Delaware bar, pursuant to Rule 90.1 hereby move for the admission *pro hac vice* of Bijal Vakil of White & Case LLP, 3000 El Camino Real, Palo Alto, CA 94306, to represent Finjan, Inc. in this action. I certify that I maintain an office in Delaware and find the applicant to be a reputable and competent attorney and am in a position to recommend the applicant's admission. The applicant is admitted, practicing and in good standing in the state of California.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Bijal Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306
(650) 213-0300


Dated: June 13, 2019

EFiled:  Jun 13 2019 12:24PM EDT
Transaction ID 63359675
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18C-04-006-WCC-CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the attached Motion and Order for Admission

*Pro Hac Vice* of Bijal Vakil will be heard at the convenience of the Court.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Bijal Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306
(650) 213-0300

Dated: June 13, 2019

EFiled:  Jun 13 2019 12:24PM EDT
Transaction ID 63359675
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC., )
)
        Plaintiff, )
)
   v. ) C.A. No. 18C-04-006-WCC-CCLD
)
TRUSTWAVE HOLDINGS, INC., )
)
        Defendant. )

## CERTIFICATION PURSUANT TO SUPERIOR COURT CIVIL RULE 90.1(b)

I, Bijal Vakil, Esquire, hereby certify, pursuant to Superior Court Civil Rule 90.1(b) that:

1. I shall be bound by the Delaware Lawyers' Rules of Professional Conduct.

2. I, and all attorneys of my firm who directly or indirectly provide services to the party or cause at issue, shall be bound by all Rules of the Court.

3. I have reviewed the Principles of Professionalism for Delaware Lawyers.

4. I consent to the appointment of the Prothonotary of New Castle County as agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law under Superior Court Civil Rule 90.1 and any activities related thereto.

5. I have not appeared in any other actions in the courts of record of Delaware in the preceding 12 months.

6. I do not maintain an office in the State of Delaware

7. I am a member in good standing of the bar of the State of California.

8. I have not been disbarred or suspended, and I am not the object of any pending disciplinary proceedings in any jurisdiction where I have been admitted generally, *pro hac vice*, or in any other way, with no exceptions.

9. 1 am admitted for the practice of law in the following state or other jurisdictions:

United States Supreme Court; United States Court of Appeal for the Federal Circuit; United States Court of Appeal for the Ninth Circuit; United States District Courts: (1) California (Northern, Eastern, Central, Southern Districts), (2) Eastern District of Texas, and New Mexico.

10. The *pro hac vice* application assessment in the amount of three hundred and seventy-five dollars will be deposited with the Prothonotary upon the electronic filing of the motion for my admission *pro hac vice*.

Bijal Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306
(650) 213-0300

Dated: June 12, 2019

**EFiled: Jun 13 2019 12:24PM EDT**
**Transaction ID 63359675**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18C-04-006-WCC-CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

The foregoing application of Bijal Vakil for admission *pro hac vice* is

hereby GRANTED.

IT IS ORDERED this _____day of _____, 2019.

_____

J.

**EFiled: Jun 13 2019 12:24PM EDT**
**Transaction ID 63359675**
**Case No. N18C-04-006 WCC CCLD**

# <u>CERTIFICATE OF SERVICE</u>

I, Karen E. Keller, hereby certify that on June 13, 2019, this document was

served on the persons listed below in the manner indicated:

### <u>BY LEXIS NEXIS FILE &</u>
### <u>SERVE XPRESS AND EMAIL</u>

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

John S. Letchinger
Matthew J. Caccamo
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6200
jletchinger@bakerlaw.com
mcaccamo@bakerlaw.com

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 861-0600
 jbrandyberry@bakerlaw.com

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

Dated: June 13, 2019



**So Ordered**

/s/ Carpenter, William C   Jun 17, 2019

EFiled:  Jun 17 2019 02:30PM EDT
Transaction ID 63369923
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18C-04-006-WCC-CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

The foregoing application of Bijal Vakil for admission *pro hac vice* is

hereby GRANTED.

IT IS ORDERED this _____day of _____, 2019.

_____

J.

EFiled:  Aug 22 2019 10:18AM EDT
Transaction ID 64120707
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE UNDER SEAL

Plaintiff Finjan, Inc. ("Finjan") respectfully moves pursuant to Superior Court Rule 5(g) for an order permitting the filing of its Motion to Compel under seal.  The bases for Finjan's motion are as follows:

1.      Superior Court Rule 5(g)(2) states, in relevant part, "Court Records or portions thereof shall not be placed under seal unless and except to the extent that the person seeking the sealing thereof shall have first obtained, for good cause shown, an order of this court specifying those Court records, categories of Court records, or portions thereof which shall be placed under seal[.]"

2.      Finjan's Motion to Compel contains references to sensitive, non-public information, including the terms of contractual obligations between the parties which are highly confidential and contain financial and business information that the parties will likely seek to designate as confidential or highly confidential information.  The disclosure of such information would result in

1

material harm to Finjan.  There will be no harm to the public because the information to be redacted from public view will be minimal.

3.      Documents may be filed under seal "for good cause shown."  Super. Ct. Civ. R. 5(g)(2).  "[D]ocuments containing information about trade secrets, third-party confidential material, or nonpublic financial information provides good cause for sealing of records because such documents contain highly confidential information."  *State v Wright*, No. 0310003717, 2009 De. Super. LEXIS 384, at *2-3 (Super. Ct. Sept. 28, 2009).

4.      Public disclosure of the information contained in the Motion to Compel would result in harm to both parties and as such, good cause has been presented in support of filing the Motion to Compel under seal.

5.      Accordingly, Finjan respectfully submits that good cause exists for sealing of the Motion to Compel.  Finjan expects to file a redacted public version within thirty (30) days in accordance with Superior Court Rule 5(g)(2).  For the foregoing reasons, Finjan respectfully requests that the Court grant it leave to file its Motion to Compel under seal pursuant to Superior Court Rule 5(g)(2).

Respectfully submitted,

/s/ Karen S. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Bijal V. Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306
(650) 213-0300

Dated:  August 22, 2019

EFiled:  Aug 22 2019 10:18AM EDT
Transaction ID 64120707
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## NOTICE OF PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION TO COMPEL UNDER SEAL

PLEASE TAKE NOTICE of Plaintiff Finjan, Inc.'s Motion for Leave to File

Motion to Compel Under Seal, which will be heard at the Court's convenience.


Respectfully submitted,

/s/ Karen S. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building

OF COUNSEL:                          1105 North Market Street, 12th Floor
Bijal V. Vakil                       Wilmington, DE 19801
WHITE & CASE LLP                     (302) 298-0700
3000 El Camino Real                  kkeller@shawkeller.com
2 Palo Alto Square, Suite 900        *Attorneys for Plaintiff*
Palo Alto, CA  94306
(650) 213-0300

Dated:  August 22, 2019

**EFiled: Aug 22 2019 10:18AM EDT**
**Transaction ID 64120707**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION TO COMPEL UNDER SEAL

At Wilmington this _____ day of _____, 2019, having considered Plaintiff

Finjan, Inc.'s Motion for Leave to File Motion to Compel Under Seal;

IT IS HEREBY ORDERED that the motion is GRANTED.


_____
The Honorable William C. Carpenter

EFiled:  Aug 22 2019 10:18AM EDT
Transaction ID 64120707
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on August 22, 2019, this document

was served on the persons listed below in the manner indicated:

**BY LEXIS NEXIS FILE & SERVE
XPRESS AND EMAIL**

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

John S. Letchinger
Matthew J. Caccamo
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6200
jletchinger@bakerlaw.com
mcaccamo@bakerlaw.com

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 861-0600
jbrandyberry@bakerlaw.com

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

**So Ordered**

/s/ Carpenter, William C   Aug 23, 2019

EFiled:  Aug 23 2019 01:50PM EDT
Transaction ID 64126786
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| TRUSTWAVE HOLDINGS, INC., | ) |
| Defendant. | ) |

## [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION TO COMPEL UNDER SEAL

At Wilmington this _____ day of _____, 2019, having considered Plaintiff

Finjan, Inc.'s Motion for Leave to File Motion to Compel Under Seal;

IT IS HEREBY ORDERED that the motion is GRANTED.

_____
The Honorable William C. Carpenter

EFiled:  Aug 26 2019 10:46AM EDT
Transaction ID 64129478
Case No. N18C-04-006 WCC CCLD



Karen E. Keller
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0702
kkeller@shawkeller.com

August 26, 2019

**BY CM/ECF & HAND DELIVERY**
The Honorable William C. Carpenter
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801
(302) 255-0800

Re:   *Finjan, Inc. v. Trustwave Holdings, Inc.,*
        C.A. No. N18C-04-006 WCC CCLD

Dear Judge Carpenter:

Enclosed are courtesy copies of Plaintiffs' Motion to Compel and

supporting papers filed under seal on August 23, 2019.

Respectfully submitted,

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)

Enclosure
cc:   Clerk of the Court (via Hand Delivery)
        All Counsel of Record (via CM/ECF)

EFiled:  Sep 03 2019 11:49AM EDT
Transaction ID 64151452
Case No. N18C-04-006 WCC CCLD



Karen E. Keller
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0702
kkeller@shawkeller.com

September 3, 2019

**BY CM/ECF & HAND DELIVERY**
The Honorable William C. Carpenter
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801
(302) 255-0800

Re:   *Finjan, Inc. v. Trustwave Holdings, Inc.,*
      C.A. No. N18C-04-006 WCC CCLD

Dear Judge Carpenter:

Enclosed are courtesy copies of Plaintiffs' Corrected Motion to

Compel and supporting papers filed under seal on August 30, 2019.

Respectfully submitted,

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)

Enclosure
cc:   Clerk of the Court (via Hand Delivery)
      All Counsel of Record (via CM/ECF)

EFiled:  Sep 13 2019 12:24PM EDT
Transaction ID 64202131
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18C-04-006-WCC-CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

### REVISED NOTICE OF MOTION

PLEASE TAKE NOTICE that Finjan, Inc.'s Motion to Compel Discovery

(D.I. 64) will be presented on October 16, 2019 at 9:15 a.m.

Respectfully submitted,

/s/ David M. Fry
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Bijal Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306
(650) 213-0300

Dated:  September 13, 2019

EFiled:  Sep 13 2019 03:02PM EDT
Transaction ID 64203683
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I, David M. Fry, hereby certify that on September 13, 2019, this document

was served on the persons listed below in the manner indicated:

**BY FILE & SERVE XPRESS AND
EMAIL**

| | |
|---|---|
| Jack B. Blumenfeld | Jared A. Brandyberry |
| Alexandra M. Cumings | BAKER & HOSTETLER LLP |
| MORRIS, NICHOLS, ARSHT | 1801 California Street |
| & TUNNELL LLP | Suite 4400 |
| 1201 North Market Street | Denver, CO 80202 |
| P.O. Box 1347 | (303) 861-0600 |
| Wilmington, DE 19899 | jbrandyberry@bakerlaw.com |
| (302) 658-9200 | |
| jblumenfeld@mnat.com | |
| acumings@mnat.com | |

John S. Letchinger
Matthew J. Caccamo
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6200
jletchinger@bakerlaw.com
mcaccamo@bakerlaw.com

/s/ David M. Fry
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiff*

EFiled: Sep 30 2019 04:28PM EDT
Transaction ID 64256220
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | Public Version - Filed: September 30, 2019 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18C-04-006-WCC-CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | ██████████████ |
| Defendant. | ) | ██████████████ |

## CORRECTED MOTION TO COMPEL DISCOVERY

Plaintiff Finjan, Inc. ("Finjan") respectfully moves to compel discovery against Defendant Trustwave Holdings, Inc. ("Trustwave") pursuant to Superior Court Civil Rule 37(a) with regards to Finjan's First Set of Interrogatories Nos. 2-38 and 41-42 and First Set of Requests for Production Nos. 2-35 and 38-41.

## INTRODUCTION

This case arises out of a contract dispute between Trustwave and Finjan following Trustwave's acquisition by Singapore Telecommunications Limited ("Singtel") in August 2015. Prior to Trustwave's acquisition, Trustwave and Finjan entered into a licensing agreement ("Agreement") in March 2012, with Finjan granting Trustwave a limited, nonexclusive license to a series of patents. *See* Compl. at 3-4. This Agreement included a provision concerning acquisition of Trustwave in Section 2.5, stating that in the event of Trustwave's acquisition, the agreement will "[a]pply to the Acquirer, and its respective Affiliates that are licensed hereunder, and the royalties that apply under Section 3 to Permitted Transferees shall apply . . . to all Licensed Products and Services sold and licensed by the Acquirer and its

Affiliates licensed hereunder that are not attributable to the Existing Business."
Agreement at § 2.5.

Following Trustwave's acquisition and its withdrawal from negotiations with Finjan over royalties under Section 2.5, Finjan commenced an audit pursuant to Section 3.4 of the Agreement to determine whether post-acquisition activity triggered the royalty clause. *See* Compl. at 5-6. An independent auditor ultimately determined that Trustwave owed additional fees under Section 2.5, which Trustwave refused to pay. *Id.* at 6-7. Ultimately, Finjan brought three breach of contract claims for refusal to pay royalties under Section 2.5 (Count One), noncompliance with the audit (Count Two), and for the cost of the audit (Count Three).

This Court denied Trustwave's Motion to Dismiss, ultimately holding that "Finjan's suit for breach of contract may proceed" to "determine whether or not Singtel is actually using the patent technology that would trigger the royalty payments under the Agreement." February 11, 2019 Letter Opinion ("Order") at 2. In an attempt to gain relevant information, Finjan served a First Set of Interrogatories ("Interrogatories") and First Set of Requests for Production ("Requests for Production") on March 12, 2019. Unfortunately, Trustwave did not produce any information. On May 29, 2019, Trustwave filed a motion for protective order seeking to limit the scope of Finjan's discovery. *See generally*, Mot. Protective Order. Trustwave withdrew its motion in part because of Finjan's substitution of

counsel.  Since that withdrawal, Finjan has been diligently working to resolve and/or

narrow any outstanding discovery issues.  To assist in that effort, on June 21, 2019,

Finjan provided Trustwave with a detailed letter highlighting Finjan's positions on

discovery.  Since that time, there have been a couple of phone calls but no firm

agreement to produce any information from Trustwave.  Ultimately, Finjan brings

this motion seeking highly relevant documents that will help determine whether

Trustwave and Singtel have engaged in behavior triggering a royalty payment to

Finjan.  This information is pertinent and tailored to the scope that this Court set out

in its Order, and, as such, this Court should compel discovery.

## **ARGUMENT**

A party "may obtain discovery regarding any matter, not privileged, which is

relevant to the subject matter involved in the pending action."  Super. Ct. Civ. R.

26(b)(1).  "[R]elevancy must be viewed liberally *and if there is any possibility that*

*the discovery will lead to relevant evidence* it should be permitted."  *Powell v.*

*AmGUARD Ins. Co.*, 2019 Del. Super. LEXIS 235, at *8 (Del. Super. May 14, 2019)

(emphasis in original); *Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 Del. Super.

LEXIS 617, at *4 (Del. Super. Oct. 27, 2017).  "The scope of discovery has been

consistently described by Delaware courts as 'broad and far reaching.'"  *Powell*,

2019 Del. Super. LEXIS 235, at *8.

"Because of the breadth of discoverable materials, objections to discovery

requests, in general, will not be allowed unless there have been clear abuses of the process which would result in great and needless expense and time consumption." *Grace Bros. v. Siena Hldgs, Inc.*, 2009 Del. Ch. LEXIS 240, at *2 (Del. Ch. June 2, 2009) (citation omitted). Consistent with that policy, "[t]he burden is on the objecting party to show why the requested information is improperly requested." *JPMorgan Chase & Co. v. Am. Century Cos.*, 2013 Del. Ch. LEXIS 101, at *5 (Del. Ch. Apr. 18, 2013) (citation omitted). Trustwave cannot meet its burden to bar discovery.

Finjan's discovery requests are relevant and within the scope of the Court's Order because the requested documents will shed light on whether Singtel uses the licensed technology outside of Trustwave's "Existing Business." Trustwave has the mistaken impression that the Agreement between Finjan and Trustwave does not apply to any cybersecurity products and sales by Singtel or Trustwave unless related to both entities. As Trustwave has already acknowledged in its Answer, Section 2.5 of the Agreement explicitly states that "[i]n the event of an Acquisition of Licensee . . . royalties that apply under Section 3 to Permitted Transferees shall apply . . . to all Licensed Products and Services sold and licensed by the Acquirer and its Affiliates licensed hereunder ***that are not attributable to the Existing Business***." Mar. 19, 2018 Trustwave Answer (emphasis added). "Existing Business" refers to

such licensed products/services offered and distributed by the Licensee and Affiliates at time of transfer. Agreement § 2.4.

### A. Finjan's Requests Regarding Trustwave's Cybersecurity Products are Relevant and within the Scope of Discovery Set by the Court's Order

This Court should compel discovery on Interrogatories Nos. 2-9, 19, 21-24 and Requests for Production Nos. 2-9, 19, 21-24, 28-35 because they are relevant to determine whether Singtel uses the Licensed Patents outside of Trustwave's "existing business." The Court's Order provides the following:

> The parties appear to agree that if Singtel, as the acquiring company, is now using the patent information in its business, additional royalties are required. ***They also reluctantly agree that if Singtel is not using the patent information and it is only being used for <u>Trustwave's existing business</u>, no additional royalties are required.***

Order at 2 (emphasis added). Trustwave incorrectly concludes that information and documents relating to Trustwave's cybersecurity products are irrelevant to the issue of whether Singtel is using the Licensed Patents, which would trigger royalty payments. As confirmed by the Court, whether royalty payments are required depends on Trustwave's "existing business." Finjan requires discovery relating to Trustwave's cybersecurity products prior to the time of the acquisition to determine whether Singtel is using the patents only for Trustwave's existing business, post-acquisition. *See* Agreement § 2.4.

Finjan's requests are narrowly tailored limiting the time frame of its discovery requests to "products, services, and/or subscriptions . . . manufactured, used, sold,

and/or offered by Trustwave since January 1, 2013." Plaintiff's First Set of Interrogatories at 2. Information and documents relating to Trustwave's cybersecurity products prior to the acquisition date are relevant for determining Trustwave's existing business at the time of the transfer and whether any post-acquisition activities require a royalty payment. As such, this Court should compel discovery on these requests.

    **B.**    **Finjan's Requests Regarding Singtel Cybersecurity Products, including the Trustwave Integrated Cybersecurity Products, are Relevant and within the Scope of Discovery Set by the Court's Order**

This Court should compel discovery on Finjan's Interrogatories Nos. 10-18, 20, 25-38, and 42 and Requests for Production Nos. 10-18, 20, 25-28, 31-35, and 41 because they are relevant to determine whether Singtel uses the Licensed Patents. The Court observed that "if Singtel, as the acquiring company, is now using the patent information ***in its business***, additional royalties are required." Order at 2 (emphasis added). Consistent with this observation, Finjan's request is relevant and appropriately tailored. Finjan seeks discovery on Singtel's cybersecurity products since January 1, 2013 to determine whether Singtel uses the patented technology beyond Trustwave's existing business (in whole or in part). The Agreement provides for additional royalties if Singtel uses the licensed patents *in its business*. Because Singtel has a global presence, Finjan's request for information about

Singtel's product offerings worldwide is relevant to determine whether Singtel uses the patented technology.

Additionally, Singtel's status as a non-party does not preclude Finjan from seeking discovery since the information and documents that Finjan seeks are within the custody and control of Trustwave within the meaning of Rule 34. "Delaware Superior Court Civil Rule 34 requires the production of all relevant, non-privileged documents 'which are in the possession, custody or control of the party upon which the request is served.'" *Nat'l Union Fire Ins. Co. v. Rhone-Poulenc Basis Chems. Co.*, 1992 Del. Super. LEXIS 591, at *9 (Del. Super. Aug. 7, 1992). "Under Rule 34, the requirement that documents be under the control of a party has been construed 'very broadly.' The inquiry under the control test is not whether the party actually possesses the documents but whether it has 'the legal right to obtain the documents requested on demand.'" *Id.* (citations omitted).

In determining "custody or control," courts look at the "nature of the relationship" between the litigating party and the nonparty with possession of the information/documents.[1]  Three factors to consider are (1) corporate structures; (2) connection to transaction; and (3) benefit of award.  *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130-31 (D. Del. Nov. 24, 1986); *see also Nat'l Union Fire*

---

[1] The Delaware Superior Court rule tracks Federal Rule of Civil Procedure 34(a). *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Rhone-Poulenc Basic Chems. Co.*, 1992 Del. Super. LEXIS 591, at *9 (Del. Super. Aug. 7, 1992) (citing federal law).

*Ins. Co. v. Rhone-Poulenc Basic Chems.* Co., 1992 Del. Super. LEXIS 591, at *9 (Del. Super. Aug. 7, 1992); *Princeton Digital Image Corp. v. Konami Digital Entertainment Inc.*, 316 F.R.D. 89 (D. Del. 2016).

In its 2018 annual report, Singtel reported that it "integrated all of [its] cybersecurity assets into a single global cyber security unit." Further, Singtel's chief executive for global security and chief executive officer for Trustwave, said in a media statement that the group will be 'uniting the security assets and deep expertise of Singtel, Optus, Trustwave, and NCS under one brand and single vision—what we call the new Trustwave." Singtel's integration of its services and products under the "new Trustwave" is central to this case. *See Afros S.P.A*, 113 F.R.D. at 131 ("[A] non-party's participation in a transaction, and its consequent possession of related documents, must be considered in determining control for Rule 34 purposes."). Further, Singtel will certainly benefit from a favorable outcome for Trustwave in this suit. *See id.* ("If a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession.").

Though Trustwave has maintained that it seeks client approval to provide documents and information in its possession concerning Trustwave's sales of products to Singtel since the 2015 acquisition date, this alone (should it occur) is not sufficient to determine whether Singtel owes royalties under the license agreement.

The issue is not limited to products that Trustwave sold to Singtel, but rather to whether Trustwave's products offered prior to the acquisition differ from the products offered by Singtel post-acquisition, which integrates its products and services with Trustwave's cyber security assets.  If the products sold prior to acquisition are different than those sold post-acquisition, then sections 2.4 and 2.5 are triggered and Finjan is entitled to additional royalties.  As such, Finjan's requests regarding Singtel's cybersecurity products are relevant and this Court should grant this motion.

### C. Finjan's Requests Relating to Counts Two and Three are Relevant and within the Scope of Discovery Set by the Court's Order

This Court should compel discovery on Finjan's Interrogatory No. 41 and Requests for Productions Nos. 38-40 because these requests are relevant to determining whether Singtel uses the patented technology.  The Court authorized discovery "to determine whether or not Singtel is actually using the patented technology that would trigger royalty payments under the Agreement."  Order at 2.

Finjan's discovery requests are relevant because they relate to documents and communications requested by KPMG in the course of the audit pursuant to Section 3.4.  KPMG attempted to perform its audit and was denied information by Trustwave.  KPMG's requests are within the ordinary and customary practice of the industry, which requires sufficient relevant data for an auditor to form a reasonable basis for his/her conclusions.  *See, e.g.*, AICPA Code of Professional Conduct §

1.300.001(d).   Further, these requests are relevant to determine which products trigger the royalty provision, and address the central dispute of whether Singtel uses the patented technology.  *See National Union Fire Ins. Co. v. Stauffer Chemical Co.*, 1990 Del. Super. LEXIS 402, at *3 (Del. Super. Nov. 9, 1990) ("[The] requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms.") (citations omitted).   Therefore, because Finjan's requests seek relevant materials, this Court should compel discovery on these requests.

## CONCLUSION

In view of the recent trial settling and the Court's order to produce information to discover if royalties are due, this Court should grant Finjan's motion to compel Trustwave to comply with the narrowly, tailored discovery requests.

<div align="right">

/s/ Karen S. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

</div>

OF COUNSEL:
Bijal V. Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306
(650) 213-0300

Dated:  August 30, 2019

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on September 30, 2019, this

document was served on the persons listed below in the manner indicated:

**BY FILE & SERVE XPRESS**
 **AND EMAIL**

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

John S. Letchinger
Matthew J. Caccamo
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6200
jletchinger@bakerlaw.com
mcaccamo@bakerlaw.com

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 861-0600
jbrandyberry@bakerlaw.com

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiff*

**EFiled: Oct 02 2019 01:09PM EDT**
**Transaction ID 64265318**
**Case No. N18C-04-006 WCC CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION FOR LEAVE
## TO FILE MOTION UNDER SEAL

Defendant Trustwave Holdings, Inc. ("Defendant") respectfully moves pursuant to Superior Court Rule 5(g) for leave to file its Motion for Leave to File Counterclaim and certain exhibits thereto (the "Motion") under seal. The bases for Defendant's motion are as follows:

1. Superior Court Rule 5(g)(2) states, in relevant part, "Court Records or portions thereof shall not be placed under seal unless and except to the extent that the person seeking the sealing thereof shall have first obtained, for good cause shown, an order of this Court specifying those Court Records, categories of Court Records, or portions thereof which shall be placed under seal[.]"

2. Defendant respectfully submits that good cause exists for the submission of the Motion under seal. Defendant's Motion contains references to non-public and confidential business and financial information. There will be no

harm to the public because the information to be redacted from public view will be minimal.

3.       Accordingly, Defendant respectfully submits that good cause exists for the sealing of the Motion.  Defendant intends to file a redacted public version of the Motion within thirty (30) days in accordance with Superior Court Civil Rule 5(g)(2).  For the foregoing reasons, Defendant respectfully requests that the Court grant it leave to file its Motion under seal pursuant to Superior Court Rule 5(g)(2).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:
John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

October 2, 2019

/s/  Alexandra M. Cumings
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

*Attorneys for Defendant*
*Trustwave Holdings, Inc.*

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled:  Oct 02 2019 01:09PM EDT
Transaction ID 64265318
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## NOTICE OF MOTION FOR DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION UNDER SEAL

PLEASE TAKE NOTICE that Defendant's Motion for Leave to File

Motion Under Seal will be presented at the convenience of the Court.

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:                      /s/ Alexandra M. Cumings
John S. Letchinger                Jack B. Blumenfeld (#1014)
BAKER& HOSTETLER LLP              Alexandra M. Cumings (#6146)
191 N. Wacker Drive, Suite 3100   1201 North Market Street
Chicago, IL  60606-1901          P.O. Box 1347
(312) 416-6200                   Wilmington, DE  19899-1347
                                 (302) 658-9200
Jared A. Brandyberry             *Attorneys for Defendant*
BAKER& HOSTETLER LLP             *Trustwave Holdings, Inc.*
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

October 2, 2019

EFiled:  Oct 02 2019 01:09PM EDT
Transaction ID 64265318
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] ORDER

Defendant Trustwave Holdings, Inc., having moved for an order permitting the filing of its Motion for Leave to File Counterclaim ("Motion") in this action under seal, and the Court having considered such motion and good cause having been shown,

IT IS HEREBY ORDERED this ___ day of _____, 2019, that:

1.      Defendant may file its Motion under seal;

2.      Defendant will file a redacted version of the Complaint within 30 days in accordance with Superior Court Rule 5(g)(2); and

3.      All filings made pursuant to this Order shall contain the following language in the footer of each page: "THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER."

_____
Judge

EFiled:  Oct 02 2019 06:00PM EDT
Transaction ID 64267849
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18C-04-006-WCC-CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION AND [PROPOSED] ORDER GOVERNING THE DESIGNATION AND HANDLING OF CONFIDENTIAL MATERIALS

To expedite the flow of discovery material, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that only materials the parties are entitled to keep confidential are subject to such treatment, and to ensure that the parties are permitted reasonably necessary uses of such materials in preparation for and in the conduct of trial, it is hereby ORDERED THAT:

1.  **DEFINITIONS.** The terms defined in this Section 1 and parenthetically elsewhere shall, throughout this Order, have the meanings provided. Defined terms may be used in the singular or plural.

1.1    The "Action" means the above-captioned litigation.

1.2    "Party" means a party to the Action, including all of its officers, directors, employees, consultants, retained experts, and outside counsel (and their support staff).

1.3    "Material" means all information, documents, testimony, and things produced, served or otherwise provided in this action by any Party or by any non-party.

1.4    "Designated Material" means any Material that is designated "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY", and/or "RESTRICTED CONFIDENTIAL – SOURCE CODE" under this Order. Designated Material shall not include advertising or other materials that have been actually published or publicly disseminated.

1.5    "Designating Party" means a Party or non-party that designates any Material in productions, in disclosures, or in responses to discovery as "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY", and/or "RESTRICTED CONFIDENTIAL – SOURCE CODE."

1.6    "Producing Party" means any Party or non-party that discloses or produces Material in this Action.

1.7    "Receiving Party" means any Party receiving production or disclosure of Material in this Action.

1.8   "Confidential Material" means information, documents, and things the Designating Party believes in good faith constitutes trade secret or other confidential research, development, or commercial information that is maintained in confidence by the Designating Party and not generally known to others.

1.9   "Confidential – Outside Counsel Only Material" means Confidential Material that the Designating Party believes in good faith has significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury.

1.10   "Restricted Confidential – Source Code Material" means extremely sensitive "Confidential Material" representing "Source Code," (defined below), disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

1.11   "Source Code" means computer instructions and data definitions expressed in a form suitable for input to an assembler or compiler and associated comments and revision histories to the extent such comments and revision histories are contained within the source code itself.

1.12   "Counsel of Record" means (i) outside counsel who has entered an appearance as counsel for a Party and has not subsequently withdrawn, and (ii) partners, principals, counsel, associates, employees and contract attorneys of such outside counsel to whom it is reasonably necessary to disclose the information for

this Action, including supporting personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, legal clerks and shorthand reporters.

1.13 "Outside Consultant" means any person with specialized knowledge or experience in a matter pertinent to this Action who has been retained by Counsel of Record to serve as an expert witness, or as a consultant in this Action, and who is not a current employee of a Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become an employee of a Party or of a competitor of a Party.

1.14 "Professional Vendors" means any persons or entities that provide litigation support services and their employees and subcontractors who have been retained or directed by Counsel of Record in this action, and who are not current employees of a Party or of a competitor of a Party and who, at the time of retention, are not anticipated to become employees of a Party or of a competitor of a Party. Litigation support services include but are not limited to: photocopying; videotaping; translating; designing and preparing exhibits, graphics, or demonstrations; organizing, storing, retrieving data in any form or medium; etc. Professional Vendors include ESI vendors and professional jury or trial consultants retained in connection with this litigation. Professional Vendors do not include consultants who fall within the definition of Outside Consultant.

1.15 "Termination" means the dismissal of the Action (whether through settlement or otherwise), or the entry of final judgment and expiration of all periods to appeal or to seek judicial review of such judgment or dismissal.

1.16 "Affiliate" shall mean, with respect to any Party, any other entity controlling, controlled by, or under common control with that Party. As used in this definition, the term "control" means the ownership of more than fifty percent (50%) of the ownership or equity interests of such entity.

## 2.   SCOPE

2.1 The protections conferred by this Order cover not only Designated Material (as defined above), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof. Nothing herein shall alter or change in any way the discovery provisions of the Delaware Superior Court Civil Rules of Procedure, or the Court's deadlines provided in any scheduling order or case management order issued by the Court. Identification of any individual pursuant to this Order does not make that individual available for deposition, or any other form of discovery outside of the restrictions and procedures of the Delaware Superior Court Civil Rules of Procedure, and the Court's deadlines provided in any scheduling order or case management order issued by the Court.

2.2     Nothing in this Order shall prevent or restrict a Producing Party's own disclosure or use of its own Designated Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Designated Material to an individual who prepared the Designated Material.

2.3     Nothing in this Order shall be construed to prejudice any Party's right to use any Designated Material in court or in any court filing with the consent of the Producing Party or by order of the Court.

3.     **MATERIAL DESIGNATED "CONFIDENTIAL."** Any Designating Party may designate as "CONFIDENTIAL" any Material that the party believes in good faith constitutes Confidential Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any Material designated "CONFIDENTIAL" only to:

(a)     Persons who appear on the face of the Designated Material as an author, addressee, or recipient thereof;

(b)     Up to three (3) in-house employees of a Receiving Party (including a parent or affiliate of a Receiving Party), and necessary secretarial staff, who are responsible for providing oversight of or assistance in the litigation, provided that any such employee or staff has signed the "Acknowledgement and Agreement To Be Bound By Order" attached hereto as Exhibit A, and provided an executed copy to the Producing Party prior to receiving any Designated Material;

(c)     Counsel of Record for the Designating Party or the Receiving Party;

(d)     Outside Consultants of the Receiving Party (including necessary employees of the Outside Consultants) provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of this Order by signing a copy of the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached hereto as Exhibit A, and the "Certification Of Consultant" attached hereto as Exhibit B, with the provisions of Section 6 being complied with prior to receiving any Designated Material; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; and (c) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Section 6 below;

(e)     Witnesses at deposition and/or trial consistent with the provisions of Section 7 below, provided that such witnesses may not retain copies of Designated Material unless permitted by other provisions of this Order;

(f)     The Court and its personnel, any technical advisor that the Court may appoint, and any Jury impaneled in the Action;

(g)     Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff;

(h)     Court reporters and videographers employed in connection with this case;

(i)     Professional Vendors to whom disclosure is reasonably necessary for this Action;

(j)     Jury consultants, trial consultants, or mock jurors selected by counsel in preparation for trial, provided they have signed the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached hereto as Exhibit A; and

(k)     Any other person authorized by written agreement of the Producing Party and the Receiving Party or by order of the Court.

4.     **MATERIAL DESIGNATED "CONFIDENTIAL – OUTSIDE COUNSEL ONLY."**  Any Designating Party may designate as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" any Material that the party believes in good faith constitutes Confidential – Outside Counsel Only Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, Material designated as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" shall be treated as Material designated as "CONFIDENTIAL" with the further

restriction that it shall not be disclosed to any person identified in Section 3(b) above.

Notwithstanding the foregoing, each Receiving Party predesignates its General Counsel, listed below, as well as his or her secretarial and clerical employees, to review damages discovery responses, damages disclosures and damages expert reports (together, "Damages Materials"), to be used for the sole purpose of more meaningful participation in settlement discussions, provided that the designated employee has signed the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached hereto as Exhibit A, and provided an executed copy to the Producing Party prior to receiving any such Damages Materials."

For Finjan, Inc.
Julie Mar-Spinola

For Trustwave Holdings, Inc.
Joel Smith

5.      **MATERIAL DESIGNATED "RESTRICTED CONFIDENTIAL – SOURCE CODE."** Any Designating Party may designate as "RESTRICTED CONFIDENTIAL – SOURCE CODE" any Material that the party believes in good faith constitutes Restricted Confidential – Source Code Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, Material designated as "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall be

treated as Material designated as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" with the further restriction that (i) it shall not be disclosed to any person identified in Sections 3(b), 3(g), 3(i) or 3(j) above; and (ii) such Material is subject to the provisions of Section 8 of this Order. Inclusion of this designation in this order by no means constitutes an agreement that the inspection or production of source code material is necessary or justified in this Action and by no means waives any objection to another Parties' request for production or request to inspect such source code material.

6. **DISCLOSURE TO OUTSIDE CONSULTANTS.** No disclosure of Designated Material to Outside Consultants shall occur until the notice and resolution of objection procedures of this Section are followed.

6.1 Notice. If a Receiving Party wishes to disclose another Party's Designated Material to any Outside Consultant, such Receiving Party must provide notice to counsel for the Designating Party, which notice shall include: (a) the individual's name and business title; (b) business address; (c) business or profession; (d) the individual's CV; (e) any previous or current relationship (personal or professional) with any of the Parties or any entity that the either Receiving Party or the Outside Consultant has reason to believe is an Affiliate of any of the Parties; (f) a list of other cases in which the individual has testified (at trial or by deposition) within the last four years; (g) a list of all companies with

which the individual has consulted or by which the individual has been employed within the last four years; and (h) a signed copy of the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached as Exhibit A, and the "Certification Of Consultant" attached hereto as Exhibit B. Notice of information under (a)-(h) above shall in no way waive any limitation on discovery imposed or objection provided by Delaware Superior Court Civil Rule of Procedure 26(b)(3)-(6).

6.2    Objections. The Designating Party shall have five (5) business days from receipt of the notice specified in Section 6.1 to object in writing to such disclosure. Any such objection must set forth in detail the grounds on which it is based. After the expiration of the 5-day period, if no objection has been asserted, then Designated Material may be disclosed to the Outside Consultant pursuant to the terms of this Order. However, if the Designating Party objects within the 5-day period, the Receiving Party may not disclose Designated Material to the challenged individual absent resolution of the dispute or Court Order. In the event the Designating Party makes a timely objection, the parties shall promptly meet and confer to try to resolve the matter by agreement. If the parties cannot reach an agreement, the Objecting Party may, within three (3) business days following the meet and confer, file a motion for a protective order preventing disclosure of Designated Material to the Outside Consultant, and notice the motion to be heard

on the Court's next routine motions calendar at least 10 business days following

the filing the motion.  If the Objecting Party files a timely motion for a protective

order, Designated Material shall not be disclosed to the challenged individual until

and unless a final ruling allowing such disclosure is made by this Court, or by the

consent of the Objecting Party, whichever occurs first.  If the Objecting Party fails

to file a motion for a protective order within the prescribed period the Designated

Material may thereafter be disclosed to such individual.

### 7.    <u>USE AT DEPOSITION</u>

7.1    A present director, officer, agent, employee, designated Rule

30(b)(6) witness, and/or Outside Consultant of a Producing Party may be shown at

deposition and examined on all Designated Material that has been produced by that

Party;

7.2    A former director, officer, agent and/or employee of a

Producing Party may be shown at deposition and examined on all Designated

Material that has been produced by that Party and that the Receiving Party's

Outside Counsel reasonably and in good faith believes to have been received by

the witness previously or that refers to matters within the witness's personal

knowledge pertaining to the period or periods of his or her employment,

engagement, or relationship with the Producing Party;

7.3    Non-parties may be shown at deposition and examined on any document containing Designated Material of a Producing Party that appears on its face, or which the Receiving Party's Outside Counsel reasonably and in good faith believes based on other documents or testimony, to have been received from or communicated to the non-party.  Any person other than the witness, his or her attorney(s), and any person qualified to receive Designated Material under this Order, shall be excluded from the portion of the examination concerning such information, unless the Producing Party consents to persons other than qualified recipients being present at the examination.  If the witness is represented by an attorney who is not qualified under this Order to receive such information, then prior to the examination, the attorney shall be requested to sign the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached as Exhibit A.  In the event that such attorney declines to sign the Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials prior to the examination, the parties, by their attorneys, shall jointly seek a protective order from the Court prohibiting such attorney from disclosing such Designated Material.

7.4    A witness who previously had access to a document designated "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

"RESTRICTED CONFIDENTIAL – SOURCE CODE" but who is not under a present non-disclosure agreement with the Producing Party that covers that document, may be shown the document at deposition if the witness is advised on the record of the existence of the Order Governing the Designation and Handling of Confidential Materials and that the Order requires the parties to keep confidential any questions, testimony or documents that are designated as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE." The witnesses may not copy, take notes on or retain copies of any Designated Material used or reviewed at the deposition. The witness may not take out of the deposition room any exhibit that is marked "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE". The Producing Party of any Designated Material used at the deposition may also require that the transcript and exhibits not be copied by a witness who is not subject to this Order or his counsel who is not subject to this Order, that no notes may be made of the transcript or the exhibits, and that the transcript and exhibits may only be reviewed by the witness in the offices of one of the counsel representing a party in this case (or another firm acting for one of the counsel representing a party in this case and under the supervision of one of the lawyers who is bound by the terms of this Order).

7.5     Except as may be otherwise ordered by the Court, and without limitation as to any of the other provisions of this section, any person may be examined as a witness by deposition, and may testify concerning all Designated Material of which such person has prior knowledge.

7.6     Notwithstanding any sub-Section of this Section 7, no copies of Designated Material may be provided to any deponent or trial witness other than for purposes of the examination without the written consent of the Producing Party.

**8.     PRODUCTION OF SOURCE CODE.** This Section shall govern the production of Source Code in this Action.

8.1     Source Code designated as "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall be made available for the Receiving Party's inspection, only by outside Counsel of Record representing the Receiving Party and Outside Consultants retained by the Receiving Party who have been approved under Section 6 of this Order.

(a)     Source Code designated as "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall be maintained by the Producing Party and made available for inspection by the Receiving Party on a stand-alone computer (that is, a computer not connected to any network, the Internet, or any peripheral device other than a keyboard, mouse, and monitor) in electronic and searchable form in a manner consistent with how the code being made available for inspection is

maintained in the ordinary course of business (e.g. with folder hierarchies preserved).

(b)     The stand-alone computer shall be maintained in a secured location at the offices of the Producing Party's outside counsel or at the offices of the Producing Party, access to which shall be controlled by reasonable physical (e.g., locked doors) and electronic (e.g., password or other access provisions) security measures. Use of any input/output device (e.g., USB memory stick, CDs, floppy disk, portable hard drive, etc.) is prohibited while accessing the computer containing the Source Code, and the Receiving Party shall not attempt to use any peripheral device of any kind (other than the keyboard, mouse, and monitor provided by the Producing Party) with the stand-alone computers, nor shall the Receiving Party attempt to install any software on the stand-alone computer. No person other than the Producing Party may alter, dismantle, disassemble, or modify the Standalone Computer in any way, or attempt to circumvent any security feature of the Standalone Computer.

(c)     The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (i) the Receiving Party provides such software tools (or links to such software tools) to the Producing Party at least ten (5) business days in advance of the date upon

which the Receiving Party wishes to have the software tool(s) available for use on the standalone computer; (ii) the Receiving Party possesses an appropriate license to such software tools; (iii) the Producing Party approves such software tools (such approval shall not be unreasonably withheld); and (iv) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.

8.2    The Receiving Party shall make any request to inspect the Producing Party's Source Code a reasonable time in advance of its desired inspection, and in no event less than five (5) business days' notice.  Inspection of Source Code shall be permitted during regular business hours (i.e, 9:00 a.m. – 6:00 p.m.), although the Parties will be reasonable in accommodating requests to conduct inspections at other times.  The Receiving Party shall be given access to the Source Code Computers through the close of expert discovery in this Action, as requested.

8.3    At the Producing Party's selection, the secure location will be at an office of the Producing Party's Counsel of Record or at the offices of the Producing Party.  The Producing Party will endeavor to make a separate, private room available for the Receiving Party to confer or talk on the phone.

8.4    No person shall copy, e-mail, transmit, upload, download, print, photograph, or otherwise duplicate any portion of Source Code, or documents or

things designated "RESTRICTED CONFIDENTIAL – SOURCE CODE," except as follows:

(a)     The stand-alone computer may be connected to a print driver capable of printing electronic copies (e.g., an Adobe print driver capable of creating PDF files) for temporary storage on the "stand-alone" computer for subsequent printing by the Producing Party for the limited purposes set forth herein. The Receiving Party may request printouts of limited portions of Source Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the Source Code other than electronically. The Receiving Party shall be permitted to request printouts that do not exceed (1) 600 total pages of the Producing Party's Source Code; or (2) twenty (20) or more pages of a continuous block of Source Code. The Producing Party shall provide all such Source Code in paper form including bates numbers and the label "RESTRICTED CONFIDENTIAL – SOURCE CODE" within three (3) business days of the Receiving Party's request, subject to subsection (b), below. Each printed document shall indicate the full path and file name of the printed file, and each line of the source code listing shall be separately numbered, provided that the Receiving Party has supplied a software tool for viewing and searching Source Code pursuant to Section 8.1(c) that includes such information on print outs.

(b)    If the Producing Party has any objection to the print-outs, the Producing Party must object in writing within three (3) business days from the request for print-outs from the Receiving Party. The Parties shall meet and confer in an attempt to reach a resolution within four (4) business days of the Receiving Party's objection. If no resolution can be reached, the Producing Party must file a motion for protective order with the Court no later than five (5) business days from the Parties reaching an impasse.

(c)    The Receiving Party shall not make any electronic copies or images, nor more than three (3) additional paper copies, of any printed pages of Source Code or other documents or things designated as "RESTRICTED CONFIDENTIAL – SOURCE CODE," without the agreement of the Producing Party or further order of the Court. Notwithstanding the foregoing, nothing in this sub-Paragraph shall prevent a Party from making such additional hard or electronic copies or images of limited excerpts necessary to prepare as exhibits to or include in depositions, expert reports, court filings, or court presentations.

(d)    For any RESTRICTED CONFIDENTIAL – SOURCE CODE material used as a deposition exhibit, the exhibit shall be identified on the record, by Bates number or otherwise. The Receiving Party shall retain the original of any such exhibit and shall provide a copy of the original exhibit to the Producing Party at the deposition. No source code Exhibits shall be retained by the Court reporter

at the conclusion of the deposition or appended to the transcript by the Court

Reporter.  At the conclusion of the deposition, the Producing Party will collect and

shred any other copies of the source code that may have been distributed at the

deposition, with the exception of the Parties' working copy(ies).

     (e)    A Receiving Party that wants to file or otherwise submit any

Source Code, or other documents or things designated as "RESTRICTED

CONFIDENTIAL – SOURCE CODE," to the Court in connection with a filing

may make only as many copies, and only of the specific pages as needed, for

submission to the Court and shall file any and all such copies of the materials with

an application to file under seal.  Unless agreed to by the Producing Party, images

or copies of source code shall not be included in correspondence between the

parties.

     8.5    No devices with network or recording functionality or a camera

are permitted in the secure room containing the stand-alone Computer, so long as

the Receiving Party is provided a separate secure room to store such devices during

the review.  During its review of Source Code made available for inspection, the

Receiving Party may take notes.  To the extent the Receiving Party desires to take

notes electronically, it may do so using a computer not connected to any network,

the Internet, or any peripheral device other than a keyboard, mouse, and monitor,

consistent with all of the protections herein.  Any notes (whether electronic or non-

electronic) shall not include copies or reproductions of portions of the source code, but may contain filenames, directory names, module names, class names, parameter names, variable names, function names, method names, or procedure names. The Producing Party may not inspect or review the notes of the Receiving Party or its consultants.

8.6     Any paper copies, documents, or things designated "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall be stored or viewed only at (i) the offices of Counsel of Record for the Receiving Party; (ii) the offices of Outside Consultants who have been approved to access "RESTRICTED CONFIDENTIAL – SOURCE CODE" materials; (iii) the site where any deposition is taken; (iv) the Court; or (v) any intermediate location necessary to transport the information to a hearing, trial, or deposition. Paper copies stored in locations (i) and (ii) shall be maintained at all times in a locked and secure area.

8.7     No Party shall physically, magnetically, digitally, optically, or otherwise copy by any means, any Source Code, or documents or things that another Party has designated "RESTRICTED CONFIDENTIAL – SOURCE CODE," subject to the exceptions enumerated above.

8.8     Within 60 days of final termination of the suit as to the Producing Party, the Receiving Party shall return all hard (non-electronic) copies

of Source Code or certify through counsel with personal knowledge that all such copies have been destroyed.

**9.    PROCEDURE FOR DESIGNATING MATERIAL.** Subject to the limitations set forth in this Order, a Designating Party may: designate as "CONFIDENTIAL" information that the Designating Party believes, in good faith, meets the definition of Confidential Material set forth in Section 1.8 above; designate as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" information that it believes, in good faith, meets the definition of Confidential – Outside Counsel Only Material set forth in Section 1.9 above; and designate as "RESTRICTED CONFIDENTIAL – SOURCE CODE" information that it believes, in good faith, meets the definition of Restricted Confidential – Source Code Material set forth in Section 1.10 above.

9.1    Except as provided above in Section 8 with respect to "RESTRICTED CONFIDENTIAL – SOURCE CODE" Material, any Material (including physical objects) made available for inspection by counsel for the Receiving Party prior to producing copies of selected items shall initially be considered, as a whole, to constitute "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" information, and shall be subject to this Order. Thereafter, the Producing Party shall have ten (10) calendar days from the inspection to review and designate

the appropriate documents as "CONFIDENTIAL" or "CONFIDENTIAL –

OUTSIDE COUNSEL ONLY" prior to furnishing copies to the Receiving Party.

   9.2 Except as otherwise provided in this Order or as otherwise

stipulated or ordered, Material that qualifies for protection under this Order must

be designated in accordance with this Section before the Material is disclosed or

produced. In addition to the marking of documents and things with the appropriate

level of confidentiality as provided in this Order, all documents and things

produced by a Producing Party shall be Bates numbered.

   9.3 Designation in conformity with this Order shall be made as

follows:

   (a) For information in documentary form (apart from transcripts of

depositions, or other pretrial or trial proceedings), the Producing Party shall affix

the legend "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL

ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" on each page

that contains Designated Material.

   (b) For testimony given in deposition, the Designating Party shall

specify any portions of the testimony that it wishes to designate as

"CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

"RESTRICTED CONFIDENTIAL – SOURCE CODE." In the case of depositions,

the Designating Party may also designate any portion of a deposition transcript as

"CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" by informing the reporter, and opposing Parties, in writing within thirty (30) calendar days of completion of the deposition of the designations to be applied.  All deposition transcripts not marked at least "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" during the deposition will nonetheless be treated as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" until the thirty (30) day period has expired.  Transcript pages containing Designated Material must be separately bound by the court reporter, who must affix to the top of each such page the legend "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" as instructed by the Designating Party.

(c)     For information produced in some form other than documentary, and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or thing is stored the legend "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE" to the extent reasonably practical.

(d)     The provisions of this Sub-Section 9.3 do not apply to documents produced in native format.  Documents produced in native format will

have their respective confidentiality designation and Bates number identified in the filename of the native file.

9.4     In the event that a Producing Party mistakenly or inadvertently fails to stamp or otherwise designate a document or other information as "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE" at the time of its production, it may be corrected by written notification to counsel for the Receiving Party, and the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the terms of this Order. The Receiving Party and other authorized recipients of such documents or information shall not be responsible for any otherwise prior actions taken with respect to such documents or information before receiving notice of the designation. Upon designation the Receiving Party shall take reasonable efforts to retrieve such information from individuals unauthorized to access it and to ensure that the information is treated consistent with its designation and this Order.

## 10. <u>PROSECUTION BAR</u>.

10.1   Absent written consent from the Producing Party, any individual who receives access to information or items designated by the Producing Party as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall not be involved in

the prosecution of patents or patent applications relating to computer security, network security, vulnerability management, and/or cyber security, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office").

10.2    For the purposes of this section, "prosecution" includes any involvement in or advising regarding drafting, editing, approving or amending patent claims.  Prosecution includes, for example, preparing or revising an original application, or involvement in or advising regarding drafting, editing, approving or amending patent claims in a reissue protest, *ex parte* reexamination, *inter partes* reexamination, *inter partes* review, or other post grant proceedings.

10.3    "Prosecution" as used in this section does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* review).   "Prosecution" as used in this section also does not include participation by such individual representing a patent-holder in a reissue protest, *ex parte* reexamination, or *inter partes* review, so long as the proceeding is not initiated by the patentholder itself for any of its own patents, and so long as the individual has no involvement in and does not advise regarding drafting, editing,

approving or amending patent claims.[1] No prohibition set forth in this paragraph shall apply to or result from any Designated Materials that such individual had lawfully received or authored prior to and apart from this litigation, or to any other material not covered by this Order.

  10.4 This Prosecution Bar shall begin when access to "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE" information or items is first received by the affected individual and shall end two (2) years after final termination of this action.

  **11.** **GENERAL USE OF DESIGNATED MATERIAL.** Unless otherwise ordered by the Court, or agreed to in writing by the Parties, all Designated Material, and all information derived therefrom, shall be used by the Receiving Party only for purposes of this case. Designated Material shall not be used for any other purpose including, but not limited to, any business, proprietary, commercial, legal/other litigation, arbitration or claim, or governmental purpose. Information contained or reflected in Designated Material shall not be disclosed in conversations, presentations by parties or counsel, in court or in other settings that

---

[1] Such individual may be involved in other activities such as reviewing, drafting or editing briefs, correspondence, or other materials in any reissue protest, *ex parte* reexamination, or *inter partes* review, so long as the individual has no involvement in and does not advise regarding drafting, editing, approving or amending patent claims.

might reveal Designated Material, except in accordance with the terms of this Order.

11.1   Nothing in this Order shall limit any Designating Party's use of its own documents and information, nor shall it prevent the Designating Party from disclosing its own confidential information, documents or things to any person. Such disclosure shall not affect any designations made pursuant to the terms of this Order, so long as the disclosure is made in a manner that is reasonably calculated to maintain the confidentiality of the information.

11.2   Nothing in this Order shall limit a Receiving Party from making use of or disclosing documents and/or things that (a) were lawfully in its possession prior to receipt of such information from a Producing Party; (b) appear in any published material available to the Producing Party's trade or business, available to the public, or otherwise become available within the public domain, other than as a consequence of the Receiving Party's breach of any obligation not to disclose the information; or (c) it lawfully obtains subsequent to the Producing Party's disclosure, without obligation of confidence, from a source or sources other than the Producing Party; regardless of whether the same is Designated Material.

11.3   Subject to the remaining provisions of this Order, absent written permission from the Producing Party or a court order secured after

appropriate notice to all interested persons, a Receiving Party may not file, or disclose, in the public record any Designated Material.

11.4   If a Receiving Party files any document with the Court containing information designated by a Producing Party as Designated Material, it shall file such a document in accordance with the Court's rules and practices governing the filing of sealed documents and shall indicate prominently on the face of the document that is being filed under seal, the level of confidentiality protection to which the document is subject and the name of the Producing Party whose Designated Material is involved.  All such Designated Material so filed shall be released from confidential treatment only by order of the Court.

11.5   The Parties making a filing under seal must comply with the provisions of Superior Court Rule of Civil Procedure 5(g).  Notwithstanding the forgoing, the Parties have no obligation to file public versions of any exhibits or attachments to a filing, unless otherwise ordered by the Court or required by the Prothonotary.

11.6   This Order shall not bar or otherwise restrict Counsel of Record from rendering advice to his or her client with respect to the Action, and in the course thereof, referring to or relying generally upon his or her examination of Designated Material, provided, however, that in rendering such advice and in otherwise communicating with his or her client, the attorney shall not disclose the

content of such information designated as Designated Material contrary to the terms of this Order.

       11.7  Designated Material shall not be used by a Receiving Party in any other way, or for any other purpose, including the acquisition, preparation or prosecution before the Patent Office of any patent application, or in connection with patent licensing.

      **12.**  **NO WAIVER OF PRIVILEGE .** Subject to the provisions of Delaware Rule of Evidence 510, inspection or production of documents (including physical objects) shall not constitute a waiver of the attorney-client privilege, work product immunity, or any other applicable privilege or immunity. If the Producing Party becomes aware of any inadvertent disclosure, the Producing Party may promptly designate any such documents as within the attorney-client privilege, work product immunity or any other applicable privilege or immunity and request in writing return of such documents to the Producing Party. Upon such request and the provision of a supplemental privilege log, the Receiving Party shall, within five (5) business days, retrieve and return or destroy all copies of such document(s) and give notice to the Producing Party that it has complied with the provisions of this paragraph. The Producing Party shall retain a copy of any such documents and shall be prepared to submit them to the Court in connection with any Order of this

Court requiring *in camera* inspection in connection with a challenge of the privilege designation.

**13.    INADVERTENT FAILURE TO DESIGNATE PROPERLY.** The inadvertent failure by a Producing Party to designate any material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Material is protected under one of the categories of this Order within fourteen (14) calendar days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Designated Material with the correct confidentiality designation within seven calendar (7) days upon its notification to the Receiving Parties. Upon receiving the Designated Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all materials that were not designated properly.

Once a Receiving Party has received notification of the correct confidentiality designation for the Designated Material with the incorrect confidentiality designation, the Receiving Party shall treat such material at the appropriately designated level pursuant to the terms of this Order.

**14.    CHALLENGES TO CONFIDENTIALITY DESIGNATIONS.** The Parties will use reasonable care when designating information as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

"RESTRICTED CONFIDENTIAL – SOURCE CODE." Nothing in this Order shall prevent a Receiving Party from contending that any or all documents or information designated as Confidential Material, Confidential – Outside Counsel Only Material, or Restricted Confidential – Source Code Material have been improperly designated. A Receiving Party may, at any time, request that the Producing Party cancel or modify the confidentiality designation with respect to any document or information contained therein. A Receiving Party may seek to de-designate Designated Material on the grounds that such material: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court. A Party shall not be obligated to challenge the propriety of a "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" designation at the time made, and the failure to do so shall not preclude a subsequent challenge thereto. Such a challenge shall be written, shall be served on counsel for the Producing Party, and shall identify particularly the documents or information that the Receiving Party contends should be differently

designated.  The parties shall use their best efforts to resolve promptly and

informally such disputes in accordance with all applicable rules.  If agreement

cannot be reached, the Receiving Party shall request that the Court cancel or

modify a "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL

ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" designation in

accordance with Superior Court Civil Rule 5(g)(4).  The Parties' entry into this

Order shall not preclude or prejudice either Party from arguing for or against any

designation, establish any presumption that a particular designation is valid, or

alter the burden of proof that would otherwise apply in a dispute over discovery or

disclosure of information.  Notwithstanding any challenge to a designation, the

Material in question shall continue to be treated as designated under this Order

until one of the following occurs: (a) the Party who designated the Material in

question withdraws such designation in writing; or (b) the Court rules that the

Material in question is not entitled to the designation.

  **15.** **COMMUNICATIONS BETWEEN PARTIES AND COUNSEL**

**OF RECORD.**  Responsive documents and things subject to the attorney-client

privilege, work product protection, and/or other applicable protection/immunity,

including privileged or protected communications between a Party and its

respective Counsel of Record, occurring after the date of filing of Plaintiff's initial

Complaint, need not be produced or disclosed on a privilege log in response to a

discovery request served by another Party, except as required to rely on an opinion of counsel as part of a defense in this Action.

16. **EXPERT REPORTS, DECLARATIONS AND COMMUNICATION.** For experts retained in anticipation of or in connection with this Action, documents constituting drafts of expert reports and declarations, and documents constituting notes created by or for an expert in connection with preparation of his or her expert report or declaration, shall not be discoverable and need not be preserved. Work product materials, including communications, generated in connection with non-testifying experts and consultants who are retained in anticipation of or in connection with the above-captioned litigation, shall not be discoverable. Conversations or communications between counsel and any testifying expert or consultant shall not be discoverable, except to the extent such conversations or communications are relied upon by the expert. For the avoidance of doubt, this section does not apply to any materials provided to or from KPMG or written or oral communications with KPMG as such materials or communications are discoverable in this action.

17. **UNAUTHORIZED DISCLOSURE.** If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Designated Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized

disclosures, (b) use its best efforts to retrieve all copies of the Designated Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

18.   **NON-PARTY USE OF THIS ORDER.** A non-party that produces Material voluntarily, or pursuant to a subpoena or a court order, may designate such Material in the same manner, and shall receive the same level of protection under this Order, as any Party to this lawsuit. A non-party's use of this Order to protect its Confidential Material, Confidential – Outside Counsel Only Material, or Restricted Confidential – Source Code Material does not entitle that non-party access to Confidential Material, Confidential – Outside Counsel Only Material, or Restricted Confidential – Source Code Material produced by any Party in this case. Any non-party who is subpoenaed or whose documents, things, or other items are otherwise requested in connection with this action must be provided a copy of this Order and be made aware of their right to produce documents pursuant thereto.

19.   **MATERIAL SUBPOENAED IN OTHER LITIGATION.** By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or Party subject

to this order who becomes subject to a motion to disclose another party's information designated "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed. More specifically, if a Receiving Party is served with a subpoena or a court order that would compel disclosure of any information, documents or things designated in this action as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE," the Receiving Party must so notify the Producing Party, in writing (by email) promptly, and in no event more than five (5) calendar days after receiving the subpoena or order. Such notification must include a copy of the subpoena or order. The Receiving Party also must immediately inform, in writing, the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Order. In addition, the Receiving Party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena or order to issue. The Receiving Party must also cooperate with respect to all reasonable procedures sought to be pursued by the Producing Party whose Designated Material may be affected. If the Producing Party timely seeks a protective order, the party served

with a subpoena or court order shall not produce any information designated in this Action as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE," before a determination by the court from which the subpoena or order issued, unless the party has obtained the Producing Party's permission. The Producing Party shall bear the burdens and the expenses of seeking protection in that court of its Designated Material. Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

20.    **WAIVER OF NOTICE PROVISIONS.** Any of the notice requirements herein may be waived, in whole or in part, but only by a writing from the Counsel of Record for the Party against whom such waiver will be effective.

21.    **MODIFICATION AND OBJECTIONS.** This Order is entered without prejudice to the right of any Party to apply to the Court at any time for modification of this Order, when convenience or necessity requires. Nothing in this Order abridges the right of any person to seek to assert other objections. No Party waives any right it otherwise would have to object to disclosing or producing any information, documents, or things on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to the use in evidence of any of the material covered by this Order.

**22.**    **JURISDICTION.**  The Superior Court of the State of Delaware is responsible for the interpretation and enforcement of this Order.  All disputes concerning Designated Material produced under the protection of this Order shall be resolved by the Superior Court of the State of Delaware.   Every individual who has signed the "Acknowledgement and Agreement To Be Bound By Confidentiality Order" attached as Exhibit A, or who received any Designated Material, agrees to subject himself or herself to the jurisdiction of this Court for the purpose of any proceedings related to performance under, compliance with, or violation of this Order.

**23.**    **FINAL DISPOSITION.**  Unless otherwise ordered or agreed in writing by the Producing Party, within sixty (60) calendar days after the final termination of this Action as to the Producing Party, all Parties, persons, and entities (including experts and consultants) who received Designated Material shall make a good faith effort to destroy or return to Counsel of Record for the Producing Party all Designated Material and any and all copies of such Designated Material (including summaries, excerpts, and derivative works).  In the case of material designated "RESTRICTED CONFIDENTIAL – SOURCE CODE," the Receiving Party must return (not destroy) the material.  The Receiving Party must submit a written confirmation of the return or destruction to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day

deadline.  Notwithstanding this provision, Counsel of Record may retain an archival copy of all pleadings, motion papers, deposition transcripts (including exhibits), transcripts of other proceedings (including exhibits), expert reports (including exhibits), discovery requests and responses (including exhibits), exhibits offered or introduced into evidence at trial, legal memoranda, correspondence, attorney work product, and legal files, even if such materials contain Designated Material.  Any such archival copies that contain or constitute Designated Material remain subject to this Order as set forth in Section 20, above.

24. **DURATION.** The confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

25. **SUCCESSORS.** This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

/s/ Alexandra M. Cumings
Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com
*Attorneys for Defendant*

Dated: October 2, 2019

SO ORDERED this ____ day of _____, 2019.


_____
The Honorable William C. Carpenter, Judge

# EXHIBIT A

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

## ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND BY ORDER GOVERNING THE DESIGNATION AND HANDLING OF CONFIDENTIAL MATERIALS

I, _____ [print or type full name], of

_____ hereby affirm that:

Information, including documents and things designated as

"CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

"RESTRICTED CONFIDENTIAL – SOURCE CODE," as defined in the Order

Governing the Designation and Handling of Confidential Materials (the

"Confidentiality Order") entered in this Litigation, will be provided to me pursuant

to the terms and restrictions of that Order.

I have been given a copy of and have read the Confidentiality Order.

I am familiar with the terms of the Confidentiality Order and I agree to comply with and to be bound by its terms. I submit to the jurisdiction of this Court for enforcement of the Confidentiality Order.

I agree not to use any CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or RESTRICTED CONFIDENTIAL – SOURCE CODE information disclosed to me pursuant to the Confidentiality Order except for purposes of this Litigation and not to disclose any of this information to persons, other than those specifically authorized by the Confidentiality Order, without the express written consent of the Party who designated the information as confidential or by order of the Court.

DATED: _____

CITY, STATE WHERE WORN AND SIGNED: _____

PRINTED NAME: _____

SIGNATURE: _____

**EXHIBIT B**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| |
|---|
| FINJAN, INC., |
|         Plaintiff, |
| v. |
| TRUSTWAVE HOLDINGS, INC., |
|         Defendant. |

C.A. No. N18C-04-006-WCC (CCLD)

## CERTIFICATION OF CONSULTANT

I, _____ [print or type full name], of

_____ hereby affirm that:

Information, including documents and things designated as

"CONFIDENTIAL,"

"CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED

CONFIDENTIAL – SOURCE CODE," as defined in the Order Governing the

Designation and Handling of Confidential Materials ("Confidentiality Order")

entered in this Litigation, is being provided to me pursuant to the terms and

restrictions of that Order.

I have been given a copy of and have read the Confidentiality Order.

I am familiar with the terms of the Confidentiality Order and I agree to comply with and to be bound by its terms. I submit to the jurisdiction of this Court for enforcement of the Confidentiality Order.

I agree not to use any CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or RESTRICTED CONFIDENTIAL – SOURCE CODE information disclosed to me pursuant to the Confidentiality Order, except for purposes of this Litigation, and not to disclose any of this information to persons, other than those specifically authorized by the Confidentiality Order, without the express written consent of the Party who designated the information as confidential or by order of the Court. I also agree to notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Confidentiality Order and of its binding effect on them and me.

Pursuant to Section 6 of the attached Confidentiality Order, I have provided (a) my name and business title; (b) my business address; (c) my business or profession; (d) my CV; (e) any previous or current relationship (personal or professional) with any of the parties or their affiliates; (f) a list of other cases in which I have testified (at trial or by deposition) within the last four years; (g) a list of all companies with which I have consulted or by which I have been employed within the last four years; and (h) a signed copy of the "Acknowledgement and Agreement To Be Bound By Confidentiality Order" attached as Exhibit A.

I understand that I am to retain all documents or materials designated as or containing CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or RESTRICTED CONFIDENTIAL – SOURCE CODE information in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or RESTRICTED CONFIDENTIAL– SOURCE CODE information are to be returned to counsel who provided me with such documents and materials.

DATED: _____

CITY, STATE WHERE WORN AND SIGNED: _____

PRINTED NAME: _____

SIGNATURE: _____

EFiled: Oct 02 2019 06:00PM EDT
Transaction ID 64267849
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on October 2, 2019, this document

was served on the persons listed below in the manner indicated:

### BY FILE & SERVE XPRESS AND EMAIL

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

John S. Letchinger
Matthew J. Caccamo
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6200
jletchinger@bakerlaw.com
mcaccamo@bakerlaw.com

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 861-0600
jbrandyberry@bakerlaw.com

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiff*

**So Ordered**

/s/ Carpenter, William C   Oct 04, 2019

EFiled:  Oct 04 2019 09:28AM EDT
Transaction ID 64273790
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) C.A. No. N18C-04-006 WCC CCLD | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] ORDER

Defendant Trustwave Holdings, Inc., having moved for an order permitting the filing of its Motion for Leave to File Counterclaim ("Motion") in this action under seal, and the Court having considered such motion and good cause having been shown,

IT IS HEREBY ORDERED this ___ day of _____, 2019, that:

1.    Defendant may file its Motion under seal;

2.    Defendant will file a redacted version of the Complaint within 30 days in accordance with Superior Court Rule 5(g)(2); and

3.    All filings made pursuant to this Order shall contain the following language in the footer of each page: "THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL. REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER."

_____
Judge

This document constitutes a ruling of the court and should be treated as such.

—
**/s/ Judge Carpenter, William C**

**EFiled:  Oct 04 2019 04:20PM EDT**
**Transaction ID 64278078**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT TRUSTWAVE HOLDINGS, INC.'S RESPONSE TO PLAINTIFF'S CORRECTED MOTION TO COMPEL

Defendant Trustwave Holdings, Inc. ("Trustwave") responds to Plaintiff Finjan, Inc.'s ("Finjan") August 30, 2019 Corrected Motion to Compel (the "MTC"). Finjan's 46 Interrogatories and 42 Document Requests far exceed the scope of discovery set by the Court's February 11, 2019 Letter Opinion ("Order") – namely, "whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement." Therefore, Trustwave respectfully requests that the Court deny Finjan's MTC and reaffirm the boundaries of this case.

## I.    INTRODUCTION

Finjan's MTC is a "motion to compel" in name only. Finjan's true goal here is to re-litigate the Order. Finjan's MTC regurgitates arguments already abandoned in open court by Finjan's counsel or otherwise rejected by this Court.

More fundamentally, Finjan filed the MTC in direct contravention of: a) express agreements between the parties and b) the meet-and-confer rules.   As

detailed in prior filings, KPMG had conducted a "review" upon which Finjan's lawsuit was based. *See, e.g.,* Trustwave's June 29, 2018 MTD Op. Br. pp.12-13 (Dkt. 17). Prior to the MTC being filed, Trustwave agreed to Finjan's proposal that Trustwave provide KPMG data showing all Trustwave post-acquisition sales to Singtel so that KPMG could then conduct a like review to provide the parties with quick feedback on the range of potential royalties (*i.e.*, identifying all transactions that possibly trigger royalties under the License Agreement).  The purpose was to facilitate potential settlement discussions about the merits and the parameters for discovery. For some yet to be provided reason, Finjan instead filed the MTC. Notably, Finjan fails to acknowledge the parties' agreement in its MTC or in the sworn certification signed by Finjan's counsel.[1]

On the merits, review of the case record reveals that Finjan's MTC is based on a flawed legal argument that has already been rejected by this Court. In its April 4, 2018 Complaint, Finjan argued that, after Singtel's acquisition of Trustwave, *any* Trustwave sale could be subject to a royalty obligation under the parties'

---

[1]  *See* Rule 37(e)(1) Certification of John Letchinger attached hereto; *see also* Rule 37(e)(1) Certification of Karen E. Keller, which fails to acknowledge the parties' agreement to submit the relevant financial data.  *See* Ex. D (email between counsel agreeing to submit the universe of relevant data to KPMG for analysis); *see also* Ex. E (Trustwave email to KPMG confirming production agreement).  Incredibly, even after Finjan had to file a corrected version of its MTC, Finjan again chose not to notify the Court of the parties' agreement or discussions regarding production of the relevant data to KPMG.  *See* Ex. F (email in which counsel acknowledges failure to include in its certification agreements between the parties that material narrow the dispute at issue in Finjan's motion).

March 2012 license agreement.  Trustwave moved to dismiss the Complaint in June 2018, and the Court heard oral argument on November 19, 2018 (the "Hearing"). At the Hearing, Finjan's counsel agreed that Trustwave's post-acquisition sales unrelated to Singtel could not trigger royalties under the Agreement. *See, e.g.,* Transcript at 42:18-43:17 (Dkt. 38).[2] The Court confirmed this in its Order, where it denied Trustwave's Motion to Dismiss but narrowly defined the sole issue in dispute and corresponding scope of discovery accordingly:

> As a result, Finjan's suit for breach of contract may proceed, ***but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement***. The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized.

Order p.2 (emphasis added) (Dkt. 39).

Based on the Court's Order, Trustwave expected that discovery would target: (i) licensing activity from Trustwave to Singtel concerning the License Agreement, (ii) Trustwave's transfer of cybersecurity technology or proprietary know-how to Singtel and/or (iii) Trustwave's sales to Singtel of cybersecurity products covered by the License[3]. Consistent with the Order, Trustwave has

---

[2] At the Hearing, the Court strongly encouraged representatives from Trustwave and Finjan to seek a business resolution of this dispute.  *See* Ex. G, which contains the Hearing Transcript, at 36:6-38:25. Trustwave contacted Finjan and offered to voluntarily provide information Trustwave believed would help resolve this matter, but Finjan failed to engage in any meaningful way.  *See* Smith Decl. ¶¶ 3-11.

[3] A significant number of Finjan's discovery requests leverage historical public

confirmed via sworn declaration (and in its discovery responses) that none of the activity covered by topics (i) and (ii) above has occurred and has offered to provide the sales data under category (iii). *See* Decl. of J. Lawrence Podmolik.

Nonetheless, Finjan's 46 Interrogatories and 42 Document Requests show that Finjan has categorically disregarded this Court's Order. In fact, Finjan's discovery requests almost exclusively seek discovery on topics specifically excluded by this Court's Order, such as (1) Trustwave cybersecurity sales unrelated to Singtel, (2) Singtel cybersecurity sales unconnected to Trustwave, and (3) Finjan's Counts Two and Three regarding a prior audit. Accordingly, Trustwave served objections to these discovery requests and moved for a protective order on May 29, 2019 to have the Court confirm the scope of discovery in this case.[4] Trustwave agreed to withdraw its notice of its motion for protective order when Finjan retained new counsel, who requested the motion be taken off the Court's calendar because it intended to work to resolve the parties' discovery

---

statements, including press releases that proclaim the hope of expanding Trustwave's sales via Singtel's acquisition of Trustwave (*i.e.,* where Trustwave could expand its reaches through Singtel as a reseller of Trustwave's products). Since the acquisition on August 31, 2015, however, other than product and software sales in the ordinary course as would be made to other re-sellers, Trustwave has not transferred to, or shared with, Singtel any cybersecurity technology or proprietary know-how relating to any products it has sold commercially or offered for sale. In order to comply with the Court's Order, consistent with its responses to the Interrogatories and Document Requests, Trustwave has compiled and offered to supply KPMG data on all post-acquisition sales of products from Trustwave to Singtel and other Singtel subsidiaries.

[4] Trustwave's previously filed motion for protective order is attached as Ex. A.

dispute (assuring that it would not relitigate the Order).[5] Nearly five months later, Finjan still failed to modify its discovery requests or justify the scope of the discovery it seeks, and instead, with no prior notice (and despite the parties' agreement that Trustwave would re-notice its discovery motion if the parties could not agree to the scope), filed a virtual mirror-image MTC.

Finjan now seeks to have the Court reconsider the scope of sales at issue in this case, as confirmed by its MTC: "Trustwave has the mistaken impression that the Agreement between Finjan and Trustwave does not apply to any cybersecurity products and sales by Singtel or Trustwave unless related to both entities." *See* MTC at p. 4. Trustwave is not mistaken. This issue was put to rest nearly a year ago.  Ignoring prior statements made in open court and this Court's Order regarding the scope of discovery, Finjan seeks to manipulate the discovery process to resuscitate its flawed interpretation of the parties' agreement—all in an effort to garnish royalties that are clearly not owed.  If not clear from its discovery positions, Finjan makes clear in its September 25, 2019 "demand" letter that it intends to disregard the Order.  Finjan renews its original $1,526,445.95 demand

---

[5]  *See* Letchinger Rule 37(e)(1) Certification attached hereto.  In fact, Trustwave agreed to withdraw the notice of its May 29, 2019 motion based on Finjan's agreement to a specific protocol for having the parties' discovery dispute resolved if future court intervention was necessary.  *See* Ex. B.  Finjan completely disregarded the conditions upon which Trustwave relied when Trustwave agreed to withdraw its prior motion for protective order.

flowing from KPMG's initial "inspection" discussed during the Hearing as if the matter has never been addressed by this Court.

Trustwave respectfully requests that this Court deny Finjan's MTC and issue an order limiting the scope of discovery consistent with the Court's Order.

## II.   ARGUMENT[6]

### a. Improper Requests Seeking Documents and Information regarding Trustwave Cybersecurity Sales Unrelated to Singtel Activity – Specifically Excluded by the Court's Order

This Court specifically noted that Trustwave is fully-paid up and owes nothing for its ongoing existing business (*see generally* Hearing Transcript at 22:15-36:4), yet Finjan's discovery requests seek wide-ranging information and documents concerning all of Trustwave's sales of cybersecurity products since January 1, 2013.  *See*, *e.g.*, Interrogatories Nos. 2-9, 19, 21-24; RFP Nos. 2-9, 19, 21-24, 28-35. Finjan's prior counsel conceded that Trustwave's post-acquisition sales unrelated to Singtel could not trigger royalties under the Agreement:

> COURT:  What I think I've done here is at least set forth: This is what everyone agrees the dispute is about. ***The dispute is about whether the acquiring company is now using your product***. ***Period. They're not using your product, Trustwave doesn't owe you anything.*** If Singtel is using your product, they now have an obligation to tell you and to pay royalties on it. I don't think that's -- that's not complicated. How you figure that out, how do you come to that conclusion? How

---

[6]   The scope of discovery is limited to information "that is relevant to [a] claim or defense and proportional to the needs of the case," and "shall be limited by the Court" if it is unreasonably cumulative or duplicative or unduly burdensome or expensive. *Id.*

do you know? I don't know.  I mean, and you want me to let you to continue discovery so you can find that out. They say the suit's against Trustwave and not Singtel. And if it's a patent infringement, go to the district court and file a patent infringement.

MR. COOPER:  *Well, I think Your Honor has it exactly right*. The only thing that I would ask is that we get the kind of information from Trustwave that is set forth in 3.4. And then we can resolve it. We can do exactly what Your Honor said, the businessmen can go resolve it.

Transcript at 42:18-43:17 (emphasis added). With its discovery requests, however, Finjan ignores the Court's directives, as illustrated in the following example:

**<u>INTERROGATORY NO. 3:</u>**
Identify and describe the products, services, and/or subscriptions comprising TRUSTWAVE'S CYBERSECURITY PRODUCTS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

This request concerns all Trustwave cybersecurity products and is not limited to products arguably covered by the parties' Agreement, let alone products sold to Singtel since the acquisition.  It seeks the same information (though, with no time limitations) that was the subject of the KPMG Inspection, which this Court noted was likely irrelevant to the extent it related to Trustwave's own business.  Hearing Transcript at 28:22-29:9 and 34:12-15.

Finjan's Interrogatories Nos. 2-9, 19, 21-24 and Requests for Production Nos. 2-9, 19, 21-24, 28-35 likewise improperly seek documents and information concerning Trustwave cybersecurity sales unrelated to Singtel activity.  Trustwave

has agreed to provide documents and information in its possession concerning all Trustwave sales of products to Singtel since the August 31, 2015 acquisition.

### b. Improper Requests Seeking Documents and Information regarding Singtel Cybersecurity Sales Unconnected to Trustwave

Likewise, the Court specifically noted that Singtel is not a party to this case and Singtel sales unconnected to Trustwave products are not governed by this action. Hearing Transcript at 38:14-18. Yet, Finjan's requests seek wide-ranging information and documents concerning all of Singtel's sales of cybersecurity products. *See*, *e.g.*, Interrogatories Nos. 10-18, 20, 25-28; RFP Nos. 10-18, 20, 25-28, 31-35. Finjan not only seeks documents that well precede the date of the Singtel acquisition (August 31, 2015), but also seeks discovery concerning every sale by Singtel of third-party products (*i.e.*, purchased from independent third-parties such as Microsoft and having nothing to do with Trustwave whatsoever). Not only does Trustwave, of course, not have any information concerning these transactions[7], but they are not transactions that could in any way trigger royalties

---

[7] Trustwave is one of dozens of Singtel's subsidiaries. Singtel is not a named Defendant, and, naturally, Trustwave does not have access to Singtel's internal accounting systems and documents. *See* McLachlan Decl.; *see also Theravectys SA v. Immune Design Corp.*, 2014 WL 5500506, at *2 (Del. Ch. Oct. 31, 2014). The cases cited by Finjan in its MTC that allegedly support finding Trustwave in control of Singtel materials are factually distinct and inapplicable. First, the cited cases either examine a *parent's* control of a *subsidiary's* record (here we have the opposite) or factually inapposite scenarios. Finjan's authority actually supports Trustwave's position that Singtel's materials are not under Trustwave's control. *See, e.g., Princeton Digital Image Corp. v. Konami Digital Entertainment Inc.*, 316 F.R.D. 89, 90

under the Agreement. Nonetheless, Finjan seeks discovery into all Singtel cybersecurity products sold at anytime, anywhere in the world.  For example, Finjan seeks:

> **INTERROGATORY NO. 10:**
> Identify and describe the products, services, and/or subscriptions comprising SINGTEL'S CYBERSECURITY PRODUCTS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

Finjan alleges Trustwave owes royalties for sales of its products through Singtel. Thus, the only arguably proper discovery is directed to materials in Trustwave's possession concerning Trustwave sales of cybersecurity products to Singtel, which Trustwave agreed to provide.  Finjan, though, does not limit its requests to Trustwave-connected activities but, instead, seeks information on all Singtel cybersecurity products sold at anytime, anywhere, regardless of whether they could possibly be covered by the Agreement.[8]  Finjan's Interrogatories Nos. 10-18, 20, 25-28 and Requests for Production Nos. 10-18, 20, 25-28, 31-35, likewise,

---

(D. Del. 2016)(movant had not carried its burden in demonstrating that the litigating party had the "legal right to obtain the documents required on demand" from the non-party corporation). Here, Finjan has not carried its burden and Trustwave has unrebutted testimony that it cannot obtain Singtel materials unrelated to Trustwave. *See* McLachlan Decl.

[8]  To trigger royalties, a product must at least (1) be "branded under Licensee's and/or its Affiliates' trademarks or brands" and (2) infringe a valid claim of a Licensed Patent identified in the Agreement.  With respect to (1), Singtel sales of non-Trustwave products are not branded under Trustwave or its Affiliates trademarks or brands.  With respect to (2), the Licensed Patents in the Agreement does not include a Singaporean patent; thus there can be no qualifying patent infringement in that jurisdiction.

improperly seek information and documents concerning Singtel cybersecurity sales unconnected to Trustwave.

### c. Improper Requests Seeking Documents and Information related to Finjan's Counts Two and Three regarding the Prior Audit

The Court's Order made it clear that all discovery on Counts Two and Three concerning a prior audit Finjan sought (citing the Agreement) was stayed:

> The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized.

Order at p. 2.[9] Yet, Interrogatory No. 41 and Document Requests 38-40 seek information concerning Section 3.4 of the Agreement, which covers the inspection/audit provision that forms the basis for Finjan's Counts Two and Three.

## III. CONCLUSION

Trustwave respectfully requests that the Court deny Finjan's MTC, issue a protective order limiting the scope of Finjan's First Set of Interrogatories and First Set of Requests for Production to the scope of discovery set by the Court's Order, and award Trustwave its fees pursuant to Rule 37(a)(4).

---

[9] This Court questioned the value of the prior audit performed by Finjan's auditors. *See* Order p. 2 ("it appears the Plaintiff was requesting an audit of matters that may not be required under the Agreement"); *see also* Hearing Transcript at 34:12-15.

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP


/s/ Alexandra M. Cumings

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

October 4, 2019

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*
*Trustwave Holdings, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen E. Keller, Esq.
Shaw Keller LLP
I.M. Pei Building
1105 N. Market Street, 12th Floor
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled:  Oct 04 2019 04:20PM EDT
Transaction ID 64278078
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## **DECLARATION OF MICHELLE MCLACHLAN**

I, Michelle McLachlan, declare as follows:

1.      I make this declaration based on personal knowledge.

2.      I have been employed by Trustwave Holdings, Inc. ("Trustwave") since November 2016 as a Director of Revenue & Sales Recognition.

3.      Prior to joining Trustwave, from May 2007 to October 2016, I was employed by Singtel Optus Pty Limited ("Optus"), which is a wholly owned subsidiary of Singapore Telecommunications Limited ("Singtel"), in Sydney, Australia.

4.      On August 31, 2015 Trustwave was acquired by Singtel (the "Acquisition").

5.     Since the Acquisition, Trustwave has sold to Singtel and certain of its affiliates cybersecurity software and products as it does other customers and re-sellers.

6.     It is Trustwave's understanding that Singtel, and its other affiliates, purchase the referenced products and software for re-sale to customers in the Asian-Pacific market (which in Trustwave's internal accounting includes Australia).

7.     Trustwave has no access to the books and records, reports, or any transaction data pertaining to Singtel or its other affiliates.  The same was true for Optus during my tenure with Optus.

I declare under penalty of perjury under the laws of the United States of America and the State of Delaware that the foregoing is true and correct.


Date: April 23, 2019                                    _____

                                                        Michelle McLachlan

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress*.

Karen E. Keller, Esq.
Shaw Keller LLP
I.M. Pei Building
1105 N. Market Street, 12th Floor
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled:  Oct 04 2019 04:20PM EDT
Transaction ID 64278078
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )  C.A. No. N18C-04-006 WCC CCLD
                                      )
TRUSTWAVE HOLDINGS, INC.,             )
                                      )
            Defendant.                )


## DECLARATION OF JOEL B. SMITH

I, Joel B. Smith, declare as follows:

1.      I have been employed by Trustwave Holdings, Inc. ("Trustwave") since August 2017 and currently serve as Trustwave's Interim General Counsel.

2.      I make this declaration based on personal knowledge.

3.      I did not attend the November 19, 2018 hearing concerning Trustwave's motion to dismiss, but I learned from outside counsel in attendance that the Court strongly encouraged representatives from Trustwave and Finjan, Inc. ("Finjan") to attempt to resolve this dispute in an extrajudicial manner.

4.      Accordingly, I contacted Finjan's Chief Intellectual Property Officer and Vice President of Legal Operations, Julie Mar-Spinola, to discuss this action.

5.      During my phone conversation with Ms. Mar-Spinola, I explained that there has been no licensing or sharing of Finjan technology—*i.e.*, technology

covered by the Finjan-Trustwave March 2012 AMENDED AND RESTATED PATENT LICENSE AGREEMENT (the "Agreement")—with Singtel following the Singtel acquisition (or, at any time).

6.     Singtel does purchase Trustwave cybersecurity products, largely for re-sale in the Asian-Pacific market (which in Trustwave's internal accounting includes Australia).   Long before the Singtel acquisition, Trustwave sold its products to customers in the Asian-Pacific market both through distributors and directly to end users.

7.     I explained further that Singtel is a telecom company that has strategically developed a portfolio of unrelated businesses as part of its investment strategy, one of which is Trustwave.

8.     I asked Ms. Mar-Spinola to identify additional information that Finjan would like to review in order to satisfy Finjan that there has been no licensing or sharing of Finjan technology with Singtel.

9.     After our phone conversation, I followed up with Ms. Mar-Spinola several times regarding this proposal—but Ms. Mar-Spinola never provided a substantive response to my follow-up messages.

10.     Ms. Mar-Spinola's final response to my follow-up messages indicated that Finjan was still considering my offer.

11.     Shortly thereafter, Finjan served the discovery requests at issue in Trustwave's Motion.

I declare under penalty of perjury under the laws of the United States of America and the State of Delaware that the foregoing is true and correct.

Date: April 23, 2019

Joel B. Smith

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

> Karen E. Keller, Esq.
> Shaw Keller LLP
> I.M. Pei Building
> 1105 N. Market Street, 12th Floor
> Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled: Oct 04 2019 04:20PM EDT
Transaction ID 64278078
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.                              )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  ) C.A. No. N18C-04-006 WCC CCLD
                                          )
TRUSTWAVE HOLDINGS, INC.,                 )
                                          )
            Defendant.                    )


### <u>DECLARATION OF J. LAWRENCE PODMOLIK</u>

I, J. Lawrence Podmolik, declare as follows:

1.     I have been employed by Trustwave Holdings, Inc. ("Trustwave") since June 2007 as Trustwave's Chief Technology Officer.

2.     I make this declaration based on personal knowledge.

3.     On August 31, 2015 Trustwave was acquired by Singapore Telecommunications Limited ("Singtel") (the "Acquisition").

4.     Trustwave has not assigned or licensed to Singtel any rights covered by or under the Finjan-Trustwave March 2012 AMENDED AND RESTATED PATENT LICENSE AGREEMENT (the "Agreement").

5.     Other than sales in the ordinary course of products and software as would be made to other re-sellers, Trustwave has not transferred to, or shared with, Singtel

any cybersecurity technology or proprietary know-how relating to any products it has sold commercially or offered for sale.

6. Since the acquisition, Trustwave has sold to Singtel and certain of its affiliates cybersecurity software and products as it does other customers and re-sellers.

7. Trustwave has not authorized or assisted in any way Singtel using Trustwave brand names on non-Trustwave cybersecurity products, nor does Trustwave have any knowledge of such re-branding being done by Singtel.

I declare under penalty of perjury under the laws of the United States of America and the State of Delaware that the foregoing is true and correct.

Date: August 20, 2019

J. Lawrence Podmolik

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen E. Keller, Esq.
Shaw Keller LLP
I.M. Pei Building
1105 N. Market Street, 12th Floor
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

**EFiled:  Oct 04 2019 04:20PM EDT**
**Transaction ID 64278078**
**Case No. N18C-04-006 WCC CCLD**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. N18C-04-006 WCC CCLD |
| v. | ) |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

### RULE 37(e)(1) CERTIFICATION IN SUPPORT OF DEFENDANT TRUSTWAVE HOLDINGS, INC.'S RESPONSE TO PLAINTIFF'S CORRECTED MOTION TO COMPEL

John S. Letchinger hereby certifies:

1.      I am admitted to this Court *pro hac vice* and an attorney at Baker Hostetler LLP, attorneys for Defendant Trustwave Holdings, Inc. ("Trustwave").  I have knowledge of the facts set forth in this Certification, which I make on behalf of Trustwave and submit this Certification in support of Trustwave's Response to Plaintiff's Corrected Motion to Compel (the "Response").

2.      Plaintiff Finjan, Inc. ("Finjan") served its First Set of Interrogatories ("Interrogatories") and First Set of Requests for Production ("Document Requests") on March 13, 2019.

3.      On April 9, 2019, counsel for Trustwave informed prior counsel of record for Finjan that the scope of the discovery requests exceeded the permissible

scope of discovery pursuant to the Court's February 11, 2019 Letter Opinion (the "Opinion") and requested to meet and confer.

4.      Finjan's prior counsel agreed to meet and confer after Trustwave served its responses and objections to the discovery requests.  Trustwave agreed, and, by email on April 12, 2019, counsel for Trustwave further explained its position on the overbreadth of the discovery responses.

5.      Trustwave served its responses and objections to the Interrogatories and Document Requests on April 12, 2019.

6.      On April 15, 2019, counsel for the parties met and conferred on the scope of Finjan's discovery requests.  As a result of the meet and confer, Trustwave agreed to continue further discussions to attempt to reach a resolution.

7.      On April 23, 2019, counsel for the parties met and conferred a second time on the scope of Finjan's discovery requests, and each side agreed to follow up on several questions that arose during the call.

8.      On April 30, 2019 by email, counsel for Trustwave followed up on the outstanding issues by providing counsel for Finjan certain additional information. As of the date of filing Trustwave's Motion for Protective Order, counsel for Finjan had not followed up with Trustwave on the issues raised on the call.

9.      On May 7 and 8, counsel for the parties exchanged emails regarding scheduling a hearing for Trustwave's forthcoming Motion for Protective Order.  In

those emails, counsel for Trustwave expressed its willingness to continue to engage in discussions to attempt to resolve or narrow the discovery issues described in the Motion for Protective Order.  Counsel for Finjan stated that it would confer with its client on the scope of the discovery requests and then respond to Trustwave's position as to the scope of Finjan's discovery requests.  Finjan's prior counsel failed to follow up with Trustwave on the scope of discovery or otherwise agree to modify its requests in any way.

10.    On May 29, Trustwave filed its Motion for Protective Order and served copies on Finjan's prior counsel.  A true and correct copy of Trustwave's May 29, 2019 Motion for Protective Order is attached hereto as Exhibit A.  The Motion for Protective Order was scheduled to be heard on June 12.  On June 5, Finjan's prior counsel requested an extension of time for Finjan to file its opposition to Trustwave's Motion for Protective Order and a continuance of the June 12 hearing because Finjan was substituting all prior counsel with new counsel.  Trustwave agreed and filed a letter on June 6 asking the Court to move the hearing from June 12 to June 19.

11.    Based on commitments from Finjan's new counsel, Trustwave filed a letter on June 13 requesting that the hearing on June 19 be withdrawn from the Court's calendar.  A true and correct copy of the email communication memorializing counsel's agreement upon which Trustwave agreed to withdraw the

oral argument date for its Motion for Protective Order is attached hereto as Exhibit B.  Based on Trustwave's agreement to withdraw the June 19 hearing, Finjan's new counsel agreed to the following conditions:

(a) Finjan would respond in writing to Trustwave's position on discovery (as outlined in exchanges with Finjan's prior counsel and in Trustwave's Original Motion), including any bases for contesting what Trustwave believes is the appropriate scope of discovery in light of the Court's February 11, 2019 Order regarding Trustwave's motion to dismiss;

(b) If a dispute regarding the proper scope of discovery remained, then the parties' counsel would again meet and confer in an effort to continue to explore potential resolution;

(c) If the parties were ultimately unable to resolve the discovery dispute, then the parties would choose a mutually agreeable date after July to re-notice Trustwave's motion for protective order and Finjan would agree to provide Trustwave with Finjan's responsive brief to Trustwave's motion for protective order at least 10 days prior to any new hearing date.

12.    On June 21, Finjan's new counsel provided a letter in which it made no compromises regarding Finjan's position regarding the proper scope of discovery and, in fact, indicated that it would seek more expansive discovery than Finjan's prior counsel was seeking.  It also appeared from Finjan's letter that

Finjan intended through discovery motions to seek reconsideration of the Court's February 11, 2019 Order regarding Trustwave's motion to dismiss. In order to clarify Finjan's position, Trustwave's counsel sought confirmation of two points that Trustwave believed to have been resolved by the Court's February 11, 2019 Order:

(a) "As it relates to section (1) of your letter, you appear to take the position that all post-acquisition Trustwave sales, not just those to Singtel or affiliates (save those that are covered by the Existing Business exception under the License Agreement) continue to be subject to royalties notwithstanding acknowledgements by counsel during oral argument and, more importantly, Judge Carpenter's Order. Please confirm or correct us by return email or letter. If that is your position, we also ask that you explain your position in light of the ultimate holding on the issue in Judge Carpenter's Order – 'As a result, Finjan's suit for breach of contract may proceed, but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement.'"

(b) "As it relates to section (2) of your letter, we reiterate that Trustwave has no access to Singtel information. Putting that aside, we need clarification on the substance of the issue. Is it Finjan's current position that Singtel

transactions that are completely unrelated to Trustwave (e.g., sales of

unrelated, third-party products by Singtel to Singtel customers) somehow

trigger Singtel royalty obligations under the License Agreement?"

A true and correct copy of the email posing these two questions is attached hereto

as Exhibit C.  To date, Finjan's new counsel has refused to answer these two

simple questions in writing.

13.   The parties' counsel held calls on August 2 and 16 regarding

Trustwave's Motion for Protective Order.  During the call on August 16, Finjan's

counsel did not contest Trustwave's position that both Trustwave sales unrelated to

Singtel and Singtel sales unrelated to Finjan are not subject to royalty obligations

under the parties' Agreement or within the scope of discovery in this action, but

Finjan's counsel noted that Finjan was not comfortable so stipulating in writing at

that point. Instead, as an interim step (and, one that hopefully would facilitate

resolution of the discovery dispute if not settlement of the case), Finjan's counsel

proposed having KPMG review sales data for Trustwave's sales of Trustwave

products to Singtel (and Singtel's affiliates) applying the same logic as with the

prior KPMG inspection. Trustwave reiterated its view that it would need to

proceed to hearing on its motion for protective order if Finjan continued in its

refusal to work towards a written confirmation on the scope of discovery, but

counsel agreed that the KPMG exercise would be useful and would recommend same to Trustwave.

14.     Trustwave subsequently agreed with Finjan's proposal. A true and correct copy of Trustwave's counsel's email agreeing to submit the universe of relevant data to KPMG for analysis is attached hereto as Exhibit D. A true and correct copy of Trustwave's counsel's email with KPMG regarding production of Trustwave sales data to KPMG for analysis of what could be deemed a covered product under the license agreement is attached here to as Exhibit E.

15.     Without notice, on August 22, Finjan's counsel filed a motion for leave to file a motion to compel under seal.  Finjan's counsel never mentioned a motion to compel in prior correspondence or phone conversations with Trustwave's counsel.  Finjan's counsel did not provide an explanation for why they were refusing to continue discussions regarding Trustwave's motion for protective order or comply with Finjan's prior commitments upon which Trustwave relied when it withdrew its hearing date for its motion for protective order nearly three months ago.

16.     The Rule 37(e)(1) certification accompanying Finjan's original motion to compel failed to acknowledge the parties' agreement to submit the relevant financial data to KPMG.  Moreover, the Rule 37(e)(1) certification accompanying Finjan's corrected motion to compel again fails to note the parties'

agreement or relevant emails on the subject.  A true and correct copy of an email

from Finjan's counsel acknowledging counsel's failure to disclose the parties'

agreements (this being prior to Finjan filing its Corrected Motion to Compel) is

attached as Exhibit F.

17.    A copy of the transcript from the November 19, 2018 hearing on

Trustwave's motion to dismiss is attached hereto as Exhibit G.

BAKER HOSTETLER LLP

*/s/  John S. Letchinger*
John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*
*Trustwave Holdings, Inc.*

October 4, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

>Karen E. Keller, Esq.
>Shaw Keller LLP
>I.M. Pei Building
>1105 N. Market Street, 12th Floor
>Wilmington, DE 19801

>*/s/ Alexandra M. Cumings*
>Alexandra M. Cumings (#6146)

EFiled:  Oct 04 2019 04:20PM EDT
Transaction ID 64278078
Case No. N18C-04-006 WCC CCLD

# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT TRUSTWAVE HOLDINGS, INC.'S MOTION FOR
PROTECTIVE ORDER**

Defendant Trustwave Holdings, Inc. ("Trustwave") respectfully moves this

Court pursuant to Delaware Superior Court Civil Rule 26(c) for a protective order

limiting the scope of Plaintiff Finjan, Inc.'s ("Finjan") First Set of Interrogatories

("Interrogatories") and First Set of Requests for Production ("Document

Requests")[1] to the scope of discovery set by the Court's February 11, 2019 Letter

Opinion ("Order") – namely, "whether or not Singtel is actually using the patent

technology that would trigger royalty payments under the Agreement".

**I.   INTRODUCTION**

In its Order, this Court denied Trustwave's Motion to Dismiss, but narrowly

defined the sole issue in dispute and corresponding scope of discovery accordingly:

> As a result, Finjan's suit for breach of contract may proceed, but only
> to determine whether or not Singtel is actually using the patent
> technology that would trigger royalty payments under the Agreement.

---

[1]   The Interrogatories and Document Requests are attached as Exhibits A and B, respectively.

1

> The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized.

Order at p.2.  Finjan's recent discovery requests, 46 interrogatories and 42 requests for production, show that it has categorically disregarded this Court's Order.[2]  In fact, Finjan's discovery requests almost exclusively seek discovery on topics specifically excluded by this Court's Order, such as (1) Trustwave cybersecurity sales unrelated to Singtel, (2) Singtel cybersecurity sales unconnected to Trustwave, and (3) Finjan's Counts Two and Three regarding a prior audit.[3]  Trustwave, accordingly, seeks a protective order limiting Finjan's discovery to the scope set forth by this Court in its Order.

This is a breach of contract suit based on a March 2012 license agreement between Plaintiff Finjan and Defendant Trustwave ("Agreement", as defined by the Court in its Order).   At the Hearing, the Court's questioning led to the following exchanges concerning what might trigger royalty obligations:

> COURT:  What I think I've done here is at least set forth: This is what everyone agrees the dispute is about. The dispute is about whether the

---

[2]   At the November 19, 2018 hearing concerning Trustwave's motion to dismiss ("Hearing"), the Court strongly encouraged representatives from Trustwave and Finjan to seek a business resolution of this dispute.  See Hearing Transcript at 36:6-38:25.  Accordingly, Trustwave's General Counsel, Joel Smith, spoke with Finjan's Chief Intellectual Property Officer and Vice President of Legal Operations, Julie Mar-Spinola and offered to voluntarily provide information that Trustwave believed would help resolve this matter, but Ms. Mar-Spinola failed to provide a material response.  See Smith Decl. ¶¶ 3-11.

[3]   Counsel for the parties met and conferred regarding the motion, but were unable to reach a resolution on the scope of discovery. *See* Rule 37(e)(1) Certification attached hereto.

2

> acquiring company is now using your product. Period.  They're not using your product, Trustwave doesn't owe you anything.

*See* Hearing Transcript ("Hearing Transcript") at 42:18-43:4; *see also* Order at p. 2.  Based on the Court's Order, Trustwave expected that discovery would target: (i) licensing activity from Trustwave to Singtel concerning the License Agreement, (ii) Trustwave's transfer of cybersecurity technology or proprietary know-how to Singtel and/or (iii) Trustwave's sales to Singtel of cybersecurity products covered by the License[4].  Consistent with the Order, Trustwave has confirmed via sworn declaration (and in its discovery responses) that none of the activity covered by topics (i) and (ii) above has occurred and has agreed to provide the sales data under category iii.  *See* Declaration of J. Lawrence Podmolik.

Simply put, Finjan's discovery requests ignore this Court's Order.  Instead of abiding by the limitations in the Order, Finjan served 46 interrogatories and 42 requests for production seeking wide-ranging discovery on all Trustwave and

---

[4]   A significant number of Finjan's discovery requests leverage historical public statements, including press releases, that proclaim the hope of expanding Trustwave's sales via Singtel's acquisition of Trustwave (*i.e.,* where Trustwave could expand its reaches through Singtel as a reseller of Trustwave's products).  Most recently, Finjan cites a December 2018 press release concerning corporate restructuring in which cybersecurity subsidiaries will operate worldwide under the Trustwave brand.  This corporate reconfiguration will allow management to track the performance of all cybersecurity operations, while leveraging the Trustwave brand.  From the acquisition on August 31, 2015 to present, however, other than sales in the ordinary course of products and software as would be made to other re-sellers, Trustwave has not transferred to, or shared with, Singtel any cybersecurity technology or proprietary know-how relating to any products it has sold commercially or offered for sale. In order to comply with the Court's Order, as detailed in its responses to the Interrogatories and Document Requests, Trustwave is endeavoring to supply data on all post-acquisition sales of products from Trustwave to Singtel and other Singtel subsidiaries.

Singtel activities related to cybersecurity software as well as that related to Counts Two and Three of Finjan's Complaint.   This Court specifically noted that Trustwave is fully-paid up and owes nothing for its ongoing business (*see generally* Hearing Transcript at 22:15-36:4), yet Finjan's requests seek wide-ranging information and documents concerning all of Trustwave's sales of cybersecurity products since January 1, 2013.  *See* Ex. A at Interrogatories Nos. 2-9, 19, 21-24; Ex. B at Requests for Production Nos. 2-9, 19, 21-24, 28-35.  As the definition of "TRUSTWAVE'S CYBERSECURITY PRODUCTS" in Finjan's requests shows, Finjan's requests are neither limited to sales of Trustwave products to Singtel nor even temporally limited consistent with the Singtel acquisition date:

> "TRUSTWAVE'S CYBERSECURITY PRODUCTS" means cybersecurity products, services, and/or subscriptions, including hardware, software, and/or any combination of hardware and software, used to protect, defect, or remedy, cybersecurity issues such as viruses, worms, malware, denial of service attacks, and/or other cybersecurity issues, manufactured, used, sold, and/or offered by TRUSTWAVE since January 1, 2013.

*Id.* at p. 2.

Likewise, the Court specifically noted that Singtel is not a party to this case and Singtel sales unconnected to Trustwave products are not governed by this action[5].  Yet, as the definition of "SINGTEL'S CYBERSECURITY PRODUCTS"

---

[5]   *See, e.g.*, Hearing Transcript at 38:14-18 ("THE COURT: And if you want to sue Singtel because they're using your patent now inappropriately, go for it. District court is up the street two blocks. That's the patent infringement world.").

shows, Finjan's requests seek wide-ranging information and documents concerning

all of Singtel's sales of cybersecurity products:

> "SINGTEL'S   CYBERSECURITY   PRODUCTS"   means
> cybersecurity products, services, and/or subscriptions, including
> hardware, software, and/or any combination of hardware and
> software, used to protect, defect, or remedy, cybersecurity issues such
> as viruses, worms, malware, denial of service attacks, and/or other
> cybersecurity issues, manufactured, used, sold, and/or offered by
> SINGTEL since January 1, 2013.

*See* Ex. A at pp. 1-2; *see also* Interrogatories Nos. 10-18, 20, 25-28; Ex. B at

Requests for Production Nos. 10-18, 20, 25-28, 31-35.   Finjan not only seeks

documents that well precede the date of the Singtel acquisition (August 31, 2015),

but also seeks discovery concerning every sale by Singtel of third-party products

(*i.e.*, purchased from independent third-parties such as Microsoft and having

nothing to do with Trustwave whatsoever).   Not only does Trustwave, of course,

not have any information concerning these transactions[6], but they are not

transactions that could in any way trigger royalties under the Agreement.

Finjan's requests clearly ignore this Court's Order specifically delineating

the one substantive issue in the case and the limitations on discovery.   Trustwave,

---

[6]   Trustwave is one of dozens of Singtel's subsidiaries.   Singtel is not a named Defendant, and,
naturally, Trustwave does not have access to Singtel's internal accounting systems and
documents (no more than Dairy Queen (a wholly owned subsidiary of Berkshire Hathaway)
would have the ability to access Berkshire Hathaway's internal accounting systems,
transaction data and reports).   *See* Michelle McLachlan Decl.; *see also Theravectys SA v.
Immune Design Corp.*, 2014 WL 5500506, at *2 (Del. Ch. Oct. 31, 2014).

thus, respectfully requests that this Court issue a protective order limiting the scope of the Interrogatories and Document Requests consistent with the Court's Order.

## II.    ARGUMENT[7]

Finjan's improper requests fall into three categories: (1) requests regarding Trustwave cybersecurity sales unrelated to Singtel and otherwise made in Trustwave's own business, (2) requests regarding Singtel cybersecurity sales unconnected to Trustwave—*i.e.* Singtel's business activity prior to the Trustwave acquisition or otherwise having nothing to do with Trustwave, and (3) requests relating to Finjan's Counts Two and Three.

### a. Improper Requests Seeking Documents and Information Regarding Trustwave Cybersecurity Sales Unrelated to Singtel Activity – Specifically Excluded by the Court's Order

At the Hearing, Finjan's counsel agreed that Trustwave's post-acquisition sales unrelated to Singtel could not trigger royalties under the Agreement:

> COURT:  What I think I've done here is at least set forth: This is what everyone agrees the dispute is about. ***The dispute is about whether the acquiring company is now using your product***. **Period.  They're not using your product, Trustwave doesn't owe you anything.** If Singtel is using your product, they now have an obligation to tell you and to pay royalties on it. I don't think that's -- that's not complicated. How you figure that out, how you come to that conclusion? How do you know? I don't know.  I mean, and you want me to let you to

---

[7]    This Court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Super. Ct. Civ. R. 26(c). The scope of discovery is limited to information "reasonably calculated to lead to admissible evidence," *Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 1767529, at *5 (Del. Super. Ct. July 10, 2002), and discovery "shall be limited by the Court" if it is unreasonably cumulative or duplicative or unduly burdensome or expensive, Super. Ct. Civ. R. 26(b)(1).

continue discovery so you can find that out. They say the suit's against Trustwave and not Singtel. And if it's a patent infringement, go to the district court and file a patent infringement.

MR. COOPER:  *Well, I think Your Honor has it exactly right*. The only thing that I would ask is that we get the kind of information from Trustwave that is set forth in 3.4. And then we can resolve it. We can do exactly what Your Honor said, the businessmen can go resolve it.

Transcript at 42:18-43:17 (emphasis added).  This understanding was confirmed in

the Court's Order:

The parties appear to agree that if Singtel, as the acquiring company, is now using the patent information in its business, additional royalties are required. ***They also reluctantly agree that if Singtel is not using the patent information and it is only being used for Trustwave's existing business, no additional royalties are required.***

Order at p. 2 (emphasis added).   With its discovery requests, however, Finjan

ignores the Court's directives, as illustrated in the following example:

**<u>INTERROGATORY NO. 3:</u>**
Identify and describe the products, services, and/or subscriptions comprising   TRUSTWAVE'S   CYBERSECURITY   PRODUCTS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

*See* Ex. A at p. 8.  This request concerns all Trustwave cybersecurity products and

is not limited to products arguably covered by the parties' Agreement, let alone

products sold to Singtel since the acquisition.   It seeks the same information

(though, with no time limitations) that was the subject of the KPMG Inspection,

which this Court noted at the Hearing was irrelevant to the extent it related to

Trustwave's own business.  Hearing Transcript at 28:22-29:9 and 34:12-15.

Finjan's Interrogatories Nos. 2-9, 19, 21-24 and Requests for Production Nos. 2-9, 19, 21-24, 28-35, likewise, improperly seek documents and information concerning Trustwave cybersecurity sales unrelated to Singtel activity.  For all of these requests, Trustwave has agreed to provide documents and information in Trustwave's possession concerning Trustwave's sales of products to Singtel since the September 1, 2015 acquisition.[8]  In accordance with the Order, Trustwave requests that the Court impose a protective order that limits Finjan's requests to documents and information in Trustwave's possession concerning Trustwave's sales of cybersecurity products to Singtel since the August 31, 2015 acquisition.

### b. Improper Requests Seeking Documents and Information Regarding Singtel Cybersecurity Sales Unconnected to Trustwave

At the Hearing, the Court made it clear that Singtel activities unconnected to Trustwave are outside the bounds of this action:

> COURT:  And if you want to sue Singtel because they're using your patent now inappropriately, go for it. District court is up the street two blocks. That's the patent infringement world.

Hearing Transcript at 38:14-17.  Again, this was confirmed in the Court's Order:

> Finjan's suit for breach of contract may proceed, but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement.

---

[8]   Trustwave has agreed to provide information regarding the complete universe of its product/software sales to Singtel after the 2015 acquisition and to follow-up with information relevant to whether some of the sales could arguably trigger royalties under the Agreement.

Order at p. 2.   Nonetheless, Finjan seeks discovery into all Singtel cybersecurity

products sold at anytime, anywhere in the world.   For example, Finjan seeks:

> **INTERROGATORY NO. 10:**
> Identify and describe the products, services, and/or subscriptions comprising SINGTEL'S CYBERSECURITY PRODUCTS, including providing a list of all models, stock keeping units (SKUs), version numbers, and release dates.

Ex. A at p. 9.   Singtel is not a party to this suit.   The Agreement in dispute is

between Finjan and Trustwave.   Finjan alleges Trustwave owes royalties for sales

of its products through Singtel.   Thus, the only arguably proper discovery is

directed to materials in Trustwave's possession concerning Trustwave sales of

cybersecurity products to Singtel, which Trustwave agreed to provide.   Finjan,

though, does not limit its requests to Trustwave-connected activities but, instead,

seeks information on all Singtel cybersecurity products sold at anytime, anywhere,

regardless of whether they could possibly be covered by the Agreement.[9]

Finjan's Interrogatories Nos. 10-18, 20, 25-28 and Requests for Production

Nos. 10-18, 20, 25-28, 31-35, likewise, improperly seek information and

documents concerning Singtel cybersecurity sales unconnected to Trustwave.   For

all of these requests Trustwave has agreed to provide documents and information

---

[9]   Elaborating further on this point, Finjan seeks information and documents related to every sale by Singtel of non-Trustwave products and otherwise having nothing to do with Trustwave.   Not only is Finjan plainly ignoring the Court's Order, but it further ignores that the License does not cover any Singapore patents and Finjan **does not own a patent in Singapore**.   All else aside, these sales are completely unrelated to Trustwave and the Agreement and, as such, are incapable of triggering royalties under the Agreement.

in Trustwave's possession concerning Trustwave's cybersecurity products sold to Singtel since the August 31, 2015 acquisition.  Trustwave respectfully requests that the Court impose a protective order that limits Finjan's requests accordingly.

### c. Improper Requests Seeking Documents and Information Related to Finjan's Counts Two and Three regarding the Prior Audit

The Court's Order made it clear that all discovery on Counts Two and Three concerning a prior audit Finjan sought (citing the Agreement) was stayed:

> The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized.

Order at p. 2.[10]  Yet, Interrogatory No. 41 and Requests for Production Nos. 38-40 seek information concerning Section 3.4 of the Agreement, which covers the inspection/audit provision that forms the basis for Finjan's Count Two and Three.

## III.   CONCLUSION

Trustwave respectfully requests that the Court grant this Motion and issue a protective order limiting the scope of Finjan's First Set of Interrogatories and First Set of Requests for Production to the scope of discovery set by the Court's Order.

---

[10]   This Court has questioned the value of the prior audit performed by Finjan's auditors.  *See* Order at p. 2 ("it appears the Plaintiff was requesting an audit of matters that may not be required under the Agreement"); Hearing Transcript at 34:12-15 ("THE COURT: To me, the audit is simply a red herring thrown out there. Yeah, because your real dispute supposedly is that another company acquired Trustwave.").

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP


OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

May 29, 2019

/s/  Alexandra M. Cumings
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*
*Trustwave Holdings, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

> Karen L. Pascale, Esquire
> Mary F. Dugan, Esquire
> 1000 North King Street
> Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

# EXHIBIT B

| | |
|---|---|
| **From:** | Letchinger, John S. |
| **Sent:** | Wednesday, June 12, 2019 10:33 AM |
| **To:** | Vakil, Bijal V. |
| **Cc:** | Brandyberry, Jared; Cumings, Alexandra |
| **Subject:** | [EXT] RE: Trustwave- Protective Order Motion |

Bijal, I understand your interest in more time, as discussed yesterday, but your email is just a repeat of your opening request yesterday that we simply give you more time. You omit the majority of what we discussed, which I outline below:

1. As of when we spoke, you had not read the License Agreement nor spoken with Finjan's local counsel or lead counsel (John Cooper of the Farella Braun firm). As such, I inquired as to how you could be in a position to promise to work in good faith to substantively address the outstanding discovery issues and attempt to resolve same in short order. I also expressed concern that we had not been contacted by Farella Braun concerning the change in counsel, leaving us concerned about the posture of the case, namely, the Court has not been formally advised nor ruled on any proposed changes. I don't recall exactly how the topic came up, but you further advised that it was your understanding that Farella Braun was remaining of record in the case, with the only substitution being with local Delaware counsel. You promised to advise on Farella Braun's status going forward, as we made it clear that it is relevant to your request.

2. As concerns moving the June 19 hearing date (first noticed for June 12), I advised you that Trustwave had been prepared to file the Motion over two months ago, but had repeatedly held off based on representations that Finjan intended to work towards resolution in light of Judge Carpenter's MTD Order. We outlined our concerns and detailed what we would agree to produce, but never received a substantive response. We also repeatedly advised of material scheduling conflicts end of June and throughout July. With that background, I made it clear during our call yesterday that Trustwave would agree to withdraw the June 19 hearing date only with agreement to the following conditions: a. By end of next week, Finjan responds in writing to Trustwave's position on discovery (as outlined in exchanges with Mary Dugan and in our Motion), including any bases for contesting what Trustwave believes is the appropriate scope of discovery in light of Judge Carpenter's Order; b. If there is contest, we would spend some time on the phone (and, we're happy to start with calls if that is easier, but we still request Finjan's position in writing to eliminate the need for emails like this one) to continue to explore potential resolution; c. if we ultimately are not able to resolve the present discovery dispute, we would choose a mutually agreeable date after July to re-notice the Motion, with Finjan agreeing to provide us with its response brief to Trustwave's Motion for Protective Order 10 days prior to any new hearing date. Subject to no. 3 below, we do have authority from Trustwave to proceed with moving the June 19 hearing on the above conditions.

3. You promised to confirm one way or another Mr. Cooper's ongoing status in the litigation. As we made clear yesterday, we did not believe that Trustwave would be amenable to moving the June 19 date if Mr. Cooper is continuing as counsel for Finjan. It's just not reasonable given he has been lead counsel on the matter from the onset, argued the motion to dismiss and we understood that he was actively involved in the discovery issue over the past months. Please confirm Farella Braun's status one way or another.

To reiterate following yesterday's call, our general approach is to always attempt to reach agreement on scheduling issues with opposing counsel. This is a unique situation. We have received virtually no cooperation from day one (starting with us being required to contend with a contested motion on the timing of our responsive pleading to the Complaint). More importantly, Trustwave is working to bring this case to a close, while, from its perspective, Finjan is attempting to start anew. While you indicated on our call that you have no intention of trying to re-litigate matters that the Court has already addressed, I'm sure you can understand Trustwave's skepticism with additional counsel joining the case who has not even read the operative agreement. That all said, Trustwave will agree to give you the time you are

requesting provided that this is a true substitution of counsel and subject to you confirming agreement to the conditions noted above. We look forward to working cooperatively going forward.

John

**John Letchinger**
Partner

_____

BakerHostetler

One North Wacker Drive | Suite 4500
Chicago, IL 60606-2841
T +1.312.416.6206

jletchinger@bakerlaw.com
bakerlaw.com



---

**From:** Vakil, Bijal V.
**Sent:** Wednesday, June 12, 2019 8:39 AM
**To:** Letchinger, John S. ; acummings@mnat.com
**Cc:** Karen Keller ; W&C Finjan Litigation Team
**Subject:** Trustwave- Protective Order Motion

John and Ali-
Thanks for your time on the phone yesterday.

In view of our discussion, Finjan confirms that it will agree to Trustwave's proposal to withdraw the pending motion and highlight to the court that the parties are working together to try to resolve the issues presented.

We look forward to that withdrawal. Please let us know when you are both free next week to schedule an hour or two for a meet and confer.

Thanks.

bijal v. vakil | partner
white & case llp | bijal@whitecase.com
t.+1.650.213.0303 | m.+1.415.517.5596

===========================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available [here](here)

============================================================================

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

# EXHIBIT C

**From:** Letchinger, John S.
**Sent:** Monday, July 1, 2019 5:54 PM
**To:** Vakil, Bijal V.
**Cc:** Brandyberry, Jared; Cumings, Alexandra
**Subject:** RE: Trustwave Litigation

Bijal:

We have reviewed your letter, which has left us unclear with respect to Finjan's most recent position on the scope of products that Finjan believes are subject to the royalty inquiry, especially in light of discussions with prior counsel. We believe Judge Carpenter's Order was clear on the issue, but in order to attempt to focus any live discussions, we have a few questions:

1. As it relates to section (1) of your letter, you appear to take the position that all post-acquisition Trustwave sales, not just those to Singtel or affiliates (save those that are covered by the Existing Business exception under the License Agreement) continue to be subject to royalties notwithstanding acknowledgements by counsel during oral argument and, more importantly, Judge Carpenter's Order. Please confirm or correct us by return email or letter. If that is your position, we also ask that you explain your position in light of the ultimate holding on the issue in Judge Carpenter's Order -- "As a result, Finjan's suit for breach of contract may proceed, but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement".

2. As it relates to section (2) of your letter, we reiterate that Trustwave has no access to Singtel information. Putting that aside, we need clarification on the substance of the issue. Is it Finjan's current position that Singtel transactions that are completely unrelated to Trustwave (e.g., sales of unrelated, third-party products by Singtel to Singtel customers) somehow trigger Singtel royalty obligations under the License Agreement?

**John Letchinger**
Partner

BakerHostetler

One North Wacker Drive | Suite 4500
Chicago, IL 60606-2841
T +1.312.416.6206

jletchinger@bakerlaw.com
bakerlaw.com



**From:** Vakil, Bijal V. <bijal@whitecase.com>
**Sent:** Thursday, June 27, 2019 11:58 AM
**To:** acumings@mnat.com; Letchinger, John S. <jletchinger@bakerlaw.com>
**Cc:** W&C Finjan Litigation Team <WCFinjanLitigationTeam@whitecase.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** RE: Trustwave Litigation

John and Ali-

Checking in. Karen has called Ali as well. We would like to speak soon.

Thanks.

**Bijal V. Vakil** | Partner
**O** +1 650 213 0303 | **M** + 1 415 517 5596
**bijal@whitecase.com** | **bio** | **post**
**WHITE & CASE**

---

**From:** Vakil, Bijal V.
**Sent:** Wednesday, June 26, 2019 10:51 PM
**To:** acumings@mnat.com; 'Letchinger, John S.' <jletchinger@bakerlaw.com>
**Cc:** W&C Finjan Litigation Team <WCFinjanLitigationTeam@whitecase.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** RE: Trustwave Litigation

John and Ali-
Time to speak Friday?
Thanks.

**Bijal V. Vakil** | Partner
**O** +1 650 213 0303 | **M** + 1 415 517 5596
**bijal@whitecase.com** | **bio** | **post**
**WHITE & CASE**

---

**From:** Vakil, Bijal V.
**Sent:** Friday, June 21, 2019 3:36 PM
**To:** acumings@mnat.com; Letchinger, John S. <jletchinger@bakerlaw.com>
**Cc:** W&C Finjan Litigation Team <WCFinjanLitigationTeam@whitecase.com>; Karen Keller <kkeller@shawkeller.com>
**Subject:** Trustwave Litigation

Ali and John-
Please see the attached.

**Bijal V. Vakil** | Partner
**O** +1 650 213 0303 | **M** + 1 415 517 5596
**bijal@whitecase.com** | **bio** | **post**
**WHITE & CASE**

========================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it.

Thank you.

Our external privacy policy is available here

============================================================================

# EXHIBIT D

| | |
|---|---|
| **From:** | Letchinger, John S. |
| **Sent:** | Thursday, August 22, 2019 2:13 PM |
| **To:** | Vakil, Bijal V. |
| **Subject:** | Re: Trustwave - Follow Up |

Bijal, Trustwave has agreed to proceed with making a production of sales data to KPMG relating to Trustwave sales to Singtel and Singtel affiliates in as similar a form and per the same conditions as prior productions to KPMG. While Finjan has remained unwilling to commit in writing to any of our proposed stipulations concerning the scope of the case (as track from our original motion for protective order and subsequent communications), you have indicated general agreement and urged us to trust your good intentions. It is in that spirit that we are agreeing to move forward in this fashion, with a settlement meeting with parties and KPMG to follow KPMG's analysis of the data.

I got stuck in Los Angeles for an extra day. I committed to getting back to you by today, which is the purpose for this email. I will be in tomorrow and we can formalize each side's understandings of this interim step. That said, I want to make sure it is clear that our agreeing to involve KPMG is without waiver of any of Trustwave's defenses, positions, etc.

I am just about to board a flight back to Chicago. Assuming you are available, I'll speak with you tomorrow.

John

On Aug 19, 2019, at 11:46 AM, Vakil, Bijal V. <bijal@whitecase.com> wrote:

> John-
> Thanks for your call today to follow up on our ongoing discussions.
>
> In response to our concern that we were unable to make any stipulations as a precursor to documents provided to KPMG for their input and analysis, you agreed to ask Trustwave for permission to produce all information relating to every transaction involving Singtel for their review.
>
> We look forward to Trustwave's prompt response.
>
> Thanks.
>
>
>
> **bijal v. vakil** | partner
> O +1 650 213 0303 | M + 1 415 517 5596
> **bijal@whitecase.com** | **bio**
> <image003.png>
>
>
> =======================================================================
> =
>
> This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1

212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available here

========================================================================
=

# EXHIBIT E

**From:** Letchinger, John S.
**Sent:** Thursday, August 29, 2019 10:31 AM
**To:** Ballow, Rob
**Subject:** RE: Finjan | Trustwave

Hello Rob.  I trust you have been in contact with Bijal Vakil from White & Case.  In an effort to bridge discovery disputes in the Delaware litigation, Trustwave has agreed to provide data to KPMG covering all post-acquisition sales by Trustwave to Singtel and Singtel affiliates.  Because, as I trust your notes will reflect from prior discussions with Trustwave, the company utilizes different systems for different parts of the world, the data is not available via a "push of the button" but, rather, the data needed to be assembled by the team.  As such, the format may appear to be different.  That said, I believe Trustwave was able to put together substantially similar information to allow KPMG to apply the same "yes", "no" and "maybe" designations.  The ultimate goal, as agreed between the parties, will be to receive KPMG's analysis of the potential royalties per the same methodology utilized in the prior inspections.  It should go without saying that Trustwave is not waiving any of its defenses, positions, etc., all of which are expressly reserved.  If you will email back KPMG's agreement to handle our production per the same terms and conditions as utilized in the past, we should be able to forward the data right away.

Thanks.

John

**John Letchinger**
Partner

BakerHostetler

One North Wacker Drive | Suite 4500
Chicago, IL 60606-2841
T +1.312.416.6206

jletchinger@bakerlaw.com
bakerlaw.com



1

# EXHIBIT F

**From:**          Karen Keller <kkeller@shawkeller.com>
**Sent:**          Thursday, August 29, 2019 7:16 PM
**To:**            Cumings, Alexandra
**Cc:**            Letchinger, John S.; Bijal Vakil
**Subject:**       [EXT] RE: Finjan/Trustwave
**Attachments:**   FW: Trustwave - Follow Up; [EXT] RE: Trustwave- Protective Order Motion

Ali and John:

While I appreciate your emails to Finjan, I want to clarify a few misstatements and reiterate our willingness to try and reach a compromise on these issues as we have done all along.

1.A party cannot unilaterally declare that an impasse has not been reached and therefore declare that the certification is in violation of the Local Rules.  As the Rule 37 certification mentioned (using examples and not the entirety of the correspondence), there have been numerous meet and confers, including verbal meet and confers with Delaware counsel on the line. This included an email Bijal sent to Mr. Letchinger on Monday, August 19 looking for a "prompt response" from Trustwave on whether there was any movement toward an agreement.  Consistent with past delays in getting responses from Trustwave's counsel, there was no response from Mr. Letchinger until late afternoon on Thursday (notably almost 5 hours after Finjan filed its motion for leave to file its motion to compel under seal).  While I was not aware of Mr. Letchinger's email on August 22 until Bijal's email of August 25, Finjan stands by its position that it has met all of the requirements of the Local Rules prior to bringing its motion to compel.  While it is true that the parties had begun to work towards a resolution, no agreement had been reached in June or at the time of filing the motion and there still remains no agreement. This dispute has been going on for some time now and it appeared as if Trustwave was doing everything it could to delay discussing the issues and responding to our requests to meet and confer further.  With a trial date now on calendar and an interest in moving the case forward Finjan felt its only recourse was to get a motion filed with the court.  Despite Trustwave's willingness now to provide the documents to KPMG to review, Trustwave has not: (1) committed to a firm date for production of the materials; and (2) confirmed that all relevant materials will be provided to KPMG and Finjan without limitation (John expressed to Bijal that there would be a yes/no/maybe pile of documents).

2.Finjan remains willing to request a continuance of the hearing provided that Trustwave sets a firm timeline with specific dates for its production (to KPMG and in this case) and abides by those dates.

3.Finally, there were no agreements regarding the protective order withdrawal relating to Finjan's own motion practice. (see attached).  We apologize on the oversight regarding page limits and will be filing a corrected brief that is limited to 10 pages.


Karen E. Keller, Esq.
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
Office: (302) 298-0702
Cell: (484) 437-9179
kkeller@shawkeller.com
www.shawkeller.com

PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION

-----Original Message-----
From: Cumings, Alexandra <acumings@MNAT.com>
Sent: Tuesday, August 27, 2019 5:59 PM
To: Karen Keller <kkeller@shawkeller.com>
Subject: RE: Finjan/Trustwave

Karen,

We were surprised to see the motion to compel you filed last week in light the parties' progress in negotiating a resolution and our prior agreement that Trustwave would renew its motion for protective order.  Indeed, the day before you filed the motion, John Letchinger reached out to Bijal Vakil to confirm Trustwave's commitment to produce the documents Finjan seeks.  While I see that Bijal copied you on his response back to John on Sunday, I trust you were not aware of John's emails (attached here for reference) prior to filing the motion over a day later and I ask you to confirm or correct me on that.  Not only was that communication absent from your Rule 37(e)(1) certification, but it's also contrary to the spirit of the rule to file a blanket motion to compel despite the parties' substantial agreement on an interim approach for working through the parties' disputes - here, it being your side's proposal.

Perhaps more importantly, after deferring for weeks at Finjan's urging (prior counsel), in May 2019 Trustwave filed a motion for protective order on issues identical to those raised in the motion to compel.  Then a month later in June 2019, Trustwave reluctantly agreed to withdraw its notice of motion for protective order at Finjan's urging and upon Finjan's agreement that should the parties be unable to resolve the discovery disputes, Trustwave would re-notice its motion for protective order.  Instead, without any prior notice, Finjan filed the motion to compel on August 23.  It is a breach of the parties' written agreement (which was noted in our June 13, 2019 letter to Judge Carpenter) and, again, completely contrary to the spirit of the local rules.  Also for reference, I attach the email memorializing that agreement.

Finally, your motion exceeds the page limit.

We expect that, by tomorrow, Finjan will withdraw its motion to compel.

Regards,
Ali

-----Original Message-----
From: Karen Keller [mailto:kkeller@shawkeller.com]
Sent: Friday, August 23, 2019 4:46 PM
To: Cumings, Alexandra
Subject: [EXT] Finjan/Trustwave

Ali:

As you probably saw already, we filed our motion to compel today. Unfortunately the parties were at an impasse and with a pending trial date now we felt it important to get this issue heard and resolved. We remain willing to continue the discussions and attempt to reach a compromise with the hope of taking it off calendar but until a resolution is reached we need to proceed.

Best,
Karen Keller

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged.
If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message
or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error,
please contact me at (302) 658-9200 or by return e-mail.

# EXHIBIT G

```
 1        IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
               IN AND FOR NEW CASTLE COUNTY
 2

 3       - - - - - - - - - - - -  :  C.A. NO: N18C-04-006
                                   :            WWC CCLD
 4    FINJAN, INC.                 :
                                   :
 5                 Plaintiff,      :
                                   :
 6           v.                    :
                                   :
 7    TRUSTWAVE HOLDINGS,          :
      INC.,                        :
 8                                 :
                   Defendant.      :
 9       - - - - - - - - - - - -  :

10


11   BEFORE THE HONORABLE WILLIAM C. CARPENTER, JR.

12

13

14

15                      - - - -
                     MOTION HEARING
16                  November 19, 2018
                        - - - -
17

18

19

20
               KAREN L. SIEDLECKI, RMR
21        SUPERIOR COURT OFFICIAL REPORTER
           500 N. King Street, Suite 2609
22          Wilmington, Delaware 19801

23
```

```
 1      APPEARANCES:

 2          YOUNG CONAWAY STARGATT & TAYLOR, LLP
            By MARY F. DUGAN, ESQUIRE
 3             KAREN L. PASCALE, ESQUIRE
              -and-
 4          FARELLA BRAUN & MARTEL, LLP
            By JOHN L. COOPER, ESQUIRE
 5             For the Plaintiff

 6          MORRIS NICHOLS ARSHT & TUNNELL, LLP
            By JACK B. BLUMENFELD, ESQUIRE
 7             -and-
            BAKER & HOSTETLER, LLP
 8          By JOHN S. LETCHINGER, ESQUIRE
               For the Defendant

 9

10      ALSO PRESENT:

11          Julie Mar-Spinola, Finjan

12

13

14

15

16

17

18

19

20

21

22

23
```

```
 1                                  November 19, 2018
                                    Courtroom 8C
 2                                  10:00 a.m.

 3

 4

 5       PRESENT:

 6           As noted.

 7                        —   —   —

 8           THE COURT:  Good morning, everyone.

 9       Mr. Blumenfeld, this is your motion.  You may

10   proceed, or whoever is going to do it.

11           MR. BLUMENFELD:  Yes, Your Honor.  Jack

12   Blumenfeld, Morris Nichols, for the defendant.

13   Along with John Letchinger with Baker Hostetler.

14           With your permission, Mr. Letchinger will be

15   presenting for the defendant.

16           THE COURT:  Okay.  Thank you.

17           MR. BLUMENFELD:  Thank you.

18           MR. LETCHINGER:  Good morning, Your Honor.

19   My name is John Letchinger.

20           As a significant part of my presentation to

21   Your Honor, I'm going to be referencing the two

22   documents that were appended to our motion, which is

23   the license agreement and an inspection report.  I
```

1   have extra copies if anybody needs to follow along.

2        THE COURT:  I have it.

3        MR. LETCHINGER:  Okay.  As way of about 20

4   seconds of background, Your Honor, this agreement

5   came to be in connection with the purchase by

6   Trustwave, the licensee of a company called M86.

7   M86, prior to the transaction, had merged with a

8   company called Marshal and Finjan Software.

9        So essentially, by way of that transaction,

10  Trustwave acquired all of the assets of those

11  companies, which was software products and know-how.

12  And then, in tandem with that, in order to actually

13  continue practicing and growing their business,

14  Trustwave took a patent license from Finjan which is

15  what we're here fighting about.

16       And as detailed in the agreement, I think it's

17  the fourth whereas clause, in exchange for that

18  patent license agreement they gave 224,000 shares of

19  stock, which ultimately turned into about

20  $20 million.

21       So it was really two buckets of things that

22  Trustwave got.  They got all the products from M86,

23  then they got the patent license for an extra fee.

1    I referenced the $28 million fee because what I

2    would really like -- with the Court's indulgence --

3    to focus on is a small subset of the provisions of

4    the agreement, which I believe form our dispositive

5    to the dispute before Your Honor, which make it

6    very, very clear that as it relates to the licensee,

7    Trustwave itself, that license is fully paid up,

8    period.  No exceptions, no triggers, period.

9         And I'm going to try to go through some

10   language and piece that together, because it's not

11   the most nimble agreement in the world to follow.

12        Actually, starting with the fourth whereas

13   clause.  In the third line, it specifically

14   references that it's a grant to the licensee of a

15   fully paid-up license.

16        THE COURT:  Let me ask you, is the

17   argument -- I read the briefs, and I don't think

18   this was argued.  But is the -- is it your position

19   that the real party that should be the defendant

20   here is Singtel who bought Trustwave?

21        I mean, the whole thing here appears to be

22   there's this agreement -- and you can walk through

23   it with me -- but at some point in time, at least

1    the representation in the complaint is if Trustwave

2    was acquired, then there is some additional

3    royalties that were required under the agreement.

4         And as best I can read, Singtel bought

5    Trustwave; right?  Am I right there?

6         MR. LETCHINGER:  Absolutely.

7         THE COURT:  And therefore, as a result of

8    the sale or the acquisition of Trustwave by Singtel,

9    now there's this provision that requires a four

10   percent royalty hit of some nature.

11        So I get lost in the transaction of, it

12   appears that no one's disputing that Trustwave, at

13   the time they acquired the services from Finjan,

14   they had a fully paid-up patent.  It's when the

15   acquisition occurred that supposedly this kicked in.

16        Now, that's what I'm reading from what I've

17   gotten.  And if I'm wrong, I need you to tell me.

18        MR. LETCHINGER:  I don't think it's a matter

19   of being wrong, Your Honor.  I think if, in fact,

20   the technology had been licensed or transferred to

21   Singtel, or expanded to Singtel -- which I think is

22   what this is supposed to do, is protect Finjan in

23   that event -- and it exploited and Singtel was

1    starting to exploit it, then, yes, I think those

2    sales might come into play under that Section 2.5

3    provision.

4         But the complaint is exclusively directed at

5    the sales of Trustwave.  Those were the only sales

6    that were counted, and those are the sales against

7    which they're trying to apply a royalty.

8         And what I'm prepared to show you, and I don't

9    think it will take very long, is that the license

10   agreement is purposely exclusive as to licensee, and

11   then addresses acquirers or other transferees or

12   OEMs in a much different fashion.

13        So if you would indulge me, if you just look

14   at -- I'm going to look at three sections with you,

15   Your Honor.  I'm going to look at Section 2, which

16   is the grant, the grant itself.

17        And maybe I don't need to do this, because I

18   think you indicated you recognized that it's a fully

19   paid-up license.  But I'm specifically focusing on,

20   in these provisions, the very specific distinctions

21   that are being drawn in the agreement between

22   application of rules as it relates to the licensee

23   versus acquirers, transferees or OEMs.

1          So in the license grant, Section 2.5, five

2     lines down, again, it says it's a fully paid-up

3     license.  There is nothing in Section 2 whatsoever

4     that makes for any exclusion or any exception to

5     that.

6          So the license to the licensee itself,

7     Trustwave, a separate company right now, is the only

8     company's sales that are in dispute, that's fully

9     paid up.  And I think it's illustrated even better

10    when we look at two more provisions, which are 1.9

11    and then some provisions in 3.1.

12         In Section 1.9, it's the definition of net

13    sales.  Net sales is everything.  Net sales is the

14    gross revenues against which you apply whatever

15    royalty rate you're going to apply, if applicable.

16    Okay.

17         So they're saying four percent.  That four

18    percent would get charged against net sales.  Okay?

19    So in the definition of net sales, it specifically

20    states that net sales means the gross amount

21    invoiced by OEMs, permitted transferee or its

22    affiliates, or acquirer or its affiliates.  It

23    specifically excludes from that equation the sales

1    of the licensee.

2         Likewise, if you go to the sister provision in

3    3.1 -- and unfortunately it's not numbered.  By my

4    count it's on Page 9.

5         If we look carefully at Section 3.1, which is

6    Application of Relevant Net Sales -- so you can see

7    the direct link back to Section 1.9 -- the licenses

8    and rights granted hereunder are pursuant to a

9    license which is fully paid up for, (i), licensee

10   and its affiliates.  And then (ii), any acquirer and

11   its affiliates licensed hereunder for the existing

12   business.

13        So the royalty-free component for an acquirer

14   is narrower, it's got the existing business

15   exception.

16        I don't believe, Your Honor, this agreement

17   makes any sense if we're going to treat the

18   licensee, which is, again, the second, third, fourth

19   time it's now specifically referenced that it's

20   fully paid up without exception to the licensee and

21   its affiliates.  And then it goes on to talk about a

22   different treatment for the acquirer and its

23   affiliates.

1   　And that's my primary point.  The only sales

2   at issue in this dispute and the only sales that are

3   on that KPMG inspection are Trustwave's, the

4   licensee.  So --

5   　　THE COURT:  Of the existing business;

6   correct?

7   　　MR. LETCHINGER:  The existing business

8   exception doesn't even come into play because for

9   the licensee, as we just read, that exception

10  doesn't apply.  It's fully paid up.

11  　And if you go further in Section 3.1, it's

12  right before you get to subpart A.  It reads:

13  "Accordingly, relevant net sales for the application

14  of the provisions of this Section 3 shall apply only

15  to permitted transferees and their affiliates."  And

16  then it goes on to talk about OEMs.

17  　　THE COURT:  Okay.

18  　　MR. LETCHINGER:  So $20 million is a lot of

19  money.  First we bought the company.  Then we had to

20  take a license.

21  　I don't believe there's any language in the

22  agreement that suggests that as to the licensee,

23  licensee gets to continue practicing all of this

1   royalty free.

2        THE COURT:  I want to try to make sure I'm

3   understanding what you're saying.  Because I'm

4   following along that you are the licensee and,

5   therefore, you have a fully paid-up patent.  And

6   therefore, your use of the product, I'll call it,

7   you don't owe any additional money, don't owe any

8   additional royalties because it's a totally paid-up

9   patent.

10        They're acquired by Singtel.  Is it your

11   argument that even the purchase by Singtel for

12   business that occurred after the acquisition is

13   covered and you owe nothing for that acquisition

14   profits that occur afterwards?

15        MR. LETCHINGER:  That is my position as it

16   relates to the ongoing business of Trustwave as a

17   separate and existing company.

18        So Singtel is a telecom company, utility.

19   Just happens to be a large company.  They wanted to

20   purchase this asset.  Under their theory, we get

21   penalized automatically by way of this transaction,

22   even if there's no use by Singtel.

23        If Singtel were to say:  Okay, great, now

```
1    we're going to start making new products, we're

2    going to use these patents.  I believe then the

3    answer to what I think your original question, then

4    we as the licensee would have a duty to get

5    royalties to pay to them for a certain limited set

6    of products.  I agree with that.  That's not what's

7    alleged and that's not what's happening.

8         All that's happening -- the way I look at it,

9    Your Honor, is think of some crazy billionaire.  And

10   I can say that because I'll never be a billionaire.

11   So he just decides:  Oh, I'm going to own a grocery

12   store chain --

13        THE COURT:  You're closer than me, but

14   that's all right.

15        MR. LETCHINGER:  We can talk about that

16   later.

17        But this is -- you know what, actually, maybe

18   the best way to describe this is when we purchased,

19   when Trustwave purchased M86, that was the

20   consolidation of two security companies.  And

21   because of that, the expansion of the technology was

22   obvious.  That's why we had to pay $20 million extra

23   for a patent license.
```

1        M86 wasn't allowed to just say:  We're selling

2    you the company, and by the way, you get the patent

3    license.  Fair enough.

4        We got purchased by Singtel.  There's been no

5    activity to transfer that technology, there's been

6    no use of it.  It would be like the grocery store

7    owner saying:  I'm buying Trustwave, so boom,

8    automatically now Trustwave has to pay more

9    royalties.  There's no logic to it.

10        So while I know these are just words on the

11    paper, provision after provision after provision in

12    excruciating detail distinguishes between treatment

13    in certain conditions for the acquirer versus

14    treatment of a licensee.

15        And so when you look at a patent license, you

16    look at the grant and then you look at the royalty

17    provisions.  We've just looked at those, and they

18    couldn't be any more specific and clear.

19        The licensee is fully paid up.  It says it

20    three, four, five times.  And then it goes on to

21    talk about -- it again says in the royalty section,

22    3.1(i), that we're fully paid up.  The very next

23    line it says, "Acquirer is fully paid up," but only

1   for the existing business.

2          So if it's to be interpreted that everyone

3   gets treated the same, this is meaningless.

4          THE COURT:  And you would agree that if

5   Singtel began using that technology that you bought

6   or acquired, then there's a royalty provision that

7   kicks in somewhere in the contract?

8          MR. LETCHINGER:  I do believe that that

9   would be a trigger to start looking at the

10  possibility of royalties.  There are significant

11  exceptions to that.

12         THE COURT:  I don't need to get into that.

13         MR. LETCHINGER:  You don't need to get into

14  that.

15         There is a universe of activity that I'll

16  agree with Your Honor would be subject to some

17  royalty scrutiny by Singtel, but never by Trustwave.

18         THE COURT:  Okay.  Understand.

19         MR. LETCHINGER:  So since I stayed up late

20  last night to write this last concluding sentence,

21  I'm going to say it.

22         When read together, Section 2, Section 1.9,

23  Section 3.1 -- which again, license grant and the

1  royalty provisions -- from our perspective, there's

2  no way to read this other than Trustwave, the

3  licensee, has a royalty, fully paid-up royalty-free

4  license forever for itself.  Which, if that's true,

5  as a matter of law eliminates all three counts of

6  the complaint with prejudice.

7      From our perspective, there is no way to read

8  this agreement -- not withstanding what the

9  complaint says.  We're allowed to rely on the

10  agreement now that it's been accepted by both sides

11  as being part of the pleadings.  You can't read this

12  agreement to say that we have to pay anything for

13  our activity.

14      If Your Honor isn't prepared to make that

15  ruling, there's still -- the complaint is still

16  wholly defective.  I'm not going to get into

17  pleading standards.  I know we're in Delaware

18  Superior Court.

19      The elephant in the room is that if you don't

20  believe you can dispose of this dispute under

21  contract law alone, in other words, without getting

22  to the ultimate marriage of:  If we get past this

23  point, this point and this point, then we have to

1    decide if royalties are owing.  The only way to do

2    that is to look at whether the patents are valid and

3    whether they're being practiced.  That's just a

4    fact.

5         I believe Your Honor can dispose of this as a

6    matter of law based on the fact that for Trustwave,

7    the licensee, we're fully paid up.

8         But looking just at the complaint itself, I

9    think Finjan admits on Page 15 of its brief that all

10   they have to do is basically say we allege there's a

11   contract, we allege that we asked KPMG to do an

12   inspection, they did it, they put a number down, and

13   therefore, there's a breach of contract.  We've

14   alleged it and we're damaged.

15        THE COURT:  And the number that the

16   automatic auditing firm created or put down, that's

17   simply net sales of your company; right, Trustwave.

18   And so, therefore, it doesn't -- the four percent

19   royalties doesn't apply because you've already --

20   that's your company, that's your sales.  The fact

21   that you have a fully paid-up patent, therefore,

22   doesn't apply.  Right?

23        MR. LETCHINGER:  That is the overarching

1    argument, Your Honor.  From a more substantiative

2    perspective, from a procedural perspective, what

3    they've done is they've basically said:  There's a

4    report, there's a number on there, you owe it, and

5    that's all we have to allege.

6         And they've actually gone so far as to state

7    in their complaint and restate in their brief that

8    the report actually is a finding that KPMG found

9    that we owe $1.5 million.  That's the entire

10   foundation of their complaint.  They say it in their

11   brief, and it's misstated.  With respect, every time

12   the word "royalty" is used, it's qualified by the

13   word "potential."

14        All this is is -- and the footnotes make it

15   perfectly clear.  I mean, KPMG goes to pretty great

16   lengths to try to explain:  We didn't have

17   information, there's no reference to any patent

18   analysis here.

19        That with Finjan's instructions, they

20   basically looked at our website and tried to

21   identify categories of products that might relate to

22   security, in essence.  And they put them in a

23   bucket.

1        We gave them -- we gave them access to the

2    entire company's sales.  They went through, they

3    picked what they wanted to count.  They had access

4    to every single invoice.  And they come up and they

5    provide numbers.  All they did was do a count of

6    theoretical categories of products.  And they

7    reported over and over again as potential royalties

8    due.

9        Because, as they qualify, we don't have enough

10   information.  And we're not going to interpret the

11   contract.  And we know there are exceptions.  We're

12   going to assume the exceptions don't apply.

13       This isn't a royalty finding.  That's why it's

14   called a report.  It's not even called an audit.

15   And what, I think what they've tried to do is

16   convert this KPMG effort into some sort of

17   arbitration or some sort of conclusive finding.

18        THE COURT:  Maybe you can point out the

19   provision.  I'm a little confused as to why, if I

20   bought a fully paid-up patent, and therefore, I can

21   utilize the services I bought and the patent

22   information I bought without any additional payment,

23   why is there an audit provision at all?  Why would

1  somebody include an audit provision when it really

2  doesn't matter for net sales because I've already

3  paid for it?

4     So where's the audit provision come into a

5  contract in which there's a fully paid-up patent?

6  Do you understand what I mean?

7     MR. LETCHINGER:  I absolutely do, Your

8  Honor.  And again, it goes back to the first

9  argument.

10    I agree with Your Honor that let's say we have

11  Singtel purchased us.  Again, if Singtel has been

12  using the technology, it is our job to report that

13  by way of the inspection.  It's our job to

14  affirmatively pay royalties on it if they're due and

15  owing.

16    So when they asked us for an audit, I wasn't

17  there, but I would have presumed they were looking

18  for that information.

19         THE COURT:  Understood.

20         MR. LETCHINGER:  And actually the section is

21  3.4.

22         THE COURT:  Okay.

23         MR. LETCHINGER:  It specifically talks about

1    the activity of OEMs and acquirers. So it's

2    consistent. So that's why there's an audit

3    provision or an inspection provision.

4         And again, I think it's really clear that that

5    provision relates to, it's the licensee's obligation

6    to acquire that information if technology is being

7    used and if it's applicable.

8         And I say "if it's applicable" because just by

9    way of example, at the very end of Section 1.9.2,

10   which is on Page 3, there's a very strong exception.

11        "Not withstanding anything in the definition

12   of net sales or this agreement to the contrary,

13   sales by acquirer and its affiliates licensed

14   hereunder for licensed products and services

15   attributable to the existing business and sales of

16   integrated licensed products and services" -- which

17   is subject to a whole bunch of other definitions

18   which I will not belabor you with -- "are not to be

19   included in the definition of net sales."

20        It's very clear that certain sales by the

21   acquirer could trigger royalties. That's why we

22   have an audit provision. But again, this provision

23   is just another of many where it's very, very

1   specific:  This is for the acquirer.  No exception

2   being made for the licensee, because we're fully

3   paid up.

4            THE COURT:  Okay.  Understood.

5            MR. LETCHINGER:  So there can be no

6   argument, I don't believe, under Section 1.8 which

7   is the definition of licensed products and sales,

8   that in order for anybody to have to pay any

9   royalties in this case, Finjan will ultimately have

10  to establish that whatever party that is, acquirer,

11  transferee, they're making use of a valid patent

12  claim.

13           There is no other way to get to the ultimate

14  conclusion that a dollar is owed in the case without

15  that finding.  I don't think Your Honor has to get

16  anywhere near patents or patent law to determine

17  that as it relates to the pleadings today, which are

18  directed solely at Trustwave, that Trustwave is

19  royalty free, and this case should be dismissed.

20           THE COURT:  Understand.  Thank you.

21           MR. LETCHINGER:  That's what I've got for

22  now, Your Honor.  Thank you.

23           MR. COOPER:  Good morning, Your Honor.  My

1   name is John Cooper, I'm with the Farella Braun and

2   Martel firm in San Francisco.  And with me today is

3   Mary Dugan and Karen Pascale.  And also in the

4   courtroom is Julie Mar-Spinola from Finjan.

5        Mr. Letchinger -- this is a contract case.

6   It's not a patent case, it's a contract case.  And

7   Mr. Letchinger only very briefly mentioned 3.4 which

8   says that the parties agreed to an audit procedure.

9        And we have alleged, and the complaint sets

10  forth, that not withstanding that agreement, that

11  Trustwave did not give KPMG the information that it

12  needed to find out what royalties were due.  And

13  that's required in Section 3.4.

14        This was an agreement, a license agreement.

15        THE COURT:  Yeah, but let's -- for me this

16  is a relatively simple case.  Either you owe the

17  royalties or -- you are either owed royalties or

18  not.

19        And the whole issue here is whether or not

20  Trustwave owes you any royalties at all by the

21  simple fact that they've been acquired by another

22  company.  And they argue that Trustwave is not --

23  Singtel, who bought it, is not using your product,

```
1   not using any of the services that Trustwave bought

2   and paid for.  And until that happens, you're not

3   entitled to any more royalties.

4        So I need you -- forget the audit for a

5   minute.  I need you to show me in the contract where

6   you're entitled to royalties now out of Trustwave

7   for what they're doing.

8        MR. COOPER:  2.4 and 2.5, Your Honor.  2.4

9   defines existing business.  And 2.5 says that if

10  licensee is acquired, then all of the products that

11  are sold herein not attributable to the existing

12  business, there must be a royalty paid on that.  And

13  that is what's required --

14       THE COURT:  Royalty for what, though?  They

15  paid you for it, up front.

16       MR. COOPER:  But they're asking us to take

17  their word that Singtel is not selling any product

18  that would constitute something other than existing

19  business.  And it says it was actually offered or

20  distributed by licensee or their affiliates at the

21  time of the transfer.

22       And so what we've alleged is that there was a

23  triggering event which was the acquisition by
```

1    Singtel of Trustwave.  And we've alleged that what

2    was required under Section 3.4 is that Trustwave,

3    the licensee, issue a report that, and in sufficient

4    detail to enable the royalties payable hereunder to

5    be determined.

6         And then if you look at 2.4 and 2.5 regarding

7    existing business and what was offered, then

8    Trustwave had an obligation under this agreement to

9    report with the auditor -- which KPMG, they agreed

10   to -- what royalties were due, if any.

11        And they haven't done that, Your Honor.  And

12   that is why -- you know that is why we filed this

13   lawsuit, is because that report and KPMG says

14   repeatedly in their report:  We weren't given the

15   information.  We had to guess about it.

16        And the reason we have the courts is because

17   you don't have to take someone's word for it.  You

18   can conduct discovery and have a trial.

19        THE COURT:  But what are you -- do you --

20   let me see if I can parcel it out to make sure.  Do

21   you agree that Trustwave has totally, at the time

22   that they acquired Finjan's product, they had a

23   totally paid-up patent and they owed you nothing on

1   existing sales or from royalties?  They had it, that

2   was done, they paid it; right?

3          MR. COOPER:  Yes, we agree that and we say

4   that in Paragraph 9.

5          THE COURT:  Okay.  So -- and do you agree

6   that the royalties that would be owed now

7   potentially would be to the extent that Singtel is

8   using the patent information that they acquired from

9   Trustwave for their business?  Not Trustwave's

10  business, but their own now, a different entity.

11      Is that where you think the line is?

12         MR. COOPER:  I think that depends on the

13  definition of "existing business" as set forth in

14  2.4.

15         THE COURT:  Why would somebody pay you

16  millions of dollars for a totally paid-up patent,

17  and if it's acquired by someone else but that

18  information is still being only used by Trustwave,

19  now owe you more royalties?

20         MR. COOPER:  Well, because the parties

21  agreed to 2.4 and 2.5.  So if there's never been an

22  acquisition, then it would be a paid-up license and

23  we wouldn't be here and there would never be a

1   problem.

2          But there was an acquisition, and we've

3   alleged that.  And so that invoked Paragraph 2.4 and

4   2.5.  And so --

5          THE COURT:  But what did it invoke for?  I

6   mean, yes, there's no question there's an

7   acquisition.  And if that acquiring party then began

8   using your patent information for their product,

9   certainly there's an audit and certainly there's

10  royalties.

11         But from as best I can tell and from your

12  complaint, which I read, is you're alleging that

13  Trustwave now owes you some royalties.  Not Singtel,

14  right?

15         MR. COOPER:  Well, no.  I don't believe

16  that's true.  I think that Trustwave may owe us

17  obligations for what Singtel is selling, under

18  Sections 2.4 and 2.5.  And that that had to be

19  reported.

20         THE COURT:  But it had nothing to do with --

21  what I'm confusing it to.  I don't disagree with the

22  last statement that you just said, and I don't think

23  the defendant disagrees.

1          MR. COOPER:  They agree.

2          THE COURT:  If Singtel is using your product

3    now, having acquired Trustwave, and they're using it

4    themselves, there's a royalty obligation that falls

5    from that.

6          The audit, though, was not of what is Singtel

7    now using the product for and how much sales they're

8    generating and, therefore, has a royalty obligation.

9    Your audit was of Trustwave.  For what?  Trustwave

10   paid you and -- I'm losing the two connect.

11         Only if you're saying that Trustwave has just

12   been merged into Singtel and it's all now one

13   company and now they're using your product.

14         MR. COOPER:  Well, what I'm saying is that

15   under 3.4, Trustwave, the licensee, had an

16   obligation to report.  And --

17         THE COURT:  And report what?

18         MR. COOPER:  And -- the royalties that were

19   due.  And Section 2.5 talks about Trustwave being

20   acquired --

21         THE COURT:  Right.

22         MR. COOPER:  -- by another acquirer, which

23   in this case was Singtel.  And then it very clearly

1    defines, it says that they owe royalties that are

2    not attributable to existing business.

3          And so then, the existing business is defined

4    in 2.4, which means that what was actually offered

5    and distributed at the time of the transfer.

6          So if, if Singtel or if Trustwave offered for

7    sale products that were -- now, that were different

8    than what was being offered at the time of the

9    transfer, then they have to report that to KPMG and

10   the audit to determine what royalties are due.

11         And that is invoking Section 2.4, 2.5 and 3.4.

12   And that's all we're asking.  This is a contract

13   action.

14         THE COURT:  I'm not -- I guess my question

15   to you is what -- to file the complaint in good

16   faith, you would have to have some assumptions, I

17   assume, that Singtel is now using Trustwave's

18   software and patent information that it got from

19   your client; right?

20         MR. COOPER:  Well, but the parties agreed to

21   an audit procedure in 3.4.

22         THE COURT:  But an audit of what?  You're

23   asking them to audit Trustwave, of what?  Why

1  audit -- I mean, if you want to, if you want to

2  allege that as a result of the acquisition Singtel

3  is now using your product and, therefore, you're

4  owed royalties at four percent, I get it.  I get it.

5      But what you're saying is:  I don't know, I

6  don't know anything.  But, so I filed a complaint

7  against Trustwave because I don't know.  And the

8  audit says they have net sales of something of one

9  point whatever million.  What's that mean?

10      MR. COOPER:  But 2.5 and 2.4 says if

11  Trustwave is acquired --

12      THE COURT:  Yeah.

13      MR. COOPER:  -- then royalties are due on

14  the products that were not offered at the time of

15  the transfer, and the license agreement provides

16  that under 3.4 that an audit will be conducted.

17      And so what we're saying is tell us, tell us

18  that Singtel is not using this.  They didn't tell --

19  they didn't tell KPMG that.

20      Tell us what is happening.  And Trustwave is

21  totally acquired by Singtel, and we've alleged that.

22  And so this license then -- and under 2.5 goes to,

23  you know, goes to Trustwave pursuant to the

1   provisions of 2.5 and pursuant to the provisions of

2   3.4.  And so we're in a contract dispute that is

3   subject to discovery and subject to a trial.  And

4   there is a dispute.

5        Mr. Letchinger says in the event that Singtel

6   is using this technology, they admit that royalties

7   are due.  But they need to tell KPMG that.  They

8   need to tell KPMG the information.

9        And they didn't, and that's what this lawsuit

10  is about.

11            THE COURT:  All right.

12            MR. COOPER:  Thank you.

13            MR. LETCHINGER:  May I, Your Honor?

14        Just for clarification, Your Honor.

15  Mr. Cooper was kind of in lump form talking about

16  2.5, 2.4 and saying:  Therefore, under 3.4 an audit

17  is required.

18        As with every other section that we've

19  examined today, even in 2.5 dealing with the

20  acquirer, to the point you're making, it has to be

21  Singtel using it, it's very specific.  It's

22  specifically and exclusively looking at the sale of

23  products by the acquirer or its affiliates, not

1    Trustwave.

2         And it actually parrots the exact language

3    from 3.1, which was that royalty provision.

4         THE COURT:  Well, let me ask -- let me go

5    through it this way, what I think they're saying,

6    and then you can respond.

7         Their contract is with you, not Singtel.  And,

8    therefore, if you're acquired by another company and

9    that other company began using their patent

10   information that you paid a royalty for, but now

11   they're using it, not your company, then you agree

12   they have -- you potentially have a royalty

13   obligation to Finjan.

14        They wanted an audit to determine whether or

15   not Singtel is now using the product that you

16   bought.  And until they have the -- until they

17   complete the audit or have the audit find that

18   information out.  I'm not sure that's what the audit

19   did.

20        But the allegation is that they need an audit

21   now to determine whether or not your acquiring

22   company is using your software, your license, your

23   patent information.  I think that's what they're

1    saying.

2         MR. LETCHINGER:  They are.

3         THE COURT:  And they then say:  Well, when

4    they did the audit, that information wasn't given

5    because the fact that you have sales, I'm not sure

6    means anything; right?  Because it's really

7    Singtel's use of it.

8         MR. LETCHINGER:  I agree with you, Your

9    Honor.  Every dollar reported in Exhibit B is a

10   Trustwave sale.  It's the only information we were

11   asked for.  We can't prove a negative.

12        There's been no license to anybody from

13   Trustwave to Singtel.  There's been no knowledge

14   share.  Again, Singtel is a telecom company.

15        So I guess if -- and maybe I'll get yelled at

16   by my client.  But I guess if Finjan files a

17   complaint before Your Honor that says -- and they

18   have a good faith basis for saying it -- Singtel is

19   selling products or using the patents and it's not

20   subject to any of these exceptions, like the one we

21   read in Section 1.9.2 at the very end, that big

22   notwithstanding clause, if they allege that, then

23   that's a whole different lawsuit.

1        This entire lawsuit, 100 percent, is founded

2   on KPMG's inspection of Trustwave's sales.  Which I

3   think Mr. Cooper is now agreeing are not relevant.

4        If Your Honor allows them to refile and they

5   can in good faith say, like they did with us, saying

6   we looked at Singtel's website, that somehow we've

7   transferred technology and they're manufacturing

8   products under the patent license, then putting all

9   the exceptions aside, that probably states a claim.

10  It doesn't eliminate the back-end patent problem.

11       But that's a whole different animal.  Using

12  whatever pleading standard you want, that's just not

13  pled.

14           THE COURT:  Okay.

15           MR. LETCHINGER:  But I agree with Your

16  Honor.  Thank you.

17           THE COURT:  Uh-huh.

18           MR. COOPER:  May I reply very briefly?

19           THE COURT:  Sure.

20           MR. COOPER:  I think that Your Honor has

21  captured it in a nutshell.  2.5 says that when

22  Trustwave is acquired, the acquirer gets the

23  license.  And then -- except for existing business.

1    And then that triggers 3.4 and the audit.

2         And so, so, therein 2.5 is where the license

3    transfers to the acquirer.  And 3.4 requires Singtel

4    and/or then the acquirer to file a report and to

5    provide the auditor, that they agreed to, with the

6    necessary information.

7         And this complaint is about the fact they

8    didn't provide the necessary information.  And it

9    goes on and -- you know, that's our Claim 2.

10   Claim 3 is regarding the cost of the audit.  So

11   that's all.

12        THE COURT:  To me, the audit is simply a red

13   herring thrown out there.  Yeah, because your real

14   dispute supposedly is that another company acquired

15   Trustwave.

16        Now this other company has Trustwave's patent

17   information that they bought from you, and now the

18   other company that has now been -- that's acquired

19   them is using that information and not paying you

20   royalties.

21        That's a fair claim.  That's a fair claim.

22        MR. COOPER:  That's what we're saying.

23        THE COURT:  Well, that's not exactly what

1  you said.

2      You said that somehow or other Trustwave owes

3  you money because they had sales of -- which is

4  their sales.  It's Singtel's problem, right?  It's

5  not Trustwave.  As long as it's Trustwave sales,

6  it's of existing business that's going on.  The

7  existing business is Trustwave.  As long as

8  Trustwave is selling it, they bought it.  Right?

9      MR. COOPER:  But it requires Your Honor to

10 interpret 2.5 and 3.4.  Because 2.5 provides that

11 this license transfers to the acquirer.  And they

12 have the right to conduct everything that

13 constituted existing business, which was actually

14 sold at the time of the transfer.

15     So 2.5 triggers 3.4 and the sales, if there

16 were any, by Singtel.

17     THE COURT:  But what did you want them to

18 audit?  I mean, I don't know if you all were

19 involved at this point in time or not.  But it seems

20 to me that whatever business work was being done,

21 I'm not sure there's even been a clear message as to

22 what you wanted audited, what you asked KPMG to do.

23     But you say:  Well, they're obligated to do

 1   it.  Well, you're the one who asked for the audit.

 2   You applied for the audit.  What did you ask the

 3   accounting company to do?  To audit Singtel's sales?

 4   No, you asked them to audit Trustwave's sales.

 5          MR. COOPER:  Well, but --

 6          THE COURT:  Here, I'm going to stop you.

 7   This is another one of those good examples of I have

 8   business decisions being made poorly, business

 9   decisions being made not effective, business

10   decisions being made ineffective, inappropriate and

11   not clear.

12          I have two businesses that are not working

13   well together, are pissing at each other, and now I

14   have two lawyers standing up in front of me trying

15   to make legal arguments to support their positions.

16   It's outrageous.  Outrageous.

17          I hear it all the time.  I'm tired of hearing

18   business disputes that should be resolved at the

19   business world and not in the legal world.  Okay?

20   These two companies need to get together and figure

21   out what's going on.

22          Because as best I can tell at the moment,

23   Trustwave is not doing anything in regards to giving

1   its information to Singtel.  You think it is, they

2   think it is.  But you have nothing to support it.

3   Nothing, zero.  So what do you do?  You ask for the

4   audit.  An audit that is absolutely of no value.

5   Because you even say it's of no value to what you...

6       So what in the world are the two businesses

7   doing?  Their representative sitting back there

8   should be going back to their CEO.  I don't know if

9   you're the CEO, but whoever is needs to go back and

10  say:  Let's go back and figure out what's going on

11  here.

12      If it's Trustwave doing their business as

13  they've done before, you agree there's no royalties.

14  If Singtel is using it, they agree they owe you

15  royalties.  Figure it out.

16      But instead I have two lawyers who traveled

17  across the country to come and argue to me about

18  some stupid audit provision.  Fact.  I'm sorry.  I'm

19  just shocked.  They're spending more money on the

20  two of you than they would to resolve the dispute.

21  I mean, I have five lawyers who I know are not cheap

22  sitting in front of me.

23          MR. COOPER:  I don't disagree with you, Your

1   Honor.  And I -- now this is outside the pleading

2   and outside the motion, but we tried to resolve it

3   and couldn't.  And that's why we came to see you.

4         And I think that the bottom line is that it

5   requires interpretation of 2.5 and 3.4.  And this is

6   a factual dispute, so it's not suitable for

7   dismissal.

8         THE COURT:  Well, I suggest that the both of

9   you go back to your client and tell them that:  You

10  know, I really didn't like being in a courtroom

11  getting my head chewed off because two corporations

12  can't get their business sense together and decide

13  what's really going on here.

14        And if you want to sue Singtel because they're

15  using your patent now inappropriately, go for it.

16  District court is up the street two blocks.  That's

17  the patent infringement world.  I tried to be there

18  20 years ago, they didn't want me there 20 years

19  ago.  So you're stuck with me here.

20        So I just don't -- I think that's where we

21  are.  I'll look at it, but I'm just -- I'd rather

22  you go back and say we -- this is not a judge who's

23  happy about this.

1          MR. COOPER:  We'll do that, Your Honor.

2     And, but I ask that you look at 2.5 and 3.4 at the

3     time you're making the decision.

4          Thank you, Your Honor.

5          THE COURT:  And for your side of it, my

6     difficult point, it's at the motion to dismiss

7     stage.  I mean, you need to realize my ability to do

8     that much at this stage is kind of limited.  I kind

9     of have to accept what they've said.

10         Now, there's a contract provision that I can

11    look at and see if it makes any sense.  But to a

12    large degree -- I've been on the bench 25 years,

13    I'll bet you maybe less than a handful of times I've

14    granted motion to dismiss.  They're just not.

15         And motions to dismiss are like suppression

16    hearings in criminal cases.  For some reason

17    attorneys have to file them.  It's like I can't go

18    on.  Because they don't want to do discovery, I

19    understand that.

20         But it's not something that's generally

21    granted.  I'm not saying your argument's not good.

22    I followed it, I understand it.  But the reality is

23    I have to if -- they get the upper chip at this

1   point in time.

2         So this seems to me relatively clear:  Either

3   Trustwave has given Finjan's information to the new

4   acquiring company and they're now using it, and if

5   they're using it, you're entitled to your royalties.

6   Okay.

7         And the whole dispute here is how do I figure

8   out how they're using it, if they're using it.  And

9   maybe that was the intent of the audit provision.

10  But that's not, as far as I can tell from the audit,

11  that's not what was done.  I don't know what KPMG's

12  direction was, what they were asked to do.

13        If it was simply to determine net sales of the

14  company, well, yeah, they did a nice job doing that.

15  That didn't tell you anything.

16        MR. COOPER:  They were asked to look at 2.5

17  and 3.4 and the entire license agreement.  And we

18  engaged KPMG jointly to conduct the audit.  And what

19  Your Honor can do is let us take a little discovery.

20        THE COURT:  I know that's what you'd like to

21  do, because everybody files a complaint and then

22  they say:  Well, you know, it's sufficient, let me

23  go do discovery and see if I can find -- I mean,

1    this is like almost as clear as you get.

2        I'm not quite sure if Singtel has used the

3    information.  I have suspicion that maybe they did

4    because they've acquired, but simply because they've

5    acquired the company.  That's the only thing I have.

6    I don't have anything else.

7        So since they acquired the company, let me go

8    ahead and continue my lawsuit so I can see if

9    they've actually done that.

10        MR. COOPER:  The parties agreed to 3.4,

11    which was an audit procedure, to avoid having Your

12    Honor involved.  And they agreed to 2.5 in the event

13    Trustwave was acquired.

14        All we're asking, all we're asking is the

15    opportunity to get a, some meaningful information to

16    KPMG so they can reach a conclusion according to

17    what the parties agreed to.

18        THE COURT:  I don't know why the two parties

19    don't sit down and figure out what KPMG is supposed

20    to look for and tell them to go look for it and

21    resolve it.

22        MR. COOPER:  Well, I think --

23        THE COURT:  Their position is it hasn't been

1    used; your position is "I don't know."

2        MR. COOPER:  And the parties agreed to a

3    means for resolving it without troubling Your Honor.

4        THE COURT:  I'm here whether it's you or

5    someone else, so it doesn't really matter.

6        MR. COOPER:  Thank you.

7        THE COURT:  But I will -- I'm in the middle

8    of, as counsel, local counsel knows, I'm in six

9    months' of murder trials.  So you're certainly not

10   going to see this for 90 days if you see it then.

11       So I would ask that Counsel go back, talk to

12   their clients and see if something can't be worked

13   out.  This is simply -- from a business point of

14   view, it makes no sense at all.

15       But if you can't get any cooperation from them

16   because they're not willing to give you that

17   information, that's kind of a different ball game.

18       What I think I've done here is at least set

19   forth:  This is what everyone agrees the dispute is

20   about.  The dispute is about whether the acquiring

21   company is now using your product.  Period.

22       They're not using your product, Trustwave

23   doesn't owe you anything.  If Singtel is using your

1   product, they now have an obligation to tell you and

2   to pay royalties on it.

3        I don't think that's -- that's not

4   complicated.  How you figure that out, how do you

5   come to that conclusion?  How do you know?  I don't

6   know.

7        I mean, and you want me to let you to continue

8   discovery so you can find that out.  They say the

9   suit's against Trustwave and not Singtel.  And if

10  it's a patent infringement, go to the district court

11  and file a patent infringement.

12       MR. COOPER:  Well, I think Your Honor has it

13  exactly right.  The only thing that I would ask is

14  that we get the kind of information from Trustwave

15  that is set forth in 3.4.  And then we can resolve

16  it.  We can do exactly what Your Honor said, the

17  businessmen can go resolve it.

18       THE COURT:  All right.

19       MR. COOPER:  Thank you.

20       THE COURT:  Thank you.

21       All right.  I'll reserve decision.  And I'll

22  keep the package.  Thank you all very much.

23            (Proceedings concluded at 10:54 a.m.)

1

2                    *CERTIFICATE OF COURT REPORTER*

3

4         *I, Karen L. Siedlecki, RMR, Official Court*

5    *Stenographer of the Superior Court, State of*

6    *Delaware, do hereby certify that the foregoing is*

7    *an accurate transcript of the proceedings had, as*

8    *reported by me, in the Superior Court of the State*

9    *of Delaware, in and for New Castle County, in the*

10   *case herein stated, as the same remains of record*

11   *in the Office of the Prothonotary at Wilmington,*

12   *Delaware, and that I am neither counsel nor kin to*

13   *any party or participant in said action, nor*

14   *interested in the outcome thereof.*

15        *WITNESS my hand this 21st Day of November*

16   *2018.*

17

18

19                    */s/Karen L. Siedlecki*

20                    *Karen L. Siedlecki, RMR*
                      *Official Court Reporter*

21

22

23

MR. BLUMENFELD: [2] 3/10 3/16

MR. COOPER: [29] 21/22 23/7 23/15 25/2 25/11 25/19 26/14 26/23 27/13 27/17 27/21 28/19 29/9 29/12 30/11 33/17 33/19 34/21 35/8 36/4 37/22 38/23 40/15 41/9 41/21 42/1 42/5 43/11 43/18

MR. LETCHINGER: [21] 3/17 4/2 6/5 6/17 10/6 10/17 11/14 12/14 14/7 14/12 14/18 16/22 19/6 19/19 19/22 21/4 21/20 30/12 32/1 32/7 33/14

THE COURT: [50]

**$**

**$1.5 [1]** 17/9
**$1.5 million [1]** 17/9
**$20 [3]** 4/20 10/18 12/22
**$20 million [3]** 4/20 10/18 12/22
**$28 [1]** 5/1
**$28 million [1]** 5/1

**-**

**-and [2]** 2/3 2/7

**/**

**/s/Karen [1]** 44/19

**0**

**006 [1]** 1/3

**1**

**1.8 [1]** 21/6
**1.9 [4]** 8/10 8/12 9/7 14/22
**1.9.2 [2]** 20/9 32/21
**100 percent [1]** 33/1
**10:00 [1]** 3/2
**10:54 [1]** 43/23
**15 [1]** 16/9
**19 [2]** 1/16 3/1
**19801 [1]** 1/22

**2**

**2.4 [11]** 23/8 23/8 24/6 25/14 25/21 26/3 26/18 28/4 28/11 29/10 30/16
**2.5 [24]** 7/2 8/1 23/8 23/9 24/6 25/21 26/4 26/18 27/19 28/11 29/10 29/22 30/1 30/10 30/19 33/21 34/2 35/10 35/10 35/15 38/5 39/2 40/16 41/12
**20 [3]** 4/3 38/18 38/18
**2018 [3]** 1/16 3/1 44/16
**21st [1]** 44/15
**224,000 [1]** 4/18
**25 [1]** 39/12
**2609 [1]** 1/21

**3**

**3.1 [7]** 8/11 9/3 9/5 10/11 13/22 14/23 31/3
**3.4 [19]** 19/21 22/7 22/13 24/2 27/15 28/11 28/21 29/16 30/2 30/16 34/1 34/3 35/10 35/15 38/5 39/2 40/17 41/10 43/15

**5**

**500 [1]** 1/21

**8**

**8C [1]** 3/1

**9**

**90 [1]** 42/10

**A**

**a.m [2]** 3/2 43/23
**ability [1]** 39/7
**absolutely [3]** 6/6 19/7 37/4
**accept [1]** 39/9
**accepted [1]** 15/10
**access [2]** 18/1 18/3
**according [1]** 41/16
**Accordingly [1]** 10/13
**accounting [1]** 36/3
**accurate [1]** 44/7
**acquire [1]** 20/6
**acquired [22]** 4/10 6/2 6/13 11/10 14/6 22/21 23/10 24/22 25/8 25/17 27/3 27/20 29/11 29/21 31/8 33/22 34/14 34/18 41/4 41/5 41/7 41/13
**acquirer [17]** 8/22 9/10 9/13 9/22 13/13 13/23 20/13 20/21 21/1 21/10 27/22 30/20 30/23 33/22 34/3 34/4 35/11
**acquirers [1]** 7/11 7/23 20/1
**acquiring [4]** 26/7 31/21 40/4 42/20
**acquisition [9]** 6/8 6/15 11/12 11/13 23/23 25/22 26/2 26/7 29/2
**action [2]** 28/13 44/13
**activity [4]** 13/5 14/15 15/13 20/1
**additional [4]** 6/2 11/7 11/8 18/22
**addresses [1]** 7/11
**admit [1]** 30/6
**admits [1]** 16/9
**affiliates [10]** 8/22 8/22 9/10 9/11 9/21 9/23 10/15 20/13 23/20 30/23
**affirmatively [1]** 19/14
**afterwards [1]** 11/14
**ago [2]** 38/18 38/19
**agree [13]** 12/6 14/4 14/16 19/10 24/21 25/3 25/5 27/1 31/11 32/8 33/15 37/13 37/14
**agreed [9]** 22/8 24/9 25/21 28/20 34/5 41/10 41/12 41/17 42/2
**agreeing [1]** 33/3
**agreement [22]** 3/23 4/4 4/16 4/18 5/4 5/11 5/22 6/3 7/10 7/21 9/16 10/22 15/8 15/10 15/12 20/12 22/10 22/14 22/14 24/8 29/15 40/17
**agrees [1]** 42/19
**ahead [1]** 41/8
**allegation [1]** 31/20
**allege [5]** 16/10 16/11 17/5 29/2 32/22
**alleged [7]** 12/7 16/14 22/9 23/22 24/1 26/3 29/21

**alleging [1]** 26/12
**allowed [2]** 26/11 34/9
**allows [1]** 33/4
**almost [1]** 41/1
**alone [1]** 15/21
**amount [1]** 8/20
**analysis [1]** 17/18
**animal [1]** 33/11
**answer [1]** 12/3
**APPEARANCES [1]** 2/1
**appended [1]** 3/22
**applicable [3]** 8/15 20/7 20/8
**application [3]** 7/22 9/6 10/13
**applied [1]** 36/2
**apply [8]** 7/7 8/14 8/15 10/10 10/14 16/19 16/22 18/12
**arbitration [1]** 18/17
**argue [2]** 22/22 37/17
**argued [1]** 5/18
**argument [5]** 5/17 11/11 17/1 19/9 21/6
**argument's [1]** 39/21
**arguments [1]** 36/15
**ARSHT [1]** 2/6
**aside [1]** 33/9
**asset [1]** 11/20
**assets [1]** 4/10
**assume [2]** 18/12 28/17
**assumptions [1]** 28/16
**attorneys [1]** 3/17
**attributable [3]** 20/15 23/11 28/2
**audit [41]** 18/14 18/23 19/1 19/4 19/16 20/2 20/22 22/8 23/4 26/9 27/6 27/9 28/10 28/21 28/22 28/23 29/1 29/8 29/16 30/16 31/14 31/17 31/18 31/20 32/4 34/1 34/10 34/12 35/18 36/1 36/2 36/3 36/4 37/4 37/4 37/18 40/9 40/10 40/18 41/11
**audited [1]** 35/22
**auditing [1]** 16/16
**auditor [2]** 24/9 34/5
**automatic [1]** 16/16
**automatically [2]** 11/21 13/8
**avoid [1]** 41/11

**B**

**back-end [1]** 33/10
**background [1]** 4/4
**BAKER [2]** 2/7 3/13
**ball [1]** 42/17
**basis [1]** 32/18
**began [3]** 14/5 26/7 31/9
**belabor [1]** 19/12
**bench [1]** 39/12
**best [4]** 6/4 12/18 26/11 36/22
**bet [1]** 39/13
**better [1]** 8/9
**between [2]** 7/21 13/12
**big [1]** 32/21
**billionaire [2]** 12/9 12/10
**blocks [1]** 38/16
**BLUMENFELD [3]** 2/6 3/9 3/12
**boom [1]** 13/7
**bottom [1]** 38/4
**bought [12]** 5/20 6/4 10/19

14/5 18/20 18/21 18/22 22/23 22/23 36/6 36/16 41/5 41/8

**BRAUN [2]** 2/4 22/1
**breach [1]** 16/13
**brief [3]** 16/9 17/7 17/11
**briefly [2]** 22/7 33/18
**briefs [1]** 5/17
**bucket [1]** 17/23
**buckets [1]** 4/21
**bunch [1]** 20/17
**business [31]** 4/13 9/12 9/14 10/5 10/7 11/12 11/16 14/1 20/15 23/9 23/12 23/19 24/7 25/9 25/10 25/13 28/2 28/3 33/23 35/6 35/7 35/13 35/20 36/8 36/8 36/9 36/18 36/19 37/12 38/12 42/13
**businesses [2]** 36/12 37/6
**businessmen [1]** 43/17
**buying [1]** 13/7

**C**

**C.A [1]** 1/3
**can't [6]** 15/11 32/11 38/12 39/17 42/12 42/15
**captured [1]** 33/21
**carefully [1]** 9/5
**CARPENTER [1]** 1/11
**case [9]** 21/9 21/14 21/19 22/5 22/6 22/6 22/10 27/23 44/10
**cases [1]** 39/16
**CASTLE [2]** 1/1 44/9
**categories [2]** 17/21 18/6
**CCLD [1]** 1/3
**CEO [2]** 37/8 37/9
**certain [3]** 12/5 13/13 20/20
**certainly [3]** 26/9 26/9 42/9
**CERTIFICATE [1]** 44/2
**certify [1]** 44/6
**chain [1]** 12/12
**charged [1]** 8/18
**cheap [1]** 37/21
**chewed [1]** 38/11
**chip [1]** 39/23
**claim [6]** 21/12 33/9 34/9 34/10 34/21 34/21
**Claim 3 [1]** 34/10
**clarification [1]** 30/14
**clause [3]** 4/17 5/13 32/22
**clear [5]** 5/6 13/18 17/15 20/4 20/20 35/21 36/11 40/2 41/1
**clearly [1]** 27/23
**client [3]** 28/19 32/16 38/9
**clients [1]** 42/12
**closer [1]** 12/13
**companies [3]** 4/11 12/20 36/20
**company [26]** 4/6 4/8 8/7 10/19 11/17 11/18 11/19 13/2 16/17 16/20 22/22 27/13 31/8 31/9 31/11 31/22 32/14 34/14 34/16 34/18 36/3 40/4 40/14 41/5 41/7 42/21
**company's [2]** 8/8 18/2
**complaint [15]** 6/1 7/4 15/6 15/9 15/15 16/8 17/7 17/10 22/9 26/12 28/15 29/6 32/5 34/7 40/21
**complete [1]** 31/17

**C**

complicated [1]  43/4
component [1]  9/13
CONAWAY [1]  2/2
concluded [1]  43/23
concluding [1]  14/20
conclusion [3]  21/14 41/16
 43/5
conclusive [1]  18/17
conditions [1]  13/13
conduct [3]  24/18 35/12 40/18
conducted [1]  29/16
confused [1]  18/19
confusing [1]  26/21
connect [1]  27/10
connection [1]  4/5
consistent [1]  20/2
consolidation [1]  12/20
constitute [1]  23/18
constituted [1]  35/13
continue [4]  4/13 10/23 41/8
 43/7
contract [13]  14/7 15/21
 16/11 16/13 18/11 19/5 22/5
 22/6 23/5 28/12 30/2 31/7
 39/10
contrary [1]  20/12
convert [1]  18/16
COOPER [4]  2/4 22/1 30/15
 33/3
cooperation [1]  42/15
copies [1]  4/1
corporations [1]  38/11
correct [1]  10/6
cost [1]  34/10
couldn't [2]  13/18 38/3
counsel [4]  42/8 42/8 42/11
 44/12
count [3]  9/4 18/3 18/5
counted [1]  7/6
country [1]  37/17
counts [1]  15/5
COUNTY [1]  1/1 44/9
court [10]  1/1 1/21 15/18
 38/16 43/10 44/2 44/4 44/5
 44/8 44/20
Court's [1]  5/2
courtroom [3]  3/1 22/4 38/10
courts [1]  24/16
covered [1]  11/13
crazy [1]  12/9
created [1]  16/16
criminal [1]  39/16

**D**

damaged [1]  16/14
days [1]  42/10
dealing [1]  30/19
decide [2]  16/1 38/12
decides [1]  12/11
decision [2]  39/3 43/21
decisions [3]  36/8 36/9 36/10
defective [1]  15/16
defendant [1]  1/8 2/8 3/12
 3/15 5/19 26/23
defined [1]  28/1
defines [2]  23/9 28/1
definition [6]  8/12 8/19 20/11
 20/19 21/7 25/13

definitions [1]  20/17
degree [1]  12-1
DELAWARE [6]  1/1 1/22
 15/17 44/6 44/9 44/12
describe [1]  12/18
detail [2]  13/12 24/4
detailed [1]  4/16
determine [5]  21/16 28/10
 31/14 31/21 40/13
determined [1]  24/5
didn't [8]  17/16 29/18 29/19
 30/9 34/8 38/10 38/18 40/15
different [7]  7/12 9/22 25/10
 28/7 32/23 33/11 42/17
difficult [1]  39/6
direct [1]  9/7
directed [2]  7/4 21/18
direction [1]  40/12
disagree [2]  26/21 37/23
disagrees [1]  26/23
discovery [6]  24/18 30/3
 39/18 40/19 40/23 43/8
dismiss [1]  39/6 39/14 39/15
dismissal [1]  38/7
dismissed [1]  21/19
dispose [2]  15/20 16/5
dispositive [1]  5/4
dispute [12]  5/8 8/8 10/2
 15/20 30/2 30/4 34/14 37/20
 38/6 40/7 42/19 42/20
disputes [1]  36/18
disputing [1]  6/12
distinctions [1]  7/20
distinguishes [1]  13/12
distributed [2]  23/20 28/5
district [2]  38/16 43/10
documents [1]  3/22
doesn't [9]  10/8 10/16 16/18
 16/19 16/22 19/2 33/10 42/5
 42/23
dollar [2]  21/14 32/9
dollars [1]  25/16
don't [34]  5/17 6/18 7/8 7/17
 9/16 10/21 11/7 11/7 14/12
 14/13 15/19 18/9 18/12 21/6
 21/15 24/17 26/15 26/21 26/22
 29/5 29/6 29/7 35/18 37/8
 37/23 38/20 39/18 40/11 41/6
 41/18 41/19 42/1 43/3 43/5
done [8]  17/3 24/11 25/2
 35/20 37/13 40/11 41/9 42/18
down [4]  8/2 16/12 16/16
 41/19
drawn [1]  7/21
due [8]  18/8 19/14 22/12
 24/10 27/19 28/10 29/13 30/7
DUGAN [2]  2/2 22/3
duty [1]  12/4

**E**

effective [1]  36/9
effort [1]  18/16
either [3]  22/16 22/17 40/2
elephant [1]  15/19
eliminate [1]  33/10
eliminates [1]  15/5
enable [1]  24/4
end [3]  20/9 32/21 33/10
engaged [1]  40/18

entire [4]  17/9 18/2 33/1 40/17
entitled [3]  25/22 34/8 36/6
entity [1]  25/10
equation [1]  8/23
ESQUIRE [5]  2/2 2/3 2/4 2/6
 2/8
essence [1]  17/22
essentially [1]  4/9
establish [1]  21/10
event [6]  6/23 23/23 30/5
 41/12
exact [1]  31/2
exactly [3]  34/23 43/13 43/16
examined [1]  30/19
example [1]  20/9
examples [1]  36/7
except [1]  33/23
exception [7]  8/4 9/15 9/20
 10/8 10/9 20/10 21/1
exceptions [6]  5/8 14/11
 18/11 18/12 32/20 33/9
exchange [1]  4/17
excludes [1]  8/23
exclusion [1]  8/4
exclusive [1]  7/10
exclusively [2]  7/4 30/22
excruciating [1]  13/12
Exhibit [1]  32/9
existing [19]  9/11 9/14 10/5
 10/7 11/17 14/1 20/15 23/9
 23/11 23/18 24/7 25/1 25/13
 28/2 28/3 33/23 35/6 35/7
 35/13
expanded [1]  6/21
expansion [1]  12/21
explain [1]  17/16
exploit [1]  7/1
exploited [1]  6/23
extent [1]  25/7
extra [3]  4/1 4/23 12/22

**F**

fact [8]  6/19 16/4 16/6 16/20
 22/21 32/5 34/7 37/18
factual [1]  38/6
fair [3]  13/3 34/21 34/21
faith [3]  28/16 32/18 33/5
falls [1]  27/4
far [2]  17/6 40/10
FARELLA [2]  2/4 22/1
fashion [1]  7/12
fee [2]  4/23 5/1
fighting [1]  4/15
figure [6]  36/20 37/10 37/15
 40/7 41/19 43/4
file [4]  28/15 34/4 39/17 43/11
filed [2]  24/12 29/6
files [2]  32/16 40/21
FINJAN [11]  1/4 2/11 4/8 4/14
 6/13 6/22 16/9 21/9 22/4 31/13
 32/16
Finjan's [3]  17/19 24/22 40/3
firm [2]  16/16 22/2
first [2]  10/19 19/8
five [3]  8/1 13/20 37/21
focus [1]  5/3
focusing [1]  7/19
follow [2]  4/1 5/11
followed [1]  39/22

following [1]  11/4
foregoing [1]  44/6
foregoing [1]  44/6
forever [1]  15/4
forget [1]  23/4
form [2]  5/4 30/15
forth [4]  22/10 25/13 42/19
 43/15
foundation [1]  17/10
founded [1]  33/1
four [6]  6/9 8/17 8/17 13/20
 16/18 29/4
fourth [3]  4/17 5/12 9/18
Francisco [1]  22/2
free [4]  9/13 11/1 15/3 21/19
front [3]  23/15 36/14 37/22
fully [19]  5/7 5/15 6/14 7/18
 8/2 8/8 9/20 10/10 11/5
 13/19 13/22 13/23 15/3 16/7
 16/21 18/20 19/5 21/2

**G**

game [1]  42/17
generally [1]  39/20
generating [1]  27/8
given [3]  24/14 32/4 40/3
grant [6]  5/14 7/16 7/16 8/1
 13/16 14/23
granted [3]  9/8 39/14 39/21
great [2]  11/23 17/15
grocery [2]  12/11 13/6
gross [2]  8/14 8/20
growing [1]  4/13
guess [4]  24/15 28/14 32/15
 32/16
guess if [1]  32/15

**H**

hand [1]  44/15
handful [1]  39/13
happy [1]  38/23
hasn't [1]  41/23
haven't [1]  24/11
head [1]  38/11
hear [1]  36/17
hearing [2]  1/15 36/17
hearings [1]  39/16
hereby [1]  44/6
herein [2]  23/11 44/10
hereunder [4]  9/8 9/11 20/14
 24/4
herring [1]  34/13
hit [1]  6/10
HOLDINGS [1]  1/7
Honor [36]  3/11 3/18 3/21 4/4
 5/5 6/19 7/15 9/16 12/9 14/16
 15/14 16/5 17/1 19/8 19/10
 21/15 21/22 21/23 23/8 24/11
 30/13 30/14 32/9 32/17 33/4
 33/16 33/20 35/9 38/1 39/1
 39/4 40/19 41/12 42/3 43/12
 43/16
HONORABLE [1]  1/11
HOSTETLER [2]  2/7 3/13

**I**

I'd [1]  38/21
I'll [8]  11/6 12/10 14/15 32/15
 38/21 39/13 43/21 43/21

## I

I'm [33] 3/21 5/9 6/16 6/17 7/8
7/14 7/15 7/19 11/2 11/3 12/11
13/7 14/21 15/16 18/19 22/1
26/21 27/10 27/14 28/14 31/18
32/5 35/21 36/6 36/17 37/18
37/18 38/21 39/21 41/2 42/4
42/7 42/8
I've [6] 6/16 19/2 21/21 39/12
39/13 42/18
identify [1] 17/21
ii [1] 9/10
illustrated [1] 8/9
inappropriate [1] 36/10
inappropriately [1] 38/15
INC [2] 1/4 1/7
include [1] 19/1
included [1] 20/19
indicated [1] 7/18
indulge [1] 7/13
indulgence [1] 5/2
ineffective [1] 36/10
information [27] 17/17 18/10
18/22 19/18 20/6 22/11 24/15
25/8 25/18 26/8 28/18 30/8
31/10 31/18 31/22 32/4 32/10
34/6 34/8 34/17 34/19 37/1
40/3 41/3 41/15 42/17 43/14
infringement [3] 38/17 43/10
43/11
inspection [6] 3/23 10/3
16/12 19/13 20/3 33/2
instead [1] 37/16
instructions [1] 17/19
integrated [1] 20/16
intent [1] 40/9
interested [1] 44/14
interpret [2] 18/10 35/10
interpretation [1] 38/5
interpreted [1] 14/2
invoice [1] 18/4
invoiced [1] 8/21
invoke [1] 26/5
invoked [1] 26/3
invoking [1] 28/11
involved [2] 35/19 41/12
isn't [2] 15/14 18/13
issue [3] 10/2 22/19 24/3
it's [54]
itself [5] 5/7 7/16 8/6 15/4
16/8

## J

JACK [2] 2/6 3/11
job [3] 19/12 19/13 40/14
JOHN [5] 2/4 2/8 3/13 3/19
22/1
jointly [1] 40/18
JR [1] 1/11
judge [1] 38/22
Julie [2] 2/11 22/4

## K

KAREN [6] 1/20 2/3 22/3 44/4
44/19 44/20
keep [1] 43/22
kicked [1] 6/15
kicks [1] 14/7
kin [1] 44/12

kind [5] 30/15 39/8 39/8 42/17
43/10
King [1] 1/21
know-how [1] 4/11
knowledge [1] 32/13
knows [1] 42/8
KPMG [13] 3/10 16/11 17/8
17/15 18/16 22/11 24/9 24/13
28/9 29/19 30/7 30/8 35/22
40/18 41/16 41/19
KPMG's [2] 33/2 40/11

## L

language [3] 5/10 10/21 31/2
large [1] 11/19 39/12
last [3] 14/20 14/20 26/22
late [1] 14/1
law [4] 15/5 15/21 16/6 21/10
lawsuit [5] 24/13 30/9 32/23
33/1 41/8
lawyers [3] 36/14 37/16 37/21
least [2] 5/23 42/18
legal [2] 36/15 36/19
lengths [1] 17/16
less [1] 39/13
let's [3] 19/10 22/15 37/10
LETCHINGER [7] 2/8 3/13
3/14 3/22 5/22 22/7 30/5
license [29] 3/23 4/14 4/18
4/23 5/7 5/15 7/9 7/19 8/1 8/3
8/6 9/9 10/20 12/21 13/3 13/15
14/23 15/4 22/14 25/22 29/15
29/22 31/22 32/12 33/8 33/23
34/2 35/11 40/17
licensed [6] 6/20 9/11 20/13
20/14 20/16 21/7
licensee [25] 4/6 5/6 5/14
7/10 7/22 8/6 9/1 9/9 9/18 9/20
10/4 10/9 10/22 10/23 11/4
12/4 13/14 13/19 15/3 16/7
21/2 23/10 23/20 24/3 27/15
licensee's [1] 20/5
licenses [1] 9/7
Likewise [1] 9/2
limited [2] 12/5 39/8
line [4] 5/13 13/23 25/11 38/4
lines [1] 8/2
link [1] 9/7
LLP [4] 2/2 2/4 2/6 2/7
local [1] 9/9
logic [1] 13/9
look [17] 7/13 7/14 7/15 8/10
9/5 12/8 13/15 13/16 13/16
16/2 24/6 38/21 39/2 39/11
40/16 41/20 41/20
looked [3] 13/17 17/20 33/8
looking [4] 14/9 16/8 19/17
30/22
losing [1] 27/10
lost [1] 6/11
lump [1] 30/15

## M

M86 [5] 4/6 4/7 4/22 12/19
13/1
manufacturing [1] 33/7
Mar [2] 2/11 22/4
Mar-Spinola [2] 2/11 22/4
marriage [1] 15/22

Marshal [1] 4/8
MARTED [2] 2/2 22/3
MARY [2] 2/2 22/3
matter [5] 6/18 15/5 16/6 19/2
42/5
mean [11] 5/21 17/15 19/6
26/6 29/1 29/9 35/18 37/21
39/7 40/23 43/7
meaningful [1] 41/15
meaningless [1] 14/3
means [4] 8/20 28/4 42/6 42/3
mentioned [1] 22/7
merged [2] 4/7 27/12
message [1] 35/21
middle [1] 42/7
might [2] 7/2 17/21
million [6] 4/20 5/1 10/18
12/22 17/9 29/9
millions [1] 25/16
minute [1] 23/5
misstated [1] 17/11
moment [1] 36/22
money [2] 10/19 11/7 35/3
37/19
months' [1] 42/9
morning [3] 3/8 3/18 21/23
MORRIS [2] 2/6 3/12
most [1] 5/11
motion [1] 1/15 3/9 3/22 38/2
39/6 39/14
motions [1] 39/15
Mr [1] 22/5
Mr. [6] 3/9 3/14 22/7 30/5
30/15 33/3
Mr. Blumenfeld [1] 3/9
Mr. Cooper [2] 30/15 33/3
Mr. Letchinger [3] 3/14 22/7
30/5
murder [1] 42/9
must [1] 23/12

## N

N18C [1] 1/3
N18C-04-006 [1] 1/3
name [2] 3/19 22/1
narrower [1] 9/14
nature [1] 6/10
near [1] 21/16
necessary [2] 34/6 34/8
need [6] 6/17 7/17 14/12
14/13 23/4 23/5 30/7 30/8
31/20 36/20 39/7
needed [1] 12/12
needs [2] 4/1 37/9
negative [1] 32/11
net [14] 8/12 8/13 8/13 8/18
8/19 8/20 9/6 10/13 16/17 19/2
20/12 20/19 29/8 40/13
never [2] 12/10 14/17 25/21
25/23
new [4] 1/1 12/1 40/3 44/9
next [1] 13/22
nice [1] 40/14
NICHOLS [2] 2/6 3/12
night [1] 14/20
nimble [1] 5/11
noted [1] 3/6
nothing [6] 8/3 11/13 24/23
26/20 37/2 37/3

notwithstanding [1] 32/22
November [3] 3/19 3/1 44/15
number [6] 16/12 16/15 17/4
numbered [1] 9/3
numbers [1] 18/5
nutshell [1] 33/21

## O

obligated [1] 35/23
obligation [7] 20/5 24/8 27/4
27/8 27/16 31/13 43/1
obligations [1] 26/17
obvious [1] 12/22
occur [1] 11/14
occurred [2] 6/15 11/12
OEMs [5] 7/12 7/23 8/21
10/16 20/1
offered [6] 23/19 24/7 28/4
28/6 28/8 29/14
Office [1] 44/11
OFFICIAL [3] 1/21 44/4 44/20
one [5] 27/12 29/8 32/20 36/1
36/7
one's [1] 6/12
ongoing [1] 11/16
opportunity [1] 41/15
order [2] 4/12 21/8
original [1] 12/3
outcome [1] 44/14
outrageous [2] 36/16 36/16
outside [1] 38/1 38/2
overarching [1] 16/23
owe [11] 11/7 11/7 11/13 17/4
17/9 22/16 25/19 26/16 28/1
37/14 42/23
owed [5] 21/14 22/17 24/23
25/6 29/4
owes [3] 22/20 26/13 35/2
owing [2] 16/1 19/15
own [2] 12/11 25/10
owner [1] 13/7

## P

package [1] 43/22
Page [3] 9/4 16/9 20/10
Page 15 [1] 16/9
Page 3 [1] 20/10
Page 9 [1] 9/4
paid [30] 5/7 5/15 6/14 7/19
8/2 8/9 9/9 9/20 10/10 11/5
11/8 13/19 13/22 13/15 15/3
16/7 16/21 18/20 19/3 19/5
21/3 23/2 23/12 23/15 24/23
25/2 25/16 25/22 27/10 31/10
paid-up [13] 5/15 6/14 7/19
8/2 11/5 11/8 15/3 16/21 18/20
19/5 24/23 25/16 25/22
paper [1] 13/11
Paragraph [2] 25/4 26/3
parcel [1] 24/20
parrots [1] 31/2
part [2] 3/20 15/11
participant [1] 44/13
parties [7] 22/8 25/20 28/20
41/10 41/17 41/18 42/2
party [4] 5/19 21/10 26/7
44/13
PASCALE [2] 2/3 22/3
past [1] 15/22

**P**

patent [31] 4/14 4/18 4/23 6/14 11/5 11/9 12/23 13/2 13/15 16/21 17/17 18/20 18/21 19/5 21/11 21/16 22/6 24/23 25/8 25/16 26/8 28/18 31/9 31/23 33/8 33/10 34/16 38/15 38/17 43/10 43/11
patents [4] 12/2 16/2 21/16 32/19
pay [8] 12/5 12/22 13/8 15/12 19/14 21/8 25/15 43/2
payable [1] 24/4
paying [1] 34/19
payment [1] 18/22
penalized [1] 11/21
percent [6] 6/10 8/17 8/18 16/18 29/4 33/1
perfectly [1] 17/15
period [3] 5/8 5/8 42/21
permission [1] 3/14
permitted [2] 8/21 10/15
perspective [4] 15/1 15/7 17/2 17/2
picked [1] 18/3
piece [1] 5/10
pissing [1] 36/13
Plaintiff [2] 1/5 2/5
play [2] 7/2 10/8
pleading [3] 15/17 33/12 38/1
pleadings [2] 15/11 21/17
pled [1] 33/13
point [12] 5/23 10/1 15/23 15/23 15/23 18/18 29/9 30/20 35/19 39/6 40/1 42/13
poorly [1] 36/8
position [4] 5/18 11/15 41/23 42/1
positions [1] 36/15
possibility [1] 14/10
potential [2] 17/13 18/7
potentially [2] 25/7 31/12
practiced [1] 16/3
practicing [2] 4/13 10/23
prejudice [1] 15/6
prepared [2] 7/8 15/14
PRESENT [2] 2/10 3/5
presentation [1] 3/20
presenting [1] 3/15
presumed [1] 19/17
pretty [1] 17/15
primary [1] 10/1
problem [3] 26/1 33/10 35/4
procedural [1] 17/2
procedure [3] 22/8 28/21 41/11
proceed [1] 3/10
proceedings [2] 43/23 44/7
product [13] 11/6 22/23 23/17 24/22 26/8 27/2 27/7 27/13 29/3 31/15 42/21 42/22 43/1
products [15] 4/11 4/22 12/1 12/6 17/21 18/6 20/14 20/16 21/7 23/10 28/7 29/14 30/23 32/19 33/8
profits [1] 11/14
protect [1] 6/22
Prothonotary [1] 44/11
prove [1] 32/11

provide [3] 18/5 34/5 34/8
provided [2] 20/23 35/4
provision [20] 6/9 7/3 9/2 13/11 13/11 13/11 14/6 18/19 18/23 19/1 19/4 20/3 20/3 20/5 20/22 20/22 31/3 37/18 39/10 40/9
provisions [9] 5/3 7/20 8/10 8/11 10/14 13/17 15/1 30/1 30/1
purchase [3] 4/5 11/11 11/20
purchased [2] 12/18 12/19 13/4 19/11
purposely [1] 7/10
pursuant [3] 9/8 29/23 30/1
put [3] 16/12 16/16 17/22
putting [1] 33/8

**Q**

qualified [1] 17/12
qualify [1] 18/9
quite [1] 41/2

**R**

rate [1] 8/15
rather [1] 38/21
reach [1] 41/16
read [9] 5/17 6/14 10/9 14/22 15/2 15/7 15/11 26/12 32/21
reading [1] 6/16
reads [1] 10/12
real [2] 5/19 34/13
reality [1] 39/22
realize [1] 39/7
really [8] 4/21 5/2 19/1 20/4 32/6 38/10 38/13 42/5
reason [2] 24/16 39/16
recognized [1] 7/18
record [1] 44/10
red [1] 34/12
reference [1] 17/17
referenced [2] 5/1 9/19
references [1] 5/14
referencing [1] 3/21
refile [1] 33/4
regarding [2] 24/6 34/10
regards [1] 36/23
relate [1] 17/21
relates [5] 5/6 7/22 11/16 20/5 21/17
relatively [2] 22/16 40/2
relevant [3] 9/6 10/13 33/3
rely [1] 15/9
remains [1] 44/10
repeatedly [1] 24/14
reply [1] 33/18
report [13] 3/23 17/4 17/8 18/14 19/12 24/3 24/9 24/13 24/14 27/16 27/17 28/9 34/4
reported [4] 18/7 26/19 32/9 44/8
REPORTER [3] 1/21 44/2 44/20
representation [1] 6/1
representative [1] 37/7
required [5] 6/3 22/13 23/13 24/2 30/17
requires [4] 6/9 34/3 35/9 38/5

reserve [1] 43/21
reserves [1] 38/22
resolved [1] 36/18
resolving [1] 42/3
respect [1] 17/11
respond [1] 31/6
restate [1] 17/7
result [2] 6/7 29/2
revenues [1] 8/14
rights [1] 9/8
RMR [1] 1/20 44/4 44/20
room [1] 15/19
royalties [35] 6/3 11/8 12/5 13/9 14/10 16/1 16/19 18/7 19/14 20/21 21/9 22/12 22/17 22/17 22/20 23/3 23/6 24/4 24/10 25/1 25/6 25/19 26/10 26/13 27/18 28/1 28/10 29/4 29/13 30/6 34/20 37/13 37/15 40/5 43/2
royalties or [1] 22/17
royalty [22] 6/10 7/7 8/15 9/13 11/1 13/16 13/21 14/6 14/17 15/1 15/3 15/3 17/12 18/13 21/19 23/12 23/14 27/4 27/8 31/3 31/10 31/12
royalty-free [2] 9/13 15/3
rules [1] 7/22
ruling [1] 15/15

**S**

sale [4] 6/8 28/7 30/22 32/10
sales [38] 7/2 7/5 7/5 7/6 8/8 8/13 8/13 8/13 8/18 8/19 8/20 8/23 9/6 10/1 10/2 10/13 16/17 16/20 18/2 19/2 20/12 20/13 20/15 20/19 20/20 21/7 25/1 27/7 29/8 32/5 33/2 35/3 35/4 35/5 35/15 36/3 36/4 40/13
San [1] 22/2
scrutiny [1] 14/17
second [1] 9/18
seconds [1] 4/4
section [22] 7/2 7/15 8/1 8/3 8/12 9/5 9/7 10/11 10/14 13/21 14/22 14/22 14/23 19/20 20/9 21/6 22/13 24/2 27/19 28/11 30/18 32/21
sections [2] 7/14 26/18
security [1] 12/20 17/22
see [9] 9/6 24/20 38/3 39/11 40/23 41/8 42/10 42/10 42/17
selling [2] 13/1 23/17 26/17 32/19 35/8
sense [4] 9/17 38/12 39/11 42/14
sentence [1] 14/20
separate [2] 8/7 11/17
services [5] 6/13 18/21 20/14 20/16 23/1
set [4] 12/5 25/13 42/18 43/15
sets [1] 22/9
shall [1] 10/14
share [1] 32/14
shares [1] 4/18
shocked [1] 37/19
show [2] 7/8 23/5
side [1] 39/5

sides [1] 15/10
SIEBERT [1] 1/20
sign [1] 44/4 44/4
significant [2] 3/20 14/10
simple [2] 22/16 22/21
simply [5] 16/17 34/12 40/13 41/4 42/13
single [1] 18/4
Singtel [46]
Singtel's [4] 32/7 33/6 35/4 36/3
sister [1] 9/2
sit [1] 41/19
sitting [2] 37/7 37/22
six [1] 42/8
small [1] 5/3
software [4] 4/8 4/11 28/18 31/22
sold [2] 23/11 35/14
solely [1] 21/18
someone's [1] 24/17
somewhere [1] 14/7
sorry [1] 37/18
sort [2] 18/16 18/17
specific [4] 7/20 13/18 21/1 30/21
specifically [7] 5/13 7/19 8/19 8/23 9/19 19/23 30/22
spending [1] 37/19
Spinola [2] 2/11 22/4
stage [2] 39/7 39/8
standard [1] 33/12
standards [1] 15/17
standing [1] 36/14
STARGATT [1] 2/2
start [2] 12/1 14/9
starting [2] 5/12 7/1
state [4] 1/1 17/6 44/5 44/8
statement [1] 26/22
states [2] 8/20 33/9
stayed [1] 14/19
Stenographer [1] 44/5
still [3] 15/15 15/15 25/18
stock [1] 4/19
stop [1] 36/6
store [2] 12/12 13/6
store chain [1] 12/12
street [2] 1/21 38/16
strong [1] 20/10
stuck [1] 38/19
stupid [1] 37/18
subject [5] 14/16 20/17 30/3 30/3 32/20
subpart [1] 10/12
subset [1] 5/3
substantiative [1] 17/1
sue [1] 38/14
sufficient [2] 24/3 40/22
suggest [1] 38/8
suggests [1] 10/22
suit's [1] 43/9
suitable [1] 38/6
Suite [1] 1/21
SUPERIOR [5] 1/1 1/21 15/18 44/5 44/8
support [2] 36/15 37/2
supposed [2] 6/22 41/19
supposedly [2] 6/15 34/14
suppression [1] 39/15

**S**

suspicion [1]  41/3

**T**

talks [2]  19/23 27/19
tandem [1]  4/12
TAYLOR [1]  2/2
technology [8]  6/20 12/21
 13/5 14/5 19/12 20/6 30/6 33/7
telecom [2]  11/18 32/14
that's [47]
themselves [1]  27/4
theoretical [1]  18/6
theory [1]  11/20
there's [29]  5/22 6/9 10/21
 11/22 13/4 13/5 13/9 14/6 15/1
 15/15 16/10 16/13 17/3 17/4
 17/17 19/5 20/2 20/10 25/21
 26/6 26/6 26/9 26/9 27/4 32/12
 32/13 35/21 37/13 39/10
therefore [11]  6/7 11/5 11/6
 16/13 16/18 16/21 18/20 27/8
 29/3 30/16 31/8
therein [1]  34/2
thereof [1]  44/14
they're [25]  7/7 8/17 11/10
 16/3 19/14 21/11 23/7 23/16
 27/3 27/7 27/13 31/5 31/11
 31/23 33/7 35/23 37/19 38/14
 39/14 40/4 40/5 40/8 40/8
 42/16 42/22
they've [10]  17/3 17/3 17/6
 18/15 22/21 37/13 39/9 41/4
 41/4 41/9
think that's [1]  43/3
third [2]  5/13 9/18
three [3]  7/14 13/20 15/5
thrown [1]  34/13
tired [1]  36/17
today [3]  21/17 22/2 30/19
together [5]  5/10 14/22 36/13
 36/20 38/12
took [1]  4/14
totally [5]  11/8 24/21 24/23
 25/16 29/21
transaction [4]  4/7 4/9 6/11
 11/21
transcript [1]  44/7
transfer [6]  13/5 23/21 28/5
 28/9 29/15 35/14
transferee [2]  8/21 21/11
transferees [3]  7/11 7/23
 10/15
transferred [2]  6/20 33/7
transfers [2]  34/3 35/11
traveled [1]  37/16
treat [1]  9/17
treated [1]  14/3
treatment [3]  9/22 13/12
 13/14
trial [2]  24/18 30/3
trials [1]  42/9
tried [4]  17/20 18/15 38/2
 38/17
trigger [2]  14/9 20/21
triggering [1]  23/23
triggers [3]  5/8 34/1 35/15
troubling [1]  42/3
true [2]  15/4 26/16

TRUSTWAVE [65]
Trustwave [8]  21/3 25/9
 28/17 33/2 34/16 36/4
try [3]  5/9 11/2 17/16
trying [2]  7/7 36/14
TUNNELL [1]  2/6
turned [1]  4/19
two [14]  3/21 4/21 8/10 12/20
 27/10 36/12 36/14 36/20 37/6
 37/16 37/20 38/11 38/16 41/18

**U**

Uh [1]  33/17
ultimate [2]  15/22 21/13
ultimately [2]  4/19 21/9
under [13]  6/3 7/2 11/20
 15/20 21/6 24/2 24/8 26/17
 27/15 29/16 29/22 30/16 33/8
Understood [2]  19/19 21/4
unfortunately [1]  9/3
universe [1]  14/15
up [28]  5/7 5/15 6/14 7/19 8/2
 8/9 9/9 9/20 10/10 11/5 11/8
 13/19 13/22 13/23 14/19 15/3
 16/7 16/21 18/4 18/20 19/5
 21/3 23/15 24/23 25/16 25/22
 36/14 38/16
upper [1]  39/23
used [5]  17/12 20/7 25/18
 41/2 42/1
utility [1]  11/18
utilize [1]  18/21

**V**

valid [2]  16/2 21/11
value [2]  37/4 37/5
versus [2]  7/23 13/13
view [1]  42/14

**W**

walk [1]  5/22
wasn't [3]  13/1 19/16 32/4
We'll [1]  39/1
we're [19]  4/15 9/17 12/1 12/1
 13/1 13/22 15/9 15/17 16/7
 16/14 18/10 18/11 21/2 28/12
 29/17 30/2 34/22 41/14 41/14
we've [8]  13/17 16/13 23/22
 24/1 26/2 29/21 30/18 33/6
website [2]  17/20 33/6
weren't [1]  24/14
what's [7]  12/6 12/7 23/13
 29/9 36/21 37/10 38/13
whatsoever [1]  8/3
where's [1]  19/4
whereas [2]  4/17 5/12
who's [1]  38/22
whole [6]  5/21 20/17 22/19
 32/23 33/11 40/7
wholly [1]  15/16
WILLIAM [1]  1/11
willing [1]  42/16
Wilmington [2]  1/22 44/11
withstanding [3]  15/8 20/11
 22/10
WITNESS [1]  44/15
word [4]  17/12 17/13 23/17
 24/17
words [2]  13/10 15/21

world [5]  5/11 36/19 36/19
 36/19 36/19
wouldn't [1]  25/23
write [1]  14/20
WWC [1]  1/3

**Y**

years [3]  38/18 38/18 39/12
yelled [1]  32/15
you'd [1]  40/20
you're [18]  8/15 11/3 12/13
 23/2 23/6 26/12 27/11 28/22
 29/3 29/5 30/20 31/8 36/1 37/9
 38/19 39/3 40/5 42/9
you've [1]  16/19
YOUNG [1]  2/2

**Z**

zero [1]  37/3

**So Ordered**

/s/ Carpenter, William C   Oct 07, 2019

EFiled:  Oct 07 2019 12:13PM EDT
Transaction ID 64282268
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18C-04-006-WCC-CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## STIPULATION AND [PROPOSED] ORDER GOVERNING THE DESIGNATION AND HANDLING OF CONFIDENTIAL MATERIALS

To expedite the flow of discovery material, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that only materials the parties are entitled to keep confidential are subject to such treatment, and to ensure that the parties are permitted reasonably necessary uses of such materials in preparation for and in the conduct of trial, it is hereby ORDERED THAT:

1.  **DEFINITIONS.** The terms defined in this Section 1 and parenthetically elsewhere shall, throughout this Order, have the meanings provided. Defined terms may be used in the singular or plural.

1.1    The "Action" means the above-captioned litigation.

1.2    "Party" means a party to the Action, including all of its officers, directors, employees, consultants, retained experts, and outside counsel (and their support staff).

1.3    "Material" means all information, documents, testimony, and things produced, served or otherwise provided in this action by any Party or by any non-party.

1.4    "Designated Material" means any Material that is designated "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY", and/or "RESTRICTED CONFIDENTIAL – SOURCE CODE" under this Order. Designated Material shall not include advertising or other materials that have been actually published or publicly disseminated.

1.5    "Designating Party" means a Party or non-party that designates any Material in productions, in disclosures, or in responses to discovery as "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY", and/or "RESTRICTED CONFIDENTIAL – SOURCE CODE."

1.6    "Producing Party" means any Party or non-party that discloses or produces Material in this Action.

1.7    "Receiving Party" means any Party receiving production or disclosure of Material in this Action.

1.8    "Confidential Material" means information, documents, and things the Designating Party believes in good faith constitutes trade secret or other confidential research, development, or commercial information that is maintained in confidence by the Designating Party and not generally known to others.

1.9    "Confidential – Outside Counsel Only Material" means Confidential Material that the Designating Party believes in good faith has significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury.

1.10    "Restricted Confidential – Source Code Material" means extremely sensitive "Confidential Material" representing "Source Code," (defined below), disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

1.11    "Source Code" means computer instructions and data definitions expressed in a form suitable for input to an assembler or compiler and associated comments and revision histories to the extent such comments and revision histories are contained within the source code itself.

1.12    "Counsel of Record" means (i) outside counsel who has entered an appearance as counsel for a Party and has not subsequently withdrawn, and (ii) partners, principals, counsel, associates, employees and contract attorneys of such outside counsel to whom it is reasonably necessary to disclose the information for

this Action, including supporting personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, legal clerks and shorthand reporters.

1.13 "Outside Consultant" means any person with specialized knowledge or experience in a matter pertinent to this Action who has been retained by Counsel of Record to serve as an expert witness, or as a consultant in this Action, and who is not a current employee of a Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become an employee of a Party or of a competitor of a Party.

1.14 "Professional Vendors" means any persons or entities that provide litigation support services and their employees and subcontractors who have been retained or directed by Counsel of Record in this action, and who are not current employees of a Party or of a competitor of a Party and who, at the time of retention, are not anticipated to become employees of a Party or of a competitor of a Party. Litigation support services include but are not limited to: photocopying; videotaping; translating; designing and preparing exhibits, graphics, or demonstrations; organizing, storing, retrieving data in any form or medium; etc. Professional Vendors include ESI vendors and professional jury or trial consultants retained in connection with this litigation. Professional Vendors do not include consultants who fall within the definition of Outside Consultant.

1.15   "Termination" means the dismissal of the Action (whether through settlement or otherwise), or the entry of final judgment and expiration of all periods to appeal or to seek judicial review of such judgment or dismissal.

1.16   "Affiliate" shall mean, with respect to any Party, any other entity controlling, controlled by, or under common control with that Party. As used in this definition, the term "control" means the ownership of more than fifty percent (50%) of the ownership or equity interests of such entity.

## 2.   **SCOPE**

2.1   The protections conferred by this Order cover not only Designated Material (as defined above), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof.  Nothing herein shall alter or change in any way the discovery provisions of the Delaware Superior Court Civil Rules of Procedure, or the Court's deadlines provided in any scheduling order or case management order issued by the Court. Identification of any individual pursuant to this Order does not make that individual available for deposition, or any other form of discovery outside of the restrictions and procedures of the Delaware Superior Court Civil Rules of Procedure, and the Court's deadlines provided in any scheduling order or case management order issued by the Court.

2.2    Nothing in this Order shall prevent or restrict a Producing Party's own disclosure or use of its own Designated Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Designated Material to an individual who prepared the Designated Material.

2.3    Nothing in this Order shall be construed to prejudice any Party's right to use any Designated Material in court or in any court filing with the consent of the Producing Party or by order of the Court.

3.    **MATERIAL DESIGNATED "CONFIDENTIAL."** Any Designating Party may designate as "CONFIDENTIAL" any Material that the party believes in good faith constitutes Confidential Material.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any Material designated "CONFIDENTIAL" only to:

(a)    Persons who appear on the face of the Designated Material as an author, addressee, or recipient thereof;

(b)    Up to three (3) in-house employees of a Receiving Party (including a parent or affiliate of a Receiving Party), and necessary secretarial staff, who are responsible for providing oversight of or assistance in the litigation, provided that any such employee or staff has signed the "Acknowledgement and Agreement To Be Bound By Order" attached hereto as Exhibit A, and provided an executed copy to the Producing Party prior to receiving any Designated Material;

(c)     Counsel of Record for the Designating Party or the Receiving Party;

(d)     Outside Consultants of the Receiving Party (including necessary employees of the Outside Consultants) provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of this Order by signing a copy of the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached hereto as Exhibit A, and the "Certification Of Consultant" attached hereto as Exhibit B, with the provisions of Section 6 being complied with prior to receiving any Designated Material; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; and (c) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Section 6 below;

(e)     Witnesses at deposition and/or trial consistent with the provisions of Section 7 below, provided that such witnesses may not retain copies of Designated Material unless permitted by other provisions of this Order;

(f)     The Court and its personnel, any technical advisor that the Court may appoint, and any Jury impaneled in the Action;

(g)     Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff;

(h)     Court reporters and videographers employed in connection with this case;

(i)     Professional Vendors to whom disclosure is reasonably necessary for this Action;

(j)     Jury consultants, trial consultants, or mock jurors selected by counsel in preparation for trial, provided they have signed the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached hereto as Exhibit A; and

(k)     Any other person authorized by written agreement of the Producing Party and the Receiving Party or by order of the Court.

4.     **MATERIAL DESIGNATED "CONFIDENTIAL – OUTSIDE COUNSEL ONLY."** Any Designating Party may designate as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" any Material that the party believes in good faith constitutes Confidential – Outside Counsel Only Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, Material designated as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" shall be treated as Material designated as "CONFIDENTIAL" with the further

restriction that it shall not be disclosed to any person identified in Section 3(b) above.

Notwithstanding the foregoing, each Receiving Party predesignates its General Counsel, listed below, as well as his or her secretarial and clerical employees, to review damages discovery responses, damages disclosures and damages expert reports (together, "Damages Materials"), to be used for the sole purpose of more meaningful participation in settlement discussions, provided that the designated employee has signed the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached hereto as Exhibit A, and provided an executed copy to the Producing Party prior to receiving any such Damages Materials."

> For Finjan, Inc.
> Julie Mar-Spinola
>
> For Trustwave Holdings, Inc.
> Joel Smith

5.      **MATERIAL DESIGNATED "RESTRICTED CONFIDENTIAL – SOURCE CODE."** Any Designating Party may designate as "RESTRICTED CONFIDENTIAL – SOURCE CODE" any Material that the party believes in good faith constitutes Restricted Confidential – Source Code Material. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, Material designated as "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall be

treated as Material designated as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" with the further restriction that (i) it shall not be disclosed to any person identified in Sections 3(b), 3(g), 3(i) or 3(j) above; and (ii) such Material is subject to the provisions of Section 8 of this Order. Inclusion of this designation in this order by no means constitutes an agreement that the inspection or production of source code material is necessary or justified in this Action and by no means waives any objection to another Parties' request for production or request to inspect such source code material.

6.      **DISCLOSURE TO OUTSIDE CONSULTANTS.** No disclosure of Designated Material to Outside Consultants shall occur until the notice and resolution of objection procedures of this Section are followed.

6.1     Notice. If a Receiving Party wishes to disclose another Party's Designated Material to any Outside Consultant, such Receiving Party must provide notice to counsel for the Designating Party, which notice shall include: (a) the individual's name and business title; (b) business address; (c) business or profession; (d) the individual's CV; (e) any previous or current relationship (personal or professional) with any of the Parties or any entity that the either Receiving Party or the Outside Consultant has reason to believe is an Affiliate of any of the Parties; (f) a list of other cases in which the individual has testified (at trial or by deposition) within the last four years; (g) a list of all companies with

which the individual has consulted or by which the individual has been employed within the last four years; and (h) a signed copy of the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached as Exhibit A, and the "Certification Of Consultant" attached hereto as Exhibit B. Notice of information under (a)-(h) above shall in no way waive any limitation on discovery imposed or objection provided by Delaware Superior Court Civil Rule of Procedure 26(b)(3)-(6).

6.2    Objections.  The Designating Party shall have five (5) business days from receipt of the notice specified in Section 6.1 to object in writing to such disclosure.  Any such objection must set forth in detail the grounds on which it is based.  After the expiration of the 5-day period, if no objection has been asserted, then Designated Material may be disclosed to the Outside Consultant pursuant to the terms of this Order.  However, if the Designating Party objects within the 5-day period, the Receiving Party may not disclose Designated Material to the challenged individual absent resolution of the dispute or Court Order.  In the event the Designating Party makes a timely objection, the parties shall promptly meet and confer to try to resolve the matter by agreement.  If the parties cannot reach an agreement, the Objecting Party may, within three (3) business days following the meet and confer, file a motion for a protective order preventing disclosure of Designated Material to the Outside Consultant, and notice the motion to be heard

on the Court's next routine motions calendar at least 10 business days following

the filing the motion. If the Objecting Party files a timely motion for a protective

order, Designated Material shall not be disclosed to the challenged individual until

and unless a final ruling allowing such disclosure is made by this Court, or by the

consent of the Objecting Party, whichever occurs first. If the Objecting Party fails

to file a motion for a protective order within the prescribed period the Designated

Material may thereafter be disclosed to such individual.

## 7.    **USE AT DEPOSITION**

7.1    A present director, officer, agent, employee, designated Rule

30(b)(6) witness, and/or Outside Consultant of a Producing Party may be shown at

deposition and examined on all Designated Material that has been produced by that

Party;

7.2    A former director, officer, agent and/or employee of a

Producing Party may be shown at deposition and examined on all Designated

Material that has been produced by that Party and that the Receiving Party's

Outside Counsel reasonably and in good faith believes to have been received by

the witness previously or that refers to matters within the witness's personal

knowledge pertaining to the period or periods of his or her employment,

engagement, or relationship with the Producing Party;

7.3    Non-parties may be shown at deposition and examined on any document containing Designated Material of a Producing Party that appears on its face, or which the Receiving Party's Outside Counsel reasonably and in good faith believes based on other documents or testimony, to have been received from or communicated to the non-party. Any person other than the witness, his or her attorney(s), and any person qualified to receive Designated Material under this Order, shall be excluded from the portion of the examination concerning such information, unless the Producing Party consents to persons other than qualified recipients being present at the examination. If the witness is represented by an attorney who is not qualified under this Order to receive such information, then prior to the examination, the attorney shall be requested to sign the "Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials" attached as Exhibit A. In the event that such attorney declines to sign the Acknowledgement and Agreement To Be Bound By Order Governing the Designation and Handling of Confidential Materials prior to the examination, the parties, by their attorneys, shall jointly seek a protective order from the Court prohibiting such attorney from disclosing such Designated Material.

7.4    A witness who previously had access to a document designated "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

"RESTRICTED CONFIDENTIAL – SOURCE CODE" but who is not under a present non-disclosure agreement with the Producing Party that covers that document, may be shown the document at deposition if the witness is advised on the record of the existence of the Order Governing the Designation and Handling of Confidential Materials and that the Order requires the parties to keep confidential any questions, testimony or documents that are designated as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE."  The witnesses may not copy, take notes on or retain copies of any Designated Material used or reviewed at the deposition.  The witness may not take out of the deposition room any exhibit that is marked "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE".  The Producing Party of any Designated Material used at the deposition may also require that the transcript and exhibits not be copied by a witness who is not subject to this Order or his counsel who is not subject to this Order, that no notes may be made of the transcript or the exhibits, and that the transcript and exhibits may only be reviewed by the witness in the offices of one of the counsel representing a party in this case (or another firm acting for one of the counsel representing a party in this case and under the supervision of one of the lawyers who is bound by the terms of this Order).

7.5     Except as may be otherwise ordered by the Court, and without limitation as to any of the other provisions of this section, any person may be examined as a witness by deposition, and may testify concerning all Designated Material of which such person has prior knowledge.

7.6     Notwithstanding any sub-Section of this Section 7, no copies of Designated Material may be provided to any deponent or trial witness other than for purposes of the examination without the written consent of the Producing Party.

**8.     PRODUCTION OF SOURCE CODE.** This Section shall govern the production of Source Code in this Action.

8.1     Source Code designated as "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall be made available for the Receiving Party's inspection, only by outside Counsel of Record representing the Receiving Party and Outside Consultants retained by the Receiving Party who have been approved under Section 6 of this Order.

(a)     Source Code designated as "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall be maintained by the Producing Party and made available for inspection by the Receiving Party on a stand-alone computer (that is, a computer not connected to any network, the Internet, or any peripheral device other than a keyboard, mouse, and monitor) in electronic and searchable form in a manner consistent with how the code being made available for inspection is

maintained in the ordinary course of business (e.g. with folder hierarchies preserved).

(b)     The stand-alone computer shall be maintained in a secured location at the offices of the Producing Party's outside counsel or at the offices of the Producing Party, access to which shall be controlled by reasonable physical (e.g., locked doors) and electronic (e.g., password or other access provisions) security measures. Use of any input/output device (e.g., USB memory stick, CDs, floppy disk, portable hard drive, etc.) is prohibited while accessing the computer containing the Source Code, and the Receiving Party shall not attempt to use any peripheral device of any kind (other than the keyboard, mouse, and monitor provided by the Producing Party) with the stand-alone computers, nor shall the Receiving Party attempt to install any software on the stand-alone computer. No person other than the Producing Party may alter, dismantle, disassemble, or modify the Standalone Computer in any way, or attempt to circumvent any security feature of the Standalone Computer.

(c)     The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (i) the Receiving Party provides such software tools (or links to such software tools) to the Producing Party at least ten (5) business days in advance of the date upon

which the Receiving Party wishes to have the software tool(s) available for use on the standalone computer; (ii) the Receiving Party possesses an appropriate license to such software tools; (iii) the Producing Party approves such software tools (such approval shall not be unreasonably withheld); and (iv) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.

8.2     The Receiving Party shall make any request to inspect the Producing Party's Source Code a reasonable time in advance of its desired inspection, and in no event less than five (5) business days' notice. Inspection of Source Code shall be permitted during regular business hours (i.e, 9:00 a.m. – 6:00 p.m.), although the Parties will be reasonable in accommodating requests to conduct inspections at other times. The Receiving Party shall be given access to the Source Code Computers through the close of expert discovery in this Action, as requested.

8.3     At the Producing Party's selection, the secure location will be at an office of the Producing Party's Counsel of Record or at the offices of the Producing Party. The Producing Party will endeavor to make a separate, private room available for the Receiving Party to confer or talk on the phone.

8.4     No person shall copy, e-mail, transmit, upload, download, print, photograph, or otherwise duplicate any portion of Source Code, or documents or

things designated "RESTRICTED CONFIDENTIAL – SOURCE CODE," except as follows:

(a)    The stand-alone computer may be connected to a print driver capable of printing electronic copies (e.g., an Adobe print driver capable of creating PDF files) for temporary storage on the "stand-alone" computer for subsequent printing by the Producing Party for the limited purposes set forth herein.  The Receiving Party may request printouts of limited portions of Source Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the Source Code other than electronically. The Receiving Party shall be permitted to request printouts that do not exceed (1) 600 total pages of the Producing Party's Source Code; or (2) twenty (20) or more pages of a continuous block of Source Code.  The Producing Party shall provide all such Source Code in paper form including bates numbers and the label "RESTRICTED CONFIDENTIAL – SOURCE CODE" within three (3) business days of the Receiving Party's request, subject to subsection (b), below.  Each printed document shall indicate the full path and file name of the printed file, and each line of the source code listing shall be separately numbered, provided that the Receiving Party has supplied a software tool for viewing and searching Source Code pursuant to Section 8.1(c) that includes such information on print outs.

(b)    If the Producing Party has any objection to the print-outs, the Producing Party must object in writing within three (3) business days from the request for print-outs from the Receiving Party. The Parties shall meet and confer in an attempt to reach a resolution within four (4) business days of the Receiving Party's objection. If no resolution can be reached, the Producing Party must file a motion for protective order with the Court no later than five (5) business days from the Parties reaching an impasse.

(c)    The Receiving Party shall not make any electronic copies or images, nor more than three (3) additional paper copies, of any printed pages of Source Code or other documents or things designated as "RESTRICTED CONFIDENTIAL – SOURCE CODE," without the agreement of the Producing Party or further order of the Court. Notwithstanding the foregoing, nothing in this sub-Paragraph shall prevent a Party from making such additional hard or electronic copies or images of limited excerpts necessary to prepare as exhibits to or include in depositions, expert reports, court filings, or court presentations.

(d)    For any RESTRICTED CONFIDENTIAL – SOURCE CODE material used as a deposition exhibit, the exhibit shall be identified on the record, by Bates number or otherwise. The Receiving Party shall retain the original of any such exhibit and shall provide a copy of the original exhibit to the Producing Party at the deposition. No source code Exhibits shall be retained by the Court reporter

at the conclusion of the deposition or appended to the transcript by the Court

Reporter.  At the conclusion of the deposition, the Producing Party will collect and

shred any other copies of the source code that may have been distributed at the

deposition, with the exception of the Parties' working copy(ies).

(e)     A Receiving Party that wants to file or otherwise submit any

Source Code, or other documents or things designated as "RESTRICTED

CONFIDENTIAL – SOURCE CODE," to the Court in connection with a filing

may make only as many copies, and only of the specific pages as needed, for

submission to the Court and shall file any and all such copies of the materials with

an application to file under seal.  Unless agreed to by the Producing Party, images

or copies of source code shall not be included in correspondence between the

parties.

8.5     No devices with network or recording functionality or a camera

are permitted in the secure room containing the stand-alone Computer, so long as

the Receiving Party is provided a separate secure room to store such devices during

the review.  During its review of Source Code made available for inspection, the

Receiving Party may take notes.  To the extent the Receiving Party desires to take

notes electronically,  it may do so using a computer not connected to any network,

the Internet, or any peripheral device other than a keyboard, mouse, and monitor,

consistent with all of the protections herein.  Any notes (whether electronic or non-

electronic) shall not include copies or reproductions of portions of the source code, but may contain filenames, directory names, module names, class names, parameter names, variable names, function names, method names, or procedure names. The Producing Party may not inspect or review the notes of the Receiving Party or its consultants.

8.6     Any paper copies, documents, or things designated "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall be stored or viewed only at (i) the offices of Counsel of Record for the Receiving Party; (ii) the offices of Outside Consultants who have been approved to access "RESTRICTED CONFIDENTIAL – SOURCE CODE" materials; (iii) the site where any deposition is taken; (iv) the Court; or (v) any intermediate location necessary to transport the information to a hearing, trial, or deposition. Paper copies stored in locations (i) and (ii) shall be maintained at all times in a locked and secure area.

8.7     No Party shall physically, magnetically, digitally, optically, or otherwise copy by any means, any Source Code, or documents or things that another Party has designated "RESTRICTED CONFIDENTIAL – SOURCE CODE," subject to the exceptions enumerated above.

8.8     Within 60 days of final termination of the suit as to the Producing Party, the Receiving Party shall return all hard (non-electronic) copies

of Source Code or certify through counsel with personal knowledge that all such copies have been destroyed.

**9.     PROCEDURE FOR DESIGNATING MATERIAL.** Subject to the limitations set forth in this Order, a Designating Party may: designate as "CONFIDENTIAL" information that the Designating Party believes, in good faith, meets the definition of Confidential Material set forth in Section 1.8 above; designate as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" information that it believes, in good faith, meets the definition of Confidential – Outside Counsel Only Material set forth in Section 1.9 above; and designate as "RESTRICTED CONFIDENTIAL – SOURCE CODE" information that it believes, in good faith, meets the definition of Restricted Confidential – Source Code Material set forth in Section 1.10 above.

9.1     Except as provided above in Section 8 with respect to "RESTRICTED CONFIDENTIAL – SOURCE CODE" Material, any Material (including physical objects) made available for inspection by counsel for the Receiving Party prior to producing copies of selected items shall initially be considered, as a whole, to constitute "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" information, and shall be subject to this Order. Thereafter, the Producing Party shall have ten (10) calendar days from the inspection to review and designate

the appropriate documents as "CONFIDENTIAL" or "CONFIDENTIAL –

OUTSIDE COUNSEL ONLY" prior to furnishing copies to the Receiving Party.

       9.2    Except as otherwise provided in this Order or as otherwise

stipulated or ordered, Material that qualifies for protection under this Order must

be designated in accordance with this Section before the Material is disclosed or

produced. In addition to the marking of documents and things with the appropriate

level of confidentiality as provided in this Order, all documents and things

produced by a Producing Party shall be Bates numbered.

       9.3    Designation in conformity with this Order shall be made as

follows:

       (a)    For information in documentary form (apart from transcripts of

depositions, or other pretrial or trial proceedings), the Producing Party shall affix

the legend "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL

ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" on each page

that contains Designated Material.

       (b)    For testimony given in deposition, the Designating Party shall

specify any portions of the testimony that it wishes to designate as

"CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

"RESTRICTED CONFIDENTIAL – SOURCE CODE." In the case of depositions,

the Designating Party may also designate any portion of a deposition transcript as

"CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" by informing the reporter, and opposing Parties, in writing within thirty (30) calendar days of completion of the deposition of the designations to be applied. All deposition transcripts not marked at least "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" during the deposition will nonetheless be treated as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" until the thirty (30) day period has expired. Transcript pages containing Designated Material must be separately bound by the court reporter, who must affix to the top of each such page the legend "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" as instructed by the Designating Party.

(c)     For information produced in some form other than documentary, and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or thing is stored the legend "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE" to the extent reasonably practical.

(d)     The provisions of this Sub-Section 9.3 do not apply to documents produced in native format. Documents produced in native format will

have their respective confidentiality designation and Bates number identified in the filename of the native file.

9.4    In the event that a Producing Party mistakenly or inadvertently fails to stamp or otherwise designate a document or other information as "CONFIDENTIAL", "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE" at the time of its production, it may be corrected by written notification to counsel for the Receiving Party, and the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the terms of this Order. The Receiving Party and other authorized recipients of such documents or information shall not be responsible for any otherwise prior actions taken with respect to such documents or information before receiving notice of the designation. Upon designation the Receiving Party shall take reasonable efforts to retrieve such information from individuals unauthorized to access it and to ensure that the information is treated consistent with its designation and this Order.

## 10.    PROSECUTION BAR.

10.1    Absent written consent from the Producing Party, any individual who receives access to information or items designated by the Producing Party as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE" shall not be involved in

the prosecution of patents or patent applications relating to computer security, network security, vulnerability management, and/or cyber security, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office").

      10.2   For the purposes of this section, "prosecution" includes any involvement in or advising regarding drafting, editing, approving or amending patent claims.  Prosecution includes, for example, preparing or revising an original application, or involvement in or advising regarding drafting, editing, approving or amending patent claims in a reissue protest, *ex parte* reexamination,  *inter partes* reexamination,  *inter partes* review,  or other post grant proceedings.

      10.3   "Prosecution" as used in this section does not include representing a party challenging a patent before a domestic or foreign agency (including,  but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* review).   "Prosecution" as used in this section also does not include participation by such individual representing a patent-holder in a reissue protest, *ex parte* reexamination,  or *inter partes* review, so long as the proceeding is not initiated by the patentholder itself for any of its own patents, and so long as the individual has no involvement in and does not advise regarding drafting, editing,

approving or amending patent claims.[1]  No prohibition set forth in this paragraph shall apply to or result from any Designated Materials that such individual had lawfully received or authored prior to and apart from this litigation, or to any other material not covered by this Order.

      10.4   This Prosecution Bar shall begin when access to "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "RESTRICTED CONFIDENTIAL – SOURCE CODE" information or items is first received by the affected individual and shall end two (2) years after final termination of this action.

      **11.   <u>GENERAL USE OF DESIGNATED MATERIAL.</u>**  Unless otherwise ordered by the Court, or agreed to in writing by the Parties, all Designated Material, and all information derived therefrom, shall be used by the Receiving Party only for purposes of this case.  Designated Material shall not be used for any other purpose including, but not limited to, any business, proprietary, commercial, legal/other litigation, arbitration or claim, or governmental purpose. Information contained or reflected in Designated Material shall not be disclosed in conversations, presentations by parties or counsel, in court or in other settings that

---

[1] Such individual may be involved in other activities such as reviewing, drafting or editing briefs, correspondence, or other materials in any reissue protest, *ex parte* reexamination, or *inter partes* review, so long as the individual has no involvement in and does not advise regarding drafting, editing, approving or amending patent claims.

might reveal Designated Material, except in accordance with the terms of this Order.

11.1   Nothing in this Order shall limit any Designating Party's use of its own documents and information, nor shall it prevent the Designating Party from disclosing its own confidential information, documents or things to any person. Such disclosure shall not affect any designations made pursuant to the terms of this Order, so long as the disclosure is made in a manner that is reasonably calculated to maintain the confidentiality of the information.

11.2   Nothing in this Order shall limit a Receiving Party from making use of or disclosing documents and/or things that (a) were lawfully in its possession prior to receipt of such information from a Producing Party; (b) appear in any published material available to the Producing Party's trade or business, available to the public, or otherwise become available within the public domain, other than as a consequence of the Receiving Party's breach of any obligation not to disclose the information; or (c) it lawfully obtains subsequent to the Producing Party's disclosure, without obligation of confidence, from a source or sources other than the Producing Party; regardless of whether the same is Designated Material.

11.3   Subject to the remaining provisions of this Order, absent written permission from the Producing Party or a court order secured after

appropriate notice to all interested persons, a Receiving Party may not file, or disclose, in the public record any Designated Material.

11.4   If a Receiving Party files any document with the Court containing information designated by a Producing Party as Designated Material, it shall file such a document in accordance with the Court's rules and practices governing the filing of sealed documents and shall indicate prominently on the face of the document that is being filed under seal, the level of confidentiality protection to which the document is subject and the name of the Producing Party whose Designated Material is involved.  All such Designated Material so filed shall be released from confidential treatment only by order of the Court.

11.5   The Parties making a filing under seal must comply with the provisions of Superior Court Rule of Civil Procedure 5(g).  Notwithstanding the forgoing, the Parties have no obligation to file public versions of any exhibits or attachments to a filing, unless otherwise ordered by the Court or required by the Prothonotary.

11.6   This Order shall not bar or otherwise restrict Counsel of Record from rendering advice to his or her client with respect to the Action, and in the course thereof, referring to or relying generally upon his or her examination of Designated Material, provided, however, that in rendering such advice and in otherwise communicating with his or her client, the attorney shall not disclose the

content of such information designated as Designated Material contrary to the terms of this Order.

       11.7   Designated Material shall not be used by a Receiving Party in any other way, or for any other purpose, including the acquisition, preparation or prosecution before the Patent Office of any patent application, or in connection with patent licensing.

      **12.**   **NO WAIVER OF PRIVILEGE** .  Subject to the provisions of Delaware Rule of Evidence 510, inspection or production of documents (including physical objects) shall not constitute a waiver of the attorney-client privilege, work product immunity, or any other applicable privilege or immunity.  If the Producing Party becomes aware of any inadvertent disclosure, the Producing Party may promptly designate any such documents as within the attorney-client privilege, work product immunity or any other applicable privilege or immunity and request in writing return of such documents to the Producing Party.  Upon such request and the provision of a supplemental privilege log, the Receiving Party shall, within five (5) business days, retrieve and return or destroy all copies of such document(s) and give notice to the Producing Party that it has complied with the provisions of this paragraph.  The Producing Party shall retain a copy of any such documents and shall be prepared to submit them to the Court in connection with any Order of this

Court requiring *in camera* inspection in connection with a challenge of the privilege designation.

13. **INADVERTENT FAILURE TO DESIGNATE PROPERLY.** The inadvertent failure by a Producing Party to designate any material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Material is protected under one of the categories of this Order within fourteen (14) calendar days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Designated Material with the correct confidentiality designation within seven calendar (7) days upon its notification to the Receiving Parties. Upon receiving the Designated Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all materials that were not designated properly.

Once a Receiving Party has received notification of the correct confidentiality designation for the Designated Material with the incorrect confidentiality designation, the Receiving Party shall treat such material at the appropriately designated level pursuant to the terms of this Order.

14. **CHALLENGES TO CONFIDENTIALITY DESIGNATIONS.**
The Parties will use reasonable care when designating information as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

"RESTRICTED CONFIDENTIAL – SOURCE CODE." Nothing in this Order shall prevent a Receiving Party from contending that any or all documents or information designated as Confidential Material, Confidential – Outside Counsel Only Material, or Restricted Confidential – Source Code Material have been improperly designated. A Receiving Party may, at any time, request that the Producing Party cancel or modify the confidentiality designation with respect to any document or information contained therein. A Receiving Party may seek to de-designate Designated Material on the grounds that such material: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court. A Party shall not be obligated to challenge the propriety of a "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" designation at the time made, and the failure to do so shall not preclude a subsequent challenge thereto. Such a challenge shall be written, shall be served on counsel for the Producing Party, and shall identify particularly the documents or information that the Receiving Party contends should be differently

designated.  The parties shall use their best efforts to resolve promptly and

informally such disputes in accordance with all applicable rules.  If agreement

cannot be reached, the Receiving Party shall request that the Court cancel or

modify a "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL

ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" designation in

accordance with Superior Court Civil Rule 5(g)(4).  The Parties' entry into this

Order shall not preclude or prejudice either Party from arguing for or against any

designation, establish any presumption that a particular designation is valid, or

alter the burden of proof that would otherwise apply in a dispute over discovery or

disclosure of information.  Notwithstanding any challenge to a designation, the

Material in question shall continue to be treated as designated under this Order

until one of the following occurs: (a) the Party who designated the Material in

question withdraws such designation in writing; or (b) the Court rules that the

Material in question is not entitled to the designation.

**15.    COMMUNICATIONS BETWEEN PARTIES AND COUNSEL**

**OF RECORD.**  Responsive documents and things subject to the attorney-client

privilege, work product protection, and/or other applicable protection/immunity,

including privileged or protected communications between a Party and its

respective Counsel of Record, occurring after the date of filing of Plaintiff's initial

Complaint, need not be produced or disclosed on a privilege log in response to a

discovery request served by another Party, except as required to rely on an opinion of counsel as part of a defense in this Action.

**16.    EXPERT REPORTS, DECLARATIONS AND COMMUNICATION.** For experts retained in anticipation of or in connection with this Action, documents constituting drafts of expert reports and declarations, and documents constituting notes created by or for an expert in connection with preparation of his or her expert report or declaration, shall not be discoverable and need not be preserved. Work product materials, including communications, generated in connection with non-testifying experts and consultants who are retained in anticipation of or in connection with the above-captioned litigation, shall not be discoverable. Conversations or communications between counsel and any testifying expert or consultant shall not be discoverable, except to the extent such conversations or communications are relied upon by the expert. For the avoidance of doubt, this section does not apply to any materials provided to or from KPMG or written or oral communications with KPMG as such materials or communications are discoverable in this action.

**17.    UNAUTHORIZED DISCLOSURE.** If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Designated Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized

disclosures, (b) use its best efforts to retrieve all copies of the Designated Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

18.    **NON-PARTY USE OF THIS ORDER.**  A non-party that produces Material voluntarily, or pursuant to a subpoena or a court order, may designate such Material in the same manner, and shall receive the same level of protection under this Order, as any Party to this lawsuit.  A non-party's use of this Order to protect its Confidential Material, Confidential – Outside Counsel Only Material, or Restricted Confidential – Source Code Material does not entitle that non-party access to Confidential Material, Confidential – Outside Counsel Only Material, or Restricted Confidential – Source Code Material produced by any Party in this case. Any non-party who is subpoenaed or whose documents, things, or other items are otherwise requested in connection with this action must be provided a copy of this Order and be made aware of their right to produce documents pursuant thereto.

19.    **MATERIAL SUBPOENAED IN OTHER LITIGATION.**  By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or Party subject

to this order who becomes subject to a motion to disclose another party's information designated "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE" pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed. More specifically, if a Receiving Party is served with a subpoena or a court order that would compel disclosure of any information, documents or things designated in this action as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE," the Receiving Party must so notify the Producing Party, in writing (by email) promptly, and in no event more than five (5) calendar days after receiving the subpoena or order. Such notification must include a copy of the subpoena or order. The Receiving Party also must immediately inform, in writing, the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Order. In addition, the Receiving Party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena or order to issue. The Receiving Party must also cooperate with respect to all reasonable procedures sought to be pursued by the Producing Party whose Designated Material may be affected. If the Producing Party timely seeks a protective order, the party served

36

with a subpoena or court order shall not produce any information designated in this Action as "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE," before a determination by the court from which the subpoena or order issued, unless the party has obtained the Producing Party's permission. The Producing Party shall bear the burdens and the expenses of seeking protection in that court of its Designated Material. Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

20. **WAIVER OF NOTICE PROVISIONS.** Any of the notice requirements herein may be waived, in whole or in part, but only by a writing from the Counsel of Record for the Party against whom such waiver will be effective.

21. **MODIFICATION AND OBJECTIONS.** This Order is entered without prejudice to the right of any Party to apply to the Court at any time for modification of this Order, when convenience or necessity requires. Nothing in this Order abridges the right of any person to seek to assert other objections. No Party waives any right it otherwise would have to object to disclosing or producing any information, documents, or things on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to the use in evidence of any of the material covered by this Order.

22.     **JURISDICTION.** The Superior Court of the State of Delaware is responsible for the interpretation and enforcement of this Order. All disputes concerning Designated Material produced under the protection of this Order shall be resolved by the Superior Court of the State of Delaware. Every individual who has signed the "Acknowledgement and Agreement To Be Bound By Confidentiality Order" attached as Exhibit A, or who received any Designated Material, agrees to subject himself or herself to the jurisdiction of this Court for the purpose of any proceedings related to performance under, compliance with, or violation of this Order.

23.     **FINAL DISPOSITION.** Unless otherwise ordered or agreed in writing by the Producing Party, within sixty (60) calendar days after the final termination of this Action as to the Producing Party, all Parties, persons, and entities (including experts and consultants) who received Designated Material shall make a good faith effort to destroy or return to Counsel of Record for the Producing Party all Designated Material and any and all copies of such Designated Material (including summaries, excerpts, and derivative works). In the case of material designated "RESTRICTED CONFIDENTIAL – SOURCE CODE," the Receiving Party must return (not destroy) the material. The Receiving Party must submit a written confirmation of the return or destruction to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day

deadline. Notwithstanding this provision, Counsel of Record may retain an archival copy of all pleadings, motion papers, deposition transcripts (including exhibits), transcripts of other proceedings (including exhibits), expert reports (including exhibits), discovery requests and responses (including exhibits), exhibits offered or introduced into evidence at trial, legal memoranda, correspondence, attorney work product, and legal files, even if such materials contain Designated Material. Any such archival copies that contain or constitute Designated Material remain subject to this Order as set forth in Section 20, above.

24. **DURATION.** The confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

25. **SUCCESSORS.** This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

*/s/ Karen E. Keller*                                          */s/ Alexandra M. Cumings*

Karen E. Keller (No. 4489)                            Jack B. Blumenfeld

SHAW KELLER LLP                                      Alexandra M. Cumings

I.M. Pei Building                                        MORRIS, NICHOLS, ARSHT

1105 North Market Street, 12th Floor             & TUNNELL LLP

Wilmington, DE 19801                                1201 North Market Street

(302) 298-0700                                         P.O. Box 1347

kkeller@shawkeller.com                             Wilmington, DE 19899

*Attorneys for Plaintiff*                                 (302) 658-9200

jblumenfeld@mnat.com

acumings@mnat.com

*Attorneys for Defendant*

Dated: October 2, 2019

SO ORDERED this ___ day of _____, 2019.

_____

The Honorable William C. Carpenter, Judge

# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC., | |
| Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
| Defendant. | |

## ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND BY ORDER GOVERNING THE DESIGNATION AND HANDLING OF CONFIDENTIAL MATERIALS

I, _____ [print or type full name], of

_____ hereby affirm that:

Information, including documents and things designated as

"CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or

"RESTRICTED CONFIDENTIAL – SOURCE CODE," as defined in the Order

Governing the Designation and Handling of Confidential Materials (the

"Confidentiality Order") entered in this Litigation, will be provided to me pursuant

to the terms and restrictions of that Order.

I have been given a copy of and have read the Confidentiality Order.

I am familiar with the terms of the Confidentiality Order and I agree to comply with and to be bound by its terms. I submit to the jurisdiction of this Court for enforcement of the Confidentiality Order.

I agree not to use any CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or RESTRICTED CONFIDENTIAL – SOURCE CODE information disclosed to me pursuant to the Confidentiality Order except for purposes of this Litigation and not to disclose any of this information to persons, other than those specifically authorized by the Confidentiality Order, without the express written consent of the Party who designated the information as confidential or by order of the Court.

DATED: _____

CITY, STATE WHERE WORN AND SIGNED: _____

PRINTED NAME: _____

SIGNATURE: _____

**EXHIBIT B**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

                Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

                Defendant.

C.A. No. N18C-04-006-WCC (CCLD)

## CERTIFICATION OF CONSULTANT

I, _____ [print or type full name], of

_____ hereby affirm that:

Information, including documents and things designated as "CONFIDENTIAL,"

"CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "RESTRICTED CONFIDENTIAL – SOURCE CODE," as defined in the Order Governing the Designation and Handling of Confidential Materials ("Confidentiality Order") entered in this Litigation, is being provided to me pursuant to the terms and restrictions of that Order.

I have been given a copy of and have read the Confidentiality Order.

I am familiar with the terms of the Confidentiality Order and I agree to comply with and to be bound by its terms. I submit to the jurisdiction of this Court for enforcement of the Confidentiality Order.

I agree not to use any CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or RESTRICTED CONFIDENTIAL – SOURCE CODE information disclosed to me pursuant to the Confidentiality Order, except for purposes of this Litigation, and not to disclose any of this information to persons, other than those specifically authorized by the Confidentiality Order, without the express written consent of the Party who designated the information as confidential or by order of the Court. I also agree to notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Confidentiality Order and of its binding effect on them and me.

Pursuant to Section 6 of the attached Confidentiality Order, I have provided (a) my name and business title; (b) my business address; (c) my business or profession; (d) my CV; (e) any previous or current relationship (personal or professional) with any of the parties or their affiliates; (f) a list of other cases in which I have testified (at trial or by deposition) within the last four years; (g) a list of all companies with which I have consulted or by which I have been employed within the last four years; and (h) a signed copy of the "Acknowledgement and Agreement To Be Bound By Confidentiality Order" attached as Exhibit A.

I understand that I am to retain all documents or materials designated as or containing CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or RESTRICTED CONFIDENTIAL – SOURCE CODE information in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any CONFIDENTIAL, CONFIDENTIAL – OUTSIDE COUNSEL ONLY, or RESTRICTED CONFIDENTIAL– SOURCE CODE information are to be returned to counsel who provided me with such documents and materials.

DATED: _____

CITY, STATE WHERE WORN AND SIGNED: _____

PRINTED NAME: _____

SIGNATURE: _____

EFiled: Oct 09 2019 04:26PM EDT
Transaction ID 64298543
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18C-04-006-WCC-CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION AND PROPOSED ORDER

Plaintiff Finjan, Inc. ("Plaintiff") and defendant Trustwave Holdings, Inc.

("Defendant") stipulate and agree, subject to the approval of the Court, that the

time for Plaintiff to respond to Defendant's Motion to Amend is extended through

and including October 11, 2019.

<table>
<tr><td>

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

Dated: October 9, 2019

</td><td>

*/s/ Alexandra M. Cumings*

Jack B. Blumenfeld (No. 1014)
Alexandra M. Cumings (No. 6146)
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com
*Attorneys for Defendant*

</td></tr>
</table>

SO ORDERED this _____ day of_____, 2019.


_____
Honorable William C. Carpenter Jr.

**So Ordered**

/s/ Carpenter, William C   Oct 11, 2019

EFiled:  Oct 11 2019 08:34AM EDT
Transaction ID 64305723
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18C-04-006-WCC-CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION AND PROPOSED ORDER

Plaintiff Finjan, Inc. ("Plaintiff") and defendant Trustwave Holdings, Inc.

("Defendant") stipulate and agree, subject to the approval of the Court, that the

time for Plaintiff to respond to Defendant's Motion to Amend is extended through

and including October 11, 2019.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

Dated: October 9, 2019

/s/ Alexandra M. Cumings
Jack B. Blumenfeld (No. 1014)
Alexandra M. Cumings (No. 6146)
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com
*Attorneys for Defendant*

SO ORDERED this _____ day of_____, 2019.


_____
Honorable William C. Carpenter Jr.

This document constitutes a ruling of the court and should be treated as such.

**Court Authorizer**
   **Comments:**

So Ordered on 10-10-19 by Carpenter, J.

EFiled:  Oct 14 2019 02:30PM EDT
Transaction ID 64313703
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FINJAN, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N18C-04-006 WCC CCLD |
| | ) |
| TRUSTWAVE HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S COUNTERCLAIM

Defendant Trustwave Holdings, Inc. ("Trustwave"), by and through its undersigned counsel, brings the following Counterclaim against Plaintiff Finjan, Inc. ("Finjan"):

## NATURE OF ACTION

1.    This is a Counterclaim for declaratory judgment as to the parties' rights and obligations relating to royalties owed, if any, under Trustwave's and Finjan's March 2012 Amended and Restated Patent License Agreement (the "Agreement"), which is attached hereto as Exhibit A.

2.    Trustwave realleges and incorporates by reference each of the paragraphs in its February 19, 2019 Answer and Affirmative Defenses to Finjan's Complaint.

## **PARTIES**

3.      Finjan is a Delaware corporation with a principal place of business at

2000 University Avenue, Suite 600, Palo Alto, California, 94303.

4.      Finjan's sole purpose is to extract patent license fees from operating

companies through litigation or the threat of litigation:

> Licensing and enforcement of the Company's cybersecurity patent
> portfolio is operated by its wholly-owned subsidiary Finjan, Inc.
> ("Finjan").
>
> Through Finjan, we generate revenues and related cash flows by
> granting intellectual property licenses for the use of patented
> technologies that we own. We actively license and enforce our patent
> rights against unauthorized use of our patented technologies (*i.e.*
> potential infringers). Many of our license agreements, whether entered
> into via negotiated transactions (*i.e.* licensing transactions) or through
> a settlement or court ordered judgment (*i.e.* litigation action) or
> otherwise, are structured on a fully paid-up basis (often referred to as a
> "global peace license").
>
> …
>
> We derive substantially all of our income from a relatively small
> number of patented technologies. As of December 31, 2017, our assets
> consisted primarily of Finjan's 29 U.S. and 38 international patents….
> Finjan's current U.S. issued patents began expiring in 2017, and we
> currently have 2 U.S. patent applications and 1 international patent
> application pending as of the date of the filing of this Annual Report
> on Form 10-K. As new technological advances occur, many of the
> patented technologies we own through Finjan may become obsolete
> before they are completely monetized.
>
> *See* Exhibit B (Finjan Holdings, Inc.'s 10-K for FY2017) at pp. 4-5 and 13.

2

5.     Trustwave Holdings, Inc. is a Delaware corporation with a principal place of business in 70 W. Madison St., Suite 600, Chicago, IL 60602.

## THE MARCH 2012 AGREEMENT

6.     In March 2012, Trustwave and Finjan entered into the Agreement when Trustwave acquired M86. See Exhibit. A at first whereas clause. The original license between M86 and Finjan began in November 2009. *Id*.

7.     In the Agreement, Finjan—the Licensor—granted Trustwave—the Licensee—a "fully paid up, worldwide right and license" to the "Licensed Patents" owned by Finjan in exchange for shares of Trustwave. *Id*. at Section 2.1.1 and fourth whereas clause ("Licensor has agreed to amend the Original License, *inter alia* to grant Licensee a fully paid up license to use the Licensed Patents pursuant to the terms and conditions set forth herein in consideration for issuance of 224,000 shares of Class A Voting Common Stock of Licensee."). Hence, in March 2012, Trustwave and Finjan negotiated a fully-paid up, royalty-free license.

8.     Finjan's shares in Trustwave were converted to nearly $20 million when Singapore Telecommunications Limited ("Singtel") acquired Trustwave on August 31, 2015.

## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction and personal jurisdiction over Finjan at least by virtue of Section 6.4.1 of the Agreement, which states that

"[t]he parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts." This dispute arises of and relates to the Agreement by virtue of Finjan's allegations that Trustwave breached provisions of the Agreement as stated in Finjan's Complaint.

10.     The Court also has personal jurisdiction over Finjan because Trustwave's claims against each of them arises out of or relate to each of their purposeful contacts with Delaware, and the exercise of personal jurisdiction over each Finjan in this particular case would comport with principles of fair play and substantial justice.

11.     This Court also has personal jurisdiction over Finjan because it has engaged in systematic and continuous contacts with this State and this district by, *inter alia*, regularly conducting and soliciting business in this State and this district, and deriving substantial revenue from products and/or services provided to persons in this State and this district. For example, and without limitation, as noted above, Finjan is a Delaware corporation.

12.     Venue is proper in this Court at least by virtue of Section 6.4.1 of the Agreement, which, in addition to stating that "[t]he parties hereto hereby

4

irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement," further states that "[t]he parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute."

13.     Venue is further proper in this State because Finjan is incorporated here, and a substantial part of the events or omissions giving rise to the counterclaim alleged herein occurred in this district, and because Finjan is subject to this Court's personal jurisdiction with respect to the counterclaim alleged herein.

## <u>COUNTERCLAIM</u>

**(Declaratory Judgment as to the Parties' Rights and Obligations relating to Royalties Owed under the Agreement)**

14.     Trustwave incorporates paragraphs 1 through 13 herein by reference.

15.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration. Trustwave was acquired by Singtel no later than August 31, 2015.

16.     Finjan alleged in its Complaint that Trustwave owed a 4% royalty on sales of certain cybersecurity products sold by Trustwave regardless of the customer.

17.    After extensive briefing and a November 19, 2018 oral argument on Trustwave's Motion to Dismiss, on February 11, 2019, this Court issued a Letter Opinion (the "Order") that narrowly defined the sole issue in dispute as follows:

> As a result, Finjan's suit for breach of contract may proceed, but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement. The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized.

18.    Finjan continues to disregard the Court's Order and seek royalties on Trustwave sales unrelated to Singtel as well as Singtel sales unrelated to Trustwave.  In addition to its discovery requests (and corresponding Motion to Compel), which wholly ignore the Court's Order, Finjan's renewed demand for the identical royalties it sought pre-litigation related to Trustwave sales (unrelated to Singtel) on September 25, 2019 demonstrates that a justiciable controversy exists between the parties concerning their rights and obligations under the Agreement.

19.    Under the Order, the only transactions even potentially capable of triggering royalties under the Agreement are sales by Trustwave to Singtel following August 31, 2015.

20.    While Trustwave acknowledges that the Court's Order contemplates discovery concerning Trustwave's sales to Singtel, Trustwave does not believe that there has been any royalty-triggering activity.

6

21.     As such, a further justiciable controversy exists as to whether Trustwave has breached the parties' Agreement and whether any royalties are owed to Finjan under the Agreement.

22.     Trustwave seeks a declaration confirming the parties' rights and obligations under the Agreement (including as detailed by the Court earlier in the litigation), including, *inter alia*, that Trustwave's transactions in connection with its ongoing existing business are fully paid-up/royalty-free under the Agreement and that Trustwave has not breached the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Trustwave respectfully requests that this Court:

A.     Enter judgment in the form of a declaration confirming the parties' rights and obligations under the Agreement (including as detailed by the Court earlier in the litigation), including, *inter alia*, that Trustwave's transactions in connection with its ongoing existing business are fully paid-up/royalty-free under the Agreement and that Trustwave has not breached the Agreement;

B.     Award Trustwave its reasonable costs and expenses incurred in connection with this Action; and

C.     Grant Trustwave such other and further relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

/s/ Jack B. Blumenfeld

OF COUNSEL:

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant Trustwave
Holdings, Inc.*

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
(303) 764-4072

October 14, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen E. Keller, Esq.
Shaw Keller LLP
I.M. Pei Building
1105 N. Market Street, 12th Floor
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled: Oct 14 2019 02:30PM EDT
Transaction ID 64313703
Case No. N18C-04-006 WCC CCLD

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

ALEXANDRA M. CUMINGS
(302) 351-9248
(302) 425-3012 FAX
acumings@mnat.com

October 14, 2019

**BY E-FILING AND HAND DELIVERY**

The Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

<div style="margin-left:2em">Re:    *Finjan, Inc. v. Trustwave Holdings, Inc.*,
       <u>C.A. No. N18C-04-006-WCC [CCLD]</u></div>

Dear Judge Carpenter:

       I write on behalf of Defendant Trustwave Holdings, Inc. ("Trustwave") regarding Trustwave's Motion for Leave to File Counterclaims ("Motion for Leave," Dkt. 70), which was noticed for oral argument as a routine motion on October 16, 2019. Plaintiff consented to the filing of the Counterclaim, and thus the hearing on the Motion for Leave can be taken off calendar. Trustwave filed its Counterclaim contemporaneously with this letter.

The Honorable William C. Carpenter, Jr.
October 14, 2019
Page 2

Should Your Honor have any questions, counsel is available at the

Court's convenience.

Respectfully,

*/s/ Alexandra M. Cumings*

Alexandra M. Cumings (#6146)


cc:     Karen Keller (via File & Serve*Xpress*)

EFiled:  Oct 16 2019 02:31PM EDT
Transaction ID 64322613
Case No. N18C-04-006 WCC CCLD

# Superior Court Proceeding Worksheet

Date: __Wednesday, October 16, 2019__    Time: __9:15 a.m.- Courtroom 8A__

Judge: __William C. Carpenter__    Case Number: __N18C-04-006 WCC__

Type of Proceeding: __Motion to Compel__

Plaintiff Attorney    Karen Keller, Esq.
Bijal Vakil, Esq.    Defendant Attorney    Alexandra Cumings, Esq.
John S. Letchinger, Esq.

Plaintiff    Finjan, Inc.

v

Defendant    Trustwave Holdings, Inc.

Decision:    ☒ Granted    ☐ Denied    ☐ Deferred Decision    ☐ Passed

Other: __Motion GRANTED only to the extent that the information regarding sales from__
__Trustwave Holdings, Inc. to Singtel is to be given to KPMG.__

Court Clerk: __Nancy Hernandez-Becerra__    Court Reporter: __James Pavone__

EFiled:  Nov 04 2019 04:37PM EST
Transaction ID 64385470
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,                              )
                                           )
                  Plaintiff,               )
                                           )
        v.                                 )   C.A. No. N18C-04-006-WCC-CCLD
                                           )
TRUSTWAVE HOLDINGS, INC.,                  )
                                           )
                  Defendant.               )

### FINJAN'S RESPONSE TO DEFENDANT'S COUNTERCLAIM

Plaintiff and Counter-Defendant FINJAN, INC., by and through its undersigned counsel, responds to the Counterclaim filed by Counterclaimant Trustwave Holdings, Inc. as follows:

### NATURE OF ACTION

1.      Finjan admits the allegations in Paragraph 1.

2.      Paragraph 2 relies on legal conclusions to which no response is required. To the extent that a response is required, Finjan lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 and therefore denies them.

### PARTIES

3.      Finjan admits the allegations in Paragraph 3.

4.      Finjan denies the allegations in Paragraph 4.

5.      Finjan lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 and therefore denies them.

## THE MARCH 2012 AGREEMENT

6.      Finjan admits the allegations in Paragraph 6.

7.      Finjan admits that the Agreement contains Section 2.1.1 as stated in Paragraph 7, but Finjan denies all remaining allegations in Paragraph 7.

8.      Finjan lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8 and therefore denies them.

## JURISDICTION AND VENUE

9.      Finjan admits that the Court has subject matter jurisdiction and personal jurisdiction for this dispute as it arises out of and relates to the Agreement, Finjan denies all other allegations in Paragraph 9.

10.     Finjan admits that the Court has personal jurisdiction for this dispute, Finjan denies all other allegations in Paragraph 10.

11.     Finjan admits that the Court has personal jurisdiction for this dispute, Finjan denies all other allegations in Paragraph 11.

12.     Finjan admits that venue is proper in this Court for this dispute as it arises out of and relates to the Agreement, Finjan denies all other allegations in Paragraph 12.

13.     Finjan admits that venue is proper in this State for this dispute, Finjan

denies all other allegations in Paragraph 13.

## COUNTERCLAIM

**(Declaratory Judgment as to the Parties' Rights and Obligations relating to
Royalties Owed under the Agreement)**

14.     Finjan repeats and incorporates by reference its answers in Paragraphs

1 through 13 as if fully set forth herein.

15.     Finjan admits the allegations in Paragraph 15.

16.     Finjan admits that its Complaint requested the Court to order

Trustwave to pay to Finjan damages (including but not limited to attorney's fees,

costs, interest on damages, and damages) for Trustwave's breach of the Agreement

and failure to pay royalties as required under the Agreement, but Finjan denies all

remaining allegations in Paragraph 16.

17.     Finjan admits that this Court issued a Letter Opinion on February 11,

2019 as stated in Paragraph 17, but Finjan denies all remaining allegations in

Paragraph 17.

18.     Finjan denies the allegations in Paragraph 18.

19.     Finjan denies the allegations in Paragraph 19.

20.     Finjan lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 20 and therefore denies them.

21.     Finjan admits the allegations in Paragraph 21.

3

22.     Paragraph 22 relies on legal conclusions to which no response is required. To the extent that a response is required, Finjan lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 and therefore denies them.

<table>
<tr><td></td><td>/s/ Karen S. Keller</td></tr>
</table>

|  |  |
|---|---|
|  | /s/ Karen S. Keller |
|  | Karen E. Keller (No. 4489) |
|  | David M. Fry (No. 5486) |
|  | SHAW KELLER LLP |
|  | I.M. Pei Building |
| OF COUNSEL: | 1105 North Market Street, 12th Floor |
| Bijal Vakil | Wilmington, DE 19801 |
| WHITE & CASE LLP | (302) 298-0700 |
| 3000 El Camino Real | kkeller@shawkeller.com |
| 2 Palo Alto Square, Suite 900 | dfry@shawkeller.com |
| Palo Alto, CA  94306 | *Attorneys for Plaintiff* |
| (650) 213-0300 |  |

Dated:  November 4, 2019

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on November 4, 2019, this document

was served on the persons listed below in the manner indicated:

### BY FILE & SERVE XPRESS AND EMAIL

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

John S. Letchinger
Matthew J. Caccamo
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6200
jletchinger@bakerlaw.com
mcaccamo@bakerlaw.com

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 861-0600
jbrandyberry@bakerlaw.com

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiff*

EFiled: Nov 22 2019 01:22PM EST
Transaction ID 64457544
Case No. N18C-04-006 WCC CCLD

M ORRIS , N ICHOLS , A RSHT & T UNNELL LLP

1201 N ORTH M ARKET S TREET
P.O. B OX 1347
W ILMINGTON , D ELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

A LEXANDRA M. C UMINGS
(302) 351-9248
(302) 425-3012 FAX
acumings@mnat.com

November 22, 2019

**BY E-FILING AND HAND DELIVERY**

The Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

> Re:   *Finjan, Inc. v. Trustwave Holdings, Inc.*,
>        C.A. No. N18C-04-006-WCC [CCLD]

Dear Judge Carpenter:

I write on behalf of Defendant Trustwave Holdings, Inc. ("Trustwave") regarding the Stipulated Order Governing Designation and Handling of Confidential Materials dated October 7, 2019 (the "Confidentiality Order," Dkt. 79). Third-party KPMG will be conducting a review of certain Trustwave confidential sales information at issue in this action. In KPMG's view portions of the Confidentiality Order conflict with professional accounting standards under which KPMG must conform. Accordingly, KPMG requested that

The Honorable William C. Carpenter, Jr.
November 22, 2019
Page 2

the forthcoming review be conducted pursuant to a separate, prior Non-Disclosure

Agreement between Trustwave and KPMG dated October 27, 2016.  In order to

proceed with the review in a timely fashion Trustwave has agreed to accommodate

KPMG's request.  Finjan has indicated that it does not object to this arrangement.

Therefore, Trustwave writes herein to notify the Court that the confidentiality of

the forthcoming KPMG review will be controlled by the terms of the October 27,

2016 Non-Disclosure Agreement.

Should Your Honor have any questions, counsel is available at the

Court's convenience.

Respectfully,

*/s/ Alexandra M. Cumings*

Alexandra M. Cumings (#6146)

cc:    Karen Keller (via File & Serve*Xpress*)



**So Noted**

/s/ Carpenter, William C   Nov 25, 2019

EFiled:  Nov 25 2019 01:42PM EST
Transaction ID 64462541
Case No. N18C-04-006 WCC CCLD

Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

Alexandra M. Cumings
(302) 351-9248
(302) 425-3012 FAX
acumings@mnat.com

November 22, 2019

**BY E-FILING AND HAND DELIVERY**

The Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, DE 19801

Re:    *Finjan, Inc. v. Trustwave Holdings, Inc.*,
C.A. No. N18C-04-006-WCC [CCLD]

Dear Judge Carpenter:

I write on behalf of Defendant Trustwave Holdings, Inc. ("Trustwave") regarding the Stipulated Order Governing Designation and Handling of Confidential Materials dated October 7, 2019 (the "Confidentiality Order," Dkt. 79).  Third-party KPMG will be conducting a review of certain Trustwave confidential sales information at issue in this action.  In KPMG's view portions of the Confidentiality Order conflict with professional accounting standards under which KPMG must conform.  Accordingly, KPMG requested that

The Honorable William C. Carpenter, Jr.
November 22, 2019
Page 2

the forthcoming review be conducted pursuant to a separate, prior Non-Disclosure

Agreement between Trustwave and KPMG dated October 27, 2016.  In order to

proceed with the review in a timely fashion Trustwave has agreed to accommodate

KPMG's request.  Finjan has indicated that it does not object to this arrangement.

Therefore, Trustwave writes herein to notify the Court that the confidentiality of

the forthcoming KPMG review will be controlled by the terms of the October 27,

2016 Non-Disclosure Agreement.

Should Your Honor have any questions, counsel is available at the

Court's convenience.

Respectfully,

*/s/ Alexandra M. Cumings*

Alexandra M. Cumings (#6146)

cc:    Karen Keller (via File & Serve*Xpress*)

EFiled:  Dec 04 2019 06:03PM EST
Transaction ID 64488834
Case No. N18C-04-006 WCC CCLD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18C-04-006-WCC-CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that on December 4, 2019, the following document was served on the persons listed below in the manner indicated:

1) Plaintiff's First Supplemental Responses and Objections to Defendant's First Set of Interrogatories

**BY LEXIS NEXIS FILE
& SERVE XPRESS
AND EMAIL**

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

John S. Letchinger
Matthew J. Caccamo
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6200
jletchinger@bakerlaw.com
mcaccamo@bakerlaw.com

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 861-0600
jbrandyberry@bakerlaw.com

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Bijal Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
(650) 213-0300

Dated: December 4, 2019