# Exhibit B

# REDACTED

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

          Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

          Defendant.

PUBLIC VERSION
Filed: April 5, 2018

C.A. No.18C-04-006-WCC-CCLD

TRIAL BY JURY DEMANDED

## COMPLAINT

Plaintiff Finjan, Inc. ("Finjan"), by and through its undersigned counsel, asserts its claims against Trustwave Holdings, Inc. as follows.

## NATURE OF THE ACTION

1. This is a complaint for breach of contract.

## PARTIES

2. Finjan is a Delaware corporation with a principal place of business at 2000 University Avenue, Suite 600, Palo Alto, California, 94303.

3. On information and belief, Defendant Trustwave Holdings, Inc. ("Trustwave") is a Delaware corporation with a principal place of business in 70 W. Madison St., Suite 600, Chicago, IL 60602. On information and belief, Trustwave makes, uses, sells, and/or offers to sell in the United States, or imports into the United States, including in this judicial district, cybersecurity products or processes that practice the inventions claimed in Finjan's patents.

# FINJAN'S INNOVATIONS

4.      Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  In 1998, Finjan moved its headquarters to San Jose, California.  Finjan was a pioneer in developing proactive security technologies capable of detecting previously unknown and emerging online security threats, recognized today under the umbrella term "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents covering innovations in the United States and around the world resulting directly from Finjan's more than decades-long research and development efforts, supported by a dozen inventors and over $65 million in R&D investments.

5.      Finjan built and sold software, including application program interfaces (APIs) and appliances for network security, using these patented technologies.  These products and related customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center, through which it frequently published research regarding network security and current threats on the Internet.  Finjan's pioneering approach to online security drew equity investments from two major software and

technology companies, the first in 2005 followed by the second in 2006. Finjan generated millions of dollars in product sales and related services and support revenues through 2009, when it spun off certain hardware and technology assets in a merger. Pursuant to this merger, Finjan was bound to a non-compete and confidentiality agreement, under which it could not make or sell a competing product or disclose the existence of the non-compete clause. Finjan became a publicly traded company in June 2013, capitalized with $30 million. After Finjan's obligations under the non-compete and confidentiality agreement expired in March 2015, Finjan re-entered the development and production sector of secure mobile products for the consumer market.

## TRUSTWAVE LICENSES FINJAN'S PATENTS

6. Finjan and Trustwave entered into an Amended and Restated Patent License Agreement (the "Agreement"), which is a binding contract supported by offer, acceptance and mutual consideration. Among other things, under Section 2.1.1 of the Agreement, Finjan granted "to Licensee a limited, non-exclusive (without the right to assign except as provided in Sections 2.4 or 6.9 below), fully paid up, worldwide right and license, to:

> "(a) make, have made, use, import, sell and offer for sale (directly or
>
> indirectly, via one or more tiers of distribution channels) the Licensed
>
> Products and Services under the Licensed Patents;"

01:23041496.1

7.      Under the Agreement, in the event Trustwave was acquired, certain royalties would be due on certain products.  Specifically, Section 2.5 of the Agreement states:

> "Acquiring Parties. In the event of an Acquisition of Licensee, all the provisions of this Agreement applicable to Licensee (except as related to Section 3), shall be deemed to apply to the Acquirer, and its respective Affiliates that are licensed hereunder, and the royalties that apply under Section 3 to Permitted Transferees shall apply (from the effective date of such Acquisition) to all Licensed Products and Services sold and licensed by the Acquirer and its Affiliates licensed hereunder that are not attributable to the Existing Business."

Section 3.2.1 of the Agreement, which provides the applicable royalty, states:

> "in respect of Permitted Transferees, and OEMs which are Excluded Persons and not Threshold Value OEMs exceeding the Net Sales Threshold, the then-prevailing royalty rate to be determined and agreed in good faith by Licensor and Licensee and reviewed annually if requested by Licensor based on then current royalty rates in the enterprise software market for customers of equivalent size for similar products, and, in the absence of such agreed prevailing rate provided such absence of agreement is not due to a lack of good faith on Licensor's part.▮▮▮

Pursuant to Sections 2.5 and 3.2.1 of the Agreement, a ▮ royalty would be due on "any products and services other than the Licensed Products and Services and Integrated Licensed Products and Services as actually offered and distributed by the Licensee and their Affiliates at the time of the Transfer ("Existing Business.")."

Further, under Section 3.3 of the Agreement, interest at the rate of "███ per annum" would also be due on such royalties.

## SINGTEL ACQUIRES TRUSTWAVE, TRIGGERING ROYALTY CLAUSES IN THE AGREEMENT

8.　　Singtel publicly announced its offer to acquire Trustwave no later than April 7, 2015. Trustwave announced on August 31, 2015, that Singtel had completed its acquisition of Trustwave, including the Trustwave products and services that are the subject of the Agreement that is at issue in this dispute. On information and belief, Singtel now wholly owns Trustwave.

9.　　In 2015, Trustwave informed Finjan that Singtel was in the process of acquiring Trustwave. By mid-2015, Finjan began negotiations with Trustwave regarding the royalties due under the Agreement. Finjan explained that pursuant to Sections 1.13, 2.4 and 2.5, a ███ royalty would be owed on products not attributable to "Existing Business," as defined by the Agreement. Finjan also explained that Section 1.4 and Exhibit B of the Agreement imposed a ███ royalty on relevant sales.

10.　　In a July 22, 2015 email, Trustwave informed Finjan that it agreed that section 2.5 applied to the acquisition of Trustwave by Singtel.

11.　　By the fall of 2015, the parties were nearing an agreement regarding additional royalties, when Trustwave suddenly, and without explanation, stopped responding to Finjan's emails, and thus refused to deal with Finjan.

- 5 -

12.    After Trustwave withdrew from negotiations, on November 16, 2015, Finjan notified Trustwave that it was in breach of the Agreement.  On December 30, 2015, Finjan reiterated to Trustwave that it was in breach of the Agreement, stating that "Trustwave/SingTel is in breach of the license to the Finjan patents and is on notice for lack of compliance."

13.    On June 22, 2016 of 2016, Finjan requested an audit pursuant to Section 3.4 of the Agreement for an accounting of the royalties resulting from Singtel's acquisition of Trustwave.  Section 3.4 of the Agreement states:

> Licensee further agrees to permit its books and records, and to require any of its Affiliates licensed hereunder or OEMs, as the case may be, to permit such of their books and records necessary to determine the royalties paid hereunder, to be examined by an auditor or independent accounting firm mutually selected by Licensor and Licensee from time-to-time during regular business hours, but not more than once a year."

Finjan proposed Connor Consulting to perform the audit, as Connor Consulting came highly recommended, specialized in performing royalty audits, and would cost less than other auditors.  But Trustwave rejected Finjan's proposed and instead suggested either KPMG or Ernst & Young to perform the audit.  Finjan looked into having Ernst & Young perform the audit, but discovered that it had an engagement with Singtel and thus could not perform the audit due to a conflict.  Finjan then retained KPMG, the other auditor suggested by Trustwave, to perform the audit. Pursuant to the Agreement, Finjan initially paid for the audit.  Under Section 3.4,

those audit fees could be shifted to Trustwave if the audit revealed an underpayment of a certain amount.

14.     KPMG attempted to perform its audit, but was denied various information by Trustwave, in violation of Section 3.4 of the Agreement.  Among other things, Trustwave refused to provide sales and technical information on products that Trustwave did not believe were within the scope of the Agreement, unilaterally dictating the terms of KPMG's audit, and violating the Agreement.

15.     Based on Trustwave's definition of what products were within the scope of the agreement, KPMG concluded that an additional $160,524.91 was due under the Agreement.  However, based on KPMG's own analysis of what products were within the scope of the agreement, KPMG determined that an additional $1,526,445.95 was due under the Agreement.  Due to the amount by which Trustwave was in underpayment, it was also required to pay for the audit, in the amount of $50,654.67.  On October 1, 2017, Finjan requested payment of those fees and the cost of the audit, and asked that Trustwave advise whether it would pay by October 18, 2017.  Trustwave declined to pay.

16.     On March 6, 2018, Finjan again reached out to Trustwave to request payment of the fees and the cost of the audit.  Over one week later, Trustwave's counsel responded on March 14 to request a CEO-to-CEO conversation to resolve this dispute.  Finjan promptly agreed to that request, and on March 16 provided

Trustwave's counsel with the direct contact information of Finjan's CEO. To date, Trustwave has not reached out to Finjan or its CEO, despite its request.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction and personal jurisdiction over Trustwave at least by virtue of Section 6.4.1 of the Agreement, which states that "[t]he parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts." This dispute arises of and relates to the Agreement by virtue of Trustwave's breach of various provisions, described above and detailed further below.

18.     The Court also has personal jurisdiction over Trustwave because Plaintiff's claims against each of them arises out of or relate to each of their purposeful contacts with Delaware, and the exercise of personal jurisdiction over each Trustwave in this particular case would comport with principles of fair play and substantial justice.

19.     This Court also has personal jurisdiction over each Trustwave because it has engaged in systematic and continuous contacts with this State and this district by, *inter alia*, regularly conducting and soliciting business in this State and

this district, and deriving substantial revenue from products and/or services provided to persons in this State and this district. For example and without limitation, as noted above, Trustwave is a Delaware corporation. As another example without limitations, Trustwave offers for sale and on information and belief has sold its products and services to residents on this State.

20.     Venue is proper in this Court at least by virtue of Section 6.4.1 of the Agreement, which, in addition to stating that "[t]he parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement," further states that "[t]he parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute."

21.     Venue is further proper in this State because Trustwave is incorporated here, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district, and because Trustwave is subject to this Court's personal jurisdiction with respect to the claims alleged herein.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Failure to Pay Royalties)

22.     Finjan incorporates paragraphs 1 through 21 herein by reference.

23.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration.  Trustwave was acquired by Singtel no later than August 31, 2015.

24.     The Agreement provides that, in the event of an acquisition of Trustwave, at least a ██ royalty on "any products and services other than the Licensed Products and Services and Integrated Licensed Products and Services as actually offered and distributed by the Licensee and their Affiliates at the time of the Transfer ('Existing Business.')" are due.  Accordingly, additional royalties are due under the Agreement.

25.     Further, Finjan commenced an audit pursuant to Section 3.4 of the Agreement.  The independent auditor, KPMG, concluded that at least $1,526,445.95 in additional royalties were owed by Trustwave to Finjan, based on the available information.  Despite Finjan's repeated requests, Trustwave refuses to pay that amount.

26.     Accordingly, Trustwave has breached the Agreement by failing to pay the royalties.

27.     Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

28.     As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in the amount of at least $1,526,445.95

for the period of January 1, 2014 through December 31, 2016, based on the information made available to Finjan.

## SECOND CAUSE OF ACTION

### (Breach of Contract – Noncompliance with Audit)

29.     Finjan incorporates paragraphs 1 through 21 herein by reference.

30.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration.

31.     The Agreement allows for audits of Trustwave to determine whether additional royalties are due.  In the event of such an audit, Trustwave is required to permits its books and records to be examined by an auditor.  Trustwave refused to provide certain information on products that it contends are not within the scope of the Agreement.  But the Agreement does not allow Trustwave to limit what books or records are examined by the auditor.  Accordingly, Trustwave interfered with the requested audit, preventing it to be performed in accordance with Section 3.4 of the Agreement.  Trustwave has violated Section 3.4 of the Agreement, and has thus breached the Agreement.

32.     Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

33.     As a direct and proximate result of Trustwave's breach of the

Agreement, Finjan has suffered damages, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (Breach of Contract – Cost of Audit)

34.     Finjan incorporates paragraphs 1 through 21 herein by reference.

35.     Finjan and Trustwave entered into the Agreement, a valid,

enforceable, and binding contract supported by offer, acceptance, and mutual

consideration.

36.     Section 3.4 of the Agreement states:

> "Licensor shall bear the cost of the audit, provided,
> however, that if the audit reveals an underpayment in
> excess of the greater of ███████████, then Licensee
> shall, within 30 days, reimburse Licensor for the costs of
> such audit."

37.     KPMG, the independent auditor mutually agreed upon by the parties

to perform an audit pursuant to the Agreement, determined that $1,526,445.95 in

additional royalties were owed by Trustwave to Finjan.  This amount is in excess

of the greater of ███████████.  Accordingly, pursuant to Section 3.4 of the

Agreement, Trustwave is required to bear the cost of the audit, $50,654.67.

Trustwave refuses to pay that amount, in violation of the Agreement.  Accordingly,

Trustwave has breached the Agreement by failing to pay for the audit fees.

38.     Finjan has fully performed its obligations under the Agreement to the

extent those obligations were not excused by Trustwave's breaches thereof.

39.     As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in the amount of at least $50,654.67 for the cost of the audit.

## PRAYER FOR RELIEF

WHEREFORE, Finjan respectfully requests entry of judgment as follows:

A.     That Trustwave be ordered to pay to Finjan damages for its breach of the Agreement, in the amount of $1,526,445.95;

B.     That Trustwave be ordered to pay Finjan pre-judgment and post-judgment interest on the damages caused to it by reason of Trustwaves' breach of the Agreement, including interest pursuant to Section 3.3 of the Agreement in the amount of ███ per annum;

C.     That Trustwave be ordered to pay Finjan for the cost of the audit, in the amount of $50,654.67;

D.     That Trustwave be ordered to pay Finjan pre-judgment and post-judgment interest on the cost of the audit;

E.     That Finjan be awarded its Attorneys' fees, including because of Trustwave's willful breach and its blatant lack of response.

## DEMAND FOR JURY TRIAL

Finjan hereby demands a jury trial on all issues so triable.

Dated:  April 4, 2018

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street
17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____

Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

01:23041496.1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-04-006 WCC CCLD |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) | **PUBLIC VERSION** |
| | ) | **EFILED JULY 30, 2018** |
| Defendant. | ) | |

**DEFENDANT TRUSTWAVE HOLDINGS, INC.'S OPENING BRIEF IN**
<u>**SUPPORT OF MOTION TO DISMISS THE COMPLAINT**</u>

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

I.    QUESTION PRESENTED.............................................................................1

II.   INTRODUCTION .....................................................................................1

III. FACTUAL BACKGROUND.....................................................................5

     a.    Finjan is a Patent Assertion Entity ........................................5

     b.    Patent License Agreement.......................................................6

           i.    The Singtel Acquisition Does Not Convert The Agreement to Royalty-Bearing ........................................6

           ii.    License Granted by Finjan to Trustwave ...................7

           iii.    Royalties Owed under Acquisition Clause ..............10

           iv.    The Parties' 408 Communications and the Deficient "Audit" ......................................................12

IV. LEGAL ANALYSIS .............................................................................13

     a.    Motion to Dismiss Standard...................................................13

     b.    Standard for Patent Infringement .........................................14

V.   THE COMPLAINT SHOULD BE DISMISSED .......................................17

     a.    The Singtel Acquisition Did Not Convert The Agreement From Paid-Up................................................................18

     b.    Finjan Fails To Plead Sufficient Facts To Sustain Its Complaint Even If An Argument Can Be Made That The Singtel Acquisition Prompts Royalty Payments For Relevant Products ..........................19

VI. CONCLUSION.......................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
27 A.3d 531 (Del. 2011) ....................................................................13

*Clinton v. Enter. Rent-A-Car Co.*,
977 A.2d 892 (Del. 2009) ..................................................................13

*Eidos Communications, LLC v. Skype Technologies SA*,
686 F. Supp. 2d 465 (D. Del. 2010)...................................................15

*Fifth Market, Inc. v. CME Group, Inc.*,
2009 WL 5966836 (D. Del. 2009)......................................................15

*Finjan Inc. v. Symantec Corp.*,
577 F. Appx. 999 (Fed. Cir. 2014) .....................................................10

*Finjan, Inc. v. Symantec Corp.*,
2013 WL 5302560 (D. Del. Sept. 19, 2013).......................................10

*Judin v. United States*,
110 F.3d 780 (Fed. Cir. 1997) ...........................................................18

*Lagrone v. Am. Mortell Corp.*,
2008 WL 4152677 (Del. Super. Ct. Sept. 4, 2008) ...........................13

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
571 U.S. 191, 134 S. Ct. 843 (2014)............................................15, 21

*Modern Telecom Systems, LLC v. TCL Corporation*,
2017 WL 6524526 (D. Del. 2017)......................................................16

*Narrowstep Inc., v Onstream Media Corp.*,
2010 WL 5422405 (Del. Ch. Sept. 7, 2010).......................................13

*Newborn v. Christiana Psychiatric Servs., P.A.*,
2017 WL 375637 (Del. Super. Jan. 25, 2017).....................................13

*North Star Innovations, Inc. v. Micron Technology, Inc.*,
2017 WL 5501489 (D. Del. 2017)......................................................16

*Ondeo Nalco Co. v. EKA Chemicals, Inc.*,
    2002 WL 1458853 (D. Del. 2002)....................................................15

*Seal-Flex, Inc. v. Athletic Track and Court Const.*,
    172 F.3d 836 (Fed. Cir. 1999) ...........................................................14

*SIPCO, LLC v. Streetline, Inc.*,
    230 F. Supp. 3d 351 (D. Del. 2017)...................................................16

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ...........................................................17

**Rules and Statutes**

35 U.S.C. § 271(a) ................................................................................14

Fed. R. Civ. P.  12(b)(6)...................................................................13, 22

Del. R. Evid. 202(b)(2) .........................................................................14

Del. R. Evid. 408...................................................................................12

Pursuant to Superior Court Civil Rule 12(b)(6), Defendant Trustwave Holdings, Inc. ("Trustwave") respectfully submits this opening brief in support of its Motion to Dismiss the Complaint ("Complaint") filed by Plaintiff Finjan, Inc. ("Finjan").

## I.  QUESTION PRESENTED

Whether Finjan's Complaint adequately pleads claims for breach of contract under the parties' patent license agreement when it fails to identify any Finjan patents, any Trustwave products, or any facts concerning the nature of acquisition that allegedly triggered Trustwave's royalty obligations.

## II.  INTRODUCTION

Finjan's case is a conditional patent infringement contest within a complex patent license dispute.  Finjan's Complaint fails, however, to address any aspect of the underlying patent infringement claim necessary to demonstrate a breach of the parties' patent license and glosses over the contractual conditions and qualifications that must be met to even prompt the patent infringement questions.  Instead, Finjan's Complaint attempts to essentially transform the case into collection of a "debt" founded on an independent "Inspection" (as it is actually characterized in the operative "Agreement" as defined below).  As apparent from the face of the Inspection Report, the Inspection was not independent and admittedly included a revenue count that ignored the most fundamental exceptions, qualifications, and

requirements of the Agreement. The Court would have difficulty assessing that, as Finjan did not even attach the Agreement or the purported Inspection Report to its Complaint. Instead, Finjan alleges in conclusory fashion that there was an audit (again, it was a limited "Inspection") and, on that basis alone, payment is owed on past sales of certain Trustwave products. For purposes of the Court's review, Trustwave attaches hereto as Exhibits A and B, respectively, the Agreement and the Inspection Report.

Finjan's Complaint fails to set forth facts sufficient to plead breach of contract under the terms of the Agreement. Instead, the Complaint merely alleges that (1) a patent license agreement exists between the parties, (2) the "acquisition" of Trustwave by Singapore Telecom ("Singtel"), which it contends triggered royalty obligations under an otherwise fully paid-up license, and (3) an "audit" that reports royalties potentially owed by Trustwave based on sales of an admittedly unidentified set of products made after the acquisition of Trustwave by Singtel. In the Agreement (*see* Section 3.4 "Inspection", which will be addressed in more substance below), however, the Parties certainly did not delegate any decision-making power to the "auditor" nor any authority to exercise judgment in construing the Agreement. Therefore, the "auditor" had no power to adjudicate, and did not adjudicate in any way, whether certain products were covered by the agreement or whether royalties are due and owing on such products; in this regard, the auditor

analyzed no products or patents and made no assessments concerning the applicability of various contractual provisions  To the contrary, and as is customary, the Inspection section confers a limited accounting role to a third-party to verify the volume of specific sales/revenues.

Moreover, the Inspection Report is defective on its face.  In fact, in a footnote, the Report admits that the "auditor" selected products for its accounting of net sales based on its own perusal of Trustwave's website and based on Finjan's input.  *See* Exhibit B, notes 1-2.  In essence, Finjan selected a list of products, the "auditor" created a report showing the revenue generated by such products, and now Finjan claims that it is entitled to royalties based on that revenue without having to even address how the actual terms of the Agreement affect its claim.  Moreover, the Complaint fails to allege anything about what products are potentially royalty-bearing[1], which necessarily requires identification of an

---

[1] Finjan's sole operative allegation is that Singtel acquired Trustwave, automatically converting the otherwise fully paid-up license into a potentially royalty-bearing one.  Trustwave disagrees that the Singtel acquisition triggers a conversion to a potentially royalty-bearing situation.  The transfer/acquisition provisions (*see* Exhibit A at Sections 2.4 and 2.5) are included in the Agreement in the event of a material expansion of the use of the Licensed Patents by way of a transaction.  That type of expansion—incorporating Trustwave's products or technology into the acquirer's products—has not occurred.  Even assuming Finjan were correct on this point, there remain nonetheless indisputable conditions that must exist, which are identified at a high level on the face of the Inspection Report shown in Exhibit B, for royalties to be triggered.  Finjan makes no allegations that any of the occurrences or conditions have been satisfied to prompt royalty payment

applicable, valid patent that purports to cover the product.[2]   The grounds for inspection in Section 3.4 of the Agreement limits the inspection exercise to a "…report to Licensor only with respect to the accuracy of Net Sales calculations and payments made under the Agreement."  *See* Exhibit A at Section 3.4.   As detailed below, the path to a determination of "Net Sales" is a long and contingent one; Finjan's Complaint does not even allege Net Sales, and certainly not on a product–by-product basis.  Finjan's attempt to summarily convert the Inspection Report into a determinative finding reporting a debt owing finds no support in the operative Agreement nor the law and should be rejected by this Court.

Finjan's strategy here is unsurprising.  The allegations in its Complaint notwithstanding, Finjan is not an operating company—it sells no goods or services. Instead, Finjan exists only to monetize its patent portfolio through licensing and litigation.  As it relates to the present dispute, Finjan has been compensated twice— once in the original license to M86 Security, Inc. ("M86") and then again when Trustwave acquired M86.  If Finjan wants to attempt to trigger additional royalties under the Parties' fully paid-up Agreement, it must adequately plead its claim.

---

obligations.  Instead, the allegations made by Finjan are an inappropriate effort to sway this Court with inadmissible and mischaracterized communications between the Parties.

[2] Understandably, this would be based on a pre-filing, good faith analysis.

### III.     FACTUAL BACKGROUND

#### a.     Finjan is a Patent Assertion Entity

Finjan's Complaint suggests that it is an operating company in the cybersecurity industry (*see* Complaint at ¶¶ 4-5). In fact, Finjan's sole purpose is to extract patent license fees from operating companies through litigation or the threat of litigation:

> Licensing and enforcement of the Company's cybersecurity patent portfolio is operated by its wholly-owned subsidiary Finjan, Inc. ("Finjan").
>
> …
>
> Through Finjan, we generate revenues and related cash flows by granting intellectual property licenses for the use of patented technologies that we own. We actively license and enforce our patent rights against unauthorized use of our patented technologies (*i.e.* potential infringers). Many of our license agreements, whether entered into via negotiated transactions (*i.e.* licensing transactions) or through a settlement or court ordered judgment (*i.e.* litigation action) or otherwise, are structured on a fully paid-up basis (often referred to as a "global peace license").
>
> …
>
> We derive substantially all of our income from a relatively small number of patented technologies. As of December 31, 2017, our assets consisted primarily of Finjan's 29 U.S. and 38 international patents…. Finjan's current U.S. issued patents began expiring in 2017, and we currently have 2 U.S. patent applications and 1 international patent application pending as of the date of the filing of this Annual Report on Form 10-K. As new technological advances occur, many of the patented technologies we own through Finjan may become obsolete before they are completely monetized.

*See* Exhibit C (Finjan Holdings, Inc.'s 10-K for FY2017) at pp. 4-5 and 13.

### b. The Patent License Agreement

In March 2012, Trustwave and Finjan entered into an Amended and Restated Patent License Agreement (the "Agreement") when Trustwave acquired M86. *See* Exhibit A (the "Agreement") at first whereas clause. ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

### i. The Singtel Acquisition Did Not Convert The Agreement to Royalty-Bearing

Also in summary fashion, Finjan alleges in Paragraphs 9 and 10 of the Complaint that, pursuant to Sections 1.13, 2.4 and 2.5 of the Agreement, Trustwave's acquisition by a telecommunications company based in Singapore triggered a conversion of the Agreement from fully paid-up to royalty-bearing for

relevant sales. *See* Complaint at ¶¶ 9-10. Without further allegations, Finjan attempts to inject into the proceedings a purported email as somehow ending the issue. *Id.* at ¶ 10. The Agreement is clear that transactions that do not contemplate an expansion of the use of the Licensed Patents do not trigger royalty payments. And, the Agreement is further clear that, in the event of such a qualifying transaction, the conditional royalty payments would be assessed only on sales made other than by Trustwave (as the acquired company). Finjan makes no allegations in support of its conclusory allegation that the Singtel acquisition triggers royalty payments under the Agreement.

### ii.  The License Granted by Finjan to Trustwave

Even more glaring are the pleading deficiencies with respect to Trustwave's alleged royalty obligations under the Agreement. Again, these royalty obligations are only applicable if Finjan is correct concerning the nature of the Singtel acquisition. The scope of the license granted by Finjan to Trustwave is defined in part by the following portion of Section 2.1.1 of the Agreement:



*See* Agreement at Section 2.1.1; *see also* Complaint at ¶ 6.

As such, the scope of the grant to Trustwave is dependent on the definition of "Licensed Products and Services" and "Licensed Patents." Section 1.9 of the Agreement defines "Licensed Products and Services" as follows:



*See* Agreement at Section 1.9 (emphasis added). Thus, to be a product licensed under the Agreement, that product must infringe "at least one valid claim of a Licensed Patent." This definition and its impact on how one would determine whether a product is covered by the Agreement are not addressed in Finjan's Complaint. Furthermore, Finjan's Complaint fails to identify what Trustwave products allegedly satisfy these contractual qualifications or Finjan's good faith belief that each such product infringes a valid Finjan patent claim under the parties' Agreement.[3]

_____

[3] Finjan may attempt to point to product categories identified on Exhibit B and argue that the products are spelled out. Not so. Even a cursory review of the footnotes on Exhibit B which purport to delineate what each category comprises demonstrates a never-ending universe of "potential" SKUs (stock keeping units), many of the references being merely SKU prefixes. Exhibit B provides no guidance as to what the "auditor" actually included in the bloated universe of products. And, to state the obvious, the Inspection Report does not reveal the identification by the "auditor" or Finjan of any applicable patents or applicability/coverage concerning any of the products counted by the "auditor." In other words, the Inspection Report does not claim that Trustwave's products

Section 1.7 of the Agreement defines "Licensed Patents" as follows:



Agreement at Section 1.7. Exhibit A to the Agreement lists six U.S. patents, but Finjan makes no allegations that any valid patent claim covers any Trustwave product. Moreover, on its face, Exhibit A to the Agreement is not a static listing, but rather a fluid one which can increase and decrease. Not only does the definition of Licensed Products require coverage by a valid patent, but, under Section 2.2.4, Trustwave's right to defend a claim for breach of the Agreement with, *inter alia*, the defense of invalidity, is expressly reserved. Finjan's Complaint fails to address how its monetization activities have affected the "Licensed Patents." A review of just the six U.S. patents listed in Exhibit A to the Agreement shows that those six patents have been asserted in 35 different actions in U.S. District Courts and the

infringe Finjan's patent (making them Licensed Products and Services under the Agreement) or that royalties are due on the Trustwave products (which would mean the products are covered by license granted in the Agreement and are not "Existing Business" under the agreement).

United States Patent and Trademark Office.  *See* Exhibit D.  Many of these cases resulted in orders or jury verdicts that impact the scope of the patent claims, ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

For example, Finjan's Complaint fails to disclose that claims of the first patent listed on Exhibit A to the Agreement were found to be invalid in late 2012 (or how that impacts its present claims against Trustwave).  *See Finjan, Inc. v. Symantec Corp.*, 2013 WL 5302560, at *14-18 (D. Del. Sept. 19, 2013), *aff'd*, 577 F. Appx. 999, 1000 (Fed. Cir. 2014).  Likewise, Finjan's Complaint fails to acknowledge that the first three patents listed on Exhibit A to the Agreement expired in 2017.  *Cf.*  Exhibit A at Exhibit A to Exhibit C at p. 11 (where "*" indicates that the Finjan patent expired in 2017).

Simply stated, Finjan's Complaint does not address how these "Licensed Patents" relate to the "Licensed Products and Services"—*i.e.*, which Finjan patents are infringed by which Trustwave products.  On that basis alone, the Complaint should be dismissed.

### iii. Royalties Owed under Acquisition Clause

Although Trustwave disputes that the Singtel acquisition triggered the payment of royalties, the Agreement repeatedly clarifies that, even in such cases,

royalties are never triggered for Licensed Products or Services that are attributable to "Existing Business."  *See, e.g.,* Agreement at Section 2.5.

"Existing Business" is defined in Section 2.4 of the Agreement as 

 *Id.* at Section 2.4.  The Agreement repeatedly clarifies that sales attributable to "Existing Business" are not subject to royalty obligations under Section 3.  The definition of "Net Sales" which is used in the royalty calculation under Section 3 (and the exclusive metric to be inspected by the auditor under Section 3.4) states:



*Id*. at Section 1.9 (emphasis added).  Likewise, Section 3 confirms that royalties are not owed on "Existing Business":



*Id.* at Section 3.2 (emphasis added).  Finjan's Complaint fails to address how the "Existing Business" limitation affects the royalties sought under its breach of

contract claim.  Likewise, the "auditor" notes in the Inspection Report that it could not account for the Existing Business exception (improperly blaming Trustwave).

iv.    **The Parties' Rule 408 Communications and the Deficient "Audit"**

Finjan's Complaint references the Inspection Report that was done at Finjan's request under Section 3.4 of the Agreement.  *Id*. at ¶¶ 13-15.  Finjan's Complaint does not disclose that the "audit" was completely deficient because the "auditor" could not determine which products were subject to royalty obligations. In fact, during the "audit," Trustwave's position was that no products were subject to royalty obligations.   Instead, without providing any analysis of the products allegedly covered by the Agreement (and, certainly no mention of any patents or scientific analyses), the "auditor," at Finjan's direction[4], assumed all products under all product categories were subject to royalty obligations.  *Id*. at FN 2.  The "auditor" did not conduct any legal analysis in the Inspection Report as to infringement of Finjan's patents by Trustwave's products or whether the royalties were owed under the parties' Agreement.  Rather, the Inspection Report was merely a calculation of ███ against product sales that Finjan instructed the "auditor" to review.  On its face, the "audit" was not independent nor does it

---

[4] Finjan exacerbates its deficiencies with mischaracterized recounts of settlement communications in an effort to suggest liability.  *See*, *e.g.*, Complaint at ¶¶ 10-12 and 16.  These communications are in any event clearly inadmissible to prove liability under Rule 408 of the Delaware Uniform Rules of Evidence.

purport to report anything other than a hypothetical maximum universe of potentially relevant products and the resulting sales and royalties.

## IV.     LEGAL ANALYSIS

### a.     Motion to Dismiss Standard

Under Rule 12(b)(6), the Complaint must be dismissed if it appears "with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief." *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) (internal quotation omitted). Although a court must "accept all well pleaded factual allegations as true" and "draw all reasonable inferences in favor of the non-moving party" on a motion to dismiss, *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011), it is not required to credit "inferences or factual conclusions unsupported by specific allegations of fact."  *Narrowstep Inc., v Onstream Media Corp*., 2010 WL 5422405 at *5 (Del. Ch. Sept. 7, 2010); *see also Lagrone v. Am. Mortell Corp*., 2008 WL 4152677 at *4 (Del. Super. Ct. Sept. 4, 2008).

In addition to the allegations of the Complaint, the Court may consider extrinsic documents that are "integral to a plaintiff's claim and . . . incorporated into the complaint by reference." *Newborn v. Christiana Psychiatric Servs., P.A.*, 2017 WL 375637, at *2 (Del. Super. Jan. 25, 2017).  The Court "may

also take judicial notice of matters that are not subject to reasonable dispute." *Id.*;

*see* Del. R. Evid. 202(b)(2).

### b. Standard for Patent Infringement

A patent infringement analysis begins with the claims at the end of the

patent:

> The patent claims are the numbered sentences at the end of each
> patent. The claims are important because it is the words of the claims
> that define what a patent covers. The figures and text in the rest of the
> patent provide a description and/or examples of the invention and
> provide a context for the claims, but it is the claims that define the
> breadth of the patent's coverage.
>
> …
>
> A claim sets forth, in words, a set of requirements. Each claim sets
> forth its requirements in a single sentence. If a device or a method
> satisfies each of these requirements, then it is covered by the claim.

The Federal Circuit Bar Association Model Jury Instructions at pp. 12-13 (2016).

The acts constituting patent infringement are defined by 35 U.S.C. § 271(a):

"whoever without authority makes, uses, offers to sell, or sells any patented

invention, within the United States or imports into the United States any patented

invention during the term of the patent therefor, infringes the patent."

"To show infringement of a patent, a patentee must supply sufficient

evidence to prove that the accused product or process contains, either literally or

under the doctrine of equivalents, every limitation of the properly construed claim."

*Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir.

1999). The patentee bears the burden of proving infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 134 S. Ct. 843, 849-50 (2014) ("It is well established that the burden of proving infringement generally rests upon the patentee.").

The pleading standard for alleging infringement of a patent in a U.S. District Court requires at a minimum that the patentee identify the patent allegedly infringed and the accused product alleged to infringe the patent. *See Fifth Market, Inc. v. CME Group, Inc.,* 2009 WL 5966836,*1-*2 (D. Del. 2009) (granting motion to dismiss infringement complaint because it failed to identify any specific accused products); *Ondeo Nalco Co. v. EKA Chemicals, Inc.*, 2002 WL 1458853, *1 (D. Del. 2002) (granting Rule 12(b)(6) motion to dismiss patentee's infringement counterclaim because its pleadings were "too vague to provide [accused infringer] with fair notice of which products are accused of infringing defendant's patents); *Eidos Communications, LLC v. Skype Technologies SA*, 686 F. Supp. 2d 465, 466-69 (D. Del. 2010) (ordering patentee to amend its complaint and provide a more definite statement of the products or service it was accusing of infringement and ruling that complaint's identification of the accused products as "communication system products and/or methodologies that infringe one or more claims" was insufficient).

District courts generally require even more at the pleading stage, insisting that the patentee identify the specific patent claims allegedly infringed and also describe how the accused product embodies the limitations of such claims. *See*, *e.g.*, *Modern Telecom Systems, LLC v. TCL Corporation*, 2017 WL 6524526, *2-*4 (D. Del. 2017) (Magistrate Judge recommending dismissal of direct infringement claims with leave to amend and instructing that to sufficiently plead a count of patent infringement a patentee must specifically plead facts to show how all the limitations of at least one asserted claim of the patent are met by the accused product—"[t]here needs to be some facts alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting, in a take-my-word-for-it fashion, that it is so") (emphasis in original); *North Star Innovations, Inc. v. Micron Technology, Inc.*, 2017 WL 5501489, *1-*3 (D. Del. 2017) ("In order to adequately allege direct infringement here, Plaintiff needs to have pleaded facts that plausibly indicate that Defendant's accused products practice each of the limitations found in the two asserted claims (which, here, are apparatus claims). After all, if it is not plausible, after reading a complaint, that the accused infringer's product reads on a limitation in the one asserted claim from a patent-in-suit, then it is not plausible that the accused infringer actually infringes the patent claim (or the patent).");  *SIPCO, LLC v. Streetline, Inc*., 230 F. Supp. 3d 351, 353 (D. Del. 2017) ("Right now, Plaintiff makes two factual

allegations. One, here are ten patents we own. Two, you sell some products, which we have identified. Plaintiff makes a legal conclusion, to wit, the sales of your products infringe ou[r] patents. This is insufficient to plausibly allege patent infringement.").

## V.     THE COMPLAINT SHOULD BE DISMISSED

Finjan's Complaint pleads three causes of action all flowing from the deficient, conclusory set of allegations that a relevant acquisition occurred, an inspection was conducted, and Trustwave should therefore pay.  All three causes of action should be dismissed for failure to state a claim because Finjan does not plead the requisite facts necessary to establish a breach of the parties' Agreement.[5]

_____

[5] Plaintiffs in patent cases often make allegations on information and belief or the like because the allegedly infringing products are software-related or otherwise not subject to analysis without the provision of information or access from the defendant.  No matter how the Court construes the Agreement, there can be no argument that, in order for royalties to be prompted, an eligible Trustwave product or service must be covered by a valid Finjan patent.  Well before Finjan filed the Complaint, Trustwave offered Finjan the opportunity to conduct a scientific review of any product Finjan would identify as being covered by a valid patent in order to try to put this matter to rest.  Finjan was not interested, instead attempting to fashion its case as somehow already adjudicated by way of the Inspection.  Any claim by Finjan that it cannot specifically identify, based on a scientific analysis, products that are covered by a particular patent without discovery or the like should be rejected.  *See View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (affirming an award of attorney's fees and stating "[b]efore filing [claims] of patent infringement, Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least

### a. The Singtel Acquisition Did Not Convert The Agreement From Paid-Up

All three counts should be dismissed as the Agreement on its face is a fully paid-up license agreement. Throughout the Agreement, including in Sections alleged by Finjan in the Complaint as governing, it is clear that even in the event of a qualifying transaction, Trustwave's continued operations are not subject to alteration of its paid-up status. Only relevant sales of the acquirer and its respective affiliates are in play, and then only to the extent they take an express license and practice the Licensed Patents. Finjan alleges nothing in its Complaint to support a claim that the Singtel acquisition is a qualifying event to convert the Agreement from a fully paid-up license to a royalty-bearing one. As such, each of Finjan's three counts fails.

---

one claim of each patent so asserted" and noting that the deficient investigation relied on the accused infringer's advertising instead of analyzing the actual products); *see also Judin v. United States*, 110 F.3d 780, 785 (Fed. Cir. 1997) (finding that the district court abused its discretion by not awarding fees under Rule 11 and stating that "[n]o adequate explanation was offered for why [the patentee and its counsel] failed to obtain, or attempted to obtain, a sample of the accused device from the Postal Service or a vendor so that its actual design and functioning could be compared with the claims of the patent. Under these circumstances, there is no doubt that [the patentee] failed to meet the minimum standards imposed by Rule 11, and his attorney acted unreasonably in giving blind deference to his client and assuming his client had knowledge not disclosed to the attorney.")

### b. Finjan Fails To Plead Sufficient Facts To Sustain Its Complaint Even If An Argument Can Be Made That The Singtel Acquisition Prompts Royalty Payments For Relevant Products

Even if the Court should find that Finjan has adequately pleaded the Singtel acquisition as a potentially qualifying event to convert the Agreement to royalty-bearing as to relevant Trustwave products, Finjan's Complaint remains woefully deficient. Finjan alleges breach of contract for failure to pay royalties on sales of Trustwave products covered by the parties' Agreement, but Finjan does so in a conclusory fashion that fails to account for how the Agreement defines such products. Even if, *arguendo,* the Singtel acquisition is a qualifying transaction requiring Trustwave to pay royalties on any products, any potentially relevant product must infringe a valid claim of a Finjan Licensed Patent (*i.e.,* one of the patents detailed in Exhibit A to the Agreement and related patents). Thus, to sufficiently allege breach of contract under the best light for Finjan, Finjan must sufficiently plead infringement of its Licensed Patents by Trustwave's products. Finjan conspicuously sidesteps any attempt to comply with this requirement.

Finjan's Complaint alleges two facts to support its first cause of action. First, that the Singtel acquisition of Trustwave requires a royalty payment on "any products and services other than the Licensed Products and Services and Integrated Licensed Products and Services as actually offered and distributed by the Licensee and their Affiliates at the time of the Transfer ('Existing Business.')" Complaint at

¶ 24.    And, second, that the audit "concluded that at least $1,526,445.95 in additional royalties were owed by Trustwave to Finjan, based on the available information." Complaint at ¶ 25. Both of these statements avoid the issue of what products are allegedly covered by the parties' Agreement.

Finjan's failure to identify the "Licensed Products and Services"—*i.e.*, Trustwave products "whose manufacture, use or sale would infringe, contribute to, or induce the infringement of at least one valid claim of a Licensed Patent"—is a fatal deficiency. The only way Trustwave could have conceivably breached the Agreement by failing to pay royalties (or, in any respect to the Inspection) is if relevant Trustwave products infringe at least one valid claim of a Licensed Patent and are not "Existing Business" under the Agreement. Despite these requirements, Finjan's Complaint fails to identify any Trustwave products or identify any valid patent claims that are infringed by such Trustwave products, or provide any explanation for why such Trustwave products should not be considered "Existing Business." Not a single patent, patent claim, or Trustwave product is identified, nor does Finjan even allege (as it cannot under applicable law) that it has conducted any patent infringement analysis of any Licensed Patent as it relates to any relevant product. Moreover, the "Existing Business" exception is wholly ignored (other than in the Inspection Report, where the "auditor" concedes that it undertook no

review of the issue and treated all counted SKUs as not qualifying as "Existing Business").

To the extent the Court does not dismiss the Complaint with prejudice and permits Finjan leave to file an amended complaint, Finjan should be required to allege at a minimum: (1) each and every SKU it contends is royalty-bearing and the corresponding sales metrics as covered by the Inspection Report, (2) for each such SKU, how the limitations of at least one valid Licensed Patent are met by each such SKU, (3) that it conducted and can evidence a pre-filing, reasoned analysis of each accused SKU as against at least one valid Licensed Patent, (4) and facts supporting that each SKU is not covered by the Existing Business exception. This information is in Finjan's possession and should have been provided in Finjan's Complaint. *See Medtronic,* 134 S. Ct. at 849-50 (2014) ("A complex patent can contain many pages of claims and limitations. A patent holder is in a better position than an alleged infringer to know, and to be able to point out, just where, how, and why a product (or process) infringes a claim of that patent."). This information should have been provided long ago in order to conduct a proper inspection under the parties' Agreement, but in the least should be provided in Finjan's Complaint.

## VI.     CONCLUSION

Trustwave respectfully requests that Finjan's Complaint be dismissed for failure to state a claim under Rule 12(b)(6).[6]

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:

John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200

Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600

June 29, 2018

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

---

[6] Finjan's Complaint includes a demand for jury trial (*see* Complaint at p. 13) notwithstanding that  Section 6.4.2 of the parties' Agreement provides: "EACH OF THE PARTIES HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE IT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT."  Finjan's Jury Demand should, therefore, be stricken.

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2018 the foregoing documents were served upon all counsel of record via File & Serve*Xpress*.

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

EFiled:  Sep 07 2018 03:44PM EDT
Transaction ID 62426967
Case No. N18C-04-006 WCC CCLD

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,

        Plaintiff,

v.

TRUSTWAVE HOLDINGS, INC.,

        Defendant.

C.A. No. N18C-04-006-WCC (CCLD)

PUBLIC VERSION

## ANSWERING BRIEF OF FINJAN, INC. IN OPPOSITION TO TRUSTWAVE HOLDINGS, INC.'S MOTION TO DISMISS

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400


Dated:  July 30, 2018

**YOUNG CONAWAY
STARGATT & TAYLOR LLP**

Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

# TABLE OF CONTENTS

Page

NATURE OF PROCEEDINGS ................................................................................. 1

COUNTERSTATEMENT OF FACTS ...................................................................... 5

QUESTION PRESENTED ........................................................................................ 8

ARGUMENT ............................................................................................................ 9

    I.    Legal Standards ................................................................................. 9

        A.    12(b)(6) Motion to Dismiss ................................................... 9

        B.    Breach of Contract under Delaware Law ............................ 11

        C.    Federal Pleading Standards ................................................. 12

    II.    Finjan's Complaint States a Claim for Breach of Contract for Trustwave's Failure to Pay Royalties, for Trustwave's Noncompliance with a Contractually-Agreed-Upon Audit, and for Trustwave's Failure to Reimburse Finjan for the Costs of the Audit ........................................................................................... 14

        A.    The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Failure to Pay Royalties ............................................................................... 14

        B.    The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Noncompliance with the Audit ................................................ 17

        C.    The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Failure to Reimburse Finjan for the Cost of the Contractually-Permitted Audit ........................................................................ 19

    III.    The "Standard for Patent Infringement" Is Inapplicable to Finjan's Breach of Contract Action ................................................. 22

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*In re Benzene Litig.*,
    2007 WL 625054 (Del. Super. Feb. 26, 2007) ....................................................9

*Cambium Ltd. v. Trilantic Capital Partners III, L.P.*,
    36 A.3d 348 (Del. 2012) ................................................................................13, 22

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
    27 A.3d 531 (Del. 2011) .........................................................................*passim*

*Costello v. Cording*,
    91 A.2d 182 (Del. 1952) ...................................................................................11

*Doe 30's Mother v. Bradley*,
    58 A.3d 429 (Del. Super. 2012) .........................................................................9

*Furman v. Del. Dept. of Transportation*,
    30 A.3d 771 (Del. 2011) ...................................................................................10

*Interim Healthcare, Inc. v. Spherion Corp.*,
    884 A.2d 513 (Del. Super. 2005), aff'd, 886 A.2d 1278 (Del. 2005) ..........11, 14

*Klein v. Sunbeam Corp.*,
    94 A.2d 385 (Del. 1952) ................................................................................6, 19

*Markow v. Synageva Biopharma Corp.*,
    2016 WL 1613419 (Del. Super. Mar. 3, 2016)............................................11, 22

*NewYork.Com Internet Holdings, Inc. v. Entm't Benefits Group, LLC*,
    2015 WL 4126653 (Del. Ch. July 8, 2015) ........................................................9

*VLIW Tech., Inc. v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) ............................................................................10, 12

*Winshall v. Viacom Intern., Inc.*,
    76 A.3d 808 (Del. 2013) ..............................................................................13, 22

**STATUTES**

28 U.S.C. § 1338(a) ...........................................................................3

28 U.S.C. § 1446 .............................................................................22

**RULES**

Super. Ct. Civ. R. 8 .....................................................................10, 11

Super. Ct. Civ. R. 12(b)(1) .................................................................23

Super. Ct. Civ. R. 12(b)(6).............................................................*passim*

Plaintiff Finjan, Inc. ("Finjan" or "Plaintiff") hereby opposes the Motion to Dismiss of Defendant Trustwave Holdings, Inc. ("Trustwave" or "Defendant"). In opposition thereto, Finjan respectfully states as follows:

## NATURE OF PROCEEDINGS

Finjan filed its Complaint on April 4, 2018, alleging three causes of action, each one articulating a separate basis by which Trustwave breached an Amended and Restated Patent Licensing Agreement (the "Agreement") between Finjan and Trustwave. (Dkt. No. 1) Finjan's Complaint seeks over $1.5 million, plus pre- and post-judgment interest and attorneys' fees. (*Id.*)

The Complaint was served by the Sheriff on Trustwave's registered agent on April 19, 2018. (Dkt. No. 4) Trustwave requested an extension of time to respond, and the parties stipulated to the date—June 8, 2018—by which Trustwave would move, answer, or otherwise plead in response to the Complaint. (Dkt. Nos. 6, 7) On June 8, 2018, Trustwave moved to dismiss pursuant to Superior Court Civil Rule 12(b)(6) but failed to file its opening brief. (Dkt. Nos. 8, 10) Finjan pressed Trustwave several times for its missing opening brief, and in response, on June 15, 2018, Trustwave sought a retroactive extension of an additional 21 days beyond the agreed-upon date of June 8 to file its opening brief. (Dkt. No. 9) On June 19, 2018, the Court granted Trustwave's request. (Dkt. No. 12) Trustwave finally

filed its Opening Brief on June 29, 2018.  (Dkt. No. 17)  This is Finjan's

Answering Brief in Opposition to Trustwave's Motion to Dismiss.

In its Opening Brief, Trustwave agrees or does not dispute:

1) that a valid and enforceable agreement exists between the parties;

2) that Trustwave has failed to pay the royalties sought by Finjan's first cause of action;

3) that Trustwave has failed to comply with the requested audit as pleaded in Finjan's second cause of action; and

4) that Trustwave has failed to pay the costs of the audit as pleaded in Finjan's third cause of action.

Despite all of this, Trustwave argues that Finjan has failed to state a claim for which relief can be granted, because, according to Trustwave, Finjan's allegations are "summary," "conclusory," "deficient," and/or "inadmissible," and do not meet the federal standard for pleading patent infringement (though Trustwave does not explain how or why federal precedent is binding on this Court for this breach of contract case).  Putting aside Trustwave's improper invocation of federal patent law and the pleading requirements thereto, Trustwave's argument amounts to many fact-dependent defenses, most of which rely on direct contradictions of the detailed facts alleged in Finjan's Complaint.  In short, by explaining in detail why it believes Finjan is not entitled to any relief, Trustwave's

arguments make clear that Trustwave is on notice of precisely what Finjan seeks in its Complaint. Trustwave's brief effectively supports Finjan's case as to why the Complaint is legally sufficient, and why Trustwave's motion should be denied.

Finjan did not file a lawsuit alleging patent infringement, nor could in do so in this Court. *See* 28 U.S.C. § 1338(a) ("The district courts shall have exclusive jurisdiction or any civil action arising under any Act of Congress relating to patents . . . ."). Trustwave fails to show why Finjan must allege patent infringement in a simple breach of contract case. Trustwave spills more (virtual) ink explaining the (inapplicable) "Standard for Patent Infringement" than it does to acknowledge the well-established standard for a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6) or the required elements for pleading breach of contract. Applying the correct standard here leads to the inexorable conclusion that Finjan's Complaint must survive Trustwave's motion.

Trustwave has appended to its Opening Brief copies of the Agreement (Dkt. No. 17 at Exhibit A) and the Finjan Royalty Inspection Report of Trustwave (the "Royalty Inspection Report") (Dkt. No. 17 at Exhibit B), insinuating that Finjan has sought to distance itself from these documents (Op. Br. at 1-2), and claiming that the plain language of these documents may be interpreted, as a matter of law, to foreclose Finjan's entitlement to any relief. *Id.* But neither proposition is true. First, Finjan embraces both documents, because they form the basis for Finjan's

claims against Trustwave.  (*See* Compl. at ¶¶ 23-26, 30-31, 35-37.)  Second, on a motion to dismiss, the Court must accept as true all well-pled factual allegations, and draw all reasonable inferences in the non-moving party's favor.  Trustwave's argument is premised on urging the Court to reject Finjan's well-pled factual allegations, and to draw inferences *against* Finjan.  That is not the standard, and Trustwave's attempt to argue otherwise should be rejected.

For these reasons, as set forth in more detail below, Finjan respectfully requests that the Court deny Trustwave's Motion to Dismiss.

## COUNTERSTATEMENT OF FACTS

As set forth in the Complaint, Finjan and Trustwave entered into the Agreement, "which is a binding contract supported by offer, acceptance, and mutual consideration." Compl. ¶ 6. The Agreement "SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE." Dkt. No. 17, Ex. A (Agreement) § 6.6 (capitalization in original). The Agreement contains a Delaware venue provision specifically noting that the parties "irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts." *Id.* at § 6.4.1.

The Agreement granted Trustwave per se a license to certain Finjan patents. *Id.* However, Section 2.5 of the Agreement entitled Finjan to certain royalties in the event Trustwave was acquired. Compl. ¶ 7.

In 2015, Trustwave informed Finjan that it was in the process of being acquired by Singtel. Compl. ¶ 9. Specifically, in a July 22, 2015 email, Trustwave informed Finjan that it agreed that Section 2.5 applied to the acquisition of Trustwave by Singtel. Compl. ¶ 10. In the fall of 2015, Trustwave and Finjan

were nearing agreement regarding royalties, when Trustwave, without warning, stopped responding to Finjan's emails, refusing to negotiate with Finjan any further. Compl. ¶ 11. Finjan informed Trustwave on November 16, 2015, and December 30, 2015, that Trustwave was in breach of the Agreement. Compl. ¶ 12.

Six months later, on June 22, 2016, Finjan requested an audit pursuant to Section 3.4 of the Agreement.[1] Compl. ¶ 13. The language of Section 3.4 gives the mutually agreed-upon auditor the ability to "determine the royalties paid hereunder." Compl. ¶ 13. Finjan proposed an auditor who specialized in intellectual property audits; however, Trustwave rejected Finjan's choice and insisted on an auditor from one of the "big four" accounting firms. Trustwave suggested KPMG as a potential independent auditor. Compl. ¶ 13. Finjan agreed, and pursuant to Section 3.4 of the Agreement, paid for that independent audit. Compl. ¶ 13.

---

[1] Trustwave complains about Finjan's recitation of the sequence of events that lead to the filing of Finjan's Complaint to vindicate its rights against Trustwave as "mischaracterized," and "clearly inadmissible." Op. Br. at 12, fn. 4. That Trustwave does not agree with the statements in Paragraphs 10, 11, 12 and 16 of the Complaint is irrelevant on a motion to dismiss. Trustwave has invoked the Rule 12(b)(6) standard, which entitles Finjan to the assumption that these allegations—and all reasonable inferences flowing from them—are true. On a motion to dismiss, it is also irrelevant that Trustwave believes these allegations to be inadmissible at trial. *See Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del. 1952). Trustwave has cited no case—because there is none—to the contrary.

KPMG attempted to perform its audit, but, in violation of Section 3.4 of the Agreement, Trustwave refused to provide KPMG information, including certain sales and technical information. Compl. ¶ 14. The auditor made two calculations of the amount owed by Trustwave: First, using Trustwave's definition of what products were within the scope of the Agreement, KPMG concluded that an additional $160,524.91 was due. Second, based on KPMG's analysis and with input from Finjan, KPMG determined that $1,526,445.95 was due. *See* Compl. ¶ 15; Dkt. No. 17, Ex. B. Further, due to the amount of the underpayment, Trustwave was also required under the Agreement to reimburse Finjan for the audit, in the amount of $50,654.67. Compl. ¶ 15. Trustwave refused to pay any of it. Compl. ¶ 15.

On March 6, 2018, Finjan reiterated its request for Trustwave to pay the amount determined by KPMG. Compl. ¶ 16. Trustwave instead suggested a "CEO-to-CEO conversation," to which Finjan promptly agreed and provided its CEO's contact information. Compl. ¶ 16. Trustwave never reached out to Finjan's CEO. Compl. ¶ 16. This lawsuit followed.

## QUESTION PRESENTED

Whether Finjan's Complaint, which alleges breaches of contract by Trustwave for 1) failure to pay royalties required under the parties' Agreement; 2) noncompliance with the Agreement for failing to provide information for the audit; and 3) failure to reimburse Finjan for the costs of the audit, is susceptible to dismissal, where it more than complies with the applicable Delaware law, but where Trustwave argues it is subject to Trustwave's interpretation of the federal standard for alleging patent infringement.

# ARGUMENT

## I. Legal Standards

### A. 12(b)(6) Motion to Dismiss

In Delaware, motions to dismiss pursuant to Rule 12(b)(6) are governed by a "reasonable conceivability" pleading standard. *NewYork.Com Internet Holdings, Inc. v. Entm't Benefits Group, LLC*, 2015 WL 4126653, *5 (Del. Ch. July 8, 2015). Under this standard, the court "should accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as well-pleaded if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion to dismiss unless the plaintiff could not recover under any reasonably conceivable set of circumstances. . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *see also Doe 30's Mother v. Bradley*, 58 A.3d 429, 443 (Del. Super. 2012) ("When considering a motion to dismiss, the Court must read the complaint generously, accept all of the well-plead allegations contained therein as true, and draw all reasonable inferences in a light most favorable to the non-moving party.") (internal quotations and citations omitted). Plaintiff's burden is "minimal." *Cent. Mortg. Co.*, 27 A.3d at 536. Dismissal is inappropriate where there is even a "possibility of recovery." *NewYork.Com Internet Holdings, Inc.*, 2015 WL 4126653, at *5; *see also In re Benzene Litig.*, 2007 WL 625054 at *5

(Del. Super. Feb. 26, 2007) *quoting Costello v. Cording*, 91 A.2d 182, 184 (Del. 1952) ("[A]s then Judge Terry recognized in one of the first decisions to interpret Delaware's newly adopted Rule 8: 'the pleader is not required in a statement of claim to narrate facts sufficient to constitute a cause of action, nor is he required to spell out the definite verbiage of the wrongs complained of if the missing elements, or element, follow, or may reasonably be inferred from the facts that are alleged.' The Court must view the complaint as an integrated document—all of the allegations must be considered when determining whether the complaint provides fair notice of the claims.").

On a 12(b)(6) motion, the Court may consider documents integral to and referenced in the pleadings without converting a motion to dismiss to a motion for summary judgment. *Furman v. Del. Dept. of Transportation*, 30 A.3d 771, 774 (Del. 2011) ("We held that there were only two exceptions to the general rule prohibiting consideration of such extrinsic material on a motion to dismiss: (1) where an extrinsic document is integral to a plaintiff's claim and is incorporated into the complaint by reference, and (ii) where the document is not being relied upon to provide the truth of its contents.") (internal citations omitted).  But, it is not within the scope of a 12(b)(6) motion for the Court to make factual findings or to determine the admissibility of any fact or circumstance pleaded in the Complaint. *See VLIW Tech.*, 840 A.2d at 611, *quoting Klein*, 94 A.2d at391 ("A

complaint that gives fair notice 'shifts to the defendant the burden to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses.'  Accordingly, under Delaware's judicial system of notice pleading, a plaintiff need not plead evidence.  Rather, the plaintiff need only allege facts that, if true, state a claim upon which relief can be granted."); *Costello v. Cording*, 91 A.2d 182, 184 (Del. 1952) ("The theory in part in adopting our new rules of civil procedure was to discard the niceties and technicalities of pleading, that theretofore prevailed, by doing away with the troublesome burden of revealing the facts and settling the issues in dispute.  These functions are now disposed of by the deposition-discovery procedure and pre-trial hearings.  Thus, the underlying purpose of Rule 8(a) is to give the adverse party a clear indication of the precise nature of the pleader's claim in simple, plain, and understandable language.").

### B.    Breach of Contract under Delaware Law

"Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages." *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005), aff'd, 886 A.2d 1278 (Del. 2005).  "To survive a motion to dismiss for failure to state a breach of contract claim, a plaintiff must allege (1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) resulting damage." *Markow v. Synageva Biopharma Corp.*, 2016 WL 1613419, at *4 (Del.

Super. Mar. 3, 2016) (citing *VLIW Tech., Inc. v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). While this Court may interpret the terms of contract on a motion to dismiss, dismissal is proper only if "allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law," and "if the defendants' interpretation is the *only* reasonable construction as a matter of law." *VLIW Tech.*, 840 A.2d at 612 (citing *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) and *Vanderbilt Income and Growth Associates, L.L.C. v. Arvida/JMG Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)) (emphasis in original).

### C.      Federal Pleading Standards

While Trustwave attempts to morph Finjan's breach of contract case into a patent infringement case, it has not cited a single case applying the "Standard for Patent Infringement" to modify the elements required to be plead for a breach of contract case in Delaware state court, or a single case requiring a plaintiff to plead patent infringement for a breach of contract case in Delaware state court. Federal pleading standards are inapplicable unless the Delaware Supreme Court rules otherwise. *See, e.g., Cent. Mortg. Co.*, 27 A.3d at 537 ("Since the Supreme Court decided *Twombly* in 2007, various members of the Court of Chancery have cited the *Twombly-Iqbal* 'plausibility' standard with approval when adjudicating motions to dismiss. We have not had occasion yet to address the impact, if any,

that the United States Supreme Court's holdings in *Twombly* and *Iqbal* should have on the Delaware standard. [. . .]  We decline to use this case as the vehicle to address whether the *Twombly-Iqbal* holdings affect our governing standard, considering that the parties have not fully and fairly litigated the issue before either the Vice Chancellor or this Court.  Instead, we emphasize that, until this Court decides otherwise or a change is duly effected through the Civil Rules process, the governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"); *Winshall v. Viacom Intern., Inc.*, 76 A.3d 808, 813 fn 12 (Del. 2013); *Cambium Ltd. v. Trilantic Capital Partners III, L.P.*, 36 A.3d 348 (Del. 2012).[2]

---

[2] Trustwave's attempt at invoking Rule 11 for a purported failure to adhere to inapplicable federal pleading standards is without merit, to say the least.

## II. Finjan's Complaint States a Claim for Breach of Contract for Trustwave's Failure to Pay Royalties, for Trustwave's Noncompliance with a Contractually-Agreed-Upon Audit, and for Trustwave's Failure to Reimburse Finjan for the Costs of the Audit

The parties contracted that the Agreement "shall be governed by and construed in accordance with the laws of the State of Delaware *applicable to contracts* made and performed in such state." Dkt. No. 17, Ex. A (Agreement) § 6.6 (emphasis supplied). Finjan has alleged three breaches of contract by Trustwave that entitle Finjan to damages. For each of these three breaches of contract, the Complaint sets forth the required elements under "the laws of the State of Delaware applicable to contracts made and performed in such state":

> (1) a contractual obligation;
> (2) a breach of that obligation; and
> (3) resulting damages.

*Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005), aff'd, 886 A.2d 1278 (Del. 2005). Contrary to Trustwave's contentions, Delaware contract law does not contemplate a heightened pleading standard by which federal patent law applies.

### A. The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Failure to Pay Royalties

The Complaint more than meets the "reasonable conceivability" standard for its breach of contract claim against Trustwave for failing to pay royalties required under the Agreement. The language of the Complaint is clear, and assuming all

facts as true, and drawing all inferences in Plaintiff's favor, the Complaint entitles Finjan to the relief it has sought.

The Complaint alleges that Finjan and Trustwave entered into the Agreement. Compl. at ¶ 24. The Complaint alleges that the Agreement permits an auditor to determine what additional royalties, if any, are owed in the event of an acquisition. Compl. ¶¶ 24-25. The Complaint alleges that KPMG "concluded that at least $1,526,445.95 in additional royalties were owed by Trustwave to Finjan, based on available information." Compl. ¶ 25. The Complaint alleges that Trustwave continues to refuse to pay those owed royalties. Compl. ¶ 25. Finally, the Complaint alleges damages as a result of Trustwave's breach. Specifically, as alleged in Finjan's complaint, as determined by KPMG (the auditor selected by Trustwave), Finjan "has suffered damages, in the amount of at least $1,526,445.95 for the period of January 1, 2014 through December 31, 2016, based on the information made available to Finjan." Compl. ¶ 28.

Trustwave does not dispute the existence of the Agreement. Op. Br. at 6. But, Trustwave disputes the allegations pleaded in Paragraphs 24-25 of the Complaint, contending instead that "the Parties certainly did not delegate any decision making power to the 'auditor'" and that "the Inspection section confers a limited accounting role to a third-party to verify the volume of specific sales/revenues." Op. Br. at 2-3. Trustwave disputes that KPMG "had [the] power

to adjudicate" and "did not adjudicate in any way, whether certain products were covered by the agreement or whether royalties are due and owing on such products[.]" Op. Br. at 2. And, Trustwave claims—in contradiction of the Complaint and the Royalty Inspection Report, attached as Exhibit B to its Opening Brief[3]—that KPMG "analyzed no products or patents and made no assessments concerning the applicability of various contractual provisions."[4] Op. Br. at 3; *see also* Op. Br. at 12. On a motion to dismiss, Trustwave cannot prevail by contradicting the factual allegations pleaded in the Complaint. *Cent. Mortg. Co.*, 27 A.3d at 535. And, for those contentions that are anything less than a direct contradiction of the Complaint, it is not the law that Trustwave—rather than Finjan—is entitled to inferences drawn in its favor. *Id.*. If Trustwave wanted to deny and contradict each and every allegation in the Complaint (other than what it describes as the "sole operative allegation" (see Op. Br. at 3, fn. 1) it should have filed an Answer articulating its denials.

---

[3] The Royalty Inspection Report notes that "KPMG identified royalty bearing products ***based on its own web research*** as well as direction from Finajn [sic]." Dkt. No. 17, Ex. B. at fn. 2 (emphasis added).

[4] Trustwave's claim that it "offered Finjan the opportunity to conduct a scientific review of any product Finjan would identify as being covered by a valid patent" is disingenuous, as Trustwave only made this offer after the conclusion of the audit, after it spend months hiding and refusing to provide information to KPMG.

**B.     The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Noncompliance with the Audit**

Likewise, the Complaint more than meets the pleading standard to establish Finjan's entitlement to relief on its second cause of action related to Trustwave's noncompliance with the audit.

The Complaint alleges that Finjan and Trustwave entered into the Agreement.  Compl. ¶ 24.  The Agreement requires that Trustwave shall "permit such of their books and records necessary to determine the royalties paid hereunder, to be examined by an auditor or independent accounting firm mutually selected by Licensor and Licensee."  Compl. ¶ 13; *see also* Compl. ¶ 31 ("The Agreement allows for audits of Trustwave to determine whether additional royalties are due.  In the event of such an audit, Trustwave is required to permit[] its books and records to be examined by an auditor.").  The Complaint alleges that, even though the Agreement obligated Trustwave to provide KPMG with its books and records necessary to determine the appropriate royalty, KPMG "was denied various information by Trustwave, in violation of Section 3.4 of the Agreement." Compl. ¶ 14.  "Among other things, Trustwave refused to provide sales and technical information on products Trustwave did not believe were within the scope of the Agreement, unilaterally dictating the terms of KPMG's audit, and violating the Agreement."  Compl. ¶ 14.  The Complaint alleges that as a result of

Trustwave's breach of the Agreement, Finjan has suffered damages in an amount to be determined at trial.  Compl. ¶ 33.  Assuming the truth of each of these allegations, Finjan's second cause of action states a claim and survives a motion to dismiss. *Cent. Mortg. Co.*, 27 A.3d at 535.

Trustwave does not dispute—or even address—these allegations.  In fact, one of the documents on which Trustwave relies, the Royalty Inspection Report, buttresses the allegations in the Complaint because it makes clear that Trustwave breached its obligations by failing to comply with the audit.  *See* Dkt. No. 17 at Ex. B (Royalty Inspection Report).  Footnotes 1 and 2 of the Royalty Inspection Report state (emphasis added):

> ***As no version or product creation information was provided by Trustwave***, KPMG's calculation is based on all identified SKUs as being royalty bearing and not qualifying as 'Existing Business'.

> -and-

> ***Trustwave identified specific product SKUs as using Finjan technology***, but their position is no royalties are owed on these products as they are 'Existing Business' as defined under the license agreement.

> -and-

> Trustwave only provided access to product engineering employees in the SWG and SEG product group area for those SKUs ***they deemed relevant*** to the Finjan patent.

Trustwave wishes to incorporate by reference the Royalty Inspection Report into the record on its Motion to Dismiss (Op. Br. at 2); Finjan agrees. There is no question that the Complaint sufficiently pleads a breach of Trustwave's obligation to comply with the audit, and the Royalty Inspection Report establishes additional facts in support thereof. To the extent Trustwave disputes KPMG's royalty determination, that is an issue of fact to be resolved at trial following discovery. It is not susceptible to dismissal on the 12(b)(6) standard. *Klein*, 47 Del. at 537 (explaining that once a plaintiff has given fair notice of the cause of action asserted, the burden shifts to the defendant "to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses.").

**C.    The Complaint States a Claim Against Trustwave for Breach of Contract Based on Trustwave's Failure to Reimburse Finjan for the Cost of the Contractually-Permitted Audit**

Similarly, Finjan has more than met the bar to allege its third cause of action relating to Trustwave's breach of its obligation to reimburse Finjan for the cost of the contractually-permitted audit per the terms of the Agreement.

The Complaint alleges that Finjan and Trustwave entered into the Agreement. Compl. ¶ 24. The Complaint alleges that the Agreement states that "those audit fees could be shifted to Trustwave if the audit revealed an underpayment of a certain amount." Compl. ¶ 13; *see also* Compl. ¶ 36 ("[I]f the audit reveals an underpayment in excess of the greater of ▮▮ or ▮▮▮▮ then ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Licensee shall, within 30 days, reimburse Licensor for the costs of such audit.").

The Complaint alleges that even though KPMG's audit determined that Trustwave

was in underpayment in excess of the greater of ███ or █████████ "Trustwave

refuses to pay that amount." Compl. ¶ 37. The Complaint alleges that Finjan has

suffered damages of "at least $50,654,67 for the cost of the audit." Compl. ¶ 15.

As with Finjan's second cause of action, Trustwave does not dispute—or

even address—these allegations. Instead, Trustwave argues, without any citation

to a provision of the Agreement or to any case law, that Finjan's second and third

causes of action should be dismissed because Singtel's acquisition of Trustwave

needed to have been pleaded as a "qualifying event to convert the Agreement from

a fully paid-up license to a royalty-bearing one." Op. Br. at 18 ("it is clear that

even in the event of a qualifying transaction, Trustwave's continued operations are

not subject to alteration of its paid-up status."); *see also* Op. Br. at 3, fn. 1; at 6; at

10 ("Although Trustwave disputes that the Singtel acquisition triggered the

payment of royalties…").

First of all, Finjan does not agree with Trustwave's contention that the

Complaint does not allege "a qualifying event to convert the Agreement from a

fully paid-up license to a royalty-bearing one." *See* Op. Br. at 19. To the contrary,

Finjan has alleged a qualifying event: that upon acquisition, pursuant to Sections

1.13, 2.4, and 2.5, the Agreement would impose a royalty on Trustwave products.

Compl. ¶¶ 9-10. Indeed, the Complaint alleges that Trustwave agreed that Section 2.5 applied to the acquisition of Trustwave by Singtel (Compl. ¶ 10), thereby effectively conceding the occurrence of a qualifying event that triggered additional royalties. Trustwave is on notice of exactly what Finjan is seeking, and why.

Second, Finjan's second and third causes of action arise out of the audit rights set forth in Section 3.4 of the Agreement, which have nothing to do with whether Trustwave was acquired. *See* Dkt. No. 17, Ex. A (Agreement) at 3.4. The Agreement allows for audits of Trustwave, period. *Id.* ("Licensee further agrees to permit its books and records…to be examined by an auditor or independent accounting firm mutually selected by Licensor and Licensee from time-to-time during regular business hours, but not more than once a year."). Therefore, with respect to Finjan's second and third causes of action specifically, nothing related to Singtel's acquisition is relevant at all, and need not be pleaded.

Third, Trustwave's argument here only serves to highlight the dispute between the parties regarding whether the Singtel acquisition converted the Agreement from a paid-up license. Trustwave summarizes the dispute itself when it states that "these royalty obligations are only applicable *if Finjan is correct concerning the nature of the Singtel acquisition*." Op. Br. at 7 (emphasis added). This is exactly the sort of dispute between the parties that, at the motion to dismiss

stage, is presumed to be resolved in Finjan's favor. *Markow*, 2016 WL 1613419, at *5.

## III. The "Standard for Patent Infringement" Is Inapplicable to Finjan's Breach of Contract Action

There is not a single case, nor has Trustwave cited one,[5] to support its contention that Finjan's Complaint is subject to any federal pleading standards, let alone the pleading standard for patent infringement. Federal pleading standards are not applicable in Delaware state courts unless the Delaware Supreme Court says they are. *Cent. Mortg. Co*, 27 A.3d at 537. The Delaware Supreme Court has reiterated, time and again, that the standard on a 12(b)(6) motion to dismiss is reasonable conceivability. *Id.*; *Winshall,* 76 A.3d at 813 fn 12 (Del. 2013) ("But, and to reiterate our holding in Central Mortgage, until this Court is persuaded of that in a fully litigated case, or until the current standard is changed by an appropriate procedural rule amendment, reasonable conceivability is the Rule 12(b)(6) pleading standard in Delaware."); *Cambium Ltd.*, 36 A.3d at 348.

Finjan did not file a claim for patent infringement. If Trustwave actually believed Finjan's Complaint to be one for patent infringement masquerading as a breach of contract claim (*see* Op. Br. at 1), Trustwave could have removed this case to the District of Delaware. 28 U.S.C. § 1446. Trustwave did not remove.

---

[5] Of the 17 cases Trustwave cites in its Opening Brief, only 5 are Delaware cases. The remaining 12 are (inapplicable) federal cases.

Or, Trustwave could have filed a motion to dismiss based on lack of subject matter jurisdiction of the Delaware court to address the purported patent infringement claims. *See* Del. Super. Civ. R. 12(b)(1). Trustwave did not so move.

Furthermore, Trustwave's position makes little sense: If Finjan had to plead patent infringement to collect royalties under the Agreement, the Agreement itself would be superfluous, because Finjan does not need such an agreement with Trustwave to bring patent infringement claims against Trustwave for royalties. Rather, the Agreement is intended to address such disputes and contemplates that an auditor shall determine the royalty amount. *See* Compl. ¶¶ 13, 24, 25; *see also* Dkt. No. 17, Ex. A (Agreement) at Section 3.4. There is no requirement under Delaware law to plead either patent infringement or patent validity.

The Agreement does not contain a provision requiring Finjan to plead patent infringement (by identifying products, patents, or otherwise) in order to enforce its rights to collect royalty payments due and owing, nor does Trustwave cite to one. Op. Br. at 19. To the contrary, the Agreement states that it "shall be governed by and construed in accordance with the laws of the State of Delaware ***applicable to contracts*** made and performed in such state." Dkt. No. 17, Ex. A (Agreement) § 6.6 (emphasis supplied). Thus, the parties' choice of law provision specifically invokes the Delaware law of ***contracts*** (and not the federal law of patent infringement).

Trustwave's assertion in its Opening Brief that it cannot owe any royalties absent a showing of patent infringement is also belied by Trustwave's course of conduct prior to the point at which the dispute at issue in this lawsuit arose. Specifically, pursuant to the Agreement, Trustwave identified what it conceded were covered products and services (i.e., "identified specific product SKUs as using Finjan technology"), though it claimed that those products were "Existing Business." Dkt. No. 17, Ex. B (Royalty Inspection Report) at fn. 1. In other words, Trustwave conceded that certain products were covered by the Agreement, such that KPMG, even under Trustwave's own self-serving definition of products, concluded that $160,524.91 was still owed to Finjan. Compl. ¶ 15; *see also* Dkt. No. 17, Ex. B (concluding $160,524.91 as "Potential Royalties Due for Royalty Bearing Products identified by Trustwave."). Accordingly, there is no dispute that at least some Trustwave products are covered by the Agreement, and the full scope of covered products will be an issue for the finder of fact to determine.

## CONCLUSION

For the foregoing reasons, Plaintiff Finjan, Inc. respectfully requests that this Court deny the Motion to Dismiss of Defendant Trustwave Holdings, Inc., and award Finjan any other relief the Court deems appropriate.

Dated: July 30, 2018

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Mary F. Dugan*
_____
Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| FINJAN, INC., | |
|        Plaintiff, | |
| v. | C.A. No. N18C-04-006-WCC (CCLD) |
| TRUSTWAVE HOLDINGS, INC., | |
|        Defendant. | |

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION**

1.      This document complies with the typeface requirement of Superior Court Civil Rule 107(b) because it has been prepared in Times New Roman 14 point typeface using Microsoft Word 2010.

2.      This document complies with the type-volume limitation of Superior Court Civil Rule 107(h)(1) because it contains 5,267 words, which were counted by Microsoft Word 2010.

Dated: July 30, 2018

*Of Counsel:*

John L. Cooper
Winston Liaw
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 17th
Floor
San Francisco, California 94104
Telephone: (415) 954-4400

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/Mary F. Dugan*
_____
Karen L. Pascale (#2903)
Mary F. Dugan (#4704)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
kpascale@ycst.com
mdugan@ycst.com

*Attorneys for Plaintiff Finjan, Inc.*

EFiled: Sep 13 2018 08:56PM EDT
Transaction ID 62451717
Case No. N18C-04-006 WCC CCLD

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2018 the foregoing document

was served upon all counsel of record via File & Serve*Xpress*.

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FINJAN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) C.A. No. N18C-04-006 WCC CCLD | |
| | ) | |
| TRUSTWAVE HOLDINGS, INC., | ) PUBLIC VERSION | |
| | ) filed March 15, 2019 | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Trustwave Holdings, Inc. ("Trustwave"), by and through its undersigned counsel, answers Plaintiff Finjan, Inc.'s ("Finjan") Complaint as follows:

## NATURE OF ACTION

1.     This is a complaint for breach of contract.

**ANSWER:** Trustwave admits that the complaint purports to state an action for breach of contract, but Trustwave denies all remaining allegations in Paragraph 1.

## PARTIES

2.     Finjan is a Delaware corporation with a principal place of business at 2000 University Avenue, Suite 600, Palo Alto, California, 94303.

**ANSWER:** Trustwave lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and, therefore, denies those allegations.

3. On information and belief, Defendant Trustwave Holdings, Inc. ("Trustwave") is a Delaware corporation with a principal place of business in 70 W. Madison St., Suite 600, Chicago, IL 60602. On information and belief, Trustwave makes, uses, sells, and/or offers to sell in the United States, or imports into the United States, including in this judicial district, cybersecurity products or processes that practice the inventions claimed in Finjan's patents.

**ANSWER:** Trustwave admits that it is a Delaware corporation with a principal place of business in 70 W. Madison St., Suite 600, Chicago, IL 60602. Trustwave lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3 and, therefore, denies those allegations.

## FINJAN'S INNOVATIONS

4. Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation. In 1998, Finjan moved its headquarters to San Jose, California. Finjan was a pioneer in developing proactive security

technologies capable of detecting previously unknown and emerging on line security threats, recognized today under the umbrella term "malware." These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet. Finjan has been awarded, and continues to prosecute, numerous patents covering innovations in the United States and around the world resulting directly from Finjan's more than decades-long research and development efforts, supported by a dozen inventors and over $65 million in R&D investments.

**ANSWER:** Trustwave lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and, therefore, denies those allegations.

5.     Finjan built and sold software, including application program interfaces (APis) and appliances for network security, using these patented technologies. These products and related customers continue to be supported by Finjan's licensing partners. At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center, through which it frequently published research regarding network security and current threats on the Internet. Finjan's pioneering

approach to online security drew equity investments from two major software and technology companies, the first in 2005 followed by the second in 2006. Finjan generated millions of dollars in product sales and related services and support revenues through 2009, when it spun off certain hardware and technology assets in a merger. Pursuant to this merger, Finjan was bound to a non-compete and confidentiality agreement, under which it could not make or sell a competing product or disclose the existence of the non-compete clause. Finjan became a publicly traded company in June 2013, capitalized with $30 million. After Finjan's obligations under the non-compete and confidentiality agreement expired in March 2015, Finjan re-entered the development and production sector of secure mobile products for the consumer market.

**ANSWER:** Trustwave lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and, therefore, denies those allegations.

## TRUSTWAVE LICENSES FINJAN'S PATENTS

6.      Finjan and Trustwave entered into an Amended and Restated Patent License Agreement (the "Agreement"), which is a binding contract supported by offer, acceptance and mutual consideration. Among other things, under Section

4

2.1.1 of the Agreement, Finjan granted "to Licensee a limited, non-exclusive

(without the right to assign except as provided in Sections 2.4 or 6.9 below), fully

paid up, worldwide right and license, to:

> "(a) make, have made, use, import, sell and offer for sale (directly or
> indirectly, via one or more tiers of distribution channels) the
> Licensed Products and Services under the Licensed Patents;

**ANSWER:** Trustwave admits that Finjan and Trustwave entered the

Agreement and that the Agreement is a binding contract supported by offer,

acceptance, and mutual consideration. Trustwave admits that Section 2.1.1 of the

Agreement in its entirety states as follows:

> 2.1.1. For good and valuable consideration, the receipt of which is
> hereby acknowledged, and subject to and limited by all other terms
> hereof including without limitation, pursuant to Section 5 below,
> Licensor hereby grants to Licensee a limited, non-exclusive (without
> the right to assign except as provided in Sections 2.4 or 6.9 below),
> fully paid up, worldwide right and license, to: (a) make, have made,
> use, import, sell and offer for sale (directly or indirectly, via one or
> more tiers of distribution channels) the Licensed Products and
> Services under the Licensed Patents; and



5



Trustwave denies all remaining allegations in Paragraph 6.

7.    Under the Agreement, in the event Trustwave was acquired, certain

royalties would be due on certain products. Specifically, Section 2.5 of the

Agreement states:

> "Acquiring Parties. In the event of an Acquisition of Licensee, all the
> provisions of this Agreement applicable to Licensee ( except as
> related to Section 3 ), shall be deemed to apply to the Acquirer, and its
> respective Affiliates that are licensed hereunder, and the royalties that

apply under Section 3 to Permitted Transferees shall apply (from the effective date of such Acquisition) to all Licensed Products and Services sold and licensed by the Acquirer and its Affiliates licensed hereunder that are not attributable to the Existing Business."

Section 3.2.1 of the Agreement, which provides the applicable royalty, states:

"in respect of Permitted Transferees, and OEMs which are Excluded Persons and not Threshold Value OEMs exceeding the Net Sales Threshold, the then-prevailing royalty rate to be determined and agreed in good faith by Licensor and Licensee and reviewed annually if requested by Licensor based on then current royalty rates in the enterprise software market for customers of equivalent size for similar products, and, in the absence of such agreed prevailing rate provided such absence of agreement is not due to a lack of good faith on Licensor's part, █████

Pursuant to Sections 2.5 and 3.2.1 of the Agreement, a ███ royalty would be due on "any products and services other than the Licensed Products and Services and Integrated Licensed Products and Services as actually offered and distributed by the Licensee and their Affiliates at the time of the Transfer ("Existing Business.")." Further, under Section 3.3 of the Agreement, interest at the rate of "███ per annum" would also be due on such royalties.

**ANSWER:** Trustwave admits that the Agreement contains Sections 2.5 and 3.2.1 as stated in Paragraph 7, but Trustwave denies all remaining allegations in Paragraph 7.

## SINGTEL ACQUIRES TRUSTWAVE, TRIGGERING ROYALTY
## CLAUSES IN THE AGREEMENT

8.      Singtel publicly announced its offer to acquire Trustwave no later than April 7, 2015. Trustwave announced on August 31, 2015, that Singtel had completed its acquisition of Trustwave, including the Trustwave products and services that are the subject of the Agreement that is at issue in this dispute. On information and belief, Singtel now wholly owns Trustwave.

**ANSWER:** Trustwave admits that Singtel publicly announced its offer to acquire Trustwave no later than April 7, 2015, that Trustwave announced on August 31, 2015 that Singtel had completed its acquisition of Trustwave, and that Singtel now wholly owns Trustwave. Trustwave denies the remaining allegations in Paragraph 8.

9.      In 2015, Trustwave informed Finjan that Singtel was in the process of acquiring Trustwave. By mid-2015, Finjan began negotiations with Trustwave regarding the royalties due under the Agreement. Finjan explained that pursuant to Sections 1.13, 2.4 and 2.5, a ██ royalty would be owed on products not attributable to "Existing Business," as defined by the Agreement. Finjan also explained that Section 1.4 and Exhibit B of the Agreement imposed a ██ royalty on relevant sales.

**ANSWER:** Trustwave admits that in 2015 Trustwave informed Finjan that Singtel was in the process of acquiring Trustwave. Trustwave denies the remaining allegations in Paragraph 9.

10. In a July 22, 2015 email, Trustwave informed Finjan that it agreed that section 2.5 applied to the acquisition of Trustwave by Singtel.

**ANSWER:** Trustwave denies the allegations in Paragraph 10.

11. By the fall of 2015, the parties were nearing an agreement regarding additional royalties, when Trustwave suddenly, and without explanation, stopped responding to Finjan's emails, and thus refused to deal with Finjan.

**ANSWER:** Trustwave denies the allegations in Paragraph 11.

12. After Trustwave withdrew from negotiations, on November 16, 2015, Finjan notified Trustwave that it was in breach of the Agreement. On December 30, 2015, Finjan reiterated to Trustwave that it was in breach of the Agreement, stating that "Trustwave/SingTel is in breach of the license to the Finjan patents and is on notice for lack of compliance."

**ANSWER:** Trustwave admits that Finjan sent Trustwave an email on December 30, 2015 stating "Trustwave/SingTel is in breach of the license to the Finjan patents and is on notice for lack of compliance." Trustwave denies the remaining allegations in Paragraph 12.

13.    On June 22, 2016 of 2016, Finjan requested an audit pursuant to Section 3.4 of the Agreement for an accounting of the royalties resulting from Singtel's acquisition of Trustwave. Section 3.4 of the Agreement states:

> Licensee further agrees to permit its books and records, and to require any of its Affiliates licensed hereunder or OEMs, as the case may be, to permit such of their books and records necessary to determine the royalties paid hereunder, to be examined by an auditor or independent accounting firm mutually selected by Licensor and Licensee from time-to-time during regular business hours, but not more than once a year."

Finjan proposed Connor Consulting to perform the audit, as Connor Consulting came highly recommended, specialized in performing royalty audits, and would cost less than other auditors. But Trustwave rejected Finjan's proposed and instead suggested either KPMG or Ernst & Young to perform the audit. Finjan looked into having Ernst & Young perform the audit, but discovered that it had an engagement with Singtel and thus could not perform the audit due to a conflict. Finjan then retained KPMG, the other auditor suggested by Trustwave, to perform the audit.

Pursuant to the Agreement, Finjan initially paid for the audit. Under Section 3.4, those audit fees could be shifted to Trustwave if the audit revealed an underpayment of a certain amount.

**ANSWER:** Trustwave admits that the Agreement contains Section 3.4, which states in its entirety:

3.4. 

Licensee further agrees to permit its books and records, and to require any of its Affiliates licensed hereunder or OEMs, as the case may be, to permit such of their books and records necessary to determine the royalties paid hereunder, to be examined by an auditor or independent accounting firm mutually selected by Licensor and Licensee from time-to-time during regular business hours, but not more than once a year. 

Trustwave admits that Finjan engaged KPMG to conduct an inspection under Section 3.4. Trustwave denies that the inspection was proper under the Agreement and Trustwave denies the remaining allegations in Paragraph 13.

14. KPMG attempted to perform its audit, but was denied various information by Trustwave, in violation of Section 3.4 of the Agreement. Among other things, Trustwave refused to provide sales and technical information on products that Trustwave did not believe were within the scope of the Agreement, unilaterally dictating the terms of KPMG's audit, and violating the Agreement.

**ANSWER:** Trustwave denies the allegations in Paragraph 14.

15. Based on Trustwave's definition of what products were within the scope of the agreement, KPMG concluded that an additional $160,524.91 was due under the Agreement. However, based on KPMG's own analysis of what products were within the scope of the agreement, KPMG determined that an additional $1,526,445.95 was due under the Agreement. Due to the amount by which Trustwave was in underpayment, it was also required to pay for the audit, in the amount of $50,654.67. On October 1, 2017, Finjan requested payment of those fees

and the cost of the audit, and asked that Trustwave advise whether it would pay by October 18, 2017. Trustwave declined to pay.

**ANSWER:** Trustwave denies the allegations in Paragraph 15.

16. On March 6, 2018, Finjan again reached out to Trustwave to request payment of the fees and the cost of the audit. Over one week later, Trustwave's counsel responded on March 14 to request a CEO-to-CEO conversation to resolve this dispute. Finjan promptly agreed to that request, and on March 16 provided Trustwave's counsel with the direct contact information of Finjan's CEO. To date, Trustwave has not reached out to Finjan or its CEO, despite its request.

**ANSWER:** Trustwave denies the allegations in Paragraph 16.

## JURISDICTION AND VENUE

17. The Court has subject matter jurisdiction and personal jurisdiction over Trustwave at least by virtue of Section 6.4.1 of the Agreement, which states that "[t]he parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding

related thereto may be heard and determined in such courts." This dispute arises of and relates to the Agreement by virtue of Trustwave's breach of various provisions, described above and detailed further below.

**ANSWER:** The allegations in Paragraph 17 regarding whether this Court has subject matter jurisdiction and personal jurisdiction over Trustwave are allegations that assert legal conclusions to which no response is required. Trustwave admits that the Agreement contains Section 6.4.1, which in its entirety states:

> 6.4.1. The parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts.



Trustwave denies the remaining allegations in Paragraph 17.

18.     The Court also has personal jurisdiction over Trustwave because Plaintiffs claims against each of them arises out of or relate to each of their purposeful contacts with Delaware, and the exercise of personal jurisdiction over each Trustwave in this particular case would comport with principles of fair play and substantial justice.

**ANSWER:**  The allegation in Paragraph 18 regarding whether this Court has personal jurisdiction over Trustwave is an allegation that asserts a legal conclusion to which no response is required.  Trustwave denies the remaining allegations in Paragraph 18.

19.     This Court also has personal jurisdiction over each Trustwave because it has engaged in systematic and continuous contacts with this State and this district by, inter alia, regularly conducting and soliciting business in this State and this district, and deriving substantial revenue from products and/or services provided to persons in this State and this district. For example and without limitation, as noted above, Trustwave is a Delaware corporation. As another example without limitations, Trustwave offers for sale and on information and belief has sold its products and services to residents on this State.

**ANSWER:** The allegation in Paragraph 19 regarding whether this Court has personal jurisdiction over Trustwave is an allegation that asserts a legal conclusion to which no response is required. Trustwave denies the remaining allegations in Paragraph 19.

20. Venue is proper in this Court at least by virtue of Section 6.4.1 of the Agreement, which, in addition to stating that "[t]he parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement," further states that "[t]he parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute."

**ANSWER:** The allegation in Paragraph 20 regarding whether venue is proper in this Court is an allegation that asserts a legal conclusion to which no response is required. Trustwave admits that the Agreement contains Section 6.4.1, the entirety of which is provided in Trustwave's answer to Paragraph 17. Trustwave denies the remaining allegations in Paragraph 20.

21.     Venue is further proper in this State because Trustwave is incorporated here, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district, and because Trustwave is subject to this Court's personal jurisdiction with respect to the claims alleged herein.

**ANSWER:** The allegation in Paragraph 21 regarding whether venue is proper in this Court is an allegation that asserts a legal conclusion to which no response is required.  Trustwave denies the remaining allegations in Paragraph 21.

## FIRST CAUSE OF ACTION

**(Breach of Contract- Failure to Pay Royalties)**

22.     Finjan incorporates paragraphs 1 through 21 herein by reference.

**ANSWER:** Trustwave repeats the answers to the allegations in the preceding paragraphs.

23.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration. Trustwave was acquired by Singtel no later than August 31, 2015.

**ANSWER:**  Trustwave admits the allegations in Paragraph 23.

24. The Agreement provides that, in the event of an acquisition of Trustwave, at least a ██ royalty on "any products and services other than the Licensed Products and Services and Integrated Licensed Products and Services as actually offered and distributed by the Licensee and their Affiliates at the time of the Transfer ('Existing Business.')" are due. Accordingly, additional royalties are due under the Agreement.

**ANSWER:**  Trustwave denies the allegations in Paragraph 24.

25. Further, Finjan commenced an audit pursuant to Section 3.4 of the Agreement. The independent auditor, KPMG, concluded that at least $1,526,445.95 in additional royalties were owed by Trustwave to Finjan, based on the available information. Despite Finjan's repeated requests, Trustwave refuses to pay that amount.

**ANSWER:**  Trustwave denies the allegations in Paragraph 25.

26. Accordingly, Trustwave has breached the Agreement by failing to pay the royalties.

**ANSWER:**  Trustwave denies the allegations in Paragraph 26.

18

27.    Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

**ANSWER:**  Trustwave denies the allegations in Paragraph 27.


28.    As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in the amount of at least $1,526,445.95 for the period of January 1, 2014 through December 31, 2016, based on the information made available to Finjan.

**ANSWER:**  Trustwave denies the allegations in Paragraph 28.


## SECOND CAUSE OF ACTION

**(Breach of Contract - Noncompliance with Audit)**

29.    Finjan incorporates paragraphs 1 through 21 herein by reference.

**ANSWER:** Trustwave repeats the answers to the allegations in the preceding paragraphs.

30.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration.

**ANSWER:** Trustwave admits the allegations in Paragraph 30.

31.     The Agreement allows for audits of Trustwave to determine whether additional royalties are due. In the event of such an audit, Trustwave is required to permits its books and records to be examined by an auditor. Trustwave refused to provide certain information on products that it contends are not within the scope of the Agreement. But the Agreement does not allow Trustwave to limit what books or records are examined by the auditor. Accordingly, Trustwave interfered with the requested audit, preventing it to be performed in accordance with Section 3 .4 of the Agreement. Trustwave has violated Section 3 .4 of the Agreement, and has thus breached the Agreement.

**ANSWER:** Trustwave denies the allegations in Paragraph 31. Trustwave respectfully refers the Court to the Agreement for its complete and full contents.

32.     Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

**ANSWER:**  Trustwave denies the allegations in Paragraph 32.

33.     As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in an amount to be determined at trial.

**ANSWER:**  Trustwave denies the allegations in Paragraph 33.

## THIRD CAUSE OF ACTION

### (Breach of Contract - Cost of Audit)

34.     Finjan incorporates paragraphs 1 through 21 herein by reference.

**ANSWER:** Trustwave repeats the answers to the allegations in the preceding paragraphs.

35.     Finjan and Trustwave entered into the Agreement, a valid, enforceable, and binding contract supported by offer, acceptance, and mutual consideration.

**ANSWER:**  Trustwave admits the allegations in Paragraph 35.

36.    Section 3.4 of the Agreement states:

"Licensor shall bear the cost of the audit, provided, however, that if the audit reveals an underpayment in excess of the greater of ███ or ███████ then Licensee shall, within 30 days, reimburse Licensor for the costs of such audit."

**ANSWER:**  Trustwave admits that the Agreement contains Section 3.4, which is provided in its entirety in Trustwave's answer to Paragraph 13 above.

37.    KPMG, the independent auditor mutually agreed upon by the parties to perform an audit pursuant to the Agreement, determined that $1,526,445.95 in additional royalties were owed by Trustwave to Finjan. This amount is in excess of the greater of ██████████. Accordingly, pursuant to Section 3.4 of the Agreement, Trustwave is required to bear the cost of the audit, $50,654.67. Trustwave refuses to pay that amount, in violation of the Agreement. Accordingly, Trustwave has breached the Agreement by failing to pay for the audit fees.

**ANSWER:**  Trustwave denies the allegations in Paragraph 37.

38.    Finjan has fully performed its obligations under the Agreement to the extent those obligations were not excused by Trustwave's breaches thereof.

**ANSWER:**  Trustwave denies the allegations in Paragraph 38.

39.     As a direct and proximate result of Trustwave's breach of the Agreement, Finjan has suffered damages, in the amount of at least $50,654.67 for the cost of the audit.

**ANSWER:**  Trustwave denies the allegations in Paragraph 39.


## FINJAN'S DEMAND FOR JURY TRIAL IS IMPROPER

Pursuant to Section 6.4.2 of the Agreement, Finjan's demand for Jury Trial is improper and in breach of the parties' agreement.


## AFFIRMATIVE AND OTHER DEFENSES

Further answering the Complaint, Trustwave asserts the following defenses, undertaking the burden of proof on such defenses only to the extent required by law.  Trustwave reserves its right to amend its Answer with additional defenses as more information is obtained.

## FIRST DEFENSE

The complaint fails to state a claim against Trustwave upon which relief can be granted.

## SECOND DEFENSE

Pursuant to this Court's February 11, 2019 Order "Finjan's suit for breach of contract may proceed, but only to determine whether or not Singtel is actually using the patent technology that would trigger royalty payments under the Agreement. The cost obligations alleged in Counts Two and Three of the Complaint will await the outcome of the discovery which the Court has authorized." Therefore, this action is currently limited to determining Singtel's use of the patent technology.

## PRAYER FOR RELIEF

WHEREFORE, Trustwave respectfully requests that this Court:

A.      Enter judgment against Plaintiff and in favor of Trustwave;

B.      Dismiss the Complaint with prejudice;

C.      Award Trustwave its reasonable costs and expenses, including reasonable attorney's fees, incurred in connection with this Action; and

D.      Grant Trustwave such other and further relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:


John S. Letchinger
BAKER& HOSTETLER LLP
191 N. Wacker Drive
Suite 3100
Chicago, IL  60606-1901
(312) 416-6200


Jared A. Brandyberry
BAKER& HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO  80202
(303) 861-0600


February 19, 2019

*/s/ Jack B. Blumenfeld*                       
Jack B. Blumenfeld (#1014)
Alexandra M. Cumings (#6146)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2019 the foregoing documents were

served upon all counsel of record via File & Serve*Xpress.*

Karen L. Pascale, Esquire
Mary F. Dugan, Esquire
1000 North King Street
Wilmington, DE 19801


*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FINJAN, INC.,             )  Public Version - Filed: September 30, 2019
                        )
       Plaintiff,     )
   v.                 )  C.A. No. 18C-04-006-WCC-CCLD
                        )
TRUSTWAVE HOLDINGS, INC.,  )
       Defendant.   )

## CORRECTED MOTION TO COMPEL DISCOVERY

Plaintiff Finjan, Inc. ("Finjan") respectfully moves to compel discovery against Defendant Trustwave Holdings, Inc. ("Trustwave") pursuant to Superior Court Civil Rule 37(a) with regards to Finjan's First Set of Interrogatories Nos. 2-38 and 41-42 and First Set of Requests for Production Nos. 2-35 and 38-41.

## INTRODUCTION

This case arises out of a contract dispute between Trustwave and Finjan following Trustwave's acquisition by Singapore Telecommunications Limited ("Singtel") in August 2015. Prior to Trustwave's acquisition, Trustwave and Finjan entered into a licensing agreement ("Agreement") in March 2012, with Finjan granting Trustwave a limited, nonexclusive license to a series of patents. *See* Compl. at 3-4. This Agreement included a provision concerning acquisition of Trustwave in Section 2.5, stating that in the event of Trustwave's acquisition, the agreement will "[a]pply to the Acquirer, and its respective Affiliates that are licensed hereunder, and the royalties that apply under Section 3 to Permitted Transferees shall apply . . . to all Licensed Products and Services sold and licensed by the Acquirer and its

Affiliates licensed hereunder that are not attributable to the Existing Business." Agreement at § 2.5.

Following Trustwave's acquisition and its withdrawal from negotiations with Finjan over royalties under Section 2.5, Finjan commenced an audit pursuant to Section 3.4 of the Agreement to determine whether post-acquisition activity triggered the royalty clause. *See* Compl. at 5-6. An independent auditor ultimately determined that Trustwave owed additional fees under Section 2.5, which Trustwave refused to pay. *Id.* at 6-7. Ultimately, Finjan brought three breach of contract claims for refusal to pay royalties under Section 2.5 (Count One), noncompliance with the audit (Count Two), and for the cost of the audit (Count Three).

This Court denied Trustwave's Motion to Dismiss, ultimately holding that "Finjan's suit for breach of contract may proceed" to "determine whether or not Singtel is actually using the patent technology that would trigger the royalty payments under the Agreement." February 11, 2019 Letter Opinion ("Order") at 2. In an attempt to gain relevant information, Finjan served a First Set of Interrogatories ("Interrogatories") and First Set of Requests for Production ("Requests for Production") on March 12, 2019. Unfortunately, Trustwave did not produce any information. On May 29, 2019, Trustwave filed a motion for protective order seeking to limit the scope of Finjan's discovery. *See generally*, Mot. Protective Order. Trustwave withdrew its motion in part because of Finjan's substitution of

counsel. Since that withdrawal, Finjan has been diligently working to resolve and/or narrow any outstanding discovery issues. To assist in that effort, on June 21, 2019, Finjan provided Trustwave with a detailed letter highlighting Finjan's positions on discovery. Since that time, there have been a couple of phone calls but no firm agreement to produce any information from Trustwave. Ultimately, Finjan brings this motion seeking highly relevant documents that will help determine whether Trustwave and Singtel have engaged in behavior triggering a royalty payment to Finjan. This information is pertinent and tailored to the scope that this Court set out in its Order, and, as such, this Court should compel discovery.

## **ARGUMENT**

A party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Super. Ct. Civ. R. 26(b)(1). "[R]elevancy must be viewed liberally *and if there is any possibility that the discovery will lead to relevant evidence* it should be permitted." *Powell v. AmGUARD Ins. Co.*, 2019 Del. Super. LEXIS 235, at *8 (Del. Super. May 14, 2019) (emphasis in original); *Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 Del. Super. LEXIS 617, at *4 (Del. Super. Oct. 27, 2017). "The scope of discovery has been consistently described by Delaware courts as 'broad and far reaching.'" *Powell*, 2019 Del. Super. LEXIS 235, at *8.

"Because of the breadth of discoverable materials, objections to discovery

requests, in general, will not be allowed unless there have been clear abuses of the process which would result in great and needless expense and time consumption." *Grace Bros. v. Siena Hldgs, Inc.*, 2009 Del. Ch. LEXIS 240, at *2 (Del. Ch. June 2, 2009) (citation omitted). Consistent with that policy, "[t]he burden is on the objecting party to show why the requested information is improperly requested." *JPMorgan Chase & Co. v. Am. Century Cos.*, 2013 Del. Ch. LEXIS 101, at *5 (Del. Ch. Apr. 18, 2013) (citation omitted). Trustwave cannot meet its burden to bar discovery.

Finjan's discovery requests are relevant and within the scope of the Court's Order because the requested documents will shed light on whether Singtel uses the licensed technology outside of Trustwave's "Existing Business." Trustwave has the mistaken impression that the Agreement between Finjan and Trustwave does not apply to any cybersecurity products and sales by Singtel or Trustwave unless related to both entities. As Trustwave has already acknowledged in its Answer, Section 2.5 of the Agreement explicitly states that "[i]n the event of an Acquisition of Licensee . . . royalties that apply under Section 3 to Permitted Transferees shall apply . . . to all Licensed Products and Services sold and licensed by the Acquirer and its Affiliates licensed hereunder ***that are not attributable to the Existing Business***." Mar. 19, 2018 Trustwave Answer (emphasis added). "Existing Business" refers to

such licensed products/services offered and distributed by the Licensee and Affiliates at time of transfer.  Agreement § 2.4.

A. **Finjan's Requests Regarding Trustwave's Cybersecurity Products are Relevant and within the Scope of Discovery Set by the Court's Order**

This Court should compel discovery on Interrogatories Nos. 2-9, 19, 21-24 and Requests for Production Nos. 2-9, 19, 21-24, 28-35 because they are relevant to determine whether Singtel uses the Licensed Patents outside of Trustwave's "existing business."  The Court's Order provides the following:

> The parties appear to agree that if Singtel, as the acquiring company, is now using the patent information in its business, additional royalties are required. ***They also reluctantly agree that if Singtel is not using the patent information and it is only being used for <u>Trustwave's existing business</u>, no additional royalties are required.***

Order at 2 (emphasis added).  Trustwave incorrectly concludes that information and documents relating to Trustwave's cybersecurity products are irrelevant to the issue of whether Singtel is using the Licensed Patents, which would trigger royalty payments.  As confirmed by the Court, whether royalty payments are required depends on Trustwave's "existing business."  Finjan requires discovery relating to Trustwave's cybersecurity products prior to the time of the acquisition to determine whether Singtel is using the patents only for Trustwave's existing business, post-acquisition.  *See* Agreement § 2.4.

Finjan's requests are narrowly tailored limiting the time frame of its discovery requests to "products, services, and/or subscriptions . . . manufactured, used, sold,

and/or offered by Trustwave since January 1, 2013." Plaintiff's First Set of Interrogatories at 2. Information and documents relating to Trustwave's cybersecurity products prior to the acquisition date are relevant for determining Trustwave's existing business at the time of the transfer and whether any post-acquisition activities require a royalty payment. As such, this Court should compel discovery on these requests.

**B. Finjan's Requests Regarding Singtel Cybersecurity Products, including the Trustwave Integrated Cybersecurity Products, are Relevant and within the Scope of Discovery Set by the Court's Order**

This Court should compel discovery on Finjan's Interrogatories Nos. 10-18, 20, 25-38, and 42 and Requests for Production Nos. 10-18, 20, 25-28, 31-35, and 41 because they are relevant to determine whether Singtel uses the Licensed Patents. The Court observed that "if Singtel, as the acquiring company, is now using the patent information ***in its business***, additional royalties are required." Order at 2 (emphasis added). Consistent with this observation, Finjan's request is relevant and appropriately tailored. Finjan seeks discovery on Singtel's cybersecurity products since January 1, 2013 to determine whether Singtel uses the patented technology beyond Trustwave's existing business (in whole or in part). The Agreement provides for additional royalties if Singtel uses the licensed patents *in its business*. Because Singtel has a global presence, Finjan's request for information about

Singtel's product offerings worldwide is relevant to determine whether Singtel uses the patented technology.

Additionally, Singtel's status as a non-party does not preclude Finjan from seeking discovery since the information and documents that Finjan seeks are within the custody and control of Trustwave within the meaning of Rule 34. "Delaware Superior Court Civil Rule 34 requires the production of all relevant, non-privileged documents 'which are in the possession, custody or control of the party upon which the request is served.'" *Nat'l Union Fire Ins. Co. v. Rhone-Poulenc Basis Chems. Co.*, 1992 Del. Super. LEXIS 591, at *9 (Del. Super. Aug. 7, 1992). "Under Rule 34, the requirement that documents be under the control of a party has been construed 'very broadly.' The inquiry under the control test is not whether the party actually possesses the documents but whether it has 'the legal right to obtain the documents requested on demand.'" *Id.* (citations omitted).

In determining "custody or control," courts look at the "nature of the relationship" between the litigating party and the nonparty with possession of the information/documents.[1] Three factors to consider are (1) corporate structures; (2) connection to transaction; and (3) benefit of award. *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130-31 (D. Del. Nov. 24, 1986); *see also Nat'l Union Fire*

---

[1] The Delaware Superior Court rule tracks Federal Rule of Civil Procedure 34(a). *See, e.g., Nat'l Union Fire Ins. Co. v. Rhone-Poulenc Basic Chems. Co.*, 1992 Del. Super. LEXIS 591, at *9 (Del. Super. Aug. 7, 1992) (citing federal law).

*Ins. Co. v. Rhone-Poulenc Basic Chems.* Co., 1992 Del. Super. LEXIS 591, at *9 (Del. Super. Aug. 7, 1992); *Princeton Digital Image Corp. v. Konami Digital Entertainment Inc.*, 316 F.R.D. 89 (D. Del. 2016).

In its 2018 annual report, Singtel reported that it "integrated all of [its] cybersecurity assets into a single global cyber security unit." Further, Singtel's chief executive for global security and chief executive officer for Trustwave, said in a media statement that the group will be 'uniting the security assets and deep expertise of Singtel, Optus, Trustwave, and NCS under one brand and single vision—what we call the new Trustwave." Singtel's integration of its services and products under the "new Trustwave" is central to this case. *See Afros S.P.A*, 113 F.R.D. at 131 ("[A] non-party's participation in a transaction, and its consequent possession of related documents, must be considered in determining control for Rule 34 purposes."). Further, Singtel will certainly benefit from a favorable outcome for Trustwave in this suit. *See id.* ("If a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession.").

Though Trustwave has maintained that it seeks client approval to provide documents and information in its possession concerning Trustwave's sales of products to Singtel since the 2015 acquisition date, this alone (should it occur) is not sufficient to determine whether Singtel owes royalties under the license agreement.

The issue is not limited to products that Trustwave sold to Singtel, but rather to whether Trustwave's products offered prior to the acquisition differ from the products offered by Singtel post-acquisition, which integrates its products and services with Trustwave's cyber security assets. If the products sold prior to acquisition are different than those sold post-acquisition, then sections 2.4 and 2.5 are triggered and Finjan is entitled to additional royalties. As such, Finjan's requests regarding Singtel's cybersecurity products are relevant and this Court should grant this motion.

### C. Finjan's Requests Relating to Counts Two and Three are Relevant and within the Scope of Discovery Set by the Court's Order

This Court should compel discovery on Finjan's Interrogatory No. 41 and Requests for Productions Nos. 38-40 because these requests are relevant to determining whether Singtel uses the patented technology. The Court authorized discovery "to determine whether or not Singtel is actually using the patented technology that would trigger royalty payments under the Agreement." Order at 2.

Finjan's discovery requests are relevant because they relate to documents and communications requested by KPMG in the course of the audit pursuant to Section 3.4. KPMG attempted to perform its audit and was denied information by Trustwave. KPMG's requests are within the ordinary and customary practice of the industry, which requires sufficient relevant data for an auditor to form a reasonable basis for his/her conclusions. *See, e.g.*, AICPA Code of Professional Conduct §

1.300.001(d). Further, these requests are relevant to determine which products trigger the royalty provision, and address the central dispute of whether Singtel uses the patented technology. *See National Union Fire Ins. Co. v. Stauffer Chemical Co.*, 1990 Del. Super. LEXIS 402, at *3 (Del. Super. Nov. 9, 1990) ("[The] requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms.") (citations omitted). Therefore, because Finjan's requests seek relevant materials, this Court should compel discovery on these requests.

## CONCLUSION

In view of the recent trial settling and the Court's order to produce information to discover if royalties are due, this Court should grant Finjan's motion to compel Trustwave to comply with the narrowly, tailored discovery requests.

/s/ Karen S. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Bijal V. Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
(650) 213-0300

Dated: August 30, 2019

# CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on September 30, 2019, this

document was served on the persons listed below in the manner indicated:

**BY FILE & SERVE XPRESS**
**AND EMAIL**

Jack B. Blumenfeld
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
acumings@mnat.com

Jared A. Brandyberry
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
(303) 861-0600
jbrandyberry@bakerlaw.com

John S. Letchinger
Matthew J. Caccamo
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6200
jletchinger@bakerlaw.com
mcaccamo@bakerlaw.com

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiff*